**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

|   |   |   |
|---|---|---|
| WACHOVIA SECURITIES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 04 C 3082** |
| | ) | |
| DAVID NEUHAUSER, | ) | |
| ANDREW A. JAHELKA, | ) | Judge William T. Hart |
| RICHARD O. NICHOLS and | ) | |
| LEON A. GREENBLATT III, | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

*FILED*

*JUL 2 1 2004*

*MICHAEL W. DOBBINS*
*CLERK, U.S. DISTRICT COURT*

---

**NOTICE OF FILING OF RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS'
12(b)(6) MOTION TO DISMISS COMPLAINT**

To:    C. Philip Curley, Esq. (VIA MESSENGER)
       John H. Wickert, Esq.
       Robinson Curley & Clayton, P.C.
       300 South Wacker Drive – Suite 1700
       Chicago, Illinois 60606

PLEASE TAKE NOTICE that on July 21, 2004, we filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, Defendant, Wachovia Securities, LLC's Response Brief in Opposition to Defendants' 12(b)(6) Motion to Dismiss Complaint, a true and correct copy of which is attached hereto and herewith served upon you.

Respectfully submitted,

By: _____
One of the Attorneys for Plaintiff,
Wachovia Securities, LLC

Steven P. Gomberg
Gary I. Blackman
Christopher S. Griesmeyer
Levenfeld Pearlstein, LLC
2 North LaSalle Street - Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)

**DOCKETED**

JUL 2 3 2004

## CERTIFICATE OF SERVICE

I, Christopher S. Griesmeyer, an attorney, state that I have served a copy of the foregoing Notice of Filing and Response Brief in Opposition to Defendants' 12(b)(6) Motion to Dismiss Complaint to all counsel of record listed below via Messenger from 2 North LaSalle Street, Chicago, Illinois 60602, this 21st day of July, 2004:

> C. Philip Curley, Esq. (VIA MESSENGER)
> John H. Wickert, Esq.
> Robinson Curley & Clayton, P.C.
> 300 South Wacker Drive – Suite 1700
> Chicago, Illinois 60606

_____
Christopher S. Griesmeyer

H:\52900\52927\NOF of Response Brief 7-21-04

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  04  C  3082 |
| | ) | |
| DAVID NEUHAUSER, | ) | |
| ANDREW A. JAHELKA, | ) | Judge William T. Hart |
| RICHARD O. NICHOLS and | ) | |
| LEON A. GREENBLATT III, | ) | Magistrate Judge Michael T. Mason |
| | ) | |
| Defendants. | ) | |

**WACHOVIA SECURITIES, LLC'S RESPONSE BRIEF IN OPPOSITION TO
DEFENDANTS' 12(b)(6) MOTION TO DISMISS COMPLAINT**

FILED
JUL 2 1 2004
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

DOCKETED
JUL 2 3 2004

# TABLE OF CONTENTS AND AUTHORITIES

**Page**

I. **PRELIMINARY STATEMENT** ........................................................................................... 1

II. **FACTUAL BACKGROUND** ............................................................................................. 2

III. **LEGAL STANDARD** ...................................................................................................... 3

        *Xinos v. Kappos,*
           270 F.Supp.2d 1027 (N.D. Ill. 2003) ................................................. 3

        *Triad Assocs., Inc. v. Chicago Hous. Auth.,*
           892 F.2d 583 (7th Cir.1989) ............................................................. 3

        *Lee v. City of Chicago,*
           330 F.3d 456 (7th Cir. 2003) ........................................................... 4

        *Indeck Power Equipment Co. v. Jefferson Smurfit Corp.,*
           881 F. Supp. 338 (N.D. Ill. 1995) .................................................... 4

        *Gray v. County of Dane,*
           854 F. 2d 179 (7th Cir. 1988) .......................................................... 4

IV. **ARGUMENT** .................................................................................................................. 4

    A. **WACHOVIA'S SECURITIES FRAUD CLAIMS ARE TIMELY** ................................. 4

        *Fujisawa Pharm. Co., Ltd. v. Kapoor,*
           115 F.3d 1332 (7th Cir. 1997) ......................................................... 4

        28 U.S.C. § 1658(b) ................................................................................. 4

        1. **The date of inquiry notice is question of fact that must be**
           **resolved in favor of Wachovia** ..................................................... 4

        *Wafra Leasing Corp. v. Prime Capital Corp.,*
           192 F.Supp.2d 852 (N.D. Ill. 2002) ................................................. 4

        *Marks v. CDW Computer Ctrs., Inc.,*
           122 F.3d 363 (7th Cir.1997) ............................................................ 4

        *Xinos v. Kappos,*
           270 F.Supp.2d 1027 (N.D. Ill. 2003) ................................................. 4

2. **Wachovia's securities fraud claims are subject to a two-year statute of limitations under the Sarbanes-Oxley Act** ...................................................5

    28 U.S.C. § 1658 ...................................................................6

    *In re AOL Time Warner, Inc. Securities and "ERISA" Lit.,*
    2004 WL 992991 (S.D. N.Y. 2004) ...............................6

    *In re Merrill Lynch & Co., Inc. Research Reports Securities Lit.,*
    272 F. Supp. 2d 243 (S.D. N.Y. 2003)............................6

  (a) **The Sarbanes-Oxley Act applies retroactively** .......................................6

    15 U.S.C. § 78i(e) ................................................................6

    *In re Merrill Lynch & Co., Inc. Research Reports Securities Lit.,*
    272 F. Supp. 2d 243 (S.D. N.Y. 2003) ...........................6

    Pub.L. 107-204, Title VIII, § 804(b) ..................................6

    148 Cong. Rec. S6524-02 ...................................................7

    *Roberts v. Dean Witter Reynolds, Inc.,*
    2003 WL 1936116 (M.D. Fla. 2003) ..............................7

    148 Cong. Rec. S7418-01 ...................................................7

  (b) **Defendants' conduct equitably estopped the running of the limitations period until after the effective date of the Sarbanes-Oxley Act** ...................................................8

    *Ashafa v. City of Chicago,*
    146 F.3d 459 (7th Cir. 1998) ..........................................8

    *Go For It, Inc. v. Aircraft Sales Corp.,*
    2003 WL 21504600 (N.D. Ill. 2003) ..............................8

    *Myers v. Centralia Cartage Co.,*
    419 N.E.2d 465 (Ill. App. 1981) ....................................8

    *United States v. Funds in the Amount of $29,266.00,*
    96 F.Supp.2d 806 (N.D. Ill. 2000) .................................8

    *Guaranty Residential Lending, Inc. v. International Mtg. Ctr, Inc.,*
    305 F. Supp. 2d 846 (N.D. Ill. 2004) ............................8

3.  **Defendants are estopped from raising a statute of
limitations defense because Wachovia commenced
arbitration within the two- year period** ............................................9

  NYSE Arbitration Rule 606(a)............................................................11

  NASD Code of Arbitration Rule 10307(a) ....................................11

  *In re Enron Corp. Securities, Derivative & "ERISA" Lit.,*
   310 F. Supp. 2d 819 (S.D. Tex. 2004) ....................................11

  *Ashafa v. City of Chicago,*
   146 F.3d 459 (7th Cir. 1998) ....................................................11

  *Katz v. Amos Treat & Co.,*
   411 F.2d 1046 (2d Cir. 1969) ..................................................11

  *Tregenza v. Great American Communications Co.,*
   12 F.3d 717 (7th Cir. 1993) ....................................................11

**B.  WACHOVIA'S FRAUD-BASED COUNTS ARE PROPERLY PLED**....................11

1.  **Defendants misconstrue the nature of Wachovia's fraud
claims, and raise unresolved issues of fact concerning
Wachovia's knowledge of their fraudulent activities** ....................11

  *Hefferman v. Bd. of Trustees of Ill. Comm. Col. Dist. 508,*
   310 F.3d 522 (7th Cir. 2002) ..................................................11

  *Go For It, Inc. v. Aircraft Sales Corp.,*
   2003 WL 21504600 (N.D. Ill. 2003) ......................................12

2.  **Wachovia has more than adequately pled a claim
for fraudulent misrepresentation** ..................................................13

