# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | WILLIAM T. HART | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3082 | **DATE** | **NOVEMBER 4, 2004** |
| **CASE TITLE** | WACHOVIA SECURITIES, LLC, etc. v. DAVID NEUHAUSER, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ **Status hearing set for DECEMBER 8, 2004 at 11:00 a.m.**

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Motions [6][9] are granted in part and denied in part. Within15 days, Wachovia shall file a motion in New York Stock Exchange arbitration Proceeding 2003-011927 requesting that the claims in that proceeding as against the Neuhauser Individuals be dismissed without prejudice. Counts I, II, and III of Wachovia's complaint are dismissed except to the extent they include a claim for promissory fraud based on the Neuhauser Individuals' contractual promise that they would use the Loop account for lawful transactions. Within 15 days, the Neuhauser Individuals shall answer the remaining allegations of Wachovia's complaint. All discovery is to be completed by February 27, 2005.

(11) ■ [For further detail see Memorandum Opinion and Order attached to this original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 2 | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | NOV 0 5 2004 | |
| | Notified counsel by telephone. | | | date docketed | 19 |
| | Docketing to mail notices. | | | | |
| | Mail AO 450 form. | | U.S. DISTRICT COURT | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | | |
| cw | courtroom deputy's initials | 2004 NOV -4 PM 4: 42 FILED-SED | Date/time received in central Clerk's Office | date mailed notice mqm mailing initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION


WACHOVIA SECURITIES, LLC, a )
Delaware corporation, )
)
Plaintiff, )
v. ) No. 04 C 3082
)
DAVID NEUHAUSER, ANDREW A. )
JAHELKA, RICHARD O. NICHOLS, )
LEON A. GREENBLATT, III, )
)
Defendants. ) NOV 0 5 2004


## MEMORANDUM OPINION AND ORDER


Plaintiff Wachovia Securities LLC[1] contends that

defendants David Neuhauser, Andrew Jahelka, Richard Nichols, and

Leon Greenblatt[2] misused Wachovia margin accounts opened in the

names of Loop Corp. and NOLA, LLC.  Loop and NOLA are not

defendants in the present lawsuit.  The Loop and NOLA accounts

allegedly were being used to surreptitiously obtain a controlling

interest in Health Risk Management, Inc. ("HRMI").  When NASDAQ

discontinued trading of HRMI stock, Wachovia was left with a

---

[1]Wachovia is the successor in interest to Prudential
Securities Incorporated, which will also be referred to as
"Wachovia."

[2]These four individuals will be collectively referred to
as "the Neuhauser Individuals."

$2,900,000 margin call that has not been paid. Wachovia contends Loop and NOLA were shell companies and that the Neuhauser Individuals are liable for the unpaid margins either directly or as alter egos of the two entities.

Initially, based on arbitration provisions in the margin accounts of the two entities, Wachovia brought an arbitration proceeding against the two entities and the Neuhauser Individuals as well. The Neuhauser Individuals then filed a lawsuit in the Circuit Court of Cook County, Illinois in which they sought a declaration that they were not bound by any arbitration provision of the margin accounts and also requested an injunction preventing Wachovia from proceeding against them in arbitration. The state court lawsuit was removed to federal court based on complete diversity of citizenship. In federal court, Wachovia answered the removed complaint and also filed a countercomplaint against the Neuhauser Individuals in which Wachovia raised federal securities law, state law fraud, breach of contract, and alter ego claims. At a court hearing, Wachovia subsequently represented that it would no longer proceed against the Neuhauser Individuals in the arbitration proceeding and instead would proceed against them in this federal lawsuit. Wachovia continued the arbitration proceeding as against the two entities. The parties then submitted an agreed draft order, which was entered by the court. The order dismissed the action that had been

removed and realigned Wachovia as plaintiff with its counterclaims as the complaint.[3]  Wachovia thereafter moved the arbitration panel to stay the arbitration as regards the Neuhauser Individuals.

Presently pending are two motions of the Neuhauser Individuals.  They move to reinstate their original action on the ground that Wachovia only stayed the arbitration action against them and did not actually dismiss it.  The Neuhauser Individuals also move to dismiss Wachovia's Complaint for failure to state a basis for relief.

Wachovia contends that it requested a stay so that it could reinstate the arbitration against the Neuhauser Individuals in the event that, in the lawsuit, it proves the Neuhauser Individuals are alter egos of Loop and NOLA.  They further contend that a stay is preferable to a dismissal because the Neuhauser Individuals may be difficult to find for service in the event that it becomes necessary to bring them back into a dismissed arbitration proceeding.  Statements that Wachovia may later proceed against the Neuhauser Individuals in arbitration, however, are inconsistent with Wachovia's statements in a hearing in the federal lawsuit.  At a hearing, counsel for Wachovia stated that Wachovia "will litigate in the district court rather

---

[3]The counterclaims will henceforth be referred to as the "Complaint."

than in arbitration. . . . So the issues that would have been raised in the arbitration will now be raised in our counterclaim, . . . ." May 24, 2004 Tr. at 5. In a further colloquy, the court stated: "Now, the parties can always waive arbitration, so that is okay. But if anybody wants arbitration, you have to ask for it and you have to make the appropriate motion for it. And you can forego that and resolve the case apparently on the counterclaim, right?" Id. at 6. Counsel for Wachovia responded: "Correct, Judge. And the arbitration will proceed as to other entities." Id. Following the May 24 hearing, the parties submitted an agreed draft order that was entered by the court. The order included a representation by Wachovia that it is "not proceeding with its claims" against the Neuhauser Individuals in arbitration. Based on these representations, the Neuhauser Individuals' removed action was dismissed with prejudice.

