## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | **Case No. 04 C 3082** |
| Plaintiff, | ) | |
| vs. | ) | **Judge William T. Hart** |
| | ) | |
| DAVID NEUHAUSER, ANDREW A. | ) | **Magistrate Judge Michael T. Mason** |
| JAHELKA, RICHARD O. NICHOLS, | ) | |
| LEON A. GREENBLATT III, BANCO | ) | |
| PANAMERICANO, INC., a South | ) | |
| Dakota Corporation, LOOP CORP., a | ) | |
| South Dakota corporation, LOOP | ) | |
| PROPERTIES, INC., an Illinois | ) | |
| corporation, and SCATTERED CORP., | ) | |
| a South Dakota corporation, | ) | |
| | ) | |
| Defendants. | ) | |

**FILED**

SEP 2 2 2005 WH

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

## MOTION FOR EXTENSION OF TIME TO RESPOND
## TO DISCOVERY AND FOR PROTECTIVE ORDER

Defendants Banco Panamericano, Inc. ("Banco") and Scattered Corp. ("Scattered"),

along with subpoenaed witness Robinson Curley & Clayton, P.C. ("RCC"), by their attorneys, C.

Philip Curley, John H. Wickert and Alan R. Dolinko of Robinson Curley & Clayton, P.C., and

Defendants Loop Corp ("Loop") and Loop Properties, Inc. ("Loop Properties"), by their

attorney, Elizabeth D. Sharp, and pursuant to Fed. R. Civ. P. 26, hereby move for: (1) an

extension of time for Banco, Scattered, Loop and Loop Properties to respond to certain

outstanding written discovery; and (2) a protective order to extend the time for RCC to respond

to a subpoena served upon it. The extension of time sought by this motion is one week, through

and including September 30, 2005. In accordance with L.R. 37.2, this motion is brought only

after good-faith attempts by way of communication between counsel for movants on the one

hand, and counsel for the Plaintiff Wachovia Securities, LLC ("Wachovia") on the other (copies

of which are attached hereto as Exhibits 4 and 5), failed to result in Wachovia agreeing to a one-week extension. In further support of this motion, these parties state:

1.     Banco, Scattered, Loop, and Loop Properties (together "the Corporate Defendants"), were first added to this case as parties defendant when Wachovia filed its First Amended Complaint on May 18, 2005.

2.     On or about August 4, 2005, Wachovia served upon the Corporate Defendants separate First Sets of Interrogatories and a consolidated First Request for the Production of Documents. Each set of interrogatories contained not less than sixteen interrogatories. A copy of the interrogatories served by Wachovia are attached hereto as Group Exhibit 1. The consolidated document request contains 115 separate paragraphs of requests. A copy of the First Request for the Production of Documents served by Wachovia is attached hereto as Exhibit 2. By agreement, the deadline to respond this written discovery was extended once to September 23, 2005.

3.     On August 26, 2005, Wachovia issued a subpoena to Banco's and Scattered's litigation counsel, RCC. This subpoena was one of more than 20 subpoenas that Wachovia has issued to third parties. The RCC subpoena is sixteen pages long, single-spaced: four pages of single-spaced definitions and instructions, and the remainder of single-spaced document requests. The subpoena seeks the production of files and information relating to not less than twenty-five different corporations and/or individuals. As RCC is a law firm, the subpoena necessarily implicates the attorney-client privilege. A copy of the subpoena served upon RCC is attached hereto as Exhibit 3. The subpoena is, on its face, returnable on September 23, 2005 at 9:00 a.m.

4. Due to a scheduling difficulty, on September 20, 2005, C. Philip Curley, one of the attorneys for Banco, Scattered and RCC, telecopied a letter to Christopher S. Griesmeyer, one of the attorneys for Wachovia, seeking an extension of not more than one additional week, from September 23, 2005 to September 30, 2005, for the Corporate Defendants to respond to the written discovery and for RCC to respond to the subpoena. A copy of Mr. Curley's letter of September 20, 2005 is attached hereto as Exhibit 4.

5. The next day, September 21, 2005, counsel for Wachovia, Mr. Griesmeyer, sent a return telecopied letter, in which he said that he would only agree to the extension of one week if the Corporate Defendants and RCC waived all objections to Wachovia's discovery. A copy of Mr. Griesmeyer's letter of September 21, 2005 is attached as Exhibit 5.

6. A review of the discovery requests and the subpoena makes it obvious the unilateral waiver condition imposed by Mr. Griesmeyer is unreasonable and hence unacceptable to the Corporate Defendants and RCC.

7. Thus, having not received reasonable accommodation from Wachovia's counsel to get an extension of one week's time, the Corporate Defendants and RCC have now been forced (reluctantly) to file this motion.

8. There is no conceivable prejudice that can accrue to Wachovia by waiting an additional week to get responses to its discovery and the RCC subpoena, particularly since Wachovia's counsel has granted unconditional extensions of time to at least 17 of the other subpoenaed parties. (See Exhibit 6 hereto.) Moreover, the parties are not even due to submit their discovery plan to the Court until October 3, 2005, per the Court's order of September 14, 2005.

WHEREFORE, Banco Panamericano, Inc., Scattered Corporation, Loop Corp, Loop Properties, Inc. and Robinson Curley & Clayton, P.C., respectfully request the following relief:

a.     That the time for Defendants Banco, Scattered, Loop and Loop Properties to submit written responses, including any appropriate objections, to Plaintiff's First Set of Interrogatories and First Request for the Production of Documents directed to them be extended to September 30, 2005;

b.     That a Protective Order be entered continuing the time for Robinson Curley & Clayton, P.C. to respond to the subpoena served upon it, including the right to assert objections and claims of privilege, to 5:00 p.m. September 30, 2005;

c.     Any other relief this Court deems just and proper.

> BANCO PANAMERICANO, INC., SCATTERED
> CORPORATION and ROBINSON CURLEY &
> CLAYTON, P.C.
>
> By: _____
>        One of their attorneys

C. Philip Curley (ARDC No. 3124181)
John H. Wickert (ARDC No. 6188313)
Alan R. Dolinko (ARDC No. 6193228)
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker, Suite 1700
Chicago, Illinois 60606
(312) 663-3100
(312) 663-0303 Facsimile

LOOP CORP AND LOOP PROPERTIES, INC

By: _____
Its Attorney

Elizabeth D. Sharp (ARDC #6186624)
330 S. Wells, Suite 706
Chicago, Illinois 60606
(312) 344-5018 (phone)
(312) 341-4054 (fax)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WACHOVIA SECURITIES, LLC,  )
              Plaintiff,  )
                    )  Case No.  04 C 3082
     v.  )
                    )
DAVID NEUHAUSER;  ANDREW A.  )
JAHELKA;  RICHARD O. NICHOLS;  )
LEON A. GREENBLATT III;  BANCO  )  Judge William T. Hart
PANAMERICANO, INC., a South Dakota  )
Corporation; LOOP CORP., a South  )
Dakota corporation; LOOP PROPERTIES,  )  Magistrate Judge Michael T. Mason
INC., an Illinois corporation; and  )
SCATTERED CORP., a South Dakota  )
corporation;  )
           Defendants.  )

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT SCATTERED CORP.

The Plaintiff, Wachovia Securities, LLC, by its attorneys, Steven P. Gomberg, Gary I. Blackman and Christopher S. Griesmeyer of Levenfeld Pearlstein, LLC, and pursuant to Rule 33 of the Federal Rules of Civil Procedure, propounds the following Interrogatories upon the Defendant Scattered Corp. to be answered under oath within thirty (30) days.

### DEFINITIONS

The words and phrases set out below have the following meaning or meanings:

1.    The words **"Scattered," "Defendant," "you,"** or **"your"** shall mean the Defendant, Scattered Corp., in this lawsuit, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Scattered's control or on its behalf.


EXHIBIT 1

2.     The words **"Plaintiff," "Wachovia"** or **"Prudential"** shall mean the Plaintiff, Wachovia Securities, LLC, including all past and present predecessors (including Prudential Securities Incorporated), successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person the Defendants knew or should have known, or believed or had reason to believe, was acting under Wachovia's control or on its behalf.

3.     The word **"Neuhauser"** shall mean the Defendant, David Neuhauser, including his representatives, agents and any person authorized to act on his behalf.

4.     The word **"Jahelka"** shall mean the Defendant, Andrew A. Jahelka, including his representatives, agents and any person authorized to act on his behalf.

5.     The word **"Nichols"** shall mean the Defendant, Richard O. Nichols, including his representatives, agents and any person authorized to act on his behalf.

6.     The word **"Greenblatt"** shall mean the Defendant, Leon A. Greenblatt, III, including his representatives, agents and any person authorized to act on his behalf.

7.     The word **"NOLA"** shall mean NOLA, LLC, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, members, managers, employees, representatives, agents, related entities, and any person acting under NOLA's control or on its behalf.

8.     The words **"Repurchase"** or **"Repurchase Corp."** shall mean Repurchase Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Repurchase's control or on its behalf.

2

9.    The words **"South Beach"** or **"South Beach Securities, Inc."** shall mean South Beach Securities, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under South Beach's control or on its behalf.

10.    The words **"Teletech"** or **"Teletech Systems."** shall mean Teletech Systems, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Teletech's control or on its behalf.

11.    The words **"Banco"** or **"Banco Panamericano"** shall mean Defendant Banco Panamericano, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Banco's control or on its behalf.

12.    The words **"Loop Properties"** shall mean Defendant Loop Properties, Inc, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop Properties' control or on its behalf.

13.    The words **"Loop"** or **"Loop Corp."** shall mean Defendant Loop Corp., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop's control or on its behalf.

14.    The word **"Chiplease"** shall mean Chiplease, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers,

directors, shareholders, employees, agents, related entities, and any person acting under Chiplease's control or on its behalf.

15. The words **"Greenblatt-Controlled Entity"** shall mean any of the following persons or entities, including their principals (if any):

(a) Loop

(b) NOLA

(c) South Beach Securities

(d) Rumpelstiltskin (USA) Corp.

(e) Chiplease

(f) Scattered

(g) Loop Properties

(h) Banco Panamericano

(i) Teletech Systems

(j) Repurchase

(k) H&M Partners, GP

(l) Sterling Telemanagement, Inc.

(m) Sterling Telemanagement Consultants, LLC

(n) EZ Links Golf, LLC

(o) EZ Links Golf, Inc.

(p) Resource Technology Corp.

(q) 200 West Partners, LP

(r) 200 West Properties, Inc.

(s) Old Colony Partners, LP

(t) Old Colony Properties, Inc.

(u) Telegraph Properties, LP

(v) Telegraph Properties, Inc.

(w) Randolph Properties, LP

(x) Randolph Properties, Inc.

(y) The Greenblatt Family Trust

(z) Leon Greenblatt, III

(aa) Leon Greenblatt, II

(bb) Richard Nichols

(cc) James Nichols

(dd) Andrew Jahelka

(ee) Robert Jahelka

(ff) David Neuhauser

(gg) Leslie Jabine

(hh) Any other entity in which Greenbelt, Nichols, Jahelka, Neuhauser or any of their relations are an "insider" (as that term is defined by the Illinois Uniform Fraudulent Transfer Act, "UFTA") or hold a controlling interest, including any subsidiary or "affiliate" (as that term is defined by the UFTA) of any such entity.

4

16. The words **"asset"** or **"assets"** shall mean anything that may be the subject of ownership.

17. The words **"transfer"** or **"transfers"** shall mean every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

18. The words **"lawsuit"** or **"Complaint"** refer to the Complaint (including all amended versions thereof) filed by the Plaintiff, Wachovia Securities, LLC, and assigned Case No. 04 C 3082, in the United States District Court for the Northern District of Illinois, Eastern Division.

19. The words **"document"** or **"documents"** mean any and all written, recorded, filmed, or graphic matter, whether produced or reproduced, on paper, cards, tapes, film, electronic facsimile, computer storage devices or any other media, and any other things within the scope of the applicable Rules of Civil Procedure, including, but not limited to, statements, ledgers, orders, purchase orders, sales tickets, order or transaction confirmations, articles, by-laws, research files, accounts, brochures, pamphlets, bulletins, circulars, letters, correspondence, electronic mail messages, telegrams, telexes, facsimile transmissions, telecopies, publications, agreements, forecasts, statistical statements, minutes or records of meetings or conferences, policy statements, memoranda, notes, records, reports, studies, interoffice and/or intraoffice communications, working papers, reports and/or summaries or investigations, notices, calendar and diary entries, microfilm, messages, maps, charts, tabulations, summaries or abstracts, tape recordings, work sheets, any notes or writings pertaining to any meetings, oral or telephonic communication, surveys, graphs, statistics, tables, any computer printouts, computer software or

code (whether in machine or human readable form on any medium), rules, regulations, opinions, orders, interpretations, guidelines, envelopes, all marginalia or stamped material, and also including, but not limited to, originals and all copies which are different in any way from the original whether by interlineations, receipt stamp, notations, indication of copies sent or received, or otherwise, and drafts, which are in the possession, custody or control of the Defendants or in the possession, custody or control of the present or former agents, representatives or attorneys of the Defendants or any persons acting on their behalf, including documents at any time in the possession, custody or control of such individuals or entities known by the Defendants to exist.

20. The word **"communication"** means any transmittal of information including correspondence, electronic-mail, telex, facsimile transmission, telecopy, recording in any medium of oral communication, telephone and message log, note or memorandum relating to written or oral communications, and any translation thereof.

21. The word **"person"** means, without limitation, any natural person, corporation, partnership, association, sole proprietorship, cooperative or other entity.

22. The word **"date"** shall mean the exact date, month and year, if ascertainable, or if not, the best approximation (including a description of relationships to other events) with the indication that it is an approximation.

23. The words **"describe in detail"** and **"set forth the factual basis"** shall mean: (a) to describe fully by reference to underlying facts rather than by ultimate facts or conclusions of facts or law; and (b) to particularize as to: (i) times, (ii) place, and (iii) manner.

6

24.    The words **"description"** or **"describe"** shall mean to provide a narrative, detailed and chronological history of the incident or events inquired about, including pertinent dates, identifying persons involved and identifying documents utilized or generated thereby.

25.    The word **"identify"** when used with reference to an individual person shall mean to state his or her (a) full name (or, if not known, his or her job title or position and employer, or if no other identification is possible, provide a sufficient description so that he or she will be identifiable); (b) title; (c) present position and business affiliation; (d) the person whom he or she was representing or acting for; (e) present (or last known, with indication of the date of that last knowledge) business address; and (f) present (or last known, with indication of the date of that last knowledge) residence address.

26.    The word **"identify"** when used with reference to a document shall mean to: (a) state the type of document (e.g., memorandum, contract, letter, etc.); (b) set forth its date; (d) identify the author (and if different, the originator and signer); (d) set forth the title, heading or other designation, numerical or otherwise, of the document; (e) identify the person(s) (or if widely distributed, set forth the organization of classes of persons) to whom the document was sent; (f) set forth the present or last known location of the document; and (g) describe and set forth the substance of the document. Alternatively, you may identify the document by Bates number, if produced.

27.    The word **"identify"** when used concerning any fact, information, source of information or reason, means to (a) describe the substance of the fact, information, source of information or reason; (b) identify every person who was the source of the information; (c) state whether any minutes, notes, memoranda, or other record of such fact, information, source of

7

information or reason were made; (d) state whether such record now exists; and (e) identify the person presently having possession, custody, or control of each such record.

28. The words **"relating to"** mean, without limitation, in any way constituting, mentioning, referring to, describing, summarizing, evidencing, listing, indicating, relevant to, demonstrating, tending to prove or disprove, containing, reflecting, concerning, pertaining to, constituting, analyzing, explaining, or in any way logically or factually connected with the matter discussed.

29. The word **"concerning"** means regarding, referring to, discussing, describing, reflecting, identifying, dealing with, consisting of, constituting, explaining, comprising, relating to, or in any way pertaining to in whole or in part, directly or indirectly, to the subject matter of this lawsuit.

30. The words **"support,"** **"supports,"** and **"supporting"** shall mean to establish or prove under a preponderance of the evidence standard.

31. The word **"including"** shall mean including without limitation.

32. The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

33. All references to the singular shall include the plural, and all references to the plural shall include the singular.

34. A masculine, feminine, or neuter pronoun shall not exclude the other genders.

8

## INSTRUCTIONS

1.      In answering these Interrogatories, furnish all information or documents that are available to you, including information or documents in the possession of your attorneys or investigators for your attorneys and not merely such information known of your own personal knowledge. If you cannot answer any of the following Interrogatories in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

2.      The Interrogatories that follow are to be regarded as continuing in that you have a duty to seasonably supplement your responses to them. You are requested to provide, by way of answers thereto, such additional information or documents as you or any other person on your behalf may hereafter obtain which will augment or otherwise modify your answers now given to the interrogatories below. Such supplementary responses are to be served upon the Plaintiff within thirty (30) days after receipt of such information or documents.

3.      If any information or documents responsive to the Interrogatories below are withheld on the basis of a claim of privilege, set forth a statement detailing as to each item of information or document:

(a)      the name of the sender or the source, if any, of the documents or information;

(b)      the type of any document;

(c)      the name of the author of any document;

(d)      the name of any persons to whom the information was divulged or copies of the document were sent;

(e)      the date the information was communicated or the date of the document;

(f)      the date on which the information or document was received by all those having possession of the information or document;

9

(g)    a brief description of the nature and the subject matter of the information or document;

(h)    the nature of the privilege claimed;

(i)    attachments to any such document; and

(j)    the number of pages comprising any document.