3.  **Wachovia has more than adequately pled a claim
for fraudulent concealment** ............................................................14

  *Connick v. Suzuki Motor Company, Ltd.,*
   675 N.E.2d 584 (Ill. 1997)......................................................15

  *LeFebre Intergraphics, Inc. v. Sanden Machine, Ltd.,*
   946 F. Supp. 1358 (N.D. Ill. 1996) ........................................15

  *T-Bill Option Club v. Brown & Co. Securities Corp.,*
   1990 WL 103584 (N.D. Ill. 1990) ..........................................15

*Carl v. Galuska,*
    785 F. Supp. 1283 (N.D. Ill. 1992) ...............................................15

*Caraluzzi v. Prudential Securities, Inc.,*
    824 F. Supp. 1206 (N.D. Ill. 1993) ...............................................15

*Erickson v. Painewebber Incorporated,*
    1990 WL 17144 (N.D. Ill. 1990) ...............................................15

*Fey v. Walston & Co., Inc.,*
    493 F.2d 1036 (7th Cir. 1974) ...............................................15

    **4. Wachovia has pled its fraud-based counts with
    sufficient particularity**...............................................16

*DiLeo v. Ernst & Young,*
    901 F.2d 624 (7th Cir. 1990) ...............................................16

*Carl v. Galuska,*
    785 F. Supp. 1283 (N.D. Ill. 1992) ...............................................16

**C. WACHOVIA'S PIERCING THE CORPORATE VEIL AND ALTER
EGO CLAIMS ARE PROPERLY PLED** ...............................................17

    **1. Piercing the Corporate Veil or an Alter-Ego
    Claim is a Recognizable Claim that Can Be Pursued** ...............................................17

*International Fin. Services Corp. v. Chromas Tech. Canada, Inc.*
    356 F. 3d 731 (N.D. Ill. 2004) ...............................................17

*In re Rehabilitation of Centaur Ins. Co.,*
    606 N.E.2d 291 (Ill. App. 1992) ...............................................17

*U.S. ex rel. Bidani v. Lewis,*
    1999 WL 163053 (N.D. Ill. 1999) ...............................................19

*American Society of Contemporary Medicine, Surgery and Ophthalmology v.
Murray Communications, Inc.*
    547 F. Supp. 452 (1982) ...............................................19

    **2. Sufficient Facts to Support an Alter-Ego/Piercing the
    Corporate Veil Have Been Alleged** ...............................................20

*U.S. ex rel. Bidani v. Lewis,*
    1999 WL 163053 (N.D. Ill. 1999) ...............................................20

*Kruse v. Aamed, Inc.*
    1997 WL 102528 (N.D. Ill. 1997) ...............................................20

iv

*Chicago District Council of Carpenters Pension Fund v. Ceiling Law Systems, Inc.*
  915 F. Supp. 939 (N.D. Ill. 1996) ........................................................20

*Francosteel Corp. v. National Industries, Inc.,*
  1991 WL 166732 (N.D. Ill. 1991) ..........................................................20

*Typographics Plus, Inc. v. I.N. Estrada & Co., Inc.,*
  2000 WL 1006572 (N.D. Ill. 2000) .........................................................20

**3. Wachovia Has Alleged a Unity of Interest in Ownership** ..............................21

*Typographics Plus, Inc. v. I.N. Estrada & Co., Inc.,*
  2000 WL 1006572 (N.D. Ill. 2000) .........................................................22

*FirstStar Bank, N.A. v. Faul Chevrolet, Inc.,*
  249 F. Supp. 1029 (N.D. Ill. 2003) .......................................................22

*Nelson v. Morris,*
  2004 WL 868398 (N.D. Ill. 2004) ..........................................................22

**4. Wachovia Does Not Need to Prove, At This Point, that Failure to Impose Liability Would  Sanction a Fraud or Promote Injustice** ..........................22

*Sea-Land Services, Inc. v. The Pepper Shores,*
  941 F. 2d 519 (7th Cir. 1991) ............................................................22

*Hornsby v. Hornsby's Stores, Inc.,*
  734 F. Supp. 302 (N.D. Ill. 1990) ........................................................22

*FirstStar Bank, N.A. v. Faul Chevrolet, Inc.*
  249 F. Supp. 1029 (N.D. Ill. 2003) .......................................................22

*New Freedom Mortgage v. CNR Mortgage Corp.,*
  2004 WL 783206 (N.D. Ill. 2004) ..........................................................23

**D. WACHOVIA'S BREACH OF CONTRACT CLAIM IS PROPERLY PLED AGAINST DEFENDANT NEUHAUSER** .................................................23

  805 ILCS 205/16 ..........................................................................23

*Longview Aluminum, LLC v. Industrial General, LLC,*
  2003 WL 21518585 (N.D. Ill. 2003) ........................................................24

**V. CONCLUSION** ..............................................................................24

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WACHOVIA SECURITIES, LLC | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    **Case No. 04 C 3082** |
| | ) |
| DAVID NEUHAUSER, | ) |
| ANDREW A. JAHELKA, | )    Judge William T. Hart |
| RICHARD O. NICHOLS and | ) |
| LEON A. GREENBLATT III, | )    Magistrate Judge Michael T. Mason |
| | ) |
| Defendants. | ) |

## WACHOVIA SECURITIES, LLC'S RESPONSE BRIEF IN OPPOSITION TO DEFENDANTS' 12(b)(6) MOTION TO DISMISS COMPLAINT

The Plaintiff, Wachovia Securities, LLC, ("Wachovia") by and through its attorneys, Gary I.

Blackman and Christopher S. Griesmeyer of Levenfeld Pearlstein, LLC, responds to the 12(b)(6)

Motion to Dismiss Complaint (the "Motion") filed by the Defendants, David Neuhauser, Andrew A.

Jahelka, Richard O. Nichols and Leon A. Greenblatt, III (collectively, the "Defendants")[1] as follows:

## I. PRELIMINARY STATEMENT

Defendants misled Wachovia and committed fraud when they opened and used their Loop

and NOLA margin accounts to surreptitiously acquire a controlling interest in HRMI while shifting

the risk of their illegal scheme to Wachovia. Defendants now mislead this Court with a Motion that

misconstrues Wachovia's Complaint and raises factual issues that cannot be determined within the

confines of Rule 12(b)(6). Defendants' Motion should be denied because:

- Wachovia's securities fraud claims were timely filed. Defendants engaged in settlement negotiations and induced Wachovia into delaying the filing of its cause of action, and therefore the doctrine of estoppel tolled the running of the limitations period. Moreover, the

---

[1] As the Defendants correctly point out in their Motion and Supporting Memorandum, their margin accounts were with Prudential Securities, Incorporated, the predecessor-in-interest to Wachovia. For the purposes of responding to the Motion, references to the Complaint have been altered to reflect the realignment of the parties pursuant to this Court's June 2, 2004 Order.

1

question of when Wachovia possessed sufficient facts to place it on "inquiry notice" is not one that can be determined in the context of a 12(b)(6) Motion.

- Wachovia has more than adequately pled its fraud claims (securities fraud, common law fraud, and conspiracy to commit fraud) with sufficient particularity. Wachovia's Complaint clearly alleges facts supporting its claim for fraudulent misrepresentation. In addition, the broker-customer relationship between Wachovia and the Defendants is fiduciary in character, thereby imposing upon the Defendants a duty to disclose, which they clearly breached. Wachovia's Complaint therefore establishes a claim for fraudulent concealment.

- Wachovia has more than adequately pled its claims for piercing the corporate veil and alter ego liability.

- Wachovia has more than adequately pled its breach of contract claim against Defendant Neuhauser.

The facts alleged in Wachovia's Complaint, coupled with the long-established standards of Rule 12(b)(6), lead to but one conclusion: Defendants' Motion must be denied.