Wachovia makes no argument as to why the federal action would be inadequate to obtain any necessary relief from the Neuhauser Individuals. If Wachovia is successful in the present lawsuit, there would be no need for further proceedings against these individuals in the arbitration. Based on its prior representations, Wachovia will now be expressly ordered to dismiss the arbitration action as against the Neuhauser Individuals. Since that order will be entered, there will be no need to reinstate the action of the Neuhauser Individuals.

Wachovia's complaint contains eight counts labeled as follows: (I) Common Law Fraud; (II) [Federal] Securities Fraud; (III) Conspiracy to Commit Fraud; (IV) Declaratory Judgment-- Alter Ego (Loop Corp.); (V) Declaratory Judgment--Alter Ego (NOLA, LLC); (VI) Piercing the Corporate Veil (Loop Corp.); (VII) Piercing the Corporate Veil (NOLA, LLC); and (VIII) Breach of Contract. Jurisdiction is based on both federal question jurisdiction over Count II and diversity jurisdiction. Although some of the agreements relied upon have a New York choice of law provision, the parties agree that Illinois law applies to the issues presently being raised regarding the state law counts. The Neuhauser Individuals contend all counts are subject to dismissal on a Rule 12(b)(6) motion.

On a Rule 12(b)(6) motion to dismiss, plaintiff's well-pleaded allegations of fact are taken as true and all reasonable inferences are drawn in plaintiff's favor. Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 164 (1993); Dixon v. Page, 291 F.3d 485, 486 (7th Cir. 2002); Stachon v. United Consumers Club, Inc., 229 F.3d 673, 675 (7th Cir. 2000). Ordinarily, a complaint need not set forth all relevant facts or recite the law; all that is required is a short and plain statement showing that the party is entitled to relief. Fed. R. Civ. P. 8(a)(2); Boim v. Quranic Literacy Institute, 291 F.3d 1000, 1008 (7th Cir.

2002); <u>Anderson v. Simon</u>, 217 F.3d 472, 474 (7th Cir. 2000),
<u>cert. denied</u>, 531 U.S. 1073 (2001); <u>Scott v. City of Chicago</u>,
195 F.3d 950, 951 (7th Cir. 1999). Ordinarily, a plaintiff in a
suit in federal court need not plead facts; conclusions may be
pleaded as long as the defendant has at least minimal notice of
the claim. Fed. R. Civ. P. 8(a)(2); <u>Swierkiewicz v. Sorema N.A.</u>,
534 U.S. 506, 512 (2002); <u>Scott</u>, 195 F.3d at 951; <u>Albiero v. City
of Kankakee</u>, 122 F.3d 417, 419 (7th Cir. 1997); <u>Jackson v. Marion
County</u>, 66 F.3d 151, 153-54 (7th Cir. 1995). However, to the
extent fraud is alleged, it must be pleaded with particularity.
<u>See</u> Fed. R. Civ. P. 9(b); <u>Slaney v. The International Amateur
Athletic Federation</u>, 244 F.3d 580, 597 (7th Cir.), <u>cert. denied</u>,
534 U.S. 828 (2001); <u>Shapo v. O'Shaughnessy</u>, 246 F. Supp. 2d 935,
955-56 (N.D. Ill. 2002). Additionally, even if not required to
plead specific facts, a plaintiff can plead itself out of court
by alleging facts showing there is no viable claim. <u>See Slaney</u>,
244 F.3d at 597; <u>Kauthar SDN BHD v. Sternberg</u>, 149 F.3d 659,
669-70 n.14 (7th Cir. 1998), <u>cert. denied</u>, 525 U.S. 1114 (1999);
<u>Jackson</u>, 66 F.3d at 153-54.

Ordinarily, as long as they are consistent with the
allegations of the complaint, a plaintiff may assert additional
facts in its response to a motion to dismiss. <u>Brokaw v. Mercer
County</u>, 235 F.3d 1000, 1006 (7th Cir. 2000); <u>Forseth v. Village
of Sussex</u>, 199 F.3d 363, 368 (7th Cir. 2000); <u>Albiero</u>, 122 F.3d

at 419; <u>Gutierrez v. Peters</u>, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997). However, Rule 9(b) requires that the necessary allegations be in the complaint itself. <u>Kennedy v. Venrock Associates</u>, 348 F.3d 584, 593 (7th Cir. 2003), <u>cert. denied</u>, 124 S. Ct. 1889 (2004); <u>Abrams v. Van Kampen Funds, Inc.</u>, 2002 WL 1160171 *2 (N.D. Ill. May 30, 2002); <u>Chicago District Council of Carpenters Welfare Fund v. Angulo</u>, 169 F. Supp. 2d 880, 886 (N.D. Ill. 2001); <u>Implant Innovations, Inc. v. Nobelpharma AB</u>, 1995 WL 562092 *5 (N.D. Ill. Sept. 14, 1995). Additional allegations contained in the responsive brief, however, may indicate that plaintiff should be given the opportunity to amend the complaint to comply with Rule 9(b). <u>See</u> <u>Ziemba v. Cascade International, Inc.</u>, 256 F.3d 1194, 1213 (11th Cir. 2001); <u>Angulo</u>, 169 F. Supp. 2d at 886; <u>Implant Innovations</u>, 1995 WL 562092 at *5. While additional allegations contained in a responsive brief are not considered to be incorporated in the complaint, documents that are referred to in the complaint and that are central to a claim that is made may be considered to be part of the complaint even if not actually attached to the complaint. <u>Rosenblum v. Travelbyus.com Ltd.</u>, 299 F.3d 657, 661 (7th Cir. 2002); <u>Duferco Steel Inc. v. M/V Kalisti</u>, 121 F.3d 321, 324 n.3 (7th Cir. 1997); <u>Venture Associates Corp. v. Zenith Data Systems Corp.</u>, 987 F.2d 429, 431 (7th Cir. 1993). Where the document may properly be considered, the actual document will

override inconsistent descriptions of the document alleged in the body of the complaint. See Rosenblum, 299 F.3d at 661 (quoting 5 Wright & Miller, Federal Practice & Procedure: Civil 2d § 1327 at 766 (1990)); In re Wade, 969 F.2d 241, 249 (7th Cir. 1992); Beam v. IPCO Corp., 838 F.2d 242, 244-45 (7th Cir. 1988).