4.    If a document has been destroyed, lost or otherwise discarded, please state as to each such document:

(a)    the identity of the person who prepared it;

(b)    the identity of the person who signed it or over whose name it was issued;

(c)    the identity of each person to whom it was addressed, distributed, or copied;

(d)    the nature or substance of the document with sufficient particularity to enable it to be identified;

(e)    its date, and, if it bears no date, the date when it was prepared; and

(f)    its disposition (e.g., lost, destroyed, etc.).

5.    If you produce any document described herein, whether pursuant to the Federal Rules of Civil Procedure or otherwise, then pursuant to the Federal Rules of Civil Procedure, such documents must be produced as they are kept in the usual course of business or are to be organized and labeled to correspond with the categories set forth below.

6.    **Unless otherwise indicated, the time period covered in these Interrogatories is <u>January 1, 2000 to the present</u>.**

## INTERROGATORIES

1. Identify each person responding to these Interrogatories, as well as each person consulted in preparing responses to these Interrogatories, and for each such person identified: describe their position at Scattered, and describe in detail the foundation for their knowledge regarding the factual matters asserted in these Interrogatories.

ANSWER:

2. Identify each lawyer (both in-house counsel and independent counsel) retained or employed by Scattered and involved in: (a) the formation of Scattered; (b) maintaining the corporate and business records of Scattered; (c) representing Scattered in negotiating any lease; (d) representing Scattered in any transaction in which Loop and/or NOLA transferred any asset to Scattered; and/or (e) representing Scattered in any litigation in which the plaintiff(s) asserted claims for fraud, alter ego/veil piercing, fraudulent transfer or conspiracy.

ANSWER:

3. Identify the date of each stock certificate issued by Scattered and the person or entity to which each such stock certificate was issued.

ANSWER:

11

4. Identify all current and former employees of Scattered, and for each person identified, state their position, responsibilities, dates of employment, and describe the salary, benefits and other forms of compensation paid to them.

ANSWER:

5. Identify the dates of all Scattered shareholder meetings and board of director meetings, and describe in detail the issues discussed at each such meeting.

ANSWER:

6. State whether Scattered has paid dividends to its shareholders, and if so, identify the date of each such dividend, the amount of each such dividend, the recipient of each such dividend, the reason for each such dividend, and the persons with knowledge of such dividends.

ANSWER:

7. Identify Scattered's primary business address and telephone number, as well as the addresses and telephone numbers of any of its branch offices.

ANSWER:

12

8.    State whether Scattered leases or owns its office space. If Scattered leases its office space, identify Scattered's landlord (including the principals of the landlord, if any), and state the amount of monthly rent and expenses Scattered pays for its office space.

ANSWER:

9.    Identify the persons at Scattered responsible for Scattered's decision to acquire stock of Health Risk Management, Inc. ("HRMI"), as well as all persons with knowledge about Scattered's acquisition of HRMI stock.

ANSWER:

10.    Identify all assets of Scattered (including assets of Scattered's subsidiaries and affiliates) during the time period from January 1, 2000 through the present, including the date each such asset was acquired and (if applicable) divested.

ANSWER:

11.    Identify all liens or encumbrances against any assets of Scattered (including Scattered's subsidiaries and affiliates).

ANSWER:

13

12.    Identify all checking accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Scattered (including Scattered's subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

13.    Identify all savings accounts, money market accounts, trusts or other such bank accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Scattered (including Scattered's subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

14.    Identify all trading or brokerage accounts (including by account number, name of financial institution, and address of branch office) held by or in the name of Scattered and/or Scattered's subsidiaries and affiliates during the time period from January 1, 2000 through the present.

ANSWER:

14

15.    Identify any and all transfers of assets from Loop to Scattered (or any of Scattered's subsidiaries or affiliates) during the time period from January 1, 2000 through the present, and for each such transfer: (a) identify the asset transferred and the date of transfer; (b) identify the name and address of the transferee, including the names and addresses of the principals of the transferee (if any); (c) describe the value or consideration paid to Loop for the transfer; (d) describe in detail the nature and purpose of the transfer; (e) identify all persons with knowledge of each such transfer; and (f) identify the current location or status of the asset.

ANSWER:

16.    To the extent you do not provide this information in response to Interrogatory No. 15 above, please describe in detail the facts and circumstances surrounding the transfer of Loop's shares of EZLinks Golf, Inc. stock to Scattered identified in Paragraph 63 of Wachovia's First Amended Complaint, including: (a) the reason for the transfer, (b) the value or consideration paid to Loop for the stock, and (c) all persons with knowledge of the transfer.

ANSWER:

17.    Identify each witness that Scattered will call to testify at trial or any evidentiary hearing in this lawsuit, and for each witness identified describe in detail the subject matter of his/her testimony and the basis for that testimony. If Scattered will call any expert witness, also

15

describe the qualifications of the expert and produce any and all reports prepared by the expert and any documents relied upon in forming the opinions of the expert.

ANSWER:

Dated: August 4, 2005                                    Respectfully submitted,

                                                **WACHOVIA SECURITIES, LLC**

                                        By: _____
                                                One of Its Attorneys

Steven P. Gomberg (ARDC# 1004204)
Gary I. Blackman (ARDC# 6187914)
Christopher S. Griesmeyer (ARDC# 6269851)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street
Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)

16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 04 C 3082** |
| | ) | |
| DAVID NEUHAUSER; ANDREW A. | ) | |
| JAHELKA; RICHARD O. NICHOLS; | ) | |
| LEON A. GREENBLATT III; BANCO | ) | Judge William T. Hart |
| PANAMERICANO, INC., a South Dakota | ) | |
| Corporation; LOOP CORP., a South | ) | |
| Dakota corporation; LOOP PROPERTIES, | ) | Magistrate Judge Michael T. Mason |
| INC., an Illinois corporation; and | ) | |
| SCATTERED CORP., a South Dakota | ) | |
| corporation; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## DEFENDANT BANCO PANAMERICANO, INC.

The Plaintiff, Wachovia Securities, LLC, by its attorneys, Steven P. Gomberg, Gary I.

Blackman and Christopher S. Griesmeyer of Levenfeld Pearlstein, LLC, and pursuant to Rule 33

of the Federal Rules of Civil Procedure, propounds the following Interrogatories upon the

Defendant Banco Panamericano, Inc. to be answered under oath within thirty (30) days.

### DEFINITIONS

The words and phrases set out below have the following meaning or meanings:

1.      The words **"Banco," "Banco Panamericano," "Defendant," "you,"** or **"your"**

shall mean the Defendant, Banco Panamericano, Inc., in this lawsuit including all past and

present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies,

officers, directors, shareholders, employees, agents, related entities, and any person acting under

Banco's control or on its behalf.

2.     The words **"Plaintiff," "Wachovia"** or **"Prudential"** shall mean the Plaintiff, Wachovia Securities, LLC, including all past and present predecessors (including Prudential Securities Incorporated), successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person the Defendants knew or should have known, or believed or had reason to believe, was acting under Wachovia's control or on its behalf.

3.     The word **"Neuhauser"** shall mean the Defendant, David Neuhauser, including his representatives, agents and any person authorized to act on his behalf.

4.     The word **"Jahelka"** shall mean the Defendant, Andrew A. Jahelka, including his representatives, agents and any person authorized to act on his behalf.

5.     The word **"Nichols"** shall mean the Defendant, Richard O. Nichols, including his representatives, agents and any person authorized to act on his behalf.

6.     The word **"Greenblatt"** shall mean the Defendant, Leon A. Greenblatt, III, including his representatives, agents and any person authorized to act on his behalf.

7.     The word **"NOLA"** shall mean NOLA, LLC, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, members, managers, employees, representatives, agents, related entities, and any person acting under NOLA's control or on its behalf.

8.     The words **"Repurchase"** or **"Repurchase Corp."** shall mean Repurchase Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Repurchase's control or on its behalf.

2

9. The words **"South Beach"** or **"South Beach Securities, Inc."** shall mean South Beach Securities, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under South Beach's control or on its behalf.

10. The words **"Teletech"** or **"Teletech Systems."** shall mean Teletech Systems, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Teletech's control or on its behalf.

11. The words **"Scattered"** or **"Scattered Corp."** shall mean Defendant Scattered Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Scattered's control or on its behalf.

12. The words **"Loop Properties"** shall mean Defendant Loop Properties, Inc, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop Properties' control or on its behalf.

13. The words **"Loop"** or **"Loop Corp."** shall mean Defendant Loop Corp., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop's control or on its behalf.

14. The word **"Chiplease"** shall mean Chiplease, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers,

3

directors, shareholders, employees, agents, related entities, and any person acting under Chiplease's control or on its behalf.

15. The words **"Greenblatt-Controlled Entity"** shall mean any of the following persons or entities, including their principals (if any):

| | |
|---|---|
| (a) Loop | (r) 200 West Properties, Inc. |
| (b) NOLA | (s) Old Colony Partners, LP |
| (c) South Beach Securities | (t) Old Colony Properties, Inc. |
| (d) Rumpelstiltskin (USA) Corp. | (u) Telegraph Properties, LP |
| (e) Chiplease | (v) Telegraph Properties, Inc. |
| (f) Scattered | (w) Randolph Properties, LP |
| (g) Loop Properties | (x) Randolph Properties, Inc. |
| (h) Banco Panamericano | (y) The Greenblatt Family Trust |
| (i) Teletech Systems | (z) Leon Greenblatt, III |
| (j) Repurchase | (aa) Leon Greenblatt, II |
| (k) H&M Partners, GP | (bb) Richard Nichols |
| (l) Sterling Telemanagement, Inc. | (cc) James Nichols |
| (m) Sterling Telemanagement Consultants, LLC | (dd) Andrew Jahelka |
| (n) EZ Links Golf. LLC | (ee) Robert Jahelka |
| (o) EZ Links Golf, Inc. | (ff) David Neuhauser |
| (p) Resource Technology Corp. | (gg) Leslie Jabine |
| (q) 200 West Partners, LP | (hh) Any other entity in which Greenbelt, Nichols, Jahelka, Neuhauser or any of their relations are an "insider" (as that term is defined by the Illinois Uniform Fraudulent Transfer Act, "UFTA") or hold a controlling interest, including any subsidiary or "affiliate" (as that term is defined by the UFTA) of any such entity. |

4

16.   The words **"asset"** or **"assets"** shall mean anything that may be the subject of ownership.

17.   The words **"transfer"** or **"transfers"** shall mean every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

18.   The words **"lawsuit"** or **"Complaint"** refer to the Complaint (including all amended versions thereof) filed by the Plaintiff, Wachovia Securities, LLC and assigned Case No. 04 C 3082, in the United States District Court for the Northern District of Illinois, Eastern Division.

19.   The words **"document"** or **"documents"** mean any and all written, recorded, filmed, or graphic matter, whether produced or reproduced, on paper, cards, tapes, film, electronic facsimile, computer storage devices or any other media, and any other things within the scope of the applicable Rules of Civil Procedure, including, but not limited to, statements, ledgers, orders, purchase orders, sales tickets, order or transaction confirmations, articles, by-laws, research files, accounts, brochures, pamphlets, bulletins, circulars, letters, correspondence, electronic mail messages, telegrams, telexes, facsimile transmissions, telecopies, publications, agreements, forecasts, statistical statements, minutes or records of meetings or conferences, policy statements, memoranda, notes, records, reports, studies, interoffice and/or intraoffice communications, working papers, reports and/or summaries or investigations, notices, calendar and diary entries, microfilm, messages, maps, charts, tabulations, summaries or abstracts, tape recordings, work sheets, any notes or writings pertaining to any meetings, oral or telephonic communication, surveys, graphs, statistics, tables, any computer printouts, computer software or

5

code (whether in machine or human readable form on any medium), rules, regulations, opinions, orders, interpretations, guidelines, envelopes, all marginalia or stamped material, and also including, but not limited to, originals and all copies which are different in any way from the original whether by interlineations, receipt stamp, notations, indication of copies sent or received, or otherwise, and drafts, which are in the possession, custody or control of the Defendants or in the possession, custody or control of the present or former agents, representatives or attorneys of the Defendants or any persons acting on their behalf, including documents at any time in the possession, custody or control of such individuals or entities known by the Defendants to exist.

20.     The word **"communication"** means any transmittal of information including correspondence, electronic-mail, telex, facsimile transmission, telecopy, recording in any medium of oral communication, telephone and message log, note or memorandum relating to written or oral communications, and any translation thereof.

21.     The word **"person"** means, without limitation, any natural person, corporation, partnership, association, sole proprietorship, cooperative or other entity.

22.     The word **"date"** shall mean the exact date, month and year, if ascertainable, or if not, the best approximation (including a description of relationships to other events) with the indication that it is an approximation.

23.     The words **"describe in detail"** and **"set forth the factual basis"** shall mean: (a) to describe fully by reference to underlying facts rather than by ultimate facts or conclusions of facts or law; and (b) to particularize as to: (i) times, (ii) place, and (iii) manner.

24. The words **"description"** or **"describe"** shall mean to provide a narrative, detailed and chronological history of the incident or events inquired about, including pertinent dates, identifying persons involved and identifying documents utilized or generated thereby.

25. The word **"identify"** when used with reference to an individual person shall mean to state his or her (a) full name (or, if not known, his or her job title or position and employer, or if no other identification is possible, provide a sufficient description so that he or she will be identifiable); (b) title; (c) present position and business affiliation; (d) the person whom he or she was representing or acting for; (e) present (or last known, with indication of the date of that last knowledge) business address; and (f) present (or last known, with indication of the date of that last knowledge) residence address.

26. The word **"identify"** when used with reference to a document shall mean to: (a) state the type of document (e.g., memorandum, contract, letter, etc.); (b) set forth its date; (d) identify the author (and if different, the originator and signer); (d) set forth the title, heading or other designation, numerical or otherwise, of the document; (e) identify the person(s) (or if widely distributed, set forth the organization of classes of persons) to whom the document was sent; (f) set forth the present or last known location of the document; and (g) describe and set forth the substance of the document. Alternatively, you may identify the document by Bates number, if produced.

27. The word **"identify"** when used concerning any fact, information, source of information or reason, means to (a) describe the substance of the fact, information, source of information or reason; (b) identify every person who was the source of the information; (c) state whether any minutes, notes, memoranda, or other record of such fact, information, source of

7

information or reason were made; (d) state whether such record now exists; and (e) identify the person presently having possession, custody, or control of each such record.

28.    The words **"relating to"** mean, without limitation, in any way constituting, mentioning, referring to, describing, summarizing, evidencing, listing, indicating, relevant to, demonstrating, tending to prove or disprove, containing, reflecting, concerning, pertaining to, constituting, analyzing, explaining, or in any way logically or factually connected with the matter discussed.

29.    The word **"concerning"** means regarding, referring to, discussing, describing, reflecting, identifying, dealing with, consisting of, constituting, explaining, comprising, relating to, or in any way pertaining to in whole or in part, directly or indirectly, to the subject matter of this lawsuit.

30.    The words **"support,"** **"supports,"** and **"supporting"** shall mean to establish or prove under a preponderance of the evidence standard.

31.    The word **"including"** shall mean including without limitation.

32.    The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

33.    All references to the singular shall include the plural, and all references to the plural shall include the singular.

34.    A masculine, feminine, or neuter pronoun shall not exclude the other genders.

## INSTRUCTIONS

1.     In answering these Interrogatories, furnish all information or documents that are available to you, including information or documents in the possession of your attorneys or investigators for your attorneys and not merely such information known of your own personal knowledge. If you cannot answer any of the following Interrogatories in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

2.     The Interrogatories that follow are to be regarded as continuing in that you have a duty to seasonably supplement your responses to them. You are requested to provide, by way of answers thereto, such additional information or documents as you or any other person on your behalf may hereafter obtain which will augment or otherwise modify your answers now given to the interrogatories below. Such supplementary responses are to be served upon the Plaintiff within thirty (30) days after receipt of such information or documents.

3.     If any information or documents responsive to the Interrogatories below are withheld on the basis of a claim of privilege, set forth a statement detailing as to each item of information or document:

(a)     the name of the sender or the source, if any, of the documents or information;

(b)     the type of any document;

(c)     the name of the author of any document;

(d)     the name of any persons to whom the information was divulged or copies of the document were sent;

(e)     the date the information was communicated or the date of the document;

(f)     the date on which the information or document was received by all those having possession of the information or document;

9

(g)     a brief description of the nature and the subject matter of the information or document;

(h)     the nature of the privilege claimed;

(i)     attachments to any such document; and

(j)     the number of pages comprising any document.

4.     If a document has been destroyed, lost or otherwise discarded, please state as to each such document:

(a)     the identity of the person who prepared it;

(b)     the identity of the person who signed it or over whose name it was issued;

(c)     the identity of each person to whom it was addressed, distributed, or copied;

(d)     the nature or substance of the document with sufficient particularity to enable it to be identified;

(e)     its date, and, if it bears no date, the date when it was prepared; and

(f)     its disposition (e.g., lost, destroyed, etc.).