## II. FACTUAL BACKGROUND

Defendants have engaged in a scheme to defraud Wachovia out of more than $2.9 million. (Compl., ¶ 1). Defendants used alter ego shell corporations – Loop Corp. and NOLA, LLC – to open margin accounts with Wachovia. (*Id.*). In doing so, Defendants: (a) misrepresented the nature of those corporate entities, (b) concealed their joint ownership interests in Loop and NOLA, and (c) fraudulently induced Wachovia into allowing them to trade on margin. (*Id.* at ¶¶ 13, 22). More importantly, Defendants concealed their true (and illegal) intentions in opening the Loop and NOLA accounts – namely, to surreptitiously acquire a controlling interest in the publicly-traded securities of Health Risk Management, Inc. ("HRMI"). (*Id.* at ¶ 31).

In doing so, they used Wachovia as a vehicle to avoid regulatory reporting requirements and defraud the SEC, HRMI and the public at large. (*Id.*). Worse yet, by using their margin accounts to trade off the inflated value of their HRMI stock, Defendants were able to accelerate their purchases of large blocks of HRMI shares at Wachovia's expense. (*Id.* at ¶ 42). These purchases drove up the price of HRMI by reducing the float in the stock and fostering rumors of a possible takeover. (*Id.*). At the same time, the Defendants entered into an illusory standstill agreement with HRMI,

2

effectively forestalling a buying panic. (*Id.* at ¶ 44). These actions allowed Defendants to purchase even more HRMI stock on margin, placing Wachovia at even greater risk.

By purchasing HRMI stock on margin, and using the increased price of HRMI to acquire even more stock, Defendants shifted the risks of their illegal takeover scheme to Wachovia. (*Id.* at ¶¶ 1, 27). Wachovia thereby became the unwitting bankroll for the Defendants' scheme. (*Id.* at ¶ 32). Thus, when Defendants' illegal takeover scheme was revealed and the NASDAQ halted trading of HRMI stock, Wachovia bore the brunt of their wrongful conduct and lost over $2.9 million. (*Id.* at ¶ 1). Had the Defendants not fraudulently concealed their scheme, Wachovia never would have allowed the Defendants to trade on margin, among other things. (*Id.* at ¶¶ 13, 33). Tellingly, this is not the only action involving Defendants' use of assetless shell corporations and unwitting broker-dealers to fraudulently acquire a controlling interest in HRMI.[2] (*Id.*, ¶ 2).

## III. LEGAL STANDARD

On a Rule 12(b)(6) motion to dismiss, a plaintiff's well-pled allegations of fact are taken as true and all reasonable inferences are drawn in the plaintiff's favor. *Xinos v. Kappos*, 270 F.Supp.2d 1027, 1029 (N.D. Ill. 2003). The purpose of a motion under Rule 12(b)(6) is merely to test the formal sufficiency of the complaint. *Id.* (citing *Triad Assocs., Inc. v. Chicago Hous. Auth.*, 892 F.2d 583, 586 (7th Cir.1989)). It is not a procedure for resolving a contest about the facts or the merits of the case. *Id.* Thus, under Rule 12(b)(6), a complaint should not be dismissed for failure to state a

---

[2] Each of the following actions involve the Defendants' use of alter egos – such as Loop, Corp., NOLA, LLC, Banco Panamericano, and Repurchase Corp. – to acquire large blocks of HRMI shares through unwitting broker-dealers:

- *James P. Stepehnson, Trustee for MJK Clearing, Inc., v. Leon A. Greenblatt, Banco Panamericano, Inc., Loop Corp., NOLA, LLC and Repurchase Corp.*, (BKY. No. 03-4053, U.S. Bankruptcy Ct., Dist. of MN);

- *John E. Feltl v. Leon A. Greenblatt, Banco Panamericano, Inc., Loop Corp., NOLA, LLC and Repurchase Corp.*, (Case No. 03-13751, MN State Court, Hennepin County);

- *Credit Suisse First Boston, LLC, v. Repurchase Corp., Leon A. Greenblatt, III, Andrew A. Jahelka and Richard O. Nichols*, (NYSE Arbitration No. 2003-014931); and

- *Prudential Securities Incorporated v. Loop Corp., NOLA, LLC, David Neuhauser, Andrew Jahelka, Richard Nichols and Leon Greenblatt III* (NYSE Arbitration No. 2003-011927). (Compl., ¶2).

claim unless "it appears *beyond doubt* that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Lee v. City of Chicago* , 330 F.3d 456, 459 (7th Cir. 2003) (emphasis added). Accordingly, *"[d]ismissals for failure to state a claim are not favored,* and the only question is whether relief is possible under any set of facts that could be established." *Indeck Power Equipment Co. v. Jefferson Smurfit Corp.*, 881 F. Supp. 338, 342 (N.D. Ill. 1995) (emphasis added) (citing *Gray v. County of Dane*, 854 F. 2d 179, 182 (7th Cir. 1988)).

## IV. ARGUMENT

### A. WACHOVIA'S SECURITIES FRAUD CLAIMS ARE TIMELY

Wachovia's securities fraud claims are governed by a two-year limitations period that began to run once Wachovia was placed upon "inquiry notice" of the Defendants' fraudulent activities. *See, Fujisawa Pharm. Co., Ltd. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997) (the limitations period for a 10b-5 securities fraud claims begins to run when "the plaintiff learns, or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him by such further investigation as the facts would induce in a reasonable person to sue within a year"). *See also,* 28 U.S.C. § 1658(b) (Sarbanes-Oxley Act, extending the limitations period from one year to two years). In this case, Defendants induced Wachovia into delaying filing its claims, and the doctrine of estoppel therefore tolled the limitations period until August 16, 2003. Wachovia timely filed its securities fraud claims on May 8, 2003 – more than three months before the limitations period expired.

### 1. The date of inquiry notice is a question of fact that must be resolved in favor of Wachovia.

The date a plaintiff possessed sufficient information about a defendant's fraudulent activities to place the plaintiff on "inquiry notice" is a question of *fact*, not law. *Wafra Leasing Corp. v. Prime Capital Corp.,* 192 F.Supp.2d 852, 860 (N.D. Ill. 2002) (citing *Marks v. CDW Computer Ctrs., Inc.,*

122 F.3d 363, 367 (7th Cir.1997). Moreover, all facts in a Rule 12(b)(6) motion are to be interpreted and construed in the light most favorable to the plaintiff. *Xino,* 270 F.Supp.2d at 1029.

In their Motion, Defendants characterize May 21, 2001 as a "watershed moment" when Wachovia was definitively placed on inquiry notice of their fraud. In truth, however, May 21, 2001 was merely the date that "the NASDAQ halted trading of the common stock of HRMI on the news that the company's independent auditors had resigned." (Compl., ¶ 36). At that time, Defendants' margin accounts went into a debit position. (*Id.* at ¶ 37). Thereafter, Wachovia made demand upon Defendants to repay their margin debt. (*Id.* at ¶ 39). When those demands were ignored, Wachovia *then* began to explore its legal remedies. (*Id.* at ¶ 40). *"[During] the course of its investigations,"* Wachovia learned of the Defendants' fraudulent activities – not before. (*Id.*).

Thus, the facts alleged in Wachovia's Complaint do not establish "beyond doubt" that Wachovia was placed on inquiry notice as of May 21, 2001. In truth, Wachovia does not allege in its Complaint precisely *when* it first possessed sufficient facts to place it on inquiry notice. Nor is it required to at this early stage in the litigation. This is an issue that Defendants can explore during discovery.

### 2. Wachovia's securities fraud claims are subject to a two-year statute of limitations under the Sarbanes-Oxley Act.

As noted above, Wachovia's securities fraud claims are subject to a two-year statute of limitations under the Sarbanes-Oxley Act (the "Act"). Under the Act, a plaintiff may bring a federal securities cause of action involving a claim of fraud within two years from the date the violation is discovered, provided the Act's five-year statute of repose has not expired. The Act states in relevant part:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of –

(1) 2 years after the discovery of the facts constituting the violation; or

(2) 5 years after such violation.

28 U.S.C. § 1658. The Act's two-year limitations period applies to all § 10(b) and Rule 10b-5 claims because such claims necessarily involve a "claim of fraud" within the meaning of the statute. *See, e.g., In re AOL Time Warner, Inc. Securities and "ERISA" Litigation,* 2004 WL 992991, *7 (S.D. N.Y. 2004) (holding "[t]here is little doubt [the Act's] expanded statute of limitations applies to § 10(b) claims"); *In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,* 272 F. Supp. 2d 243, 265 (S.D. N.Y. 2003) (holding "[f]or claims arising under Section 10(b)...the applicable statute of limitations is two years").