In the complaint itself, it is unnecessary to specifically identify the legal basis for a claim as long as the facts alleged would support relief. Forseth, 199 F.3d at 368; Scott, 195 F.3d at 951; Albiero, 122 F.3d at 419; Bartholet v. Reishauer A.G. (Zurich), 953 F.2d 1073, 1078 (7th Cir. 1992); Dodaro v. Village of Glendale Heights, 2003 WL 1720030 *8 (N.D. Ill. March 31, 2003). The plaintiff is not bound by legal characterizations of the claims contained in the complaint. Forseth, 199 F.3d at 368; Kirksey v. R.J. Reynolds Tobacco Co., 168 F.3d 1039, 1041 (7th Cir. 1999). However, in response to a motion to dismiss that raises the issue, the plaintiff must identify a legal basis for a claim and make adequate legal arguments in support of it. Kirksey, 168 F.3d at 1041-42; Stransky v. Cummins Engine Co., 51 F.3d 1329, 1335 (7th Cir. 1995); Levin v. Childers, 101 F.3d 44, 46 (6th Cir. 1996); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 224 F. Supp. 2d 1172, 1175 (N.D. Ill. 2002); Carpenter v. City of Northlake, 948 F. Supp. 759, 765 (N.D. Ill. 1996).

Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally." The circumstances of fraud generally include "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." Slaney, 244 F.3d at 599; General Electric Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1078 (7th Cir. 1997). A complaint must outline the alleged misrepresentations and reasonably notify a defendant of the specifics of the alleged fraudulent activity, including the particular defendant's role. Lachmund v. ADM Investor Services, Inc., 191 F.3d 777, 782 (7th Cir. 1999); Goren v. New Vision International, Inc., 156 F.3d 721, 730 (7th Cir. 1998); Midwest Grinding Co., Inc. v. Spitz, 976 F.2d 1016, 1020 (7th Cir. 1992); Ward Enterprises, Inc. v. Bang & Olufsen, 2003 WL 22859793 *1 (N.D. Ill. Dec. 2, 2003); Gilmore v. Southwestern Bell Mobile Systems, L.L.C., 210 F.R.D. 212, 224 (N.D. Ill. 2001). Fair notice is the most basic consideration. Vicom, Inc. v. Harbridge Merchant Services, Inc., 20 F.3d 771, 777-78 (7th Cir. 1994); In re Bridgestone/Firestone Inc. Tires Products Liability Litigation, 2002 WL 31689264 *8 (S.D. Ind. Nov. 20, 2002); Gilmore, 210 F.R.D. at 224.

Additionally, the requirements of Rule 9(b) may be relaxed where the plaintiff makes an adequate showing that necessary information is within the control of a defendant so that particularized pleading cannot be fully accomplished prior to receiving discovery. See Emery v. American General Finance, Inc., 134 F.3d 1321, 1323 (7th Cir.), cert. denied, 525 U.S. 818 (1998).

The Neuhauser Individuals contend the Count II federal securities fraud claim is untimely. This claim is based on Section 10(b) (15 U.S.C. § 78j(b)) and Rule 10b-5 (17 C.F.R. § 240.10b-5). The Complaint was filed on May 21, 2004. In the Complaint, Wachovia alleges that the Neuhauser Individuals' "scheme came to light on or about May 21, 2001, when the NASDAQ halted trading of the common stock of HRMI on the news that the company's independent auditors had resigned. At this time, the stock declined from a prior day's close of $7.5 per share to $4.75 per share." Compl. ¶ 36. Accordingly, Wachovia demanded that Loop and NOLA, and eventually the Neuhauser Individuals, provide sufficient funds to satisfy the margin requirement. Id. at ¶¶ 37-39. These demands going unheeded, Wachovia "began to explore potential legal remedies." The Neuhauser Individuals contend that, based on the facts alleged in the Complaint, Wachovia was on inquiry notice as of May 21, 2001, but did not raise its securities fraud claim until three years later. The

Neuhauser Individuals further contend that this is beyond the one-year discovery period/three-year statute of repose that was in effect for § 10(b)/Rule 10b-5 claims as of 2001. See Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson, 501 U.S. 350, 364 (1991); Levitan v. McCoy, 2001 WL 1117279 *5 (N.D. Ill. Sept. 21, 2001); Stauffer v. Westmoreland Obstetric and Gynecologic Associates, S.C., 2001 WL 585510 *5 (N.D. Ill. May 25, 2001); Great Neck Capital Appreciation Investment Partnership, L.P. v. PricewaterhouseCoopers, L.L.P., 137 F. Supp. 2d 1114, 1125 (E.D. Wis. 2001). Alternatively, they contend the claim is untimely under the two-year discovery period/five-year statute of repose that became effective July 30, 2002. See 28 U.S.C. § 1658(b). Wachovia argues that the allegations of the Complaint do not conclusively establish inquiry notice as of May 21, 2001. It also argues that the two-year period of § 1658(b) applies and further contends that this period did not begin to run until August 16, 2001, based on estoppel due to alleged settlement negotiations with the Neuhauser Individuals. Alternatively, Wachovia contends the filing of the arbitration proceeding equitably estopped the running of the limitation period for the securities fraud claims.