5.     If you produce any document described herein, whether pursuant to the Federal Rules of Civil Procedure or otherwise, then pursuant to the Federal Rules of Civil Procedure, such documents must be produced as they are kept in the usual course of business or are to be organized and labeled to correspond with the categories set forth below.

6.     **Unless otherwise indicated, the time period covered in these Interrogatories is <u>January 1, 2000 to the present</u>.**

10

## INTERROGATORIES

1.      Identify each person responding to these Interrogatories, as well as each person consulted in preparing responses to these Interrogatories, and for each such person identified: describe their position at Banco, and describe in detail the foundation for their knowledge regarding the factual matters asserted in these Interrogatories.

ANSWER:

2.      Identify each lawyer (both in-house counsel and independent counsel) retained or employed by Banco and involved in: (a) the formation of Banco; (b) maintaining the corporate and business records of Banco; (c) representing Banco in negotiating any lease; (d) representing Banco in any transaction in which Loop and/or NOLA transferred any asset to Banco; and/or (e) representing Banco in any litigation in which the plaintiff(s) asserted claims for fraud, alter ego/veil piercing, fraudulent transfer or conspiracy.

ANSWER:

3.      Identify the date of each stock certificate issued by Banco and the person or entity to which each such stock certificate was issued.

ANSWER:

11

4.    Identify all current and former employees of Banco, and for each person identified, state their position, responsibilities, dates of employment, and describe the salary, benefits and other forms of compensation paid to them.

ANSWER:

5.    Identify the dates of all Banco shareholder meetings and board of director meetings, and describe in detail the issues discussed at each such meeting.

ANSWER:

6.    State whether Banco has paid dividends to its shareholders, and if so, identify the date of each such dividend, the amount of each such dividend, the recipient of each such dividend, the reason for each such dividend, and the persons with knowledge of such dividends.

ANSWER:

7.    Identify Banco's primary business address and telephone number, as well as the addresses and telephone numbers of any of its branch offices.

ANSWER:

12

8.     State whether Banco leases or owns its office space.  If Banco leases its office space, identify Banco's landlord (including the principals of the landlord, if any), and state the amount of monthly rent and expenses Banco pays for its office space.

ANSWER:

9.     Identify the persons at Banco responsible for Banco's decision to acquire stock of Health Risk Management, Inc. ("HRMI"), as well as all persons with knowledge about Banco's acquisition of HRMI stock.

ANSWER:

10.     Identify all assets of Banco (including assets of Banco's subsidiaries and affiliates) during the time period from January 1, 2000 through the present, including the date each such asset was acquired and (if applicable) divested.

ANSWER:

11.     Identify all liens or encumbrances against any assets of Banco (including Banco's subsidiaries and affiliates).

ANSWER:

13

12.    Identify all checking accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Banco (including Banco's subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

13.    Identify all savings accounts, money market accounts, trusts or other such bank accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Banco (including Banco's subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

14.    Identify all trading or brokerage accounts (including by account number, name of financial institution, and address of branch office) held by or in the name of Banco and/or Banco's subsidiaries and affiliates during the time period from January 1, 2000 through the present.

ANSWER:

14

15.     Identify any and all transfers of assets from Loop to Banco (or any of Banco's subsidiaries or affiliates) during the time period from January 1, 2000 through the present, and for each such transfer: (a) identify the asset transferred and the date of transfer; (b) identify the name and address of the transferee, including the names and addresses of the principals of the transferee (if any); (c) describe the value or consideration paid to Loop for the transfer; (d) describe in detail the nature and purpose of the transfer; (e) identify all persons with knowledge of each such transfer; and (f) identify the current location or status of the asset.

ANSWER:

16.     To the extent you do not provide this information in response to Interrogatory No. 15 above, please describe in detail the facts and circumstances surrounding the April 1, 2002 transaction identified in Paragraph 64 of Wachovia's First Amended Complaint, in which Loop granted Banco a security interest in certain of Loop's assets, including: (a) the reason for the transaction, (b) the value or consideration paid to Loop pursuant to the transaction, and (c) all persons with knowledge of the transaction.

ANSWER:

17.     Identify each witness that Banco will call to testify at trial or any evidentiary hearing in this lawsuit, and for each witness identified describe in detail the subject matter of his/her testimony and the basis for that testimony.  If Banco will call any expert witness, also

15

describe the qualifications of the expert and produce any and all reports prepared by the expert and any documents relied upon in forming the opinions of the expert.

ANSWER:

Dated: August 4, 2005

Respectfully submitted,

**WACHOVIA SECURITIES, LLC**

By: _____
One of Its Attorneys

Steven P. Gomberg (ARDC# 1004204)
Gary I. Blackman (ARDC# 6187914)
Christopher S. Griesmeyer (ARDC# 6269851)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street
Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)

16

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  04  C  3082 |
| | ) | |
| DAVID NEUHAUSER;  ANDREW A. | ) | |
| JAHELKA;  RICHARD O. NICHOLS; | ) | |
| LEON A. GREENBLATT III;  BANCO | ) | Judge William T. Hart |
| PANAMERICANO, INC., a South Dakota | ) | |
| Corporation; LOOP CORP., a South | ) | |
| Dakota corporation; LOOP PROPERTIES, | ) | Magistrate Judge Michael T. Mason |
| INC., an Illinois corporation; and | ) | |
| SCATTERED CORP., a South Dakota | ) | |
| corporation; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## DEFENDANT LOOP CORP.

The Plaintiff, Wachovia Securities, LLC, by its attorneys, Steven P. Gomberg, Gary I.

Blackman and Christopher S. Griesmeyer of Levenfeld Pearlstein, LLC, and pursuant to Rule 33

of the Federal Rules of Civil Procedure, propounds the following Interrogatories upon the

Defendant Loop Corp. to be answered under oath within thirty (30) days.

## DEFINITIONS

The words and phrases set out below have the following meaning or meanings:

1.     The words **"Loop," "Defendant," "you,"** or **"your"** shall mean the Defendant,

Loop Corp., in this lawsuit, including all past and present predecessors, successors, assigns,

parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees,

agents, related entities, and any person acting under Loop's control or on its behalf.

2.     The words **"Plaintiff," "Wachovia"** or **"Prudential"** shall mean the Plaintiff, Wachovia Securities, LLC, including all past and present predecessors (including Prudential Securities Incorporated), successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person the Defendants knew or should have known, or believed or had reason to believe, was acting under Wachovia's control or on its behalf.

3.     The word **"Neuhauser"** shall mean the Defendant, David Neuhauser, including his representatives, agents and any person authorized to act on his behalf.

4.     The word **"Jahelka"** shall mean the Defendant, Andrew A. Jahelka, including his representatives, agents and any person authorized to act on his behalf.

5.     The word **"Nichols"** shall mean the Defendant, Richard O. Nichols, including his representatives, agents and any person authorized to act on his behalf.

6.     The word **"Greenblatt"** shall mean the Defendant, Leon A. Greenblatt, III, including his representatives, agents and any person authorized to act on his behalf.

7.     The word **"NOLA"** shall mean NOLA, LLC, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, members, managers, employees, representatives, agents, related entities, and any person acting under NOLA's control or on its behalf.

8.     The words **"Repurchase"** or **"Repurchase Corp."** shall mean Repurchase Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Repurchase's control or on its behalf.

9.    The words **"South Beach"** or **"South Beach Securities, Inc."** shall mean South Beach Securities, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under South Beach's control or on its behalf.

10.    The words **"Teletech"** or **"Teletech Systems."** shall mean Teletech Systems, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Teletech's control or on its behalf.

11.    The words **"Scattered"** or **"Scattered Corp."** shall mean Defendant Scattered Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Scattered's control or on its behalf.

12.    The words **"Loop Properties"** shall mean Defendant Loop Properties, Inc, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop Properties' control or on its behalf.

13.    The words **"Banco"** or **"Banco Panamericano"** shall mean Defendant Banco Panamericano, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Banco's control or on its behalf.

14.    The word **"Chiplease"** shall mean Chiplease, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers,

directors, shareholders, employees, agents, related entities, and any person acting under Chiplease's control or on its behalf.

15. The words **"Greenblatt-Controlled Entity"** shall mean any of the following persons or entities, including their principals (if any):

(a) Loop

(b) NOLA

(c) South Beach Securities

(d) Rumpelstiltskin (USA) Corp.

(e) Chiplease

(f) Scattered

(g) Loop Properties

(h) Banco Panamericano

(i) Teletech Systems

(j) Repurchase

(k) H&M Partners, GP

(l) Sterling Telemanagement, Inc.

(m) Sterling Telemanagement Consultants, LLC

(n) EZ Links Golf, LLC

(o) EZ Links Golf, Inc.

(p) Resource Technology Corp.

(q) 200 West Partners, LP

(r) 200 West Properties, Inc.

(s) Old Colony Partners, LP

(t) Old Colony Properties, Inc.

(u) Telegraph Properties, LP

(v) Telegraph Properties, Inc.

(w) Randolph Properties, LP

(x) Randolph Properties, Inc.

(y) The Greenblatt Family Trust

(z) Leon Greenblatt, III

(aa) Leon Greenblatt, II

(bb) Richard Nichols

(cc) James Nichols

(dd) Andrew Jahelka

(ee) Robert Jahelka

(ff) David Neuhauser

(gg) Leslie Jabine

(hh) Any other entity in which Greenbelt, Nichols, Jahelka, Neuhauser or any of their relations are an "insider" (as that term is defined by the Illinois Uniform Fraudulent Transfer Act, "UFTA") or hold a controlling interest, including any subsidiary or "affiliate" (as that term is defined by the UFTA) of any such entity.

4

16.     The words **"asset"** or **"assets"** shall mean anything that may be the subject of ownership.

17.     The words **"transfer"** or **"transfers"** shall mean every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

18.     The words **"lawsuit"** or **"Complaint"** refer to the Complaint (including all amended versions thereof) filed by the Plaintiff, Wachovia Securities, LLC Case No. 04 C 3082, in the United States District Court for the Northern District of Illinois, Eastern Division.

19.     The words **"document"** or **"documents"** mean any and all written, recorded, filmed, or graphic matter, whether produced or reproduced, on paper, cards, tapes, film, electronic facsimile, computer storage devices or any other media, and any other things within the scope of the applicable Rules of Civil Procedure, including, but not limited to, statements, ledgers, orders, purchase orders, sales tickets, order or transaction confirmations, articles, by-laws, research files, accounts, brochures, pamphlets, bulletins, circulars, letters, correspondence, electronic mail messages, telegrams, telexes, facsimile transmissions, telecopies, publications, agreements, forecasts, statistical statements, minutes or records of meetings or conferences, policy statements, memoranda, notes, records, reports, studies, interoffice and/or intraoffice communications, working papers, reports and/or summaries or investigations, notices, calendar and diary entries, microfilm, messages, maps, charts, tabulations, summaries or abstracts, tape recordings, work sheets, any notes or writings pertaining to any meetings, oral or telephonic communication, surveys, graphs, statistics, tables, any computer printouts, computer software or code (whether in machine or human readable form on any medium), rules, regulations, opinions,

orders, interpretations, guidelines, envelopes, all marginalia or stamped material, and also including, but not limited to, originals and all copies which are different in any way from the original whether by interlineations, receipt stamp, notations, indication of copies sent or received, or otherwise, and drafts, which are in the possession, custody or control of the Defendants or in the possession, custody or control of the present or former agents, representatives or attorneys of the Defendants or any persons acting on their behalf, including documents at any time in the possession, custody or control of such individuals or entities known by the Defendants to exist.

20.     The word **"communication"** means any transmittal of information including correspondence, electronic-mail, telex, facsimile transmission, telecopy, recording in any medium of oral communication, telephone and message log, note or memorandum relating to written or oral communications, and any translation thereof.

21.     The word **"person"** means, without limitation, any natural person, corporation, partnership, association, sole proprietorship, cooperative or other entity.

22.     The word **"date"** shall mean the exact date, month and year, if ascertainable, or if not, the best approximation (including a description of relationships to other events) with the indication that it is an approximation.

23.     The words **"describe in detail"** and **"set forth the factual basis"** shall mean: (a) to describe fully by reference to underlying facts rather than by ultimate facts or conclusions of facts or law; and (b) to particularize as to: (i) times, (ii) place, and (iii) manner.

24.     The words **"description"** or **"describe"** shall mean to provide a narrative, detailed and chronological history of the incident or events inquired about, including pertinent dates, identifying persons involved and identifying documents utilized or generated thereby.

6

25.     The word **"identify"** when used with reference to an individual person shall mean to state his or her (a) full name (or, if not known, his or her job title or position and employer, or if no other identification is possible, provide a sufficient description so that he or she will be identifiable); (b) title; (c) present position and business affiliation; (d) the person whom he or she was representing or acting for; (e) present (or last known, with indication of the date of that last knowledge) business address; and (f) present (or last known, with indication of the date of that last knowledge) residence address.

26.     The word **"identify"** when used with reference to a document shall mean to: (a) state the type of document (e.g., memorandum, contract, letter, etc.); (b) set forth its date; (d) identify the author (and if different, the originator and signer); (d) set forth the title, heading or other designation, numerical or otherwise, of the document; (e) identify the person(s) (or if widely distributed, set forth the organization of classes of persons) to whom the document was sent; (f) set forth the present or last known location of the document; and (g) describe and set forth the substance of the document.  Alternatively, you may identify the document by Bates number, if produced.

27.     The word **"identify"** when used concerning any fact, information, source of information or reason, means to (a) describe the substance of the fact, information, source of information or reason; (b) identify every person who was the source of the information; (c) state whether any minutes, notes, memoranda, or other record of such fact, information, source of information or reason were made; (d) state whether such record now exists; and (e) identify the person presently having possession, custody, or control of each such record.

28.     The words **"relating to"** mean, without limitation, in any way constituting, mentioning, referring to, describing, summarizing, evidencing, listing, indicating, relevant to,

demonstrating, tending to prove or disprove, containing, reflecting, concerning, pertaining to, constituting, analyzing, explaining, or in any way logically or factually connected with the matter discussed.

29. The word **"concerning"** means regarding, referring to, discussing, describing, reflecting, identifying, dealing with, consisting of, constituting, explaining, comprising, relating to, or in any way pertaining to in whole or in part, directly or indirectly, to the subject matter of this lawsuit.

30. The words **"support,"** **"supports,"** and **"supporting"** shall mean to establish or prove under a preponderance of the evidence standard.

31. The word **"including"** shall mean including without limitation.

32. The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

33. All references to the singular shall include the plural, and all references to the plural shall include the singular.

34. A masculine, feminine, or neuter pronoun shall not exclude the other genders.

## INSTRUCTIONS

1. In answering these Interrogatories, furnish all information or documents that are available to you, including information or documents in the possession of your attorneys or investigators for your attorneys and not merely such information known of your own personal knowledge. If you cannot answer any of the following Interrogatories in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying

your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

2.     The Interrogatories that follow are to be regarded as continuing in that you have a duty to seasonably supplement your responses to them. You are requested to provide, by way of answers thereto, such additional information or documents as you or any other person on your behalf may hereafter obtain which will augment or otherwise modify your answers now given to the interrogatories below. Such supplementary responses are to be served upon the Plaintiff within thirty (30) days after receipt of such information or documents.

3.     If any information or documents responsive to the Interrogatories below are withheld on the basis of a claim of privilege, set forth a statement detailing as to each item of information or document:

(a)     the name of the sender or the source, if any, of the documents or information;

(b)     the type of any document;

(c)     the name of the author of any document;

(d)     the name of any persons to whom the information was divulged or copies of the document were sent;

(e)     the date the information was communicated or the date of the document;

(f)     the date on which the information or document was received by all those having possession of the information or document;

(g)     a brief description of the nature and the subject matter of the information or document;

(h)     the nature of the privilege claimed;

(i)     attachments to any such document; and

(j)     the number of pages comprising any document.

9

4.   If a document has been destroyed, lost or otherwise discarded, please state as to each such document:

(a)   the identity of the person who prepared it;

(b)   the identity of the person who signed it or over whose name it was issued;

(c)   the identity of each person to whom it was addressed, distributed, or copied;

(d)   the nature or substance of the document with sufficient particularity to enable it to be identified;

(e)   its date, and, if it bears no date, the date when it was prepared; and

(f)   its disposition (e.g., lost, destroyed, etc.).

5.   If you produce any document described herein, whether pursuant to the Federal Rules of Civil Procedure or otherwise, then pursuant to the Federal Rules of Civil Procedure, such documents must be produced as they are kept in the usual course of business or are to be organized and labeled to correspond with the categories set forth below.

6.   **Unless otherwise indicated, the time period covered in these Interrogatories is <u>January 1, 2000 to the present.</u>**

## INTERROGATORIES

1.   Identify each person responding to these Interrogatories, as well as each person consulted in preparing responses to these Interrogatories, and for each such person identified: describe their position at Loop, and describe in detail the foundation for their knowledge regarding the factual matters asserted in these Interrogatories.

ANSWER:

2.   Identify each lawyer (both in-house counsel and independent counsel) retained or employed by Loop and involved in: (a) the formation of Loop; (b) maintaining the corporate and

business records of Loop; (c) representing Loop in negotiating any lease; (d) representing Loop in any transaction in which Loop transferred any asset; and/or (e) representing Loop in any litigation in which the plaintiff(s) asserted claims for fraud, alter ego/veil piercing, fraudulent transfer or conspiracy.