Here, Wachovia's securities fraud claims are premised on § 10(b) and Rule 10b-5. As a result, Wachovia's claims necessarily involve a "claim of fraud," and they are subject to the two-year limitations period prescribed by the Act.

### (a) The Sarbanes Oxley Act applies retroactively.

Contrary to Defendants' Motion, Wachovia's securities fraud claims are ***not*** subject to the one-year limitations period set forth in 15 U.S.C. § 78i(e), which applied to § 10(b) and Rule 10b-5 claims ***prior*** to the enactment of the Sarbanes-Oxley Act. As explained above, the Act changed the limitations period to two years for all § 10(b) and Rule 10b-5 claims once it became effective. *See, e.g., In re Merrill Lynch & Co., Inc. Research Reports Securities Litigation,* 272 F. Supp. 2d 243, 265 (S.D. N.Y. 2003) (holding "[f]or claims arising under Section 10(b)...which are brought after the enactment of the Sarbanes-Oxley Act, the applicable statute of limitations is two years").

The Act's expanded limitations period is applicable to all cases commenced on or after July 30, 2002. Indeed, the Act specifically states that its limitations period "shall apply to ***all proceedings*** addressed by this Section that are ***commenced on or after the enactment of this Act*** [July 30, 2002]." *Pub.L.* 107-204, *Title* VIII, § 804(b) (emphasis added). Thus, the Act's plain language leaves no

6

doubt that Congress intended the expanded limitations period to apply in any case filed on or after July 30, 2002.

Moreover, the Act's legislative history demonstrates Congress' intent that it should apply to *all* claims filed after July 30, 2002, even if those claims would have previously expired under the one-year limitations period of § 78i(e). Legislative history demonstrates that the expanded limitations period was intended to provide more time for victims of the "Enron scandal" to file lawsuits to recoup their losses, because Congress feared many victims would no longer have a chance to sue under the shorter limitations period contained in § 78i(e).[3] The Congressional Record contains a section-by-section analysis of the Act, "[i]n order to provide guidance and legal interpretation of [its] provisions." 148 Cong. Rec. S7418-01, *S7418. The Congressional analysis specifically states that the Act's expanded limitations period "by its plain terms, applies to any and all cases filed after the effective date of the Act, *regardless of when the underlying conduct*

---

[3] The comments of Senator Leahy of Vermont epitomize Congress' collective state of mind when it lengthened the limitations period for federal securities fraud actions:

> When I look at places such as Washington State alone where the pension funds of firefighters and police lost $50 million because of the fraud of the leaders of Enron, I don't feel too sympathetic. We already have a very short statute of limitations in here anyway. *We ought to at least have that so people might be able to recover some of the money they have lost,* if it is at all possible, instead of just a few executives going up and building their $50 million mansions and hiding it there. There ought to be some way for the people who lost their pensions, lost their life savings, to get it back.

> \* \* \* \*

> Florida lost $335 million because of Enron; the University of California, $144 million-all the way down to Vermont; we lost millions of dollars. *These people are people who would like, in these kinds of cases, at least to have a statute of limitations such that we can go after them.*

> \* \* \* \*

> I am here to try to protect people and give them an opportunity-when there has been such enormous fraud and all the pension funds have been lost, and all the people who have lost their life savings – *give them at least some chance to recover something,* especially as the executives of these companies walk off with tens of millions of dollars. We go two-five instead of one-three. That was negotiated and voted on in the Judiciary Committee, and the final bill was passed unanimously.

148 Cong. Rec. S6524-02, * S6534-35 (emphasis added). In the words of the court in *Roberts v. Dean Witter Reynolds, Inc.,* this language clearly *"indicates the intent to retroactively apply the statute of limitations."* 2003 WL 1936116, *3 (M.D. Fla. 2003).

*occurred.*" *Id.* (Emphasis added). Thus, Congress clearly intended to extend the statute of limitations for securities fraud claims retroactively. *See, Roberts,* 2003 WL at *3-4.

> **(b)  Defendants' conduct equitably estopped the running of the limitations period until after the effective date of the Sarbanes-Oxley Act.**

The doctrine of equitable estoppel prevents a party from asserting the expiration of the statute of limitations as a defense when that party's conduct has induced the other into failing to file within the statutory period. *Ashafa v. City of Chicago* 146 F.3d 459, 462 (7th Cir. 1998). *See also, Go For It, Inc. v. Aircraft Sales Corp.,* No. 02 C 6158, 2003 WL 21504600 at * 2 (N.D. Ill., June 27, 2003) ("the principle of equitable estoppel...comes into play if the defendant, through its representations, takes active steps to prevent the plaintiff from suing in time."). Such conduct includes the use of settlement negotiations to induce the plaintiff into delaying the filing of a cause of action. *See, e.g., Myers v. Centralia Cartage Co.*, 94 Ill.App.3d 1139, 1142, 419 N.E.2d 465, 468 (1st Dist.1981). Generally, the applicability of equitable estoppel is a question of fact inappropriate for resolution on a motion to dismiss. *Go For It,* 2003 WL 21504600 at * 2.

In this case, Defendants engaged in settlement negotiations as a stall tactic in the hopes that Wachovia would run afoul of the statute of limitations. On June 4, 2001, Defendants' counsel, C. Philip Curley, wrote to Wachovia and proposed that Wachovia "refrain from exercising its rights under the margin agreements and forbear any and all proceedings and actions of any kind against my clients, including, but not limited to liquidating remaining positions in HRMI stock in their accounts, in consideration for an assignment of proceeds from the sale of two downtown Chicago multi-story office buildings..." A true and correct copy of Mr. Curley's June 4, 2001 letter is attached as Exhibit 1.[4]

---

[4] While the letters attached as Exhibits 1 and 2 are extraneous to the Complaint, they are not inconsistent with the allegations contained in the Complaint and the Court may take judicial notice of them when ruling upon the Defendants' Rule 12(b)(6) motion to dismiss. *See, e.g., United States v. Funds in the Amount of $29,266.00,* 96 F.Supp.2d 806, 809 (N.D. Ill. 2000) (J. Hart). *See also, Guaranty Residential Lending, Inc. v. International*

Based upon the representations of Defendants' lawyer, Wachovia refrained from filing its securities fraud claims in an effort to pursue possible settlement options. Defendants' settlement overtures were without substance, however. On August 16, 2001, Mr. Curley advised Wachovia's counsel that the purchase offer for the office buildings "has been withdrawn as the purchaser insisted on seller financing that, among other things, would have made it difficult if not impossible for the sale to generate sufficient proceeds to pay Prudential [Wachovia]." A true and correct copy of Mr. Curley's August 16, 2001 letter is attached as Exhibit 2.

Thus, because of the Defendants' settlement overtures, Wachovia was induced to refrain from filing its securities fraud claims until sometime after August 16, 2001. Under the doctrine of equitable estoppel, Wachovia would have had until August 16, 2002 to file its securities fraud claims. However, on July 30, 2002, the Sarbanes-Oxley Act went into effect, thereby extending the filing deadline for Wachovia's securities fraud claims to August 16, 2003. On May 8, 2003 – more than three months before the limitations period expired – Wachovia filed its arbitration action against the Defendants with the NYSE Department of Arbitration.[5]

### 3. Defendants are estopped from raising a statute of limitations defense because Wachovia commenced arbitration within the two-year period.

Defendants are estopped from raising a statute of limitations defense in this case because Wachovia commenced arbitration proceedings against them within the two-year limitations period prescribed by the Sarbanes-Oxley Act. When opening their Loop and NOLA accounts, Defendants

---

*Mortgage Center, Inc.*, 305 F. Supp. 2d. 846, 852 (N.D. Ill. 2004) (J. Hart) ("Ordinarily, as long as they are consistent with the allegations of the complaint, a plaintiff may assert additional facts in its response to a motion to dismiss.").