Wachovia contends that when it was placed on inquiry notice is a question of fact that cannot be resolved on a Rule 12(b)(6) motion. Inquiry notice that begins the running of the

limitation period for a securities fraud claim arises "when (often between the date of occurrence and the date of the discovery of the fraud) the plaintiff learns, or should have learned through the exercise of ordinary diligence in the protection of one's legal rights, enough facts to enable him by such further investigation as the facts would induce in a reasonable person to sue within a year." <u>Fujisawa Pharmaceutical Co. v. Kapoor</u>, 115 F.3d 1332, 1334 (7th Cir. 1997). However, the Seventh Circuit has rejected the proposition that, on a motion to dismiss, allegations of a "conjunction of optimistic forecasts with a sharp drop in price establishes inquiry notice as a matter of law." <u>LaSalle v. Medco Research, Inc.</u>, 54 F.3d 443, 447 (7th Cir. 1995). <u>See also</u> <u>Law v. Medco Research, Inc.</u>, 113 F.3d 781, 783 (7th Cir. 1997); <u>Abrams v. Van Kampen Funds, Inc.</u>, 2002 WL 1160171 *10 (N.D. Ill. May 30, 2002). Here, the relationship is even more attenuated because the Neuhauser Individuals were purchasers of HRMI stock, not officers or directors of the corporation who would more likely appear to have control over the corporation or nonpublic knowledge of events that could affect the stock's price. In addition to knowledge of the drop in price that precipitated the margin call, some information about the relationships between the Neuhauser Individuals, Loop, and NOLA, their percentage of ownership of HRMI stock, and the cause of the drop in value of HRMI stock was also necessary before Wachovia

would be on inquiry notice. There is no allegation in the Complaint that, as of May 21, 2001, Wachovia already had knowledge of all the HRMI stock that Greenblatt controlled through accounts with other brokers. Although, Wachovia alleges that it began an investigation following the margin call, it does not allege the precise dates that the investigation began or when it learned particular facts. The Neuhauser Individuals focus on the allegation that the "scheme came to light on or about May 21, 2001." Viewed in isolation at face value, that conclusory allegation supports that sufficient notice existed as of May 21, 2001. The additional and more specific factual allegations contained in the Complaint, however, support only that May 21, 2001 was the date the stock price dropped that resulted in a margin call and ultimately further investigation. The Complaint does not show the precise date when inquiry notice would be satisfied.

In response to the motion to dismiss, however, Wachovia concedes that its securities fraud claim accrued by August 2001. Wachovia contends that its May 2004 Complaint is timely because the two-year limitation period of § 1658(b) applies and it brought the arbitration action in May 2003. Taking as true that the securities fraud claim did not accrue until August 2001, the former one-year statute of limitation had not expired prior to the effective date of § 1658(b). While the Neuhauser Individuals

argue that the enactment of § 1658(b) did not revive claims for which the statute of limitations had already expired, see In re Enterprise Mortgage Acceptance Co., L.L.C. Securities Litigation, 295 F. Supp. 2d 307 (S.D.N.Y. 2003), they do not dispute that § 1658(b) applies to securities fraud claims for which the previously existing limitation period had not yet expired as of July 30, 2002. Therefore, Wachovia had until August 2003 to bring its claim.

The question is whether bringing the arbitration action in May 2003 equitably estopped the further running of the limitation period. At the time Wachovia brought its securities claims in this court, the arbitration proceeding against the Neuhauser Individuals was still pending. Wachovia relies on New York Stock Exchange Rule 606(a) which provides: "Where permitted by law, the time limitation(s) which would otherwise run or accrue for the institution of legal proceedings shall be tolled when a duly executed Submission Agreement is filed by the claimant(s). The tolling shall continue for such period as the New York Stock Exchange, Inc. shall retain jurisdiction upon the matter submitted." National Association of Securities Dealers Rule 10307 is essentially identical.

Parties may agree to extend a period of limitation. See Stephan v. Goldinger, 325 F.3d 874, 876 (7th Cir.), cert. denied, 124 S. Ct. 227 (2003). Thus, to the extent the parties had an

arbitration agreement, the arbitration proceeding that was instituted would have tolled the limitation period during the pendency of the arbitration proceeding. Since the arbitration proceeding was initiated prior to the expiration of the limitation period and the claims were raised in this court while the arbitration proceeding was still pending, the federal securities law claims are timely as long as there was an enforceable arbitration agreement. However, if there was no enforceable arbitration agreement as against the Neuhauser Individuals, improperly naming them in the arbitration proceeding would not have extended the limitation time period for bringing a federal securities fraud claim against them. See Rampersad v. Deutsche Bank Securities, Inc., 2004 WL 616132 *5-6 (S.D.N.Y. March 30, 2004).

The question is whether Wachovia has pleaded itself out of court by alleging facts which conclusively establish that all or some of the Neuhauser Individuals were not parties to or otherwise bound by any arbitration agreement with Wachovia. Wachovia attaches to its Complaint copies of the margin agreements that contain the arbitration provisions relied upon by Wachovia. The Neuhauser Individuals contend they were not bound to arbitrate any dispute because the margin agreements were signed in a representative capacity on behalf of Loop and NOLA. Additionally, Greenblatt and Nichols make the point that they did

not sign the agreements in any manner whatsoever. However, Wachovia contends that the corporate veils may be pierced so that the Neuhauser Individuals would be directly liable for actions of Loop and NOLA. A person who is not otherwise a party to an agreement containing an arbitration provision may still be bound by the agreement to arbitrate based on piercing the corporate veil. Fyrnetics (Hong Kong) Ltd. v. Quantum Group, Inc., 293 F.3d 1023, 1029 (7th Cir. 2002) (citing American Bureau of Shipping v. Tencara Shipyard, S.P.A., 170 F.3d 349, 352 (2d Cir. 1999)); Thompson-CSF, S.A. v. American Arbitration Association, 64 F.3d 773, 777 (2d Cir. 1995); Zurich American Insurance Co. v. Cebcor Services Corp., 2003 WL 21418237 *4 (N.D. Ill. June 18, 2003). Therefore, there is a basis for finding Wachovia's federal securities claim to be timely and Wachovia has not pleaded facts that are necessarily inconsistent with this theory. Since, the statute of limitations is an affirmative defense, it is sufficient that Wachovia points out a basis for there being a timely claim; it is not necessary for Wachovia to affirmatively and sufficiently plead these facts in its Complaint. The federal securities claims will not be dismissed as untimely.