ANSWER:

3.    Identify the dates of all Loop shareholder meetings and board of director meetings, and describe in detail the issues discussed at each such meeting.

ANSWER:

4.    Identify the date of each stock certificate issued by Loop and the person or entity to which each such stock certificate was issued.

ANSWER:

5.    State whether Loop has paid dividends to its shareholders, and if so, identify the date of each such dividend, the amount of each such dividend, the recipient of each such dividend, the reason for each such dividend, and the persons with knowledge of such dividends.

ANSWER:

11

6.     Identify all current and former employees of Loop, and for each person identified, state their position, responsibilities, dates of employment, and describe the salary, benefits and other forms of compensation paid to them.

ANSWER:

7.     State whether Loop leases or owns its office space at 330 South Wells Street, Chicago, Illinois.  If Loop leases its office space, identify Loop's landlord (including the principals of the landlord, if any), and state the amount of monthly rent and expenses Loop pays for its office space.

ANSWER:

8.     Identify all assets of Loop (including assets of Loop's subsidiaries and affiliates) during the time period from January 1, 2000 through the present, including the date each such asset was acquired and (if applicable) divested.

ANSWER:

9.     Identify all liens or encumbrances against any assets of Loop (including Loop's subsidiaries and affiliates).

ANSWER:

12

10   Identify all checking accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Loop (including Loop's subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

11   Identify all savings accounts, money market accounts, trusts or other such bank accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Loop (including Loop's subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

12   Identify all trading or brokerage accounts (including by account number, name of financial institution, and address of branch office) held by or in the name of Loop and/or Loop's subsidiaries and affiliates during the time period from January 1, 2000 through the present.

ANSWER:

13   Identify all real estate held by or in the name of Loop (including Loop's subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

14. Identify any and all transfers of assets from Loop to any "Greenblatt-Controlled Entity" during the time period from January 1, 2000 through the present, and for each such transfer: (a) identify the asset transferred and the date of transfer; (b) identify the name and address of the transferee, including the names and addresses of the principals of the transferee (if any); (c) describe the value or consideration received by Loop for the transfer; (d) describe in detail the nature and purpose of the transfer; (e) identify all persons with knowledge of each such transfer; and (f) identify the current location or status of the asset.

ANSWER:

15. To the extent you do not provide this information in response to Interrogatory No. 14 above, please describe in detail the facts and circumstances surrounding the payments from Loop to Credit Suisse First Boston ("CSFB") for the benefit of Repurchase Corp.'s account with CFSB identified in Paragraph 59 of Wachovia's First Amended Complaint, including: (a) the reason for the payments, (b) the value or consideration received by Loop for each payment, and (c) all persons with knowledge of each such payment.

ANSWER:

16. To the extent you do not provide this information in response to Interrogatory No. 14 above, please describe in detail the facts and circumstances surrounding the transfer of shares of EZLinks Golf stock from Loop to Scattered identified in Paragraph 63 of Wachovia's First Amended Complaint, including: (a) the reason for the stock transfer, (b) the value or

14

consideration received by Loop for the stock transfer, and (c) all persons with knowledge of the stock transfer.

ANSWER:

17.     To the extent you do not provide this information in response to Interrogatory No. 14 above, please describe in detail the facts and circumstances surrounding the transfer of $2,198,326 by Loop to South Beach identified in Paragraph 62 of Wachovia's First Amended Complaint, including: (a) the reason for the funds transfer, (b) the value or consideration received by Loop for the funds transfer, and (c) all persons with knowledge of the funds transfer.

ANSWER:

18.     To the extent you do not provide this information in response to Interrogatory No. 14 above, please describe in detail the facts and circumstances surrounding any transfer of any asset of Loop to Loop Properties, including – but not limited to – the September 24, 2002 transfer of Loop's interests in Old Colony Partners, LP and 200 West Partners, LP identified in Paragraph 65 of Wachovia's First Amended Complaint, and state: (a) the reason for each transfer, (b) the value or consideration received by Loop for each such transfer, and (c) all persons with knowledge of each such transfer.

ANSWER:

15

19.     Identify each witness that Loop will call to testify at trial or any evidentiary hearing in this lawsuit, and for each witness identified describe in detail the subject matter of his/her testimony and the basis for that testimony. If Loop will call any expert witness, also describe the qualifications of the expert and produce any and all reports prepared by the expert and any documents relied upon in forming the opinions of the expert.

        ANSWER:


Dated: August 4, 2005                          Respectfully submitted,

                                        WACHOVIA SECURITIES, LLC


                                        By: _____
                                              One of Its Attorneys


Steven P. Gomberg (ARDC# 1004204)
Gary I. Blackman (ARDC# 6187914)
Christopher S. Griesmeyer (ARDC# 6269851)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street
Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Case No. 04 C 3082** |
| | ) | |
| DAVID NEUHAUSER; ANDREW A. | ) | |
| JAHELKA; RICHARD O. NICHOLS; | ) | |
| LEON A. GREENBLATT III; BANCO | ) | Judge William T. Hart |
| PANAMERICANO, INC., a South Dakota | ) | |
| Corporation; LOOP CORP., a South | ) | |
| Dakota corporation; LOOP PROPERTIES, | ) | Magistrate Judge Michael T. Mason |
| INC., an Illinois corporation; and | ) | |
| SCATTERED CORP., a South Dakota | ) | |
| corporation; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S FIRST SET OF INTERROGATORIES TO
## DEFENDANT LOOP PROPERTIES, INC.

The Plaintiff, Wachovia Securities, LLC, by its attorneys, Steven P. Gomberg, Gary I.

Blackman and Christopher S. Griesmeyer of Levenfeld Pearlstein, LLC, and pursuant to Rule 33

of the Federal Rules of Civil Procedure, propounds the following Interrogatories upon the

Defendant Loop Properties, Inc. to be answered under oath within thirty (30) days.

### DEFINITIONS

The words and phrases set out below have the following meaning or meanings:

1.    The words **"Loop Properties," "Defendant," "you,"** or **"your"** shall mean the

Defendant, Loop Properties, Inc., in this lawsuit, including all past and present predecessors,

successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors,

shareholders, employees, agents, related entities, and any person acting under Loop Properties'

control or on its behalf.

2.     The words **"Plaintiff," "Wachovia"** or **"Prudential"** shall mean the Plaintiff, Wachovia Securities, LLC, including all past and present predecessors (including Prudential Securities Incorporated), successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person the Defendants knew or should have known, or believed or had reason to believe, was acting under Wachovia's control or on its behalf.

3.     The word **"Neuhauser"** shall mean the Defendant, David Neuhauser, including his representatives, agents and any person authorized to act on his behalf.

4.     The word **"Jahelka"** shall mean the Defendant, Andrew A. Jahelka, including his representatives, agents and any person authorized to act on his behalf.

5.     The word **"Nichols"** shall mean the Defendant, Richard O. Nichols, including his representatives, agents and any person authorized to act on his behalf.

6.     The word **"Greenblatt"** shall mean the Defendant, Leon A. Greenblatt, III, including his representatives, agents and any person authorized to act on his behalf.

7.     The word **"NOLA"** shall mean NOLA, LLC, as described in the Plaintiff's First Amended Complaint, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, members, managers, employees, representatives, agents, related entities, and any person acting under NOLA's control or on its behalf.

8.     The words **"Repurchase"** or **"Repurchase Corp."** shall mean Repurchase Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Repurchase's control or on its behalf.

2

9. The words **"South Beach"** or **"South Beach Securities, Inc."** shall mean South Beach Securities, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under South Beach's control or on its behalf.

10. The words **"Teletech"** or **"Teletech Systems."** shall mean Teletech Systems, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Teletech's control or on its behalf.

11. The words **"Banco"** or **"Banco Panamericano"** shall mean Defendant Banco Panamericano, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Banco's control or on its behalf.

12. The words **"Scattered"** of **"Scattered Corp."** shall mean Defendant Scattered Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Scattered's control or on its behalf.

13. The words **"Loop"** or **"Loop Corp."** shall mean Defendant Loop Corp., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop's control or on its behalf.

14. The word **"Chiplease"** shall mean Chiplease, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers,

3

directors, shareholders, employees, agents, related entities, and any person acting under Chiplease's control or on its behalf.

15.    The words **"Greenblatt-Controlled Entity"** shall mean any of the following persons or entities, including their principals (if any):

| | | | |
|---|---|---|---|
| (a) Loop | | (r) | 200 West Properties, Inc. |
| (b) NOLA | | (s) | Old Colony Partners, LP |
| (c) South Beach Securities | | (t) | Old Colony Properties, Inc. |
| (d) Rumpelstiltskin (USA) Corp. | | (u) | Telegraph Properties, LP |
| (e) Chiplease | | (v) | Telegraph Properties, Inc. |
| (f) Scattered | | (w) | Randolph Properties, LP |
| (g) Loop Properties | | (x) | Randolph Properties, Inc. |
| (h) Banco Panamericano | | (y) | The Greenblatt Family Trust |
| (i) Teletech Systems | | (z) | Leon Greenblatt, III |
| (j) Repurchase | | (aa) | Leon Greenblatt, II |
| (k) H&M Partners, GP | | (bb) | Richard Nichols |
| (l) Sterling Telemanagement, Inc. | | (cc) | James Nichols |
| (m) Sterling Telemanagement Consultants, LLC | | (dd) | Andrew Jahelka |
| (n) EZ Links Golf, LLC | | (ee) | Robert Jahelka |
| (o) EZ Links Golf, Inc. | | (ff) | David Neuhauser |
| (p) Resource Technology Corp. | | (gg) | Leslie Jabine |
| (q) 200 West Partners, LP | | (hh) | Any other entity in which Greenbelt, Nichols, Jahelka, Neuhauser or any of their relations are an "insider" (as that term is defined by the Illinois Uniform Fraudulent Transfer Act, "UFTA") or hold a controlling interest, including any subsidiary or "affiliate" (as that term is defined by the UFTA) of any such entity. |

4

16. The words **"asset"** or **"assets"** shall mean anything that may be the subject of ownership.

17. The words **"transfer"** or **"transfers"** shall mean every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

18. The words **"lawsuit"** or **"Complaint"** refer to the Complaint (including all amended versions thereof) filed by the Plaintiff, Wachovia Securities, LLC, and assigned Case No. 04 C 3082, in the United States District Court for the Northern District of Illinois, Eastern Division.

19. The words **"document"** or **"documents"** mean any and all written, recorded, filmed, or graphic matter, whether produced or reproduced, on paper, cards, tapes, film, electronic facsimile, computer storage devices or any other media, and any other things within the scope of the applicable Rules of Civil Procedure, including, but not limited to, statements, ledgers, orders, purchase orders, sales tickets, order or transaction confirmations, articles, by-laws, research files, accounts, brochures, pamphlets, bulletins, circulars, letters, correspondence, electronic mail messages, telegrams, telexes, facsimile transmissions, telecopies, publications, agreements, forecasts, statistical statements, minutes or records of meetings or conferences, policy statements, memoranda, notes, records, reports, studies, interoffice and/or intraoffice communications, working papers, reports and/or summaries or investigations, notices, calendar and diary entries, microfilm, messages, maps, charts, tabulations, summaries or abstracts, tape recordings, work sheets, any notes or writings pertaining to any meetings, oral or telephonic communication, surveys, graphs, statistics, tables, any computer printouts, computer software or

5

code (whether in machine or human readable form on any medium), rules, regulations, opinions, orders, interpretations, guidelines, envelopes, all marginalia or stamped material, and also including, but not limited to, originals and all copies which are different in any way from the original whether by interlineations, receipt stamp, notations, indication of copies sent or received, or otherwise, and drafts, which are in the possession, custody or control of the Defendants or in the possession, custody or control of the present or former agents, representatives or attorneys of the Defendants or any persons acting on their behalf, including documents at any time in the possession, custody or control of such individuals or entities known by the Defendants to exist.

20. The word **"communication"** means any transmittal of information including correspondence, electronic-mail, telex, facsimile transmission, telecopy, recording in any medium of oral communication, telephone and message log, note or memorandum relating to written or oral communications, and any translation thereof.

21. The word **"person"** means, without limitation, any natural person, corporation, partnership, association, sole proprietorship, cooperative or other entity.

22. The word **"date"** shall mean the exact date, month and year, if ascertainable, or if not, the best approximation (including a description of relationships to other events) with the indication that it is an approximation.

23. The words **"describe in detail"** and **"set forth the factual basis"** shall mean: (a) to describe fully by reference to underlying facts rather than by ultimate facts or conclusions of facts or law; and (b) to particularize as to: (i) times, (ii) place, and (iii) manner.

6

24. The words **"description"** or **"describe"** shall mean to provide a narrative, detailed and chronological history of the incident or events inquired about, including pertinent dates, identifying persons involved and identifying documents utilized or generated thereby.

25. The word **"identify"** when used with reference to an individual person shall mean to state his or her (a) full name (or, if not known, his or her job title or position and employer, or if no other identification is possible, provide a sufficient description so that he or she will be identifiable); (b) title; (c) present position and business affiliation; (d) the person whom he or she was representing or acting for; (e) present (or last known, with indication of the date of that last knowledge) business address; and (f) present (or last known, with indication of the date of that last knowledge) residence address.

26. The word **"identify"** when used with reference to a document shall mean to: (a) state the type of document (e.g., memorandum, contract, letter, etc.); (b) set forth its date; (d) identify the author (and if different, the originator and signer); (d) set forth the title, heading or other designation, numerical or otherwise, of the document; (e) identify the person(s) (or if widely distributed, set forth the organization of classes of persons) to whom the document was sent; (f) set forth the present or last known location of the document; and (g) describe and set forth the substance of the document. Alternatively, you may identify the document by Bates number, if produced.

27. The word **"identify"** when used concerning any fact, information, source of information or reason, means to (a) describe the substance of the fact, information, source of information or reason; (b) identify every person who was the source of the information; (c) state whether any minutes, notes, memoranda, or other record of such fact, information, source of

7

information or reason were made; (d) state whether such record now exists; and (e) identify the person presently having possession, custody, or control of each such record.

28.     The words **"relating to"** mean, without limitation, in any way constituting, mentioning, referring to, describing, summarizing, evidencing, listing, indicating, relevant to, demonstrating, tending to prove or disprove, containing, reflecting, concerning, pertaining to, constituting, analyzing, explaining, or in any way logically or factually connected with the matter discussed.

29.     The word **"concerning"** means regarding, referring to, discussing, describing, reflecting, identifying, dealing with, consisting of, constituting, explaining, comprising, relating to, or in any way pertaining to in whole or in part, directly or indirectly, to the subject matter of this lawsuit.

30.     The words **"support," "supports,"** and **"supporting"** shall mean to establish or prove under a preponderance of the evidence standard.

31.     The word **"including"** shall mean including without limitation.

32.     The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

33.     All references to the singular shall include the plural, and all references to the plural shall include the singular.

34.     A masculine, feminine, or neuter pronoun shall not exclude the other genders.

8

## INSTRUCTIONS

1.    In answering these Interrogatories, furnish all information or documents that are available to you, including information or documents in the possession of your attorneys or investigators for your attorneys and not merely such information known of your own personal knowledge. If you cannot answer any of the following Interrogatories in full after exercising due diligence to secure the information to do so, so state and answer to the extent possible, specifying your inability to answer the remainder and stating whatever information or knowledge you have concerning the unanswered portions.

2.    The Interrogatories that follow are to be regarded as continuing in that you have a duty to seasonably supplement your responses to them. You are requested to provide, by way of answers thereto, such additional information or documents as you or any other person on your behalf may hereafter obtain which will augment or otherwise modify your answers now given to the interrogatories below. Such supplementary responses are to be served upon the Plaintiff within thirty (30) days after receipt of such information or documents.

3.    If any information or documents responsive to the Interrogatories below are withheld on the basis of a claim of privilege, set forth a statement detailing as to each item of information or document:

    (a)    the name of the sender or the source, if any, of the documents or information;

    (b)    the type of any document;

    (c)    the name of the author of any document;

    (d)    the name of any persons to whom the information was divulged or copies of the document were sent;

    (e)    the date the information was communicated or the date of the document;

    (f)    the date on which the information or document was received by all those having possession of the information or document;

9

(g)    a brief description of the nature and the subject matter of the information or document;

(h)    the nature of the privilege claimed;

(i)    attachments to any such document; and

(j)    the number of pages comprising any document.

4.    If a document has been destroyed, lost or otherwise discarded, please state as to each such document:

(a)    the identity of the person who prepared it;

(b)    the identity of the person who signed it or over whose name it was issued;

(c)    the identity of each person to whom it was addressed, distributed, or copied;

(d)    the nature or substance of the document with sufficient particularity to enable it to be identified;

(e)    its date, and, if it bears no date, the date when it was prepared; and

(f)    its disposition (e.g., lost, destroyed, etc.).

5.    If you produce any document described herein, whether pursuant to the Federal Rules of Civil Procedure or otherwise, then pursuant to the Federal Rules of Civil Procedure, such documents must be produced as they are kept in the usual course of business or are to be organized and labeled to correspond with the categories set forth below.

6.    **Unless otherwise indicated, the time period covered in these Interrogatories is <u>January 1, 2000 to the present</u>.**

## INTERROGATORIES

1.     Identify each person responding to these Interrogatories, as well as each person consulted in preparing responses to these Interrogatories, and for each such person identified: describe their position at Loop Properties, and describe in detail the foundation for their knowledge regarding the factual matters asserted in these Interrogatories.