[5] Wachovia's arbitration action against the Defendants, Proceeding Number 2003-011927, is still pending. Consistent with its representations in Court on May 24, 2004, Wachovia has filed a motion in that arbitration action to stay its claims against the Defendants. In response to Wachovia's motion to stay, the Defendants have filed a motion in this Court to reinstate their complaint and (re)re-align the parties (the "Motion to Reinstate"). The Motion to Reinstate has been fully briefed by the parties. However, Wachovia did not receive the Defendants' instant Motion (to Dismiss under Rule 12(b)(6)) until after it had already filed its Response Brief in Opposition to the Motion to Reinstate. Obviously, the fact that the Defendants are now seeking to Dismiss Wachovia's Complaint is another – *and extremely important* – reason to stay, as opposed to dismiss, the arbitration proceeding.

expressly agreed that all disputes between them and Wachovia would be arbitrated. In addition, they agreed not to raise a statute of limitations defense if Wachovia commenced arbitration proceedings within the applicable statutory period. On May 8, 2003, Wachovia filed its arbitration action against the Defendants.

Wachovia initiated arbitration proceedings against the Defendants, rather than a civil lawsuit, because the parties expressly agreed to submit all disputes among them to arbitration. In the Account Agreements, the parties specifically agreed:

> [A]ny controversy arising out of or relating to my account, to transactions with or for my account or any breach of this or any other agreement between us, whether executed or to be executed within or outside the United States, and whether entered into prior, on or subsequent to the date indicated on the signature page, shall be determined by arbitration.

(Ex. B to Compl., at ¶12.) Defendants further agreed that they were "waiving their right to seek remedies in court ...." (*Id.*) As a result, Wachovia could not initiate a civil action against the Defendants with respect to its securities fraud claims, and was instead ***required*** to submit its dispute to arbitration.

Moreover, when Defendants entered into the Account Agreements containing the arbitration provisions, they implicitly agreed not to raise a statute of limitations defense if an applicable limitations period expired while arbitration proceedings were still pending. In the Account Agreements, the parties agreed that arbitration proceedings would proceed before either the NYSE or the NASD. (*Id.*) Both the NYSE and the NASD arbitration rules expressly state that a limitations period shall not expire between the time a matter is submitted to arbitration and the time the proceeding is concluded. The NYSE's rule reads as follows:

> Where permitted by law, the time limitation(s) which would otherwise run or accrue for the institution of legal proceedings, shall be tolled when a duly executed Submission Agreement is filed by the claimant(s). The tolling shall continue for such period as the New York Stock Exchange, Inc. shall retain jurisdiction upon the matter submitted.

(*See*, Exhibit 3, NYSE Arbitration Rule 606(a).) The NASD's rule is identical to the NYSE's rule. (*See*, Exhibit 4, NASD Code of Arbitration Rule 10307(a).)

Defendants are therefore estopped from raising a limitations defense in this case. Defendants' execution of the Account Agreements induced Wachovia into delaying the filing of its lawsuit against them while the NYSE arbitration proceedings were pending. Under federal law, a defendant is equitably estopped from raising a statute of limitations defense where he "innocently or not, reasonably induced the plaintiff not to file suit within the limitations period." *In re Enron Corp. Securities, Derivative & "ERISA" Litigation,* 310 F. Supp. 2d 819, 856 (S.D. Tex. 2004). *See also, Ashafa,* 146 F.3d at 462. Numerous courts have applied the doctrine of equitable estoppel in securities cases to bar a defendant from raising a limitations defense where the defendant's conduct intentionally or inadvertently induced the plaintiff to miss the limitations deadline. *See, In re Enron,* 310 F. Supp. 2d at 858 (holding a plaintiff's § 10(b) claim would not be barred by the statute of limitations due to the doctrine of equitable estoppel); *Katz v. Amos Treat & Co.,* 411 F.2d 1046, 1055 (2d Cir. 1969) (same); *accord Tregenza v. Great American Communications Co.,* 12 F.3d 717, 721 (7th Cir. 1993) (noting equitable *tolling* was unavailable for § 10(b) claims prior to the Sarbanes-Oxley Act, but stating "there may still be room for equitable *estoppel*").

Thus, all that matters in this case is that Wachovia initiated arbitration proceedings within the two-year limitations period. The fact that Wachovia filed its Complaint (which was originally a Counterclaim to the Defendants' Complaint) outside of the two-year period does not matter. Defendants are estopped from arguing otherwise.

## B. WACHOVIA'S FRAUD-BASED COUNTS ARE PROPERLY PLED

### 1. Defendants misconstrue the nature of Wachovia's fraud claims, and raise unresolved issues of fact concerning Wachovia's knowledge of their fraudulent activities.

Defendants ably state the legal elements required for Wachovia to assert claims for common law fraud and conspiracy to commit fraud. (Defs.' Mo., p. 5, citing *Hefferman v. Board of Trustees*

*of Illinois Community College Dist. 508*, 310 F.3d 522 (7th Cir. 2002); *Go For It, Inc.*, 2003 WL 21504600 at * 9-10). However, Defendants then proceed to question Wachovia's "justifiable reliance" upon their misrepresentations by suggesting that Wachovia was aware of their joint ownership and control of Loop Corp. and NOLA, LLC. (Defs.' Mo., pp. 5-7). According to Defendants, "the question is: has Wachovia adequately pleaded facts supporting its contention that Defendants 'concealed their ownership interest of the Defendants in Loop Corp. and NOLA,' and that Wachovia was unaware of a 'linkage between Loop Corp. and NOLA.'" (*Id.*, p. 5).

Defendants have – perhaps intentionally – misconstrued the nature of Wachovia's fraud allegations. Contrary to Defendants' contention, Wachovia's fraud claims do not rest solely upon the fact that the Defendants concealed their co-mingled ownership of Loop Corp. and NOLA, LLC. Rather, Wachovia's Complaint alleges that the Defendants concealed from Wachovia their true intentions in opening their Loop and NOLA accounts – namely, to surreptitiously acquire a controlling interest in the publicly-traded securities of Health Risk Management, Inc. ("HRMI"). (Compl., at ¶ 31). In doing so, the Defendants used Wachovia as a vehicle to avoid SEC reporting requirements and defraud the SEC, HRMI and the public at large. (*Id.*). By purchasing HRMI on margin, and using the increased price of HRMI to acquire even more stock, the Defendants shifted the risks of their illegal scheme to Wachovia. (*Id.* at ¶¶ 1, 27). Wachovia thereby became the unwitting bankroll for the Defendants' fraudulent scheme. (*Id.* at ¶ 32). Thus, when the Defendants' illegal takeover scheme was revealed and the NASDAQ halted trading of HRMI stock, Wachovia bore the brunt and lost over $2.9 million. (*Id.* at ¶ 1). Had Defendants not fraudulently concealed their true – and illegal – intentions, Wachovia never would have allowed the Defendants to trade on margin. (*Id.* at ¶¶ 13, 33). By using Wachovia as a vehicle to: (a) defraud the public, the SEC and HRMI, and (b) bear all the risks attendant to Defendants' illegal scheme, Defendants also conspired to defraud (and actually defrauded) Wachovia.

In addition, according to Defendants' biased construction of the Complaint, the earliest Wachovia could have been aware of the co-mingled ownership of Loop Corp. and NOLA, LLC was in February of 2001, when Defendants opened their NOLA account. Tellingly, Defendants do not – and cannot – argue that Wachovia knew about the co-mingled ownership in October of 2000, when Defendants opened their Loop account and their fraud first began. By the time Defendants opened their NOLA account, they had already engaged in over four months' worth of fraudulent activity through their Loop account. Thus, the issue of *when* Wachovia *first* knew about Defendants' co-mingled ownership of Loop Corp. and NOLA, LLC is a question of fact that cannot be answered in the context of a Rule 12(b)(6) motion to dismiss.