The Neuhauser Individuals contend the fraud counts (Counts I, II, and III) all fail because Wachovia has not pleaded facts supporting that they made any misrepresentations upon which Wachovia relied to its detriment. Wachovia alleges that, in

- 16 -

October 2000, Neuhauser opened a Wachovia account in the name of Loop. Neuhauser represented that he worked for Greenblatt, who controlled Loop. Greenblatt, Jahelka, and Nichols signed a statement verifying that they were the sole owners of Loop. Between then and March 31, 2001, HRMI stock sold for between $6.00 and $7.875 per share. By March 31, 2001, the Loop account included 225,000 shares of HRMI and all margin calls had been met. In April 2001, HRMI stock sold for as high as $10.65 per share. By the end of April, the Loop account had 321,000 shares of HRMI. $160,000 in cash had been paid to purchase $650,000 of HRMI stock.

In late February 2001,[4] Neuhauser opened the NOLA account, using the same Wachovia broker as for the Loop account. The account for NOLA was labeled as a partnership account and Neuhauser identified as the general partner, "[a]lthough NOLA is purportedly a limited liability company."[5] Compl. ¶ 22. It is alleged that Neuhauser also signed a document making him personally liable for activity in the account and the documents are attached as exhibits. Id. ¶ 23. When opening the account,

---

[4]The Complaint (¶ 22) alleges February 2001. One of the attached exhibits (F) is dated February 27, 2001 and Exhibits E and F both have apparent fax notations indicating February 28, 2001 in the top margin.

[5]There is no express allegation that NOLA actually is a limited liability company nor is there any allegation as to the state in which such a company may have been formed.

Neuhauser again disclosed that he worked for Greenblatt. It is expressly alleged that, as of mid-March 2001, Greenblatt worked directly with the Wachovia broker regarding both accounts. As of the end of March 2001, the NOLA account had 10,000 shares of HRMI valued at $69,380, with a $36,000 margin debt. In April 2001, the NOLA account added an additional 143,500 shares of HRMI with a total purchase price of $1,150,000 and for which less than $200,000 in cash was deposited in the account.

In a Schedule 13D filing dated April 5, 2001, Greenblatt and his wife represented they controlled 30% of HRMI's outstanding shares, which included holdings through other entities in addition to Loop. In an April 23, 2001 update, they disclosed that they controlled 39% of HRMI stock. The Greenblatts' Schedule 13D filing also included disclosure of a standstill agreement that they would not acquire more than 40% of HRMI's outstanding shares. The Schedule 13D filings, however, failed to disclose HRMI stock held in the NOLA account. Inclusion of that stock in the April 23 update would have disclosed that the Greenblatts controlled approximately 42% of HRMI stock.

Wachovia alleges that NOLA was established for the sole purpose of being a vehicle to avoid detection of the fact that the standstill agreement and securities regulations were being violated. It is also alleged that the Wachovia margin accounts

were used as a vehicle to place the risk of the investment scheme on Wachovia. It is alleged that the purchase of a controlling share of HRMI stock was intended to drive up the price of HRMI stock and that the Neuhauser Individuals "intended to use the buying power generated by the price increase of the HRMI stock that they already owned to purchase substantial additional shares on margin. The 50% margin requirement contemplated by the regulatory bodies and embodied in the margin rules for the purchase of securities was ignored as the price rise in the stock served as a smoke screen for the [Neuhauser Individuals'] purchases of HRMI without cash." Compl. ¶ 43. The alleged misrepresentations to Wachovia regarded the related ownership interests of the two accounts and the intent to obtain a controlling interest in HRMI. Id. ¶ 50. Additionally, it is alleged that, had Wachovia "known about the [Neuhauser Individuals'] intention to use Loop Corp. and NOLA, LLC to surreptitiously acquire a controlling interest in HRMI's shares-- or had [Wachovia] even known of the joint ownership and control of Loop Corp. and NOLA, LLC--[Wachovia] never would have allowed the [Neuhauser Individuals] to open their margin accounts." Id. ¶ 33.

On May 21, 2001, following the resignation of HRMI's independent auditors, NASDAQ halted trading in HRMI stock. At the time there was a one-day decline from $7.50 to $4.75 per

share.  In June 2001, Wachovia made margin calls of close to
$3,000,000 and demanded payment from Loop, NOLA, and the
Neuhauser Individuals.  None made any payment.

Although Wachovia conclusorily alleges that the Neuhauser
Individuals hid the relationship between the two accounts,
specific allegations of the Complaint are to the contrary.
Although Neuhauser signed the documents opening the NOLA account,
as he had also done for the Loop account, it is expressly alleged
that he again informed the Wachovia broker that he was working
for Greenblatt.  By "mid-March", approximately two weeks after
the NOLA account was opened, the Wachovia broker was dealing
directly with Greenblatt regarding both accounts.  Although the
SEC Schedule 13D filings omitted Greenblatt's interest in the
NOLA account, Greenblatt's interest in that account was not
hidden from Wachovia as well.  Although inconsistent pleading is
permitted under the Federal Rules, allegations of fraud must be
specifically pleaded.  <u>See</u> Fed. R. Civ. P. 9(b).  The specific
allegations control over the conclusory allegation that
Greenblatt's interest in the NOLA account was hidden from
Wachovia.  <u>See</u> <u>Thomas v. Farley</u>, 31 F.3d 557, 558-59 (7th Cir.
1994); <u>Perlman v. Zell</u>, 938 F. Supp. 1327, 1347 (N.D. Ill. 1996),
<u>aff'd</u>, 185 F.3d 850 (7th Cir. 1999).  Since the relationship
between the two accounts was disclosed to Wachovia, the fraud

claims cannot be based on the failure to disclose the
relationship.