ANSWER:

2.     Identify each lawyer (both in-house counsel and independent counsel) retained or employed by Loop Properties and involved in: (a) the formation of Loop Properties; (b) maintaining the corporate and business records of Loop Properties; (c) representing Loop Properties in negotiating any lease; (d) representing Loop Properties in any transaction in which Loop and/or NOLA transferred any asset to Loop Properties; and/or (e) representing Loop Properties in any litigation in which the plaintiff(s) asserted claims for fraud, alter ego/veil piercing, fraudulent transfer or conspiracy.

ANSWER:

3.     Identify all current and former shareholders and employees of Loop Properties, and for each person identified, state their position, responsibilities, dates of employment, and describe the salary, benefits and other forms of compensation paid to them.

ANSWER:

11

4. Identify the dates of all Loop Properties shareholder meetings and board of director meetings, and describe in detail the issues discussed at each such meeting.

ANSWER:

5. State whether Loop Properties has paid dividends to its shareholders, and if so, identify the date of each such dividend, the amount of each such dividend, the recipient of each such dividend, the reason for each such dividend, and the persons with knowledge of such dividends.

ANSWER:

6. Identify Loop Properties' primary business address and telephone number, as well as the addresses and telephone numbers of any of its branch offices.

ANSWER:

7. State whether Loop Properties leases or owns its office space. If Loop Properties leases its office space, identify its landlord (including the principals of the landlord, if any), and state the amount of monthly rent and expenses Loop Properties pays for its office space.

ANSWER:

12

8.     Identify all assets of Loop Properties (including assets of Loop Properties' subsidiaries and affiliates) during the time period from January 1, 2000 through the present, including the date each such asset was acquired and (if applicable) divested.

ANSWER:

9.     Identify all liens or encumbrances against any assets of Loop Properties (including Loop Properties' subsidiaries and affiliates).

ANSWER:

10.    Identify all checking accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Loop Properties (including Loop Properties' subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

11.    Identify all savings accounts, money market accounts, trusts or other such bank accounts (including account number, name of financial institution, and address of branch office) held by or in the name of Loop Properties (including Loop Properties' subsidiaries and affiliates) during the time period from January 1, 2000 through the present.

ANSWER:

13

12.     Identify all trading or brokerage accounts (including by account number, name of financial institution, and address of branch office) held by or in the name of Loop Properties and/or its subsidiaries and affiliates during the time period from January 1, 2000 through the present.

ANSWER:

13.     Identify any and all transfers of assets from Loop to Loop Properties (or any of Loop Properties' subsidiaries or affiliates) during the time period from January 1, 2000 through the present, and for each such transfer: (a) identify the asset transferred and the date of transfer; (b) identify the name and address of the transferee, including the names and addresses of the principals of the transferee (if any); (c) describe the value or consideration paid to Loop for the transfer; (d) describe in detail the nature and purpose of the transfer; (e) identify all persons with knowledge of each such transfer; and (f) identify the current location or status of the asset.

ANSWER:

14.     To the extent you do not provide this information in response to Interrogatory No. 13 above, please describe in detail the facts and circumstances surrounding the transfer of Loop's interests in Old Colony Partners, LP and 200 West Partners, LP to Loop Properties, identified in paragraph 65 of Wachovia's First Amended Complaint, including: (a) the reason for the transfer,

14

(b) the value or consideration paid to Loop for the stock, and (c) all persons with knowledge of the transfer.

ANSWER:

15.     Describe in detail the facts and circumstances surrounding the termination of Elizabeth D. Sharp, Esq.'s employment with Loop and her subsequent employment with Loop Properties, including: (a) the compensation Ms. Sharp received from Loop, (b) the compensation Ms. Sharp is receiving from Loop Properties, (c) the reason for the change in employment, and (d) the dates Ms. Sharp's employment with Loop terminated and the date her employment with Loop Properties began.

ANSWER:

16.     Identify each witness that Scattered will call to testify at trial or any evidentiary hearing in this lawsuit, and for each witness identified describe in detail the subject matter of his/her testimony and the basis for that testimony. If Scattered will call any expert witness, also describe the qualifications of the expert and produce any and all reports prepared by the expert and any documents relied upon in forming the opinions of the expert.

ANSWER:

Dated: August 4, 2005                                   Respectfully submitted,

                                           **WACHOVIA SECURITIES, LLC**


                                           By: _____
                                                    One of Its Attorneys


Steven P. Gomberg (ARDC# 1004204)
Gary I. Blackman (ARDC# 6187914)
Christopher S. Griesmeyer (ARDC# 6269851)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street
Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

WACHOVIA SECURITIES, LLC,  )
)
               Plaintiff,  )
)
                       )     **Case No.  04  C  3082**
     v.                )
)
**DAVID NEUHAUSER;  ANDREW A.**  )
**JAHELKA;  RICHARD O. NICHOLS;**  )
**LEON A. GREENBLATT III;  BANCO**  )     Judge William T. Hart
**PANAMERICANO, INC.,** a South Dakota  )
Corporation; **LOOP CORP.,** a South  )
Dakota corporation; **LOOP PROPERTIES,**  )     Magistrate Judge Michael T. Mason
**INC.,** an Illinois corporation; and  )
**SCATTERED CORP.,** a South Dakota  )
corporation;  )
)
               Defendants.  )

### PLAINTIFF'S FIRST SET OF REQUESTS FOR PRODUCTION TO
### DEFENDANTS BANCO PANAMERICANO, INC.,
### LOOP CORP., LOOP PROPERTIES, INC. AND SCATTERED CORP.

The Plaintiff, Wachovia Securities, LLC, by its attorneys, Steven P. Gomberg, Gary I.

Blackman and Christopher S. Griesmeyer of Levenfeld Pearlstein, LLC, and pursuant to Rule 34

of the Federal Rules of Civil Procedure, requests that Defendants Banco Panamericano, Inc.,

Loop Corp., Loop Properties, Inc., and Scattered Corp. produce the following at the law offices

of Levenfeld Pearlstein, LLC, 2 North LaSalle Street, Suite 1300, Chicago, Illinois 60602, within

thirty (30) days.

### DEFINITIONS

The words and phrases set out below have the following meaning or meanings:

1.     The words **"Defendants," "you,"** or **"your"** shall mean Defendants Banco

Panamericano, Inc., Loop Corp., Loop Properties, Inc., and Scattered Corp. (individually and



EXHIBIT
**2**

collectively) in this lawsuit, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop's control or on its behalf.

2.     The words **"Plaintiff," "Wachovia"** or **"Prudential"** shall mean the Plaintiff, Wachovia Securities, LLC, including all past and present predecessors (including Prudential Securities Incorporated), successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person the Defendants knew or should have known, or believed or had reason to believe, was acting under Wachovia's control or on its behalf.

3.     The words **"Banco"** or **"Banco Panamericano"** shall mean Defendant Banco Panamericano, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Banco's control or on its behalf.

4.     The word **"Loop"** shall mean Defendant Loop Corp., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop's control or on its behalf.

5.     The words **"Loop Properties"** shall mean Defendant Loop Properties, Inc, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Loop Properties' control or on its behalf.

6.     The words **"Scattered"** or **"Scattered Corp."** shall mean Defendant Scattered Corporation, including all past and present predecessors, successors, assigns, parents,

2

subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Scattered's control or on its behalf.

7.    The word **"Neuhauser"** shall mean the Defendant, David Neuhauser, including his representatives, agents and any person authorized to act on his behalf.

8.    The word **"Jahelka"** shall mean the Defendant, Andrew A. Jahelka, including his representatives, agents and any person authorized to act on his behalf.

9.    The word **"Nichols"** shall mean the Defendant, Richard O. Nichols, including his representatives, agents and any person authorized to act on his behalf.

10.    The word **"Greenblatt"** shall mean the Defendant, Leon A. Greenblatt, III, including his representatives, agents and any person authorized to act on his behalf.

11.    The word **"NOLA"** shall mean NOLA, LLC, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, members, managers, employees, representatives, agents, related entities, and any person acting under NOLA's control or on its behalf.

12.    The words **"Repurchase"** or **"Repurchase Corp."** shall mean Repurchase Corporation, including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Repurchase's control or on its behalf.

13.    The words **"South Beach"** or **"South Beach Securities, Inc."** shall mean South Beach Securities, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under South Beach's control or on its behalf.

3

14.     The words **"Teletech"** or **"Teletech Systems."** shall mean Teletech Systems, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Teletech's control or on its behalf.

15.     The word **"Chiplease"** shall mean Chiplease, Inc., including all past and present predecessors, successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person acting under Chiplease's control or on its behalf.

16.     The words **"Greenblatt-Controlled Entity"** shall mean any of the following persons or entities, including their principals (if any):

| | | | |
|---|---|---|---|
| (a) | Loop | (r) | 200 West Properties, Inc. |
| (b) | NOLA | (s) | Old Colony Partners, LP |
| (c) | South Beach Securities | (t) | Old Colony Properties, Inc. |
| (d) | Rumpelstiltskin (USA) Corp. | (u) | Telegraph Properties, LP |
| (e) | Chiplease | (v) | Telegraph Properties, Inc. |
| (f) | Scattered | (w) | Randolph Properties, LP |
| (g) | Loop Properties | (x) | Randolph Properties, Inc. |
| (h) | Banco Panamericano | (y) | The Greenblatt Family Trust |
| (i) | Teletech Systems | (z) | Leon Greenblatt, III |
| (j) | Repurchase | (aa) | Leon Greenblatt, II |
| (k) | H&M Partners, GP | (bb) | Richard Nichols |
| (l) | Sterling Telemanagement, Inc. | (cc) | James Nichols |
| (m) | Sterling Telemanagement Consultants, LLC | (dd) | Andrew Jahelka |
| (n) | EZ Links Golf, LLC | (ee) | Robert Jahelka |
| (o) | EZ Links Golf, Inc. | (ff) | David Neuhauser |

4

(p) Resource Technology Corp.

(q) 200 West Partners, LP

(gg) Leslie Jabine

(hh) Any other entity in which Greenbelt, Nichols, Jahelka, Neuhauser or any of their relations are an "insider" (as that term is defined by the Illinois Uniform Fraudulent Transfer Act, "UFTA") or hold a controlling interest, including any subsidiary or "affiliate" (as that term is defined by the UFTA) of any such entity.

17.  The words **"asset"** or **"assets"** shall mean anything that may be the subject of ownership.

18.  The words **"transfer"** or **"transfers"** shall mean every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

19.  The words **"lawsuit"** or **"Complaint"** refer to the Complaint (including all amended versions thereof) filed by the Plaintiff, Wachovia Securities, LLC against the Defendants, David Neuhauser, Andrew A. Jahelka, Richard O. Nichols and Leon A. Greenblatt, III, Case No. 04 C 3082, in the United States District Court for the Northern District of Illinois, Eastern Division.

20.  The words **"document"** or **"documents"** mean any and all written, recorded, filmed, or graphic matter, whether produced or reproduced, on paper, cards, tapes, film, electronic facsimile, computer storage devices or any other media, and any other things within the scope of the applicable Rules of Civil Procedure, including, but not limited to, statements, ledgers, orders, purchase orders, sales tickets, order or transaction confirmations, articles, by-laws, research files, accounts, brochures, pamphlets, bulletins, circulars, letters, correspondence, electronic mail messages, telegrams, telexes, facsimile transmissions, telecopies, publications,

5

agreements, forecasts, statistical statements, minutes or records of meetings or conferences, policy statements, memoranda, notes, records, reports, studies, interoffice and/or intraoffice communications, working papers, reports and/or summaries or investigations, notices, calendar and diary entries, microfilm, messages, maps, charts, tabulations, summaries or abstracts, tape recordings, work sheets, any notes or writings pertaining to any meetings, oral or telephonic communication, surveys, graphs, statistics, tables, any computer printouts, computer software or code (whether in machine or human readable form on any medium), rules, regulations, opinions, orders, interpretations, guidelines, envelopes, all marginalia or stamped material, and also including, but not limited to, originals and all copies which are different in any way from the original whether by interlineations, receipt stamp, notations, indication of copies sent or received, or otherwise, and drafts, which are in the possession, custody or control of the Defendants or in the possession, custody or control of the present or former agents, representatives or attorneys of the Defendants or any persons acting on their behalf, including documents at any time in the possession, custody or control of such individuals or entities known by the Defendants to exist.

21. The word **"communication"** means any transmittal of information including correspondence, electronic-mail, telex, facsimile transmission, telecopy, recording in any medium of oral communication, telephone and message log, note or memorandum relating to written or oral communications, and any translation thereof.

22. The word **"person"** means, without limitation, any natural person, corporation, partnership, association, sole proprietorship, cooperative or other entity.

6

23.   The word **"date"** shall mean the exact date, month and year, if ascertainable, or if not, the best approximation (including a description of relationships to other events) with the indication that it is an approximation.

24.   The words **"describe in detail"** and **"set forth the factual basis"** shall mean: (a) to describe fully by reference to underlying facts rather than by ultimate facts or conclusions of facts or law; and (b) to particularize as to: (i) times, (ii) place, and (iii) manner.

25.   The words **"description"** or **"describe"** shall mean to provide a narrative, detailed and chronological history of the incident or events inquired about, including pertinent dates, identifying persons involved and identifying documents utilized or generated thereby.

26.   The word **"identify"** when used with reference to an individual person shall mean to state his or her (a) full name (or, if not known, his or her job title or position and employer, or if no other identification is possible, provide a sufficient description so that he or she will be identifiable); (b) title; (c) present position and business affiliation; (d) the person whom he or she was representing or acting for; (e) present (or last known, with indication of the date of that last knowledge) business address; and (f) present (or last known, with indication of the date of that last knowledge) residence address.

27.   The word **"identify"** when used with reference to a document shall mean to: (a) state the type of document (e.g., memorandum, contract, letter, etc.); (b) set forth its date; (d) identify the author (and if different, the originator and signer); (d) set forth the title, heading or other designation, numerical or otherwise, of the document; (e) identify the person(s) (or if widely distributed, set forth the organization of classes of persons) to whom the document was sent; (f) set forth the present or last known location of the document; and (g) describe and set

7

forth the substance of the document. Alternatively, you may identify the document by Bates number, if produced.

28. The word **"identify"** when used concerning any fact, information, source of information or reason, means to (a) describe the substance of the fact, information, source of information or reason; (b) identify every person who was the source of the information; (c) state whether any minutes, notes, memoranda, or other record of such fact, information, source of information or reason were made; (d) state whether such record now exists; and (e) identify the person presently having possession, custody, or control of each such record.

29. The words **"relating to"** mean, without limitation, in any way constituting, mentioning, referring to, describing, summarizing, evidencing, listing, indicating, relevant to, demonstrating, tending to prove or disprove, containing, reflecting, concerning, pertaining to, constituting, analyzing, explaining, or in any way logically or factually connected with the matter discussed.

30. The word **"concerning"** means regarding, referring to, discussing, describing, reflecting, identifying, dealing with, consisting of, constituting, explaining, comprising, relating to, or in any way pertaining to in whole or in part, directly or indirectly, to the subject matter of this lawsuit.

31. The words **"support," "supports,"** and **"supporting"** shall mean to establish or prove under a preponderance of the evidence standard.

32. The word **"including"** shall mean including without limitation.

33. The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

8

34.     All references to the singular shall include the plural, and all references to the plural shall include the singular.

35.     A masculine, feminine, or neuter pronoun shall not exclude the other genders.

## INSTRUCTIONS

1.     In responding to these Requests for Production, furnish documents that are available to you, including documents in the possession of your attorneys or investigators for your attorneys and not merely documents within you immediate control. If you cannot produce any document responsive to these Requests for Production after exercising due diligence to secure the document, so state and answer to the extent possible, specifying your inability to answer the Request and stating whatever information or knowledge you have concerning the unanswered Request.

2.     The Requests for Production that follow are to be regarded as continuing in that you have a duty to seasonably supplement your responses to them. You are requested to provide, by way of answers thereto, such additional information or documents as you or any other person on your behalf may hereafter obtain which will augment or otherwise modify your document production responsive to the Requests below. Such supplementary document productions are to be served upon the Plaintiff within thirty (30) days after receipt of such information or documents.

3.     If any documents responsive to the Requests for Production below are withheld on the basis of a claim of privilege, set forth a statement detailing as to each document:

(a)     the name of the sender or the source, if any, of the documents or information;

(b)     the type of any document;

(c)     the name of the author of any document;

(d)    the name of any persons to whom the information was divulged or copies of the document were sent;

(e)    the date the information was communicated or the date of the document;

(f)    the date on which the information or document was received by all those having possession of the information or document;

(g)    a brief description of the nature and the subject matter of the information or document;

(h)    the nature of the privilege claimed;

(i)    attachments to any such document; and

(j)    the number of pages comprising any document.

4.    If a document has been destroyed, lost or otherwise discarded, please state as to each such document:

(a)    the identity of the person who prepared it;

(b)    the identity of the person who signed it or over whose name it was issued;

(c)    the identity of each person to whom it was addressed, distributed, or copied;

(d)    the nature or substance of the document with sufficient particularity to enable it to be identified;

(e)    its date, and, if it bears no date, the date when it was prepared; and

(f)    its disposition (e.g., lost, destroyed, etc.).