**2. Wachovia has more than adequately pled a claim for fraudulent misrepresentation.**

In their Motion, Defendants argue that Wachovia has failed to allege facts demonstrating any "misrepresentation" on their part. (Defs.' Mo., p. 7) ("Missing from this discussion, however, is how the Defendants supposedly misled Wachovia."). So arguing, Defendants ignore Exhibit E to the Complaint – the Partnership Account Agreement that Defendant Neuhauser executed in the name of NOLA, LLC. (Compl., ¶ 22). In that Agreement, Defendant Neuhauser expressly represented to Wachovia that NOLA was "a duly organized *partnership*, of which each of us is a *general partner* and of which the undersigned are the sole *partners*." (Compl., Ex. E, p. 1) (emphasis added). This was a false statement of material fact by Defendant Neuhauser. At the time he made this misrepresentation, he knew that NOLA, LLC was not a "duly organized partnership," and that he was not a "general partner" in NOLA, LLC. Defendant Neuhauser made this misrepresentation with the intent that Wachovia rely upon its content and open a partnership account in the name of NOLA. Wachovia acted in reliance upon Defendant Neuhauser's misrepresentation by opening the partnership account, and later allowed Defendants to use the NOLA account to trade on margin.

13

Finally, as noted above, Wachovia suffered more than $2.9 million in damages by relying upon Defendant Neuhauser's misrepresentation.

In addition, in opening their Loop account, Defendants expressly represented to Wachovia that they would "conduct [their] account in accordance with all applicable laws or regulations..." (Compl., Ex. B, ¶ 4). However, as Wachovia clearly alleges in its Complaint, Defendants violated numerous "laws and regulations" by using their Loop and NOLA accounts to clandestinely acquire a controlling interest in HRMI in the hopes of avoiding SEC reporting requirements and the regulatory morass attendant to a legitimate acquisition of the Company. Wachovia acted in reliance upon Defendants' misrepresentation – indeed, Defendants could not have opened their Loop account with Wachovia unless they agreed to that clause in the account agreement – and lost over $2.9 million as a result.

Perhaps the most pernicious misrepresentation by Defendants, however, was their promise to pay all margin calls "no later than 2:00 p.m. (E.T.) on the settlement date." (Compl., Ex. B, ¶ 3, Ex. F, ¶7). In truth, however, Defendants *never* intended to pay *any* margin calls. Instead, they opened their Loop and NOLA accounts using assetless shell corporations in the hopes of further insulating themselves from the adverse consequences of their fraudulent takeover scheme. Unfortunately, Wachovia relied upon Defendants' representations concerning their intentions to timely pay margin calls, and lost over $2.9 million in the process.

Thus, contrary to the arguments set forth in Defendants' Motion, Wachovia has clearly pled sufficient facts to establish *__all__* of the elements of fraudulent misrepresentation.

### 3. Wachovia has more than adequately pled a claim for fraudulent concealment.

Defendants also argue that Wachovia has failed to establish that they had any duty to disclose their intentions to use their margin accounts to illegally acquire a controlling interest in HRMI. (Defs.' Mo., pp. 7-8). This is simply untrue.

In order to state a claim for fraudulent concealment, a plaintiff must generally establish that "the defendant concealed a material fact when he was under a duty to disclose that fact to the plaintiff." *Connick v. Suzuki Motor Company, Ltd.*, 174 Il. 2d 482, 500, 675 N.E.2d 584, 593 (Ill. 1997). The existence of a duty to disclose is a question of law. *LeFebre Intergraphics, Inc. v. Sanden Machine, Ltd.*, 946 F. Supp. 1358, 1366 (N.D. Ill. 1996). A duty to disclose generally arises in two circumstances:

> (1) when the defendant owes the plaintiff some fiduciary duty to make full and fair disclosure and fails to correct a misapprehension of a material fact; or (2) when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension.

*Id.* Thus, the existence of a fiduciary relationship carries with it a concomitant duty to disclose. *Id.*

Illinois law has long recognized the fiduciary relationship between brokers and customers. *See, e.g., T-Bill Option Club v. Brown & Co. Securities Corp.*, 1990 WL 103584, No. 88 C 8461 at * 3 (July 2, 1990, N.D. Ill.). Importantly, *the mere allegation of a broker-customer relationship is sufficient to establish the existence of a fiduciary relationship. Carl v. Galuska*, 785 F. Supp. 1283, 1288 (N.D. Ill. 1992) ("The allegation of this [financial advisor] relationship is sufficient to indicate the possible existence of a fiduciary duty."). *Accord, Caraluzzi v. Prudential Securities, Inc.*, 824 F. Supp. 1206, 1213 (N.D. Ill. 1993) (while the mere existence of a broker-customer relationship is not proof of fiduciary character, *the allegation of such a relationship is sufficient to withstand a motion to dismiss*); *Erickson v. Painewebber Incorporated*, 1990 WL 17144, No. 87 C 10592 at * 8, (Feb. 1, 1990, N.D. Ill.) (same); *Fey v. Walston & Co., Inc.*, 493 F.2d 1036, 1049 (7th Cir. 1974) (same).

In this case, Wachovia's Complaint clearly alleges the existence of a broker-customer relationship between Wachovia and Defendants. By merely alleging the existence of such a relationship, Wachovia has established the existence of a fiduciary relationship for the purposes of Defendants' Motion. The existence of that fiduciary relationship necessarily carries with it the duty of disclosure. Thus, Wachovia has effectively established that Defendants *__did__* owe a duty to disclose

to Wachovia their true intentions in opening the Loop and NOLA margin accounts. Had Defendants disclosed their intentions, Wachovia obviously never would have allowed them to trade on margin. (Compl., ¶ 33). Because Defendants concealed their intentions, however, Wachovia became the unwitting bankroll for their scheme to defraud, and ultimately lost over $2.9 million as a result. Wachovia has therefore pled sufficient facts to state a claim for fraudulent concealment.

### 4. **Wachovia has pled its fraud-based counts with sufficient particularity.**

Defendants cite to the Rule 9(b) requirements as interpreted by *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), and argue that Wachovia has failed to specify the "who, what, when where and how" of Defendants' fraudulent acts. (Defs.' Mo., p. 8). Defendants' argument is wholly without merit. Courts apply Rule 9(b) "with a view to its purposes, which are (1) to inform the defendants of the claimed wrong and enable them to formulate an effective response; and (2) to protect defendants from unfounded, conclusory charges of fraud." *Carl*, 785 F. Supp. at 1287.

Wachovia has more than met its pleading requirements under Rule 9(b). For example, Wachovia's Complaint clearly states:

- **Who:** Defendants. (Compl., ¶¶ 5-9).

- **What:** Defendants: (a) engaged in a scheme to defraud Wachovia out of more than $2.9 million; (b) used assetless, alter-ego shell corporations to open margin accounts with Wachovia, and then used those accounts to surreptitiously acquire a controlling interest in HRMI, thereby using Wachovia as a vehicle to defraud the SEC, HRMI and the public at large; (c) acquired their controlling interest in HRMI on margin in order to shift the risk of Defendants' fraudulent scheme onto Wachovia, who thereby became the unwitting bankroll for Defendants' scheme and ultimately lost over $2.9 million. (Compl., ¶¶ 1-2, 13-40, 42-52, 54-55, 57-60).

- **When:** October of 2000 through August 16, 2001, and beyond. (Compl., ¶¶ 14-16, 19-20, 22, 24-25, 28, 36-40, Ex. 2).

- **Where:** Deerfield, Illinois. (Compl., ¶ 11).

- **How:** Defendants opened margin accounts with Wachovia and other broker dealers in the names of numerous shell corporations, concealing their common ownership and avoiding SEC reporting requirements as they sought to acquire a controlling interest in HRMI. (Compl., ¶¶ 1-2, 13-40, 42-52, 54-55, 57-60).

16

Wachovia is required to plead nothing more to satisfy the particularity requirements set forth in Rule 9(b). Its eight-count, 100-paragraph Complaint is more than sufficient.

### C.  WACHOVIA'S PIERCING THE CORPORATE VEIL AND ALTER EGO CLAIMS ARE PROPERLY PLED

In Section III of Defendants' 12(b)(6) Motion to Dismiss, Defendants argue that Wachovia cannot establish alter-ego liability or pierce the corporate veil. The Defendants' choice of terminology is instructive. Defendants argue that *"Wachovia cannot **establish** alter-ego liability;"* that *"personal liability is premature;"* and that *"piercing the corporate veil on an alter-ego theory is available only when failing to provide such relief would promote injustice or inequity."* (Defs.' Mo. pp. 9-14). The Defendants' recurring theme is that the relief, for various reasons, should not be *granted*. Respectfully, that is not an analysis this Court should be engaging in at this time.[6]

Defendants' Motion to Dismiss Counts IV through VII of the Complaint should be denied because: (1) district courts in the Northern District of Illinois recognize piercing/alter-ego claims as a "claim" that can be pursued, even though it is also a "remedy;" and (2) Wachovia has sufficiently alleged claims based upon an alter-ego/piercing analysis under a notice pleading standard.