Wachovia argues that Neuhauser's representation that he
was NOLA's general partner was fraudulent. Even assuming this
was a false representation,[6] there is no allegation that Wachovia
detrimentally relied on this false representation. Reliance on a
fraudulent statement is a necessary element of Wachovia's fraud
claims. Hefferman v. Board of Trustees of Illinois Community
College Dist. 508, 310 F.3d 522, 526 (7th Cir. 2002); Rissman v.
Rissman, 213 F.3d 381, 383 (7th Cir.), cert. dismissed, 531 U.S.
987 (2000). Even assuming NOLA is actually a limited liability
company, Wachovia does not allege where it was incorporated so
the potential liability of the members cannot be determined.
Ordinarily, members of a limited liability company are like
limited partners of a partnership. Unlike a general partner
regarding debts of the partnership, members of a limited
liability company generally are not liable for the debts of the
company. See Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir.
1998). See, e.g., 805 ILCS 180/10-10. So being a general
partner could be materially different from being a member of a
limited liability company. However, there is no allegation that

_____

[6]There is no allegation that NOLA actually was a limited
liability company instead of a general partnership, only an
allegation that NOLA "purportedly is a limited liability
company." Compl. ¶ 22.

Wachovia relied on Neuhauser's personal creditworthiness in permitting the NOLA account to be opened. There is no allegation that Wachovia investigated Neuhauser's credit or that it would have investigated NOLA's financial condition had it known Neuhauser was only a member of a limited liability company. Moreover, Neuhauser signed a document promising to personally pay liabilities on the account, so Wachovia had the same protection that it would have had even if Neuhauser had been a general partner.[7] The allegations do not support that Wachovia would have acted differently, that is not open the account, had it known NOLA was not a partnership with Neuhauser as a general partner. Therefore, the reliance requirement cannot be satisfied regarding this aspect of the alleged fraud.

Wachovia also argues that its fraud claims are based on the alleged failure to disclose that the Neuhauser Individuals were attempting to gain control of HRMI and drive up the price of its stock in violation of federal securities law.[8] Wachovia relies on two different theories to support that this constitutes

---

[7]As is discussed regarding Count VIII, though, Neuhauser contends any documents he signed were in a representative capacity. That would require consideration of facts outside the Complaint.

[8]Although the Complaint contains allegations as to misrepresentations contained in the Schedules 13D, Wachovia does not dispute that there is no allegation that it saw the Schedules or relied on the misrepresentations contained therein.

fraud. One is that the Neuhauser Individuals had a duty to disclose their intentions. The other is that this intention was inconsistent with the representation in the Loop margin agreement that they would "conduct [the] account in accordance with all applicable laws or regulations." Compl. Exh. B ¶ 4.

As to the Neuhauser Individuals' duty to disclose, Wachovia contends there was such a duty because the parties were in a fiduciary relationship. The Neuhauser Individuals agree that, under Illinois law, a fiduciary generally has a duty to disclose and that the broker-client relationship is a fiduciary relationship, at least to the extent that the broker is giving nondiscretionary investment or financial advice and not just executing transactions directed by the client. See Carr v. Cigna Securities, Inc., 95 F.3d 544, 547 (7th Cir. 1996). There is no allegation in the Complaint that Wachovia provided any investment advice regarding the Loop and NOLA accounts. But even assuming the existence of a fiduciary relationship, it is the broker (Wachovia) that is the fiduciary, not the clients (the Neuhauser Individuals). Wachovia points to no case holding that the client in such a relationship also has a duty to disclose. Wachovia has not alleged a cognizable fraudulent concealment claim.

Wachovia's other contention is that the Neuhauser Individuals fraudulently violated their contractual promise to obey securities laws and regulations. This is a promissory fraud

claim, that is, "a false representation of intent regarding future conduct, such as a promise to perform a contract when there is no actual intent to do so." Houben v. Telular Corp., 231 F.3d 1066, 1074 (7th Cir. 2000). Illinois law recognizes such a fraud claim. See id. Promissory fraud can also be a basis for a § 10(b)/Rule 10b-5 claim. Burns v. Paddock, 503 F.2d 18, 22-23 (7th Cir. 1974); Snap-On Inc. v. Ortiz, 1999 WL 592194 *7 & n.4 (N.D. Ill. Aug. 3, 1999); Grove v. Gilman Securities, Inc., 1996 WL 18893 *2 (N.D. Ill. Jan. 17, 1996); Thompson ex rel. Thorp Family Charitable Remainder Unitrust v. Federico, 324 F. Supp. 2d 1152, 1162-63 (D. Ore. 2004). The Neuhauser Individuals contend such a claim is not contained in the Complaint itself, only argued in Wachovia's brief, which would not satisfy Rule 9(b). However, it is alleged in the Complaint that, at the time the Loop account was opened, the Neuhauser Individuals intended to use the account in a scheme to obtain control of HRMI, a scheme that was in violation of securities laws and regulations, and that they hid this intention from Wachovia. It is also alleged that, had Wachovia known the Neuhauser Individuals were involved in this scheme, they would not have permitted them to use the account. While the body of the Complaint does not expressly refer to promissory fraud or the promise not to violate laws, the margin agreement containing the promise is expressly referenced in the body of the Complaint and

is attached as an exhibit. The facts supporting promissory fraud are alleged in the Complaint even if the theory is not expressly stated. Promissory fraud is sufficiently raised.