5.    If you produce any document described herein, whether pursuant to the Federal Rules of Civil Procedure or otherwise, then pursuant to the Federal Rules of Civil Procedure, such documents must be produced as they are kept in the usual course of business or are to be organized and labeled to correspond with the categories set forth below.

6.    **Unless otherwise indicated, the time period covered by these Requests for Production is <u>January 1, 2000 to the present</u>.**

10

# REQUESTS FOR PRODUCTION

1.    Any and all documents reviewed, referenced or relied upon in preparing answers to Wachovia's First Set of Interrogatories.

2.    Any and all documents identified in Defendants' respective Answers to Wachovia's First Set of Interrogatories.

3.    Any and all documents reviewed, referenced or relied upon in answering Wachovia's First Amended Compliant.

4.    Any and all documents that you contend support the denial of any fact alleged in Wachovia's First Amended Complaint.

5.    Any and all documents that constitute, concern, relate to or describe any report of any expert witness that any of the Defendants will call during trial or any evidentiary hearing in this lawsuit.

6.    Any and all documents that any of the Defendants will use during trial, any evidentiary hearing or any deposition in this lawsuit.

7.    Any and all Loop corporate record books.

8.    Any and all Loop corporate resolutions.

9.    Any and all notices of Loop shareholder meetings.

10.    Any and all minutes from Loop shareholder meetings.

11.    Any and all notices of meetings for Loop's board of directors.

12.    Any and all minutes from meetings of Loop's board of directors.

13.    Any and all lists of Loop shareholders.

14.    Any and all Loop stock certificates for issued Loop stock.

15.   Any and all documents that constitute, concern or describe the payment of any dividend from Loop.

16.   Any and all documents that constitute, concern or describe the payment of any shareholder distribution from Loop.

17.   Any and all lists of Loop's employees.

18.   Any and all Loop employment policies, employment manuals, employee handbooks and any other documents distributed by Loop to its employees.

19.   Any and all Loop payroll records.

20.   Any and all W-4 forms of Loop's employees.

21.   Any and all documents that constitute, concern, describe or relate to any salary, bonus, stock, benefits or other form of compensation paid to each of Loop's employees.

22.   Any and all documents that concern or describe Elizabeth D. Sharp, Esq.'s relationship to Loop.

23.   To the extent not already produced in response to Request No. 21 above, any and all documents that constitute, concern, describe or relate to any salary, bonus, stock, benefits or other form of compensation paid to Elizabeth D. Sharp, Esq.

24.   Any and all documents constituting, describing or concerning any work performed by Elizabeth D. Sharp, Esq. for Loop, Scattered, Banco or Loop Properties, including - but not limited to – invoices, billing records and time sheets.

25.   Any and all documents that constitute, describe or concern any work provided by Elizabeth D. Sharp, Esq. to Resource Technology Corporation during the course of her employment with Loop.

12

26. Any and all documents that constitute, describe or concern any work provided by Elizabeth D. Sharp, Esq. to Resource Technology Corporation during the course of her employment with Loop Properties.

27. Any and all documents that constitute, describe or concern the termination of Elizabeth D. Sharp, Esq.'s employment with Loop, including – but not limited to – all documents that describe the reason for that termination.

28. Elizabeth D. Sharp's employment or personnel file from Loop.

29. Elizabeth D. Sharp's employment or personnel file from Loop Properties.

30. Any and all documents that constitute, describe or concern the termination of Elizabeth D. Sharp, Esq.'s employment with Loop Properties, including – but not limited to – all documents that describe the reason for that termination.

31. Any and all documents that concern or describe Michael May's relationship to Loop.

32. To the extent not already produced in response to Request No. 21 above, any and all documents that constitute, concern, describe or relate to any salary, bonus, stock, benefits or other form of compensation paid to Michael May.

33. Any and all documents constituting, describing or concerning any work performed by Michael May for Loop, Scattered, Banco or Loop Properties, including – but not limited to -- invoices, billing records and time sheets.

34. Any and all advertising or marketing materials of Loop.

35. Any and all financial records of Loop created during and/or covering the time period from January 1, 2000 through the present.

36. Any and all audit reports and/or audited financial statements of Loop.

37. Any and all documents reviewed, referenced or relied upon in preparing any audit reports or audited financial statements of Loop.

38. Any and all balance sheets of Loop.

39. Any and all documents reviewed, referenced or relied upon in preparing any balance sheets of Loop.

40. Any and all profit & loss statements of Loop.

41. Any and all documents reviewed, referenced or relied upon in preparing any profit & loss statements of Loop.

42. Any and all general ledgers of Loop.

43. Any and all documents reviewed, referenced or relied upon in preparing any general ledgers of Loop (for example, receipts, paid invoices, etc.).

44. Any and all check registers of Loop.

45. Any and all wire histories and any other documents that evidence any wiring of funds into or out of any account held by or in the name of Loop.

46. Any and all documents reviewed, referenced or relied upon in preparing any summary financial complications pertaining to Loop.

47. Any and all bank statements of Loop.

48. Any and all records of activity for any checking account held by or in the name of Loop and/or Loop's subsidiaries and affiliates.

49. Any and all records of activity for any savings accounts, money market accounts, trusts or other such bank accounts held by or in the name of Loop and/or Loop's subsidiaries and affiliates.

14

50.     Any and all records of activity for any brokerage accounts held by or in the name of Loop and/or Loop's subsidiaries and affiliates.

51.     Any and all leases for Loop's office space at 330 South Wells Street, Chicago, Illinois.

52.     Any and all documents that constitute, concern, or describe any rents paid by Loop for office space.

53.     Any and all documents that constitute, concern, or describe any negotiations pertaining to Loop's office space lease.

54.     Any and all documents that identify or describe the assets of Loop and/or Loop's subsidiaries and affiliates.

55.     Any and all documents that identify or describe any liens or encumbrances against any assets of Loop and/or Loop's subsidiaries and affiliates.

56.     Any and all documents that identify or describe any real estate held by or in the name of Loop and/or Loop's subsidiaries and affiliates.

57.     Any and all loan applications or financing applications submitted by or in the name of Loop.

58.     Any and all documents that constitute, identify or describe any transfer of any asset from Loop to any "Greenblatt-Controlled Entity" during the time period from January 1, 2000 through the present.

59.     Any and all documents that identify or describe any asset transferred by Loop to any "Greenblatt-Controlled Entity" during the time period from January 1, 2000 through the present.

60.     Any and all documents that identify or describe the transferee of any asset transferred by Loop to any "Greenblatt-Controlled Entity" during the time period from January 1, 2000 through the present.

61.     Any and all documents that identify or describe the consideration or value received by Loop from any transfer of asset(s) to any "Greenblatt-Controlled Entity" during the time period from January 1, 2000 through the present.

62.     Any and all documents that constitute, concern or describe the payments from Loop to Credit Suisse First Boston ("CSFB") for the benefit of Repurchase Corp.'s account with CFSB identified in Paragraph 59 of Wachovia's First Amended Complaint.

63.     Any and all documents that constitute, concern or describe the value or consideration received by Loop for the payments identified in Paragraph 59 of Wachovia's First Amended Complaint.

64.     Any and all documents that constitute, concern or describe the payments by Chiplease to Marine Bank for the benefit of Loop, identified in Paragraph 61 of Wachovia's First Amended Complaint.

65.     Any and all documents that constitute, concern or describe the value or consideration received by Chiplease for the payments identified in Paragraph 61 of Wachovia's First Amended Complaint.

66.     Any and all documents that constitute, concern or describe Loop's transfer of $2,198,326 to South Beach, identified in Paragraph 62 of Wachovia's First Amended Complaint.

67.     Any and all documents that constitute, concern or describe the value or consideration received by Loop for the $2,198,326 payment to South Beach identified in Paragraph 62 of Wachovia's First Amended Complaint.

16

68.    Any and all documents that constitute, concern or describe the transfer of Loop's ownership interests EZLinks Golf, Inc. to Scattered identified in Paragraph 63 of Wachovia's First Amended Complaint.

69.    Any and all documents that constitute, concern or describe the value or consideration received by Loop for its transfer of ownership interests EZLinks Golf, Inc. to Scattered identified in Paragraph 63 of Wachovia's First Amended Complaint.

70.    Any and all documents that constitute, concern or describe Loop's granting of a security interest in certain of its subsidiaries to Banco, identified in paragraph 64 of Wachovia's First Amended Complaint.

71.    Any and all documents that constitute, concern or describe the value or consideration received by Loop for its granting of a security interest to Banco, identified in paragraph 64 of Wachovia's First Amended Complaint.

72.    Any and all documents that constitute, concern or describe Loop's transfer of its interests in certain of its subsidiaries to Loop Properties, Inc., identified in paragraph 65 of Wachovia's First Amended Complaint.

73.    Any and all documents that constitute, concern or describe the value or consideration received by Loop for Loop's transfer of its interests in certain of its subsidiaries to Loop Properties, Inc., identified in paragraph 65 of Wachovia's First Amended Complaint.

74.    Any and all contracts or agreements between Loop and any "Greenblatt-Controlled Entity," including, but not limited to, promissory notes.

75.    Any and all documents that constitute, concern or describe any payment of salary, bonus, stock, benefits or other form of compensation paid to Elizabeth D. Sharp, Esq. from Scattered.

17

76.     Any and all documents that constitute, concern or describe any payment of salary, bonus, stock, benefits or other form of compensation paid to Elizabeth D. Sharp, Esq. from Banco.

77.     Any and all documents that constitute, concern or describe any payment of salary, bonus, stock, benefits or other form of compensation paid to Elizabeth D. Sharp, Esq. from Loop Properties.

78.     Any and all documents that constitute, concern or describe any payment of salary, bonus, stock, benefits or other form of compensation paid to Michael May from Scattered.

79.     Any and all documents that constitute, concern or describe any payment of salary, bonus, stock, benefits or other form of compensation paid to Michael May from Banco.

80.     Any and all documents that constitute, concern or describe any payment of salary, bonus, stock, benefits or other form of compensation paid to Michael May from Loop Properties.

81.     Any and all financial records of Scattered created during and/or covering the time period from January 1, 2000 through the present.

82.     Any and all balance sheets of Scattered.

83.     Any and all profit & loss statements of Scattered.

84.     Any and all general ledgers of Scattered.

85.     Any and all check registers of Scattered.

86.     Any and all wire histories and any other documents that evidence any wiring of funds into or out of any account held by or in the name of Scattered.

87.     Any and all documents reviewed, referenced or relied upon in preparing any summary financial complications pertaining to Scattered.

88.     Any and all bank statements of Scattered.

18

89. Any and all records of activity for any checking account held by or in the name of Scattered.

90. Any and all records of activity for any savings accounts, money market accounts, trusts or other such bank accounts held by or in the name of Scattered.

91. Any and all records of activity for any brokerage accounts held by or in the name of Scattered.

92. Any and all financial records of Banco created during and/or covering the time period from January 1, 2000 through the present.

93. Any and all balance sheets of Banco.

94. Any and all profit & loss statements of Banco.

95. Any and all general ledgers of Banco.

96. Any and all check registers of Banco.

97. Any and all wire histories and any other documents that evidence any wiring of funds into or out of any account held by or in the name of Banco.

98. Any and all documents reviewed, referenced or relied upon in preparing any summary financial complications pertaining to Banco.

99. Any and all bank statements of Banco.

100. Any and all records of activity for any checking account held by or in the name of Banco.

101. Any and all records of activity for any savings accounts, money market accounts, trusts or other such bank accounts held by or in the name of Banco.

102. Any and all records of activity for any brokerage accounts held by or in the name of Banco.

103. Any and all financial records of Loop Properties created during and/or covering the time period from January 1, 2000 through the present.

104. Any and all balance sheets of Loop Properties.

105. Any and all profit & loss statements of Loop Properties.

106. Any and all general ledgers of Loop Properties.

107. Any and all check registers of Loop Properties.

108. Any and all wire histories and any other documents that evidence any wiring of funds into or out of any account held by or in the name of Loop Properties.

109. Any and all documents reviewed, referenced or relied upon in preparing any summary financial complications pertaining to Loop Properties.

110. Any and all bank statements of Loop Properties.

111. Any and all records of activity for any checking account held by or in the name of Loop Properties.

112. Any and all records of activity for any savings accounts, money market accounts, trusts or other such bank accounts held by or in the name of Loop Properties.

113. Any and all records of activity for any brokerage accounts held by or in the name of Loop Properties.

114. Any and all documents that identify the percentage ownership interest in Loop Properties held by Loop and Scattered.

115. Any and all documents that constitute, identify or describe Scattered's acquisition of its ownership interest in Loop Properties.

Dated: August 4, 2005

Respectfully submitted,

**WACHOVIA SECURITIES, LLC**

By: _____
One of Its Attorneys

Steven P. Gomberg (ARDC# 1004204)
Gary I. Blackman (ARDC# 6187914)
Christopher S. Griesmeyer (ARDC# 6269851)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street
Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)

21

AO88 (Rev. 1/94) Subpoena in a Civil Case

## Issued by the
# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

Wachovia Securities, LLC

V.

David Neuhauser, Andrew Jahelka, Richard Nichols,
Leon Greenblatt, III, Banco Panamericano, Inc., Loop
Corp., Loop Properties, Inc. and Scattered Corp.

**SUBPOENA IN A CIVIL CASE**

Case Number:¹  04 C 3082

TO: Robinson Curley & Clayton, P.C.
300 S. Wacker Dr., Ste. 1700
Chicago, IL 60606
ATTN: ALAN CURLEY, REGISTERED AGENT

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | |
|  | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
|  | |

☒ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

See Attached Rider

| PLACE | DATE AND TIME |
|---|---|
| Levenfeld Pearlstein, LLC, 2 N. LaSalle St., Ste. 1300, Chicago, IL 60602 | September 23, 2005 @ 9:00 a.m |

G  YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
|  | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR | DATE |
|---|---|
| Attorney for Plaintiff | 08/24/05 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
Christopher S. Griesmeyer, Levenfeld Pearlstein, LLC
2 N. LaSalle St., Ste. 1300, Chicago, IL 60602          (312) 476-7574

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

EXHIBIT
3

AO 88 (Rev. 1/94) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED  8/26/05 | | 300 S. Wacker Dr., Ste. 1700 Chicago, IL 60606 |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| Alan F. Curley as Registered Agent | certified mail/return receipt requested and U.S. Mail |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| April Bernath | Paralegal |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on  8/26/05
DATE

SIGNATURE OF SERVER

2 N. LaSalle St., Ste. 1300, Chicago, IL 60602
ADDRESS OF SERVER

## Rule 45, Federal Rules of Civil Procedure, Parts C & D

### (c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2)(A) A person commanded to produce and permit inspection and copying of designated books, papers, documents or tangible things or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(2)(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection and copying may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to inspection or copying of any or all of the designated materials or of the premises. If objection is made, the party serving the subpoena shall not be entitled to inspect and copy the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection is made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production. Such an order to compel production shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection and copying commanded.

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held, or

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies, or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

### (d) DUTIES IN RESPONDING TO SUBPOENA.

(1) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(2) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

## RIDER TO RULE 45 SUBPOENA *DUCES TECUM* TO
## ROBINSON, CURLEY & CLAYTON, PC

### I. DEFINITIONS:

1. The word **"RCC"** shall mean the law firm of Robinson, Curley & Clayton, P.C., including C. Philip Curley, Esq., John H. Wickert, Esq., Alan R. Dolinko, Esq., and any other partner, associate, paralegal or support staff of RCC.

2. The word **"NOLA"** shall mean NOLA, LLC, including all of its members, representatives, agents, officers, employees and any person(s) or entity(ies) authorized to act on its behalf.

3. The words **"South Beach"** shall mean South Beach Securities, Inc., including all of its members, representatives, agents, officers, employees and any person(s) or entity(ies) authorized to act on its behalf.

4. The words **"Teletech Systems"** shall mean Teletech Systems, Inc., including all of its members, representatives, agents, officers, employees and any person(s) or entity(ies) authorized to act on its behalf.

5. The words **"Scattered Corporation"** shall mean Scattered Corporation, including all of its members, representatives, agents, officers, employees and any person(s) or entity(ies) authorized to act on its behalf.

6. The word **"Loop"** shall mean Loop Corp., including all of its members, representatives, agents, officers, employees and any person(s) or entity(ies) authorized to act on its behalf.

7. The words **"Loop Properties"** shall mean Loop Properties, Inc., including all of its members, representatives, agents, officers, employees and any person(s) or entity(ies) authorized to act on its behalf.

8. The word **"Banco"** shall mean Banco Panamericano, Inc., including all of its members, representatives, agents, officers, employees and any person(s) or entity(ies) authorized to act on its behalf.

9. The word **"Wachovia"** shall mean Wachovia Securities, LLC, including all past and present predecessors (including Prudential Securities Incorporated), successors, assigns, parents, subsidiaries, affiliates, related companies, officers, directors, shareholders, employees, agents, related entities, and any person Debtor knew or should have known, or believed or had reason to believe, was acting under Wachovia's control or on its behalf.