### 1.  Piercing the Corporate Veil or an Alter-Ego Claim Is A Recognizable Claim That Can Be Pursued.

Defendants argue that "piercing the corporate veil and alter-ego liability are equitable remedies, not causes of action in and of themselves." (Defs.' Mo. p. 9) citing, *International Financial Services Corp. v. Chromas Technologies Canada, Inc.*, 356 F. 3d 731 (N.D. Ill. 2004) and *In re Rehabilitation of Centaur Ins. Co.*, 238 Ill. App. 3d 292, 606 N.E.2d 291 (1992). Neither case supports a dismissal of Wachovia's alter-ego or piercing claims.

---

[6]   Wachovia has issued written discovery requests, which would now be due but for Defendants' request that discovery be stayed pending the resolution of its Motion to Dismiss. As a result, all discovery, including responses that could support Wachovia's alter-ego/piercing claims, is still in the hands of Defendants.

In *International Financial Services Corp.*, a jury found that the defendant was the alter-ego of another entity and that the defendant was therefore liable for breach of contract. 356 F. 3d at 734. The defendant appealed on the ground that the District Court, not the jury, should have decided whether to pierce the corporate veil under an alter-ego theory. *Id.* at 734-35. The question before the Seventh Circuit was not whether there was a basis to dismiss an alter-ego claim pursuant to 12(b)(6) on the grounds that it is a "remedy," and not a cause of action, but rather "whether piercing the corporate veil under the laws of Illinois is, according to federal procedural law, a form of equitable relief (requiring a trial by a judge) or legal relief (allowing for a trial by jury)." *Id.* at 735. While the Appellate Court did, in passing, allude to the fact that piercing the corporate veil is not itself an "action," but instead a procedural means of allowing liability on a substantive claim, that semantic distinction does not suggest that Wachovia cannot pursue its claims in the fashion adopted in its Complaint. The Court in *International Financial Services Corp.* did not discuss whether the plaintiff in that case pled an "action" or a "remedy."[7]

Defendants also cite the case of *In re Rehabilitation of Centaur Insurance Co.*, for the proposition that an alter-ego claim is a remedy, not a cause of action. In that case, the issue was one of standing, not pleading, and the Court was not asked to dismiss an alter-ego claim on the ground that it is not a cause of action. The Court in *In re Rehabilitation* also allowed the piercing claim to be brought as a separate count or claim: "In **Count I**, Hartford alleged that Borg-Warner abused Centaur's corporate structure to such an extent that Centaur is merely Borg-Warner's alter-ego, which justified the piercing of Centaur's corporate veil." 238 Ill. App. 3d at 296, 606 N.E.2d at 293-

---

[7] Regardless of whether Wachovia identifies its allegations as a "cause of action" or a "remedy" this Court will ultimately be required to engage in the same factual analysis prior to granting the relief sought and therefore Defendants are relying on a distinction without a difference. This is best evidenced by the fact that in *International Financial Services Corp.*, the Court uses the terminology interchangeably: *"International sued Chromas . . . for breach of contract and fraud . . . and it also brought **actions** against various other defendants." Id.* at 733. To *"succeed in its **claim** against Chromas, International had to show that the separate corporate status between Chromas and Diddee Web Press was invalid." Id.* at 734.

94.  Thus, whether alter-ego liability is an equitable remedy or a cause of action is irrelevant for purposes of this Court's analysis concerning Defendants' 12(b)(6) Motion to Dismiss.

As this Court noted in *U.S. ex rel. Bidani v. Lewis*, 1999 WL 163053 (N.D. Ill. 1999) (J. Hart), the plaintiff is not bound by the legal characterizations contained in the Complaint and may argue any legal theory that is consistent with the facts.

The balance of Defendants' argument is premised on the theory that until Wachovia obtains a judgment in the pending NYSE arbitration proceeding (against various corporate entities), pursuing an alter-ego claim against the individual Defendants is "improper." In support of this argument, Defendants cite the case of *American Society of Contemporary Medicine, Surgery and Ophthalmology v. Murray Communications, Inc.*, 547 F. Supp. 452 (N.D. Ill. 1982). This case, however, does not involve a piercing claim *per se,* nor was the plaintiff seeking a dismissal on these grounds.

In *American Society of Contemporary Medicine*, an action was brought against a publisher and others to recover damages arising from the publisher's alleged breach of contract in publishing two of the plaintiff's scholarly journals. 547 F. Supp. at 463. The plaintiff alleged that at the time of negotiating the contract for publication with defendants, one of the defendants fraudulently misrepresented to the plaintiff that his company owned a variety of successful professional journals (when in fact the journals were owned by separate corporations) in order to induce the plaintiff to enter into the contract at issue. *Id.* at 463-64. The Court dismissed the plaintiff's fraudulent misrepresentation claim (not a piercing or alter-ego claim) against a non-contracting entity for the reason that the "injury of which plaintiff complains does not stem from the agreement itself" and, therefore, the plaintiff's claims were not actionable. *Id.* at 466. More specifically, the Court determined that the claimant had not yet suffered any injuries resulting from the defendant's misrepresentation and, therefore, the Motion to Dismiss was granted. *Id.* The issue before the Court,

therefore, was not whether an alter-ego theory could be pursued in response to a Rule 12(b)(6) Motion to Dismiss.[8]

Defendants' argument that *"personal liability is premature"* is, at best, argument only and not the basis for a Rule 12(b)(6) dismissal.

### 2. <u>Sufficient Facts to Support an Alter-Ego/Piercing the Corporate Veil Have Been Alleged.</u>

Throughout Defendants' Motion to Dismiss Wachovia's alter-ego and piercing claims, Defendants incorrectly assert that Federal Rule of Civil Procedure 9(b) applies and, therefore, requires pleading with specificity as opposed to notice pleading. This Court, and most others throughout this District, do not agree.

This Court noted in *U.S. ex rel. Bidani v. Lewis,* that where the basis of liability is piercing the corporate veil, the Rule 9(b) specificity requirement generally will not apply. 1999 WL 163053 at *2, citing *Kruse v. Aamed, Inc., 1*997 WL 102528 (N.D. Ill. 1997); *Chicago District Council of Carpenters Pension Fund v. Ceiling Law Systems, Inc.*, 915 F. Supp. 939 (N.D. Ill. 1996); and *Francosteel Corp. v. National Industries, Inc.*, 1991 WL 166732 (N.D. Ill. 1991). Thus, Defendants' reliance on *Typographics Plus, Inc. v. I.N. Estrada & Co., Inc.*, 2000 WL 1006572 (N.D. Ill. 2000) for the proposition that Rule 9(b) applies is neither persuasive nor a decision recognized by this Court.

Under a notice pleading standard, Wachovia has sufficiently alleged an alter-ego/piercing the corporate veil claim. Specifically, Wachovia has alleged, *inter alia*, the following:

- *NOLA, LLC was another alter ego of the [Defendants]. This is evidenced by the de facto control exercised over the NOLA account by Greenblatt, as well as the*

---

[8]  Defendants also argue that until the arbitration proceeding before the NYSE is concluded as to various other entities not before this Court, they should not be forced to defend Wachovia's claims. At the same time, the individual Defendants filed their action in Illinois arguing that the matter must be litigated against them here and not in the pending arbitration. Apparently, it is Defendants' position that no court is the proper forum for litigation against them.

*linking of the NOLA and Loop accounts through Neuhauser's letter to PSI authorizing the transfer of funds between them.* (Compl., ¶ 34).

- *The [Defendants] set up Loop Corp. for the sole purpose of opening margin accounts (with [Wachovia] and various other brokers) to illegally acquire a controlling interest in HRMI, thereby simultaneously: (a) defrauding the SEC, the public and HRMI itself, and (b) improperly shifting risk to margin creditors, such as [Wachovia].* (Compl., ¶ 62).