Although it is a recognized basis for a fraud claim, promissory fraud claims are disfavored. Bower v. Jones, 978 F.2d 1004, 1012 (7th Cir. 1992); Association Benefit Services, Inc. v. AdvancePCS Holding Corp., 2004 WL 2101928 *1 (N.D. Ill. Sept. 21, 2004). The Seventh Circuit has cautioned against transforming every breach of contract into a claim of fraud. Consolidation Services, Inc. v. KeyBank National Association, 185 F.3d 817, 823 (7th Cir. 1999); Desnick v. American Broadcasting Cos., 44 F.3d 1345, 1354 (7th Cir. 1995); AdvancePCS, 2004 WL 2101928 at *1. To protect against this, promissory fraud claims will only be permitted to proceed if they are alleged to be part of a scheme to defraud, that is part of a pattern of fraudulent acts. Speakers of Sport, Inc. v. ProServ, Inc., 178 F.3d 862, 866 (7th Cir. 1999); AdvancePCS, 2004 WL 2101928 at *2.[9] Here, Wachovia has alleged other fraudulent acts besides the alleged false promise to obey the law. Wachovia has specifically alleged false representations contained in the Schedules 13D. Also, Wachovia

---

[9]The cases relied upon for this standard all involve the application of Illinois law. Since the promissory fraud allegations are not being dismissed, it may be assumed for present purposes that the federal securities claims must also satisfy this standard.

has alleged that the Neuhauser Individuals also used accounts at other brokers to execute the scheme. Wachovia has sufficiently alleged promissory fraud based on promising to engage in legal transactions at the time the Loop margin account was opened even though the Neuhauser Individuals had the then-present intent to violate securities laws and regulations. Contrary to the Neuhauser Individuals' contention, Wachovia's allegations more than adequately satisfy Rule 9(b)'s particularity requirement regarding pleading each individual's participation and role in the scheme. Cf. Duggan v. Terzakis, 275 F. Supp. 2d 968, 973 (N.D. Ill. 2003).

Wachovia also argues that it can pursue a promissory fraud theory based on the Neuhauser Individuals' promise to pay any margin calls even though they had no such intent at the time the accounts were opened. The problem with this contention is that the Complaint contains no allegation that the Neuhauser Individuals had an intent not to pay at the time either of the accounts were opened and the margin agreements signed.

Wachovia's Count I, II, and III fraud claims will be dismissed except to the extent they are based on the alleged promissory fraud of the Neuhauser Individuals that, at the time of opening of the Loop account, they would not use the account for transactions that would violate securities laws and regulations.

The Neuhauser Individuals contend the allegations regarding piercing the corporate veil and alter ego[10] are inadequate because they are premature and do not satisfy the particularity requirement of Rule 9(b).  Their first contention is that these claims cannot be pursued until Loop and/or NOLA are first found liable and unable to pay a judgment.  The cases relied on by the Neuhauser Individuals do not support that proposition.  American Society of Contemporary Medicine, Surgery & Ophthalmology v. Murray Communications, Inc., 547 F. Supp. 462, 466 & n.8 (N.D. Ill. 1982), concerns whether it was appropriate to bring a fraudulent inducement claim prior to the plaintiff suffering a detriment through a breach of contract by a third party; the case does not discuss when it is appropriate to bring a piercing claim.  International Financial Services Corp. v. Chromas Technologies Canada, Inc., 356 F.3d 731, 735-39 (7th Cir. 2004), holds that an Illinois piercing the corporate veil claim is an equitable claim for the court, not a jury.  It does not hold that the piercing the corporate veil claim could not be raised in the complaint until after the corporation was first found liable and unable to pay a judgment. All it indicates on the timing issue is that the jury issues should be tried first so that the court accords proper deference

_____

        [10]These claims will be referred to jointly as "piercing claims."

- 27 -

to the right to have a jury determine the facts for the related legal claims. See id. at 737-38. Similarly, the quoted general principle from In re Rehabilitation of Centaur Insurance Co., 158 Ill.2d 166, 632 N.E.2d 1015, 1018 (1994) (quoting 1 W. Fletcher, Private Corporations § 41.10 at 615 (rev. ed. 1990)) ("The corporate form may be disregarded only where equity requires the action to assist a third party."), does not address the question of when a piercing claim is ripe for adjudication. It simply states a necessary element of the piercing claim. A plaintiff may prove that a corporation will not be able to make good on a debt without first successfully bringing a separate lawsuit against the corporation and waiting for that judgment to go unpaid. No case has been found which supports the Neuhauser Individuals' contention that a piercing claim is not ripe until a separate lawsuit is first brought and fully adjudicated as against the corporation that is being pierced.

The Neuhauser Individuals' other contention is that the piercing allegations do not satisfy the requirements of Rule 9(b). Rule 9(b), however, generally does not apply to piercing allegations. See United States ex rel. Bidani v. Lewis, 1999 WL 163053 *2 (N.D. Ill. March 12, 1999); Kruse v. Aamed, Inc., 1997 WL 102528 *4 (N.D. Ill. March 4, 1997); Chicago District Council of Carpenters Pension Fund v. Ceiling Wall Systems, Inc., 915 F. Supp. 939, 942 (N.D. Ill. 1996); Francosteel Corp. v.

National Industries, Inc., 1991 WL 166732 *1-2 (N.D. Ill.
March 16, 1991). But see Trustees of Cement Masons Fund, Local
502 v. F & V Cement Contractors, Inc., 2004 WL 765368 *3 (N.D.
Ill. April 7, 2004); New Freedom Mortgage Corp. v. C & R Mortgage
Corp., 2004 WL 783206 *8-9 (N.D. Ill. Jan. 15, 2004); Typo-
graphics Plus, Inc. v. I.M. Estrada & Co., 2000 WL 1006572 *4
(N.D. Ill. July 19, 2000). To the extent fraud is a necessary
element, however, the fraud must be alleged with particularity.
See Bidani, 1999 WL 163053 at *2. Here, Wachovia primarily
alleges that Loop and NOLA were not adequately funded, were not
treated as distinct entities, and corporate regularities were not
followed.[11] These aspects of the piercing claims need not be
alleged with particularity. To the extent the fraudulent scheme
is a necessary element of the piercing claims, as previously
discussed, Wachovia has adequately alleged a scheme to violate
the securities laws and the promissory fraud claim that is not
being dismissed. The piercing claims will not be dismissed for
failure to plead with adequate specificity.