10. The word **"affiliate"** shall mean:

(a)(1) a person who directly or indirectly owns, controls, or holds with power to vote, 20% or more of the outstanding voting securities of a debtor, other than a person who holds the securities:

(A) as a fiduciary or agent without sole discretionary power to vote the securities; or

(B) solely to secure a debt, if the person has not exercised the power to vote;

(2) a corporation with 20% or more outstanding voting securities which are directly or indirectly owned, controlled, or held with power to vote, by the debtor or a person who directly or indirectly owns,

787684_1

LP 787684.1 \ 34048-50381

controls, or holds with power to vote, 20% or more of the outstanding voting securities of a debtor, other than a person who holds the securities:

(A) as fiduciary or agent without sole power to vote the securities; or

(B) solely to secure a debt, if the person has not in fact exercised the power to vote.

(3) a person whose business is operated by a debtor under a lease or other agreement or a person substantially all of whose assets are controlled by the debtor; or

(4) a person who operates the debtor's business under a lease or other agreement, or controls substantially all the debtor's assets.

11.     The word **"asset"** shall mean anything that may be the subject of ownership (including, but not limited to, any interest in property, whether real, personal, intangible, intellectual, or any other form of property or interest therein, or proceeds therefrom).

12.     The word **"transfer"** shall mean every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset, and includes payment of money, release, lease and creation of a lien or other encumbrance.

13.     The words **"document"** or **"documents"** mean any and all written, recorded, filmed, or graphic matter, whether produced or reproduced, on paper, cards, tapes, film, electronic facsimile, computer storage devices or any other media, and any other things within the scope of the applicable Rules of Federal Civil Procedure, including, but not limited to, statements, ledgers, orders, purchase orders, sales tickets, order or transaction confirmations, articles, by-laws, research files, accounts, brochures, pamphlets, bulletins, circulars, letters, correspondence, electronic mail messages, telegrams, telexes, facsimile transmissions, telecopies, publications, agreements, forecasts, statistical statements, minutes or records of meetings or conferences, policy statements, memoranda, notes, records, reports, studies, interoffice and/or intraoffice communications, working papers, reports and/or summaries or investigations, notices, calendar and diary entries, microfilm, messages, maps, charts, tabulations, summaries or abstracts, tape recordings, work sheets, any notes or writings pertaining to any meetings, oral or telephonic communication, surveys, graphs, statistics, tables, any computer printouts, computer software or code (whether in machine or human readable form on any medium), rules, regulations, opinions, orders, interpretations, guidelines, envelopes, all marginalia or stamped material, and also including, but not limited to, originals and all copies which are different in any way from the original whether by interlineations, receipt stamp, notations, indication of copies sent or received, or otherwise, and drafts, which are in the possession, custody or control of the Defendants or in the possession, custody or control of the present or former agents, representatives or attorneys of the Defendants or any persons acting on their behalf, including documents at any time in the possession, custody or control of such individuals or entities known by the Defendants to exist.

14.     The word **"communication"** means any transmittal of information including correspondence, electronic-mail, telex, facsimile transmission, telecopy, recording in any medium of oral communication, telephone and message log, note or memorandum relating to written or oral communications, and any translation thereof.

15.     The word **"person"** means, without limitation, any natural person, corporation, partnership, association, sole proprietorship, cooperative, association, business trust, estate, trust or other entity.

16.     The word **"date"** shall mean the exact date, month and year, if ascertainable, or if not, the best approximation (including a description of relationships to other events) with the indication that it is an approximation.

17.     The terms **"describe in detail"** and **"set forth the factual basis"** shall mean: (a) to describe fully by reference to underlying facts rather than by ultimate facts or conclusions of facts or law; and (b) to particularize as to: (i) times, (ii) place, and (iii) manner.

18.     The terms **"description"** or **"describe"** shall mean to provide a narrative, detailed and chronological history of the incident or events inquired about, including pertinent dates, identifying persons involved and identifying documents utilized or generated thereby.

19.     The term **"identify"** when used with reference to an individual person shall mean to state his or her (a) full name (or, if not known, his or her job title or position and employer, or if no other identification is possible, provide a sufficient description so that he or she will be identifiable); (b) title; (c) present position and business affiliation; (d) the person whom he or she was representing or acting for; (e) present (or last known, with indication of the date of that last knowledge) business address; and (f) present (or last known, with indication of the date of that last knowledge) residence address.

20.     The term **"identify"** when used with reference to a document shall mean to: (a) state the type of document (e.g., memorandum, contract, letter, etc.); (b) set forth its date; (d) identify the author (and if different, the originator and signer); (d) set forth the title, heading or other designation, numerical or otherwise, of the document; (e) identify the person(s) (or if widely distributed, set forth the organization of classes of persons) to whom the document was sent; (f) set forth the present or last known location of the document; and (g) describe and set forth the substance of the document. Alternatively, you may identify the document by Bates number, if produced.

21.     The term **"identify"** when used concerning any fact, information, source of information or reason, means to (a) describe the substance of the fact, information, source of information or reason; (b) identify every person who was the source of the information; (c) state whether any minutes, notes, memoranda, or other record of such fact, information, source of information or reason were made; (d) state whether such record now exists; and (e) identify the person presently having possession, custody, or control of each such record.

22.     The words **"relating to"** mean, without limitation, in any way constituting, mentioning, referring to, describing, summarizing, evidencing, listing, indicating, relevant to, demonstrating, tending to prove or disprove, containing, reflecting, concerning, pertaining to, constituting, analyzing, explaining, or in any way logically or factually connected with the matter discussed.

23.     The word **"including"** shall mean including without limitation.

24.     The word **"concerning"** means regarding, referring to, discussing, describing, reflecting, identifying, dealing with, consisting of, constituting, explaining, comprising, relating to, or in any way pertaining to in whole or in part, directly or indirectly, to the subject matter of this lawsuit.

25.     The words **"support,"** **"supports,"** and **"supporting"** shall mean to establish or prove under a preponderance of the evidence standard.

26.     The connectives **"and"** and **"or"** shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope.

27.     All references to the singular shall include the plural, and all references to the plural shall include the singular.

28.     A masculine, feminine, or neuter pronoun shall not exclude the other genders.

## II. INSTRUCTIONS:

A.      Produce all original documents, copies, drafts thereof and other tangible things requested in this Rider for review and/or copying at the offices of Levenfeld Pearlstein, LLC, 2 North LaSalle, Suite 1300, Chicago, Illinois 60602, on or before the date stated in the Subpoena.

B.      The documents requested herein shall be produced either in the same form and organization as they are kept in the usual course of business, or organized and labeled to correspond with the categories in this Rider, and all retrieval information in computer storage shall be produced in printed form, or in a mutually agreed magnetic, optical or other standardized storage media.

C.      If any original document herein requested was formerly in your possession, custody or control and has since been lost or destroyed, you are required to submit in lieu of each such document a copy of the same, and if the copy has been lost or destroyed, a written statement which:

       1.     Describes in detail the nature of the document and its contents.

       2.     Identifies the person who prepared or authored the document and, if applicable, all persons to whom the Document was sent.

       3.     Specifies the date on which the documents was prepared, received and/or transmitted.

       4.     Specifies, if possible, the date on which the document was lost or destroyed and, if destroyed, the conditions of or reasons for such destruction and the persons requesting and performing the destruction.

D.      If any documents otherwise required to be produced to this Subpoena are withheld for any purpose, you must identify each document by stating its date, author, recipients and the reason for withholding, along with a generalized description of the document's contents.

E.      **Unless otherwise indicated, the time period covered by Wachovia's Subpoena and this Rider is: January 1, 2000 through the present.**

F.      This Subpoena is continuing in nature and any document obtained or located subsequent to the production requested herein, which would have been produced had it been available or its existence known at the time that this request was responded to, is to be promptly supplied.

## III. DOCUMENTS AND THINGS TO BE PRODUCED:

1.      Any and all corporate books and records of NOLA in the possession, custody or control of RCC, including, but not limited to, the following:

    (a)     corporate record books;

    (b)     corporate resolutions;

4

      (c)     minutes of corporate meetings (including member meetings and manager meetings);

      (d)     notices of corporate meetings (including member meetings and manager meetings);

      (e)     membership lists (or any documents that identify ownership interests in NOLA).

    2.     Any and all employment records of NOLA in the possession, custody or control of RCC including, but not limited to, the following:

      (a)     employee lists;

      (b)     employee handbooks;

      (c)     employee policies;

      (d)     payroll records.

    3.     Any and all financial records of NOLA in the possession, custody or control of RCC that were created (by RCC or any other party) during and/or covering the time period from January 1, 2000 through the present. Such financial records expressly include, but are not limited to, the following:

      (a)     Audit reports and/or audited financial statements, including any documents reviewed, referenced or relied upon in preparing any audit reports or audited financial statements;

      (b)     Balance sheets, including any documents reviewed, referenced or relied upon in preparing any balance sheets;

      (c)     Profit & loss statements, including any documents reviewed, referenced or relied upon in preparing any profit & loss statements;

      (d)     General ledgers, including any documents reviewed, referenced or relied upon in preparing any general ledger entries (for example, receipts, paid invoices, etc.);

      (e)     Check registers;

      (f)     Wire histories, and any other documents that evidence any transaction in which funds were wired into or out of any account held by or in the name of NOLA;

      (g)     Documents reviewed, referenced or relied upon in preparing any summary financial compilations pertaining to NOLA;

      (h)     Bank statements;

      (i)     Any and all payroll records of NOLA;

      (j)     Any dividends or distributions issued by NOLA.

4. Any and all corporate books and records of Loop in the possession, custody or control of RCC including, but not limited to, the following:

      (a) corporate record books;

      (b) corporate resolutions;

      (c) minutes of corporate meetings (including shareholder meetings and board of directors meetings);

      (d) notices of corporate meetings (including shareholder meetings and board of directors meetings);

      (e) shareholder lists (or any documents that identify the shareholders of Loop);

      (f) stock certificates.

5. Any and all employment records of Loop in the possession, custody or control of RCC including, but not limited to, the following:

      (a) employee lists;

      (b) employee handbooks;

      (c) employee policies;

      (d) payroll records.

6. Any and all financial records of Loop in the possession, custody or control of RCC that were created (by RCC or any other party) during and/or covering the time period from January 1, 2000 through the present. Such financial records expressly include, but are not limited to, the following:

      (a) Audit reports and/or audited financial statements, including any documents reviewed, referenced or relied upon in preparing any audit reports or audited financial statements;

      (b) Balance sheets, including any documents reviewed, referenced or relied upon in preparing any balance sheets;

      (c) Profit & loss statements, including any documents reviewed, referenced or relied upon in preparing any profit & loss statements;

      (d) General ledgers, including any documents reviewed, referenced or relied upon in preparing any general ledger entries (for example, receipts, paid invoices, etc.);

      (e) Check registers;

      (f) Wire histories, and any other documents that evidence any transaction in which funds were wired into or out of any account held by or in the name of NOLA;

      (g) Documents reviewed, referenced or relied upon in preparing any summary financial compilations pertaining to Loop;

(h) Bank statements;

(i) Any and all payroll records of Loop;

(j) Any dividends or distributions issued by Loop;

7. Any and all documents – including, but not limited to, billing records and time sheets – describing or concerning any corporate or transactional work performed by RCC for any of the following persons entities:

| | | | |
|---|---|---|---|
| (a) | NOLA | (p) | 200 West Partners, LP |
| (b) | South Beach | (q) | 200 West Properties, Inc. |
| (c) | Teletech Systems | (r) | Old Colony Partners, LP |
| (d) | Scattered Corporation | (s) | Old Colony Properties, Inc. |
| (e) | Loop | (t) | Telegraph Properties, LP |
| (f) | Loop Properties | (u) | Telegraph Properties, Inc. |
| (g) | Banco | (v) | Randolph Properties, LP |
| (h) | Chiplease, Inc. | (w) | Randolph Properties, Inc. |
| (i) | Repurchase Corp. | (x) | H&M Partners, GP |
| (j) | Resource Technology Corp. | (y) | Leon Greenblatt, III |
| (k) | Sterling Telemanagement Consultants, LLC | (z) | Leon Greenblatt, II |
| (l) | Sterling Telemanagement, Inc. | (aa) | Richard Nichols |
| (m) | EZ Links Golf, Inc. | (bb) | James Nichols |
| (n) | EZ Links Golf, LLC | (cc) | Andrew Jahelka |
| (o) | Rumpelstiltskin (USA) Corp. | (dd) | Robert Jahelka |
| | | (ee) | Any person or entity affiliated with the Defendants. |

8. To the extent not already covered by Request No. 7 above, any and all documents pertaining to the legal services provided by RCC that relate to or constitute RCC's $153,507.70 claim against NOLA in the *In re NOLA, LLC* bankruptcy filing.

9. To the extent not already covered by Request No. 7 above, any and all documents pertaining to the legal services provided by RCC that relate to or constitute RCC's $166,602.23 claim against Repurchase Corporation in the *In re Repurchase Corp.* bankruptcy filing.

10.    Any and all records of payments received by RCC from Loop, NOLA, South Beach, Teletech Systems, Loop Properties, Banco, Scattered Corporation, Chiplease, Inc., or any company affiliated with these entities.

11.    Any and all transactional files concerning any payments to Credit Suisse First Boston, LLC ("CSFB") from Loop for the benefit of Repurchase Corp.'s account at CSFB.

12.    Any and all documents concerning any payment by Loop to Marine Bank from an account held in the name of Chiplease, Inc.

13.    Any and all transactional files concerning the January 26, 2001 loan from Marine Bank to Loop, including any transactions in which ownership interests in affiliated companies were transferred or pledged.

14.    Any and all transactional files concerning the transfer of shares in EZ Links Golf, Inc. from Loop to Scattered Corporation, including any consideration given for that transfer.

15.    Any and all transactional files concerning Loop's granting of a security interest in its subsidiary companies to Banco, including any consideration given for that transfer.

16.    Any and all documents concerning any transfer of Loop's ownership interests in any of its subsidiary companies to Loop Properties, including any consideration for such transfers.

17.    Any and all documents concerning any transfer of Loop's ownership interests in any of its subsidiary companies to Scattered Corp., including any consideration for such transfers.

18.    Any and all documents concerning any other transaction not covered by Request Nos. 11-16 between Loop or NOLA and any of the following entities:

(a)  NOLA

(b)  South Beach

(c)  Teletech Systems

(d)  Scattered Corporation

(e)  Loop

(f)  Loop Properties

(g)  Banco

(h)  Chiplease, Inc.

(i)  Repurchase Corp.

(j)  Resource Technology Corp.

(k)  Sterling Telemanagement Consultants, LLC

(m)  EZ Links Golf, Inc.

(n)  EZ Links Golf, LLC

(o)  Rumpelstiltskin (USA) Corp.

(p)  200 West Partners, LP

(q)  200 West Properties, Inc.

(r)  Old Colony Partners, LP

(s)  Old Colony Properties, Inc.

(t)  Telegraph Properties, LP

(u)  Telegraph Properties, Inc.

(v)  Randolph Properties, LP

(w)  Randolph Properties, Inc.

8

(l)  Sterling Telemanagement, Inc.

(x)  H&M Partners, GP

(y)  Any person or entity affiliated with the Defendants.

19.    Any and all documents (including, but not limited to, transactional files) regarding: (a) the purpose behind forming the following entities, and (b) the contemplated business activities at the time of formation of the following entities:

(a)  NOLA

(b)  South Beach

(c)  Teletech Systems

(d)  Scattered Corporation

(e)  Loop

(f)  Loop Properties

(g)  Banco

(h)  Chiplease, Inc.

(i)  Repurchase Corp.

(j)  Resource Technology Corp.

(k)  Sterling Telemanagement Consultants, LLC

(l)  Sterling Telemanagement, Inc.

(m)  EZ Links Golf, Inc.

(n)  EZ Links Golf, LLC

(o)  Rumpelstiltskin (USA) Corp.

(p)  200 West Partners, LP

(q)  200 West Properties, Inc.

(r)  Old Colony Partners, LP

(s)  Old Colony Properties, Inc.

(t)  Telegraph Properties, LP

(u)  Telegraph Properties, Inc.

(v)  Randolph Properties, LP

(w)  Randolph Properties, Inc.

(x)  H&M Partners, GP

(y)  Any person or entity affiliated with the Defendants.

20.    Any and all documents (including, but not limited to, transactional files) in RCC's possession, custody or control regarding the decision by the principals of Loop, NOLA, South Beach, Scattered, Banco, Teletech Systems, Repurchase and Chiplease to purchase shares of Health Risk Management, Inc.

21.    Any and all documents in RCC's possession, custody or control identifying any persons (or entities) with ownership interests in any of the following entities during the relevant time period:

(a)  NOLA

(b)  South Beach

(m)  EZ Links Golf, Inc.

(n)  EZ Links Golf, LLC

(c) Teletech Systems

(d) Scattered Corporation

(e) Loop

(f) Loop Properties

(g) Banco

(h) Chiplease, Inc.

(i) Repurchase Corp.

(j) Resource Technology Corp.

(k) Sterling Telemanagement Consultants, LLC

(l) Sterling Telemanagement, Inc.

(o) Rumpelstiltskin (USA) Corp.

(p) 200 West Partners, LP

(q) 200 West Properties, Inc.

(r) Old Colony Partners, LP

(s) Old Colony Properties, Inc.

(t) Telegraph Properties, LP

(u) Telegraph Properties, Inc.

(v) Randolph Properties, LP

(w) Randolph Properties, Inc.