- *Both Loop Corp. and NOLA, LLC are owned, managed, supervised and controlled by the same people – namely, Plaintiffs Neuhauser, Jahelka, Nichols and Greenblatt. Loop Corp. and NOLA, LLC share the same office address (although it is believed that the entities exist solely on paper), and were created and used for the same purpose: to insulate their principals from liability as they entered into margin agreements to illegally acquire a controlling interest in HRMI stock.* (Compl., ¶ 63).

- *The [Defendants'] motives in establishing and utilizing Loop Corp. were unlawful – specifically, the [Defendants] intended to illicitly and secretly acquire a controlling interest in HRMI stock in violation of applicable securities rules and regulations.* (Compl., ¶ 64).

- *The [Defendants] in this case used Loop Corp. and NOLA, LLC interchangeably as they acquired more and more stock of HRMI on margin. Indeed, [Defendant] Neuhauser expressly authorized the co-mingling of funds between the two entities. (See Ex. H). When Neuhauser severed himself from the Loop and NOLA accounts, [Defendant] Greenblatt confirmed that both accounts – and corporate entities – were interrelated and under his control.* (Compl., ¶ 65).

- *Thus, Loop Corp. and NOLA, LLC were clearly the alter egos of each other in this case. Just as clear, [Defendants] Neuhauser, Jahelka, Nichols and Greenblatt shared and used the office, equipment, personnel and assets of Loop Corp. for their personal scheme to acquire control of HRMI. As such, Loop Corp. was merely the [Defendants'] alter ego.* (Compl., ¶ 66).

Based on the foregoing, Wachovia has alleged sufficient facts to maintain its cause of action. Because, under Rule 12(b)(6), the Complaint should not be dismissed for failure to state a cause of action "unless it appears beyond doubt that a plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Defendants' Motion to Dismiss should be denied.

### 3. <u>Wachovia Has Alleged a Unity of Interest in Ownership.</u>

Again, Defendants seek to hold Wachovia to a pleading standard not required by this Court. The Defendants argue that "Wachovia has failed utterly to plead the when, why and how required to

support [its allegations] and that Plaintiff failed to plead specific facts pursuant to Federal Rule 9(b) showing the corporation was a 'sham' or alter-ego." (Defs.' Mo. p. 13). Defendants' primary case in support of this argument is, again, *Typographics Plus*, 2000 WL 1006572. This case, however, is inapplicable because it applied a heightened Rule 9(b) pleading standard, something most other Courts within this district have declined to follow. The other case cited by Defendants in support of their argument is *FirstStar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 1029 (N.D. Ill. 2003), purportedly as an example of what type of allegations are sufficient to allege a unity of interest sufficient to warrant piercing a corporate veil. This case is inapplicable, at this juncture, for the reason that the *FirstStar* analysis was in the context of a motion for summary judgment after discovery -- not on the issue of what allegations are sufficient under a notice pleading standard. *See, Nelson v. Morris*, 2004 WL 868398 (N.D. Ill. 2004) (J. Hart) (analyzing possible alter-ego allegations in the context of motion to dismiss based on lack of personal jurisdiction, noting that a plaintiff need only make a "*minimally viable* showing that the LLC's are a sham") (citations omitted).

As noted above, Wachovia has made numerous allegations to meet its pleading burden at this point. Wachovia has therefore sufficiently pled allegations to pursue, at this stage, an alter-ego or piercing the corporate veil theory.

### 4. <u>Wachovia Does Not Need to Prove, At This Point, that Failure to Impose Liability Would Sanction a Fraud or Promote Injustice.</u>

Once again, Defendants argue that the Complaint should be dismissed because the ultimate relief requested should not be granted. That is not a basis to dismiss pursuant to Rule 12(b)(6). None of the cases cited by the Defendants in support of this proposition, *e.g., Sea-Land Services, Inc. v. The Pepper Shores*, 941 F. 2d 519 (7th Cir. 1991), *Hornsby v. Hornsby's Stores, Inc.*, 734 F. Supp. 302 (N.D. Ill. 1990), *FirstStar Bank, N.A. v. Faul Chevrolet, Inc.*, 249 F. Supp. 2d 1029 (N.D. Ill.

22

2003), involved motions to dismiss for failure to state a cause of action. Most involve an analysis of whether the relief requested should be granted, not whether the Complaint should be dismissed.[9]

Based on the foregoing, Wachovia has sufficiently pled allegations to proceed on its claim of alter-ego and piercing the corporate veil. If, at the close of discovery, Defendants believe that Wachovia is not entitled to the relief sought, Defendants can request a dismissal or judgment in their favor at the appropriate time.

### D. WACHOVIA'S BREACH OF CONTRACT CLAIM IS PROPERLY PLED AGAINST DEFENDANT NEUHAUSER

Defendants argue that Neuhauser cannot be held personally liable for breach of contract. (Defs.' Mo., pp. 14-15). However, Defendants' argument fails to take into account the fact that Defendant Neuhauser signed the NOLA Partnership Account, and in so doing, represented to Wachovia that NOLA, LLC was "a duly organized partnership, of which each of us is a general partner and of which the undersigned are the sole partners." (Compl., Ex. E, p. 1). Because he signed the Partnership Account Agreement in the name of a partnership entity that did not exist (Defendants have conceded that NOLA, LLC is not a partnership – *See,* Defs.' Mo., p. 15), Defendant Neuhauser is personally liable for the obligations set forth in that Agreement. 805 ILCS 205/16 ("*When a person, by words spoken or written or by conduct, represents himself...as a partner in an existing partnership...he is liable to any such person to whom such representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, and if he has made such representation...he is liable to such person, whether the representation has or has not been made or communicated to such person so giving credit by or with the knowledge of the apparent partner making the representation or consenting to its being made.*").

---

[9] Defendants cite the case of *New Freedom Mortgage v. CNR Mortgage Corp.,* 2004 WL 783206 (N.D. Ill. 2004) for the proposition that a Motion to Dismiss should be granted where the plaintiff fails to allege how maintaining two companies' separate corporate existence would sanction a fraud or promote injustice. This case is distinguishable, however, for the reason that in *New Freedom,* the plaintiff attempted to state a claim of common law fraud against an individual based upon an alter-ego theory and therefore the Court determined that Rule 9(b) applied. Moreover, and unlike in the case at bar, the plaintiff in *New Freedom* failed to allege at all how maintaining the separate corporate entities would sanction a fraud or promote an injustice.

Wachovia is therefore entitled to assert breach of contract claims against Defendant Neuhauser that arise out of the NOLA account agreements.[10]

## V. CONCLUSION

Wachovia's Complaint clearly passes muster under Rule 12(b)(6). For all of the reasons set forth above, the Defendants' Motion should be denied. Accordingly, Wachovia Securities, LLC respectfully requests that this Court enter an Order denying Defendants' Rule 12(b)(6) Motion to Dismiss, and awarding to Wachovia its actual costs and attorneys' fees incurred in responding to that Motion.

Respectfully submitted,

**WACHOVIA SECURITIES, LLC**

By: _____
One of Its Attorneys

Steven P. Gomberg (ARDC # 1004204)
Gary I. Blackman (ARDC # 6187914)
Christopher S. Griesmeyer (ARDC # 6269851)
**Levenfeld Pearlstein, LLC**
2 North LaSalle Street - Suite 1300
Chicago, IL 60602
(312) 346-8380
(312) 346-8434 (Facsimile)
H:\Docs\52900\52927\Response to Motion to Dismiss 7-12-04.doc

---

[10] Moreover, the issue of whether Defendant Neuhauser signed the Partnership Account Agreement in his individual capacity, as opposed to his capacity as an LLC member, is a disputed issue of fact that cannot be resolved on a motion to dismiss. Indeed, the case that the Defendants cite in apparent support of their argument – *Longview Aluminum, LLC v. Industrial General, LLC*- was decided on a motion for summary judgment. 2003 WL 21518585, No. 02 C 0168 (July 2, 2003, N.D. Ill.).

24

*SEE CASE FILE FOR EXHIBITS*