Count VIII is a claim for breach of contract. Wachovia
alleges the margin agreements for both accounts were breached
when the margin calls were not paid. It is alleged that all the

---

[11]If NOLA is an Illinois limited liability company,
following company formalities would not be pertinent to piercing
its veil. See 805 ILCS 180/10-10(c).

Neuhauser Individuals are liable for the breaches based on the piercing doctrines. Additionally, it is alleged that Neuhauser is liable for the margin call on the NOLA account because he personally promised to pay any margin call. Compl. ¶ 97.

The Neuhauser Individuals do not contend that the breach of the margin agreements is not adequately alleged. They only argue that their personal liability for any such breach is not adequately alleged. As previously discussed, the piercing claims are adequately alleged so Count VIII may continue as to all the Neuhauser Individuals.

Additionally, Neuhauser contends that the allegations that he is liable based on his personal promise does not state an alternative basis for relief. Neuhauser focuses on the partnership account agreement (Compl. Exh. E), a document he signed and in which he represented he was the general partner of NOLA. He contends that he cannot be personally liable based on that agreement because NOLA is a limited liability company, not a partnership, and members of a limited liability company are not liable for the company's debts. Wachovia relies, in part, on 805 ILCS 205/16(1), which provides in part: "When a person, by words spoken or written or by conduct, represents himself, or consents to another representing him to any one, as a partner in an existing partnership or with one or more persons not actual partners, he is liable to any such person to whom such

representation has been made, who has, on the faith of such representation, given credit to the actual or apparent partnership, . . . ."  Neuhauser contends he cannot be liable based on § 16(1) because "LLC" in NOLA's name made clear that it was a limited liability company, not a partnership.  He also contends that it was evident there was no partnership because it is alleged he represented that he worked for Greenblatt and because he was the only one signing the partnership form and a partnership cannot consist of just one partner.  Neuhauser also contends that the detrimental reliance necessary for liability under the statute is not alleged.

First, Neuhauser ignores that he also signed the NOLA opening margin agreement (Compl. ¶ 23, Exh. F) in which he promised to pay any margin call.  See id. Exh. F ¶ 4.  There is nothing on that form indicating that he signed it in a representative capacity only.  To the extent he did sign it in a representative capacity only, he would have to rely on evidence outside the allegations of the Complaint to make such a showing. The allegations of ¶ 23 and Exhibit F are a sufficient alternative basis for finding Neuhauser personally liable for any margin call due for the NOLA account.

Even if the partnership account agreement remained the only basis for finding Neuhauser liable, these allegations state a basis for relief.  It is alleged that NOLA "purportedly" is a

limited liability company. There is no allegation that NOLA
actually is a limited liability company. The fact that LLC is in
NOLA's name does not necessarily make it a limited liability
company. In Illinois, and likely other states, a limited
liability company does not come into existence until it actually
files its articles of incorporation. See 805 ILCS 180/5-40(a).
If articles of incorporation were never filed, NOLA may have been
a de facto partnership. Also, the partnership account agreement
does not state that Neuhauser is the only partner. It only
states that Neuhauser is the general partner. Other partners may
have been limited partners who would not have to be listed on the
form. Although Neuhauser stated that he worked for Greenblatt,
it is still possible that he would be a general partner for a
partnership related to other Greenblatt controlled entities. The
Complaint does not allege facts inconsistent with Wachovia
reasonably believing that NOLA was a partnership. Also, the
allegations of the Complaint are distinguishable from Longview
Aluminum, L.L.C. v. Industrial General, L.L.C., 2003 WL 21518585
(N.D. Ill. July 2, 2003), which Neuhauser contends is "squarely
on point." Unlike Neuhauser's signing of a form that expressly
used the term partnership, there was no representation in
Longview that the pertinent entity was a partnership. See id.
at *4. It is true, as Neuhauser contends, that liability under
§ 16(1) requires detrimental reliance on Wachovia's part. See

<u>Longview</u>, 2003 WL 21518585 at *4. As previously discussed regarding the fraud claims, Wachovia has not specifically alleged reliance on the representation that Neuhauser is a partner. Rule 9(b), however, does not apply to the Count VIII breach of contract claim.

Wachovia has sufficiently alleged that Neuhauser is liable for the NOLA margin call based on both the partnership account agreement and the opening margin agreement. As to all the Neuhauser Individuals, Wachovia has adequately alleged that they are liable for the Loop and NOLA margin calls based on piercing theories. Count VIII will not be dismissed in any part.

IT IS THEREFORE ORDERED that the Neuhauser Individuals' motion to reinstate their complaint [6] and motion to dismiss Wachovia's complaint [9] are granted in part and denied in part. Within 15 days, Wachovia shall file a motion in New York Stock Exchange arbitration Proceeding 2003-011927 requesting that the claims in that proceeding as against the Neuhauser Individuals be dismissed without prejudice. Counts I, II, and III of Wachovia's complaint are dismissed except to the extent they include a claim for promissory fraud based on the Neuhauser Individuals' contractual promise that they would use the Loop account for lawful transactions. Within 15 days, the Neuhauser Individuals shall answer the remaining allegations of Wachovia's complaint.

All discovery is to be completed by February 27, 2005.  Status hearing will be held on December 8, 2004 at 11:00 a.m.

ENTER:

UNITED STATES DISTRICT JUDGE

DATED:  NOVEMBER 4 , 2004