(x) H&M Partners, GP

(y) Any person or entity affiliated with the Defendants.

22.    Any documents in RCC's possession, custody or control identifying the corporate entities in which Leon A. Greenblatt, III holds any ownership interest, and/or is the beneficiary or trustee of such an ownership interest.

23.    Any documents in RCC's possession, custody or control identifying the corporate entities in which Leslie Jabine holds ownership interest, and/or is the beneficiary or trustee of such an ownership interest.

24.    Any documents in RCC's possession, custody or control identifying the corporate entities in which Richard Nichols holds anyownership interest, and/or is the beneficiary or trustee of such an ownership interest.

25.    Any documents in RCC's possession, custody or control identifying the corporate entities in which Andrew Jahelka holds any ownership interest.

26.    Any documents in JWN's possession, custody or control identifying the corporate entities in which Leon Greenblatt II holds any ownership interest.

27.    Any documents in JWN's possession, custody or control identifying the corporate entities in which James Nichols holds any ownership interest.

28.    Any documents in JWN's possession, custody or control identifying the corporate entities in which Robert Jahelka holds any ownership interest.

29.    Any documents in RCC's possession, custody or control that identify any accounts (checking, savings, investment or otherwise) held by or in the name of any of the following persons or entities:

(a) NOLA

(b) South Beach

(c) Teletech Systems

(d) Scattered Corporation

(e) Loop

(f) Loop Properties

(g) Banco

(h) Chiplease, Inc.

(i) Repurchase Corp.

(j) Resource Technology Corp.

(k) Sterling Telemanagement Consultants, LLC

(l) Sterling Telemanagement, Inc.

(m) EZ Links Golf, Inc.

(n) EZ Links Golf, LLC

(o) Rumpelstiltskin (USA) Corp.

(p) 200 West Partners, LP

(q) 200 West Properties, Inc.

(r) Old Colony Partners, LP

(s) Old Colony Properties, Inc.

(t) Telegraph Properties, LP

(u) Telegraph Properties, Inc.

(v) Randolph Properties, LP

(w) Randolph Properties, Inc.

(x) H&M Partners, GP

(y) Leon Greenblatt, III

(z) Leon Greenblatt, II

(aa) Richard Nichols

(bb) James Nichols

(cc) Andrew Jahelka

(dd) Robert Jahelka

(ee) David Neuhauser

(ff) Leslie Jabine

(gg) Any person or entity affiliated with the Defendants.

30. Any documents in RCC's possession, custody or control that identify any assets owned (or held by or in the name of) any of the following persons or entities during the time period from September 1, 1998 through the present:

(a) NOLA

(b) South Beach

(c) Teletech Systems

(d) Scattered Corporation

(e) Loop

(q) 200 West Properties, Inc.

(r) Old Colony Partners, LP

(s) Old Colony Properties, Inc.

(t) Telegraph Properties, LP

(u) Telegraph Properties, Inc.

11

(f) Loop Properties

(g) Banco

(h) Chiplease, Inc.

(i) Repurchase Corp.

(j) Resource Technology Corp.

(k) Sterling Telemanagement Consultants, LLC

(l) Sterling Telemanagement, Inc.

(m) EZ Links Golf, Inc.

(n) EZ Links Golf, LLC

(o) Rumpelstiltskin (USA) Corp.

(p) 200 West Partners, LP

(v) Randolph Properties, LP

(w) Randolph Properties, Inc.

(x) H&M Partners, GP

(y) Leon Greenblatt, III

(z) Leon Greenblatt, II

(aa) Richard Nichols

(bb) James Nichols

(cc) Andrew Jahelka

(dd) Robert Jahelka

(ee) David Neuhauser

(ff) Leslie Jabine

(gg) Any person or entity affiliated with the Defendants.

31.    Any documents in RCC's possession, custody or control that identify any liens or encumbrances against any assets owned (or held by or in the name of) any of the following persons or entities during the time period from September 1, 1998 through the present:

(a) NOLA

(b) South Beach

(c) Teletech Systems

(d) Scattered Corporation

(e) Loop

(f) Loop Properties

(g) Banco

(h) Chiplease, Inc.

(i) Repurchase Corp.

(j) Resource Technology Corp.

(q) 200 West Properties, Inc.

(r) Old Colony Partners, LP

(s) Old Colony Properties, Inc.

(t) Telegraph Properties, LP

(u) Telegraph Properties, Inc.

(v) Randolph Properties, LP

(w) Randolph Properties, Inc.

(x) H&M Partners, GP

(y) Leon Greenblatt, III

(z) Leon Greenblatt, II

(k) Sterling Telemanagement Consultants, LLC

(l) Sterling Telemanagement, Inc.

(m) EZ Links Golf, Inc.

(n) EZ Links Golf, LLC

(o) Rumpelstiltskin (USA) Corp.

(p) 200 West Partners, LP

(aa) Richard Nichols

(bb) James Nichols

(cc) Andrew Jahelka

(dd) Robert Jahelka

(ee) David Neuhauser

(ff) Leslie Jabine

(gg) Any person or entity affiliated with the Defendants.

32.     Any documents in RCC's possession, custody or control (including, but not limited to, transaction files) that constitute, identify or describe any loans or other financing agreements or arrangements, any payments made with respect thereto or thereof, involving any of the following persons or entities during the time period from September 1, 1998 through the present:

(a) NOLA

(b) South Beach

(c) Teletech Systems

(d) Scattered Corporation

(e) Loop

(f) Loop Properties

(g) Banco

(h) Chiplease, Inc.

(i) Repurchase Corp.

(j) Resource Technology Corp.

(k) Sterling Telemanagement Consultants, LLC

(l) Sterling Telemanagement, Inc.

(m) EZ Links Golf, Inc.

(n) EZ Links Golf, LLC

(o) Rumpelstiltskin (USA) Corp.

(q) 200 West Properties, Inc.

(r) Old Colony Partners, LP

(s) Old Colony Properties, Inc.

(t) Telegraph Properties, LP

(u) Telegraph Properties, Inc.

(v) Randolph Properties, LP

(w) Randolph Properties, Inc.

(x) H&M Partners, GP

(y) Leon Greenblatt, III

(z) Leon Greenblatt, II

(aa) Richard Nichols

(bb) James Nichols

(cc) Andrew Jahelka

(dd) Robert Jahelka

(ee) David Neuhauser

(p) 200 West Partners, LP                    (ff)  Leslie Jabine

                                             (gg)  Any person ore entity affiliated
                                                   with the Defendants.


33.    Any documents in RCC's possession, custody or control (including, but not limited to, transaction files) that identify or describe any transfers of assets from or to, any value or consideration received in exchange, any of the following persons or entities during the time period from January 1, 2000 through the present:

(a)  NOLA                                    (q)   200 West Properties, Inc.

(b)  South Beach                             (r)   Old Colony Partners, LP

(c)  Teletech Systems                        (s)   Old Colony Properties, Inc.

(d)  Scattered Corporation                   (t)   Telegraph Properties, LP

(e)  Loop                                    (u)   Telegraph Properties, Inc.

(f)  Loop Properties                         (v)   Randolph Properties, LP

(g)  Banco                                   (w)   Randolph Properties, Inc.

(h)  Chiplease, Inc.                         (x)   H&M Partners, GP

(i)  Repurchase Corp.                        (y)   Leon Greenblatt, III

(j)  Resource Technology Corp.               (z)   Leon Greenblatt, II

(k)  Sterling Telemanagement Consultants, LLC    (aa)  Richard Nichols

(l)  Sterling Telemanagement, Inc.           (bb)  James Nichols

(m) EZ Links Golf, Inc.                      (cc)  Andrew Jahelka

(n)  EZ Links Golf, LLC                      (dd)  Robert Jahelka

(o)  Rumpelstiltskin (USA) Corp.             (ee)  David Neuhauser

(p)  200 West Partners, LP                   (ff)  Leslie Jabine

                                             (gg)  Any person or entity affiliated
                                                   with the Defendants.


34.    Any non-privileged correspondence between RCC and any of the following persons sent or received during the time period from January 1, 2000 through the present:

(a) Leon Greenblatt, III

(b) Leon Greenblatt, II

(c) Richard Nichols

(d) James Nichols

(e) Andrew Jahelka

(f) Robert Jahelka

(g) David Neuhauser

(h) Leslie Jabine

(i) C. Philip Curley, Esq.

(j) John H. Wickert, Esq.

(k) Alan R. Dolinko, Esq.

(l) Michael May, CPA

(m) James W. Naisbitt, Esq.

(n) Louis D. Bernstein, Esq.

(o) Mark E. Leipold, Esq.

(p) Any person or entity affiliated with the Defendants.

35.     Any leases (including documents that identify or describe any such leases) in RCC's possession, custody or control, to which any of the following entities were (or still are) a party:

(a) NOLA

(b) South Beach

(c) Teletech Systems

(d) Scattered Corporation

(e) Loop

(f) Loop Properties

(g) Banco

(h) Chiplease, Inc.

(i) Repurchase Corp.

(j) Resource Technology Corp.

(k) Sterling Telemanagement Consultants, LLC

(l) Sterling Telemanagement, Inc.

(m) EZ Links Golf, Inc.

(n) EZ Links Golf, LLC

(o) Rumpelstiltskin (USA) Corp.

(p) 200 West Partners, LP

(q) 200 West Properties, Inc.

(r) Old Colony Partners, LP

(s) Old Colony Properties, Inc.

(t) Telegraph Properties, LP

(u) Telegraph Properties, Inc.

(v) Randolph Properties, LP

(w) Randolph Properties, Inc.

(x) H&M Partners, GP

(y) Any person or entity affiliated with the Defendants.

15

36.     Any documents in RCC's possession, custody or control (including, but not limited to, transaction files) that identify or describe any rents received or paid by any of the entities identified above in Request No. 35(a) through 35(x), inclusive.

37.     Any documents in RCC's possession, custody or control (including, but not limited to, transaction files)that identify, describe or constitute any negotiations pertaining to the leases described above in Request No. 35(a) through 35(x), inclusive, including any drafts of such leases.

LAW OFFICES

# ROBINSON CURLEY & CLAYTON, P.C.

SUITE 1700
300 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606

C. PHILIP CURLEY
FAY CLAYTON
ALAN F. CURLEY
CYNTHIA H. HYNDMAN
SUSAN VALENTINE
JOHN H. WICKERT
ALAN R. DOLINKO
ROBERT S. MICHAELS
ELIZABETH J. HUBERTZ

TELEPHONE (312) 663-3100
FACSIMILE (312) 663-0303
www.robinsoncurley.com

CARL T. BERGETZ
ANGEL M. KRULL
ROBERT L. MARGOLIS
DARLENE M. OLIVER

OF COUNSEL
ELLEN G. ROBINSON
LOIS J. LIPTON

September 20, 2005

VIA FACSIMILE

Christopher S. Griesmeyer
Levenfeld Pearlstein, LLC
2 North LaSalle Street, Suite 1300
Chicago, IL 60602

Re:    Wachovia Securities, LLC v. Neuhauser, et al.; 04 C 3082

Dear Mr. Griesmeyer:

As you know, responses to the written discovery to the Corporate Defendants are presently due this Friday, September 23, 2005, which is also the return date for the document subpoena served on Robinson Curley & Clayton.

While Ms. Sharp and I had planned to serve the referenced responses and objections by the scheduled date, I have been called out of town unexpectedly for the rest of this week and will be unable to complete them by Friday. We hope to be able to finalize the responses and objections and to serve them by September 28, and will do so in no event later than September 30, well in advance of our next scheduled appearance before Judge Hart on October 5. Your agreement to this short extension will obviate the need to bother Judge Hart with a motion to extend. My understanding is that Jim Naisbitt will be serving responses and objections to the outstanding discovery requests to the Individual Defendants and to the document subpoena served on James W. Naisbitt, Ltd. on or before September 23 as scheduled.



EXHIBIT
4

ROBINSON CURLEY & CLAYTON, P.C.

Christopher S. Griesmeyer
September 20, 2005
Page 2


While I will be out of town the remainder of the week, you can leave me a voice message and I will return your call if you need to contact me, or you can call my partner Al Dolinko. Thank you for your consideration in this matter.


                              Very truly yours,

                              ROBINSON CURLEY & CLAYTON, P.C.

                              C. Philip Curley



CPC/dsr

cc:    Elizabeth D. Sharp
       James W. Naisbitt
       Alan R. Dolinko

# LEVENFELD PEARLSTEIN, LLC
WWW.LPLEGAL.COM

**Christopher S. Griesmeyer**
(312) 476-7574
CGRIESMEYER@LPLEGAL.COM
Chicago Office

September 21, 2005

## Via Facsimile

C. Phillip Curley
Robinson Curley & Clayton, P.C.
Suite 1700
300 South Wacker Drive
Chicago, IL 60606

Re:   *Wachovia Securities, LLC v. David Neuhauser, et al.*
      Case No.: 04 C 3082
      Our File No.: 34048-52927

Dear Mr. Curley:

Thank you for your letter of yesterday afternoon. I understand from speaking with Mr. Blackman that you informed him on September 14, 2005 that - contrary to the previously established deadlines - you did not intend to provide any responsive answers to Wachovia's outstanding discovery requests before our October 5, 2005 court appearance. I therefore find your claim that you and Ms. Sharp "had planned to serve the referenced responses and objections by the scheduled date to" be specious at best.

Moreover, I fail to understand why you would need any additional time to prepare objections to what I believe are simple and straightforward (albeit comprehensive) discovery requests. I therefore cannot in good faith allow you an extension of time for that purpose. However, if you intend to produce substantive answers and documents by September 30th, then I am more than happy to grant your request for additional time. I therefore agree to your requested extension with the understanding that you and Ms. Sharp will not be objecting to any of Plaintiff's discovery requests.

On a related note, I am preparing Plaintiff's proposed discovery plan for your review and comment. Of particular concern are Plaintiff's third-party subpoenas, especially in light of a telephone call I received from Gregory Jordan (who, as you are already aware, represents a number of the Greenblatt-controlled respondents.) As I explained in my August 26, 2005 letter, I am not interested in burdening Mr. Greenblatt, his colleagues or his alter egos by requiring the production of multiple copies of the same documents. I therefore continue to solicit your resourcefulness in fashioning a comprehensive response to Wachovia's outstanding discovery request and subpoenas.



**EXHIBIT**

**5**

Gregory J. Jordan
September 21, 2005
Page 2

Finally, I understand you may be out of the office when this letter arrives, and I am therefore
forwarding copies to Messrs. Dolinko and Wickert should they choose to respond in your
absence.

Sincerely,

Christopher S. Griesmeyer

CSG/lj

cc:    Alan R. Dolinko, Esq. (via facsimile)
       John H. Wickert, Esq. (via Facsimile)
       Elizabeth D. Sharp, Esq. (via facsimile)
       Gregory J. Jordan, Esq. (via facsimile)

# DYKEMAGOSSETT
# ROOKS | PITTS PLLC

10 South Wacker Drive
Suite 2300
Chicago, Illinois 60606
WWW.DYKEMA.COM

Tel: (312) 876-1700
Fax: (866) 698-0830

**Gregory J. Jordan**
Direct Dial: (312) 627-2171
Email: GJORDAN@DYKEMA.COM
**Via Facsimile 312-346-8434**

September 21, 2005

Christopher S. Griesmeyer
Levenfeld Pearlstein, LLC
2 North LaSalle Street, Suite 1300
Chicago, IL 60602

**Re:** **Wachovia Securities, LLC v. David Neuhauser, et.al., Case No. 04 C 3082**

Dear Chris:

This will confirm our conversation with regard to the subpoenas served by Wachovia Securities, LLC on 200 West Partners, Limited Partnership, 200 West Properties, Inc.,Chiplease, Inc., Elizabeth Sharp, EZ Links Golf, LLC, , EZ Links Golf, Inc., Michael May, CPA, Old Colony Partners, LP, Old Colony Properties, Inc., Randolph Properties, Inc. Repurchase Corporation (098797), Rumpelstiltskin (USA), South Beach Securities, Inc., Sterling Telemangement Consultants, L.L.C., Sterling Telemangement, Inc., Telegraph Properties, Inc., Teletech Systems, Inc. Wachovia Securities, LLC and the above-referenced parties have agreed to an extension of the time to respond and/or file objections to the Subpoena in a Civil Case served on each. The extension shall run through September 30, 2005. Our clients have requested additional time and reserve the right to seek a further a further extension by agreement or through a motion to the Court. Your client reserves the right to contest any extension beyond that date. All parties agree to proceed in good faith.

As I noted, I have not familiarized myself with the files, however, my initial review leads me to believe that the subpoenas are overbroad, burdensome and request documents that are not relevant to the dispute between Wachovia Securities, LLC and the defendants, but may cause one or more of our clients to suffer damage relating to their business and business affairs. We each agreed to discuss the matters in good faith in an attempt to resolve all disputes and will proceed in go faith regard to any objections..

CALIFORNIA | ILLINOIS | MICHIGAN | WASHINGTON D.C.



EXHIBIT
6

**DYKEMAGOSSETT**
**ROOKS | PITTS** PLLC

Christopher S. Griesmeyer
September 21, 2005
Page 2

Truly yours,

**DYKEMA GOSSETT ROOKS PITTS** PLLC

Gregory J. Jordan

GJJ:rwj