# Exhibit I

# United States Bankruptcy Court
## Northern District of Illinois

In re    SOUTH BEACH SECURITIES, INC.

Debtor

Case No. ___05-16679___

Chapter_____11_____

# SUMMARY OF SCHEDULES

Indicate as to each schedule whether that schedule is attached and state the number of pages in each. Report the totals from Schedules A, B, D, E, F, I, and J in the boxes provided. Add the amounts from Schedules A and B to determine the total amount of the debtor's assets. Add the amounts from Schedules D, E, and F to determine the total amount of the debtor's liabilities.

|  |  |  | AMOUNTS SCHEDULED | | |
| --- | --- | --- | --- | --- | --- |
| NAME OF SCHEDULE | ATTACHED (YES/NO) | NO. OF SHEETS | ASSETS | LIABILITIES | OTHER |
| A - Real Property | Yes | 1 | 0.00 | | |
| B - Personal Property | Yes | 3 | 0.00 | | |
| C - Property Claimed as Exempt | No | 0 | | | |
| D - Creditors Holding Secured Claims | Yes | 1 | | 0.00 | |
| E - Creditors Holding Unsecured Priority Claims | Yes | 1 | | 0.00 | |
| F - Creditors Holding Unsecured Nonpriority Claims | Yes | 1 | | 3,297,489.00 | |
| G - Executory Contracts and Unexpired Leases | Yes | 1 | | | |
| H - Codebtors | Yes | 1 | | | |
| I - Current Income of Individual Debtor(s) | No | 0 | | | N/A |
| J - Current Expenditures of Individual Debtor(s) | No | 0 | | | N/A |
| Total Number of Sheets of ALL Schedules | | 9 | | | |
| Total Assets | | | 0.00 | | |
| Total Liabilities | | | | 3,297,489.00 | |

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
JUN 0 1 2005
KENNETH S. GARDNER, CLERK
TEAM - E

In re     **SOUTH BEACH SECURITIES, INC.**            Case No. _____ **05-16679** _____

_____
Debtor

# SCHEDULE A. REAL PROPERTY

    Except as directed below, list all real property in which the debtor has any legal, equitable, or future interest, including all property owned as a cotenant, community property, or in which the debtor has a life estate. Include any property in which the debtor holds rights and powers exercisable for the debtor's own benefit. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor holds no interest in real property, write "None" under "Description and Location of Property."

    Do not include interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

    If an entity claims to have a lien or hold a secured interest in any property, state the amount of the secured claim. (See Schedule D.) If no entity claims to hold a secured interest in the property, write "None" in the column labeled "Amount of Secured Claim."

    If the debtor is an individual or if a joint petition is filed, state the amount of any exemption claimed in the property only in Schedule C - Property Claimed as Exempt.

| Description and Location of Property | Nature of Debtor's Interest in Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption | Amount of Secured Claim |
|---|---|---|---|---|
| None | | | | |

FILED
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
JUN 0 1 2005
KENNETH S. GARDNER, CLERK
TEAM - E

|  |  |  |
|---|---|---|
| Sub-Total > | 0.00 | (Total of this page) |
| Total > | 0.00 | |

  **0**    continuation sheets attached to the Schedule of Real Property        (Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037         Best Case Bankruptcy

In re   **SOUTH BEACH SECURITIES, INC.**                                   Case No. _____05-16679_____
                                                                                    ,
                              Debtor

## SCHEDULE B. PERSONAL PROPERTY

Except as directed below, list all personal property of the debtor of whatever kind. If the debtor has no property in one or more of the categories, place an "x" in the appropriate position in the column labeled "None." If additional space is needed in any category, attach a separate sheet properly identified with the case name, case number, and the number of the category. If the debtor is married, state whether husband, wife, or both own the property by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the debtor is an individual or a joint petition is filed, state the amount of any exemptions claimed only in Schedule C - Property Claimed as Exempt.

Do not list interests in executory contracts and unexpired leases on this schedule. List them in Schedule G - Executory Contracts and Unexpired Leases.

If the property is being held for the debtor by someone else, state that person's name and address under "Description and Location of Property."

| | Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|---|
| 1. | Cash on hand | X | | | |
| 2. | Checking, savings or other financial accounts, certificates of deposit, or shares in banks, savings and loan, thrift, building and loan, and homestead associations, or credit unions, brokerage houses, or cooperatives. | X | | | |
| 3. | Security deposits with public utilities, telephone companies, landlords, and others. | X | | | |
| 4. | Household goods and furnishings, including audio, video, and computer equipment. | X | | | |
| 5. | Books, pictures and other art objects, antiques, stamp, coin, record, tape, compact disc, and other collections or collectibles. | X | | | |
| 6. | Wearing apparel. | X | | | |
| 7. | Furs and jewelry. | X | | | |
| 8. | Firearms and sports, photographic, and other hobby equipment. | X | | | |
| 9. | Interests in insurance policies. Name insurance company of each policy and itemize surrender or refund value of each. | X | | | |

Sub-Total >                          0.00
(Total of this page)

__2__ continuation sheets attached to the Schedule of Personal Property

In re   **SOUTH BEACH SECURITIES, INC.**                                    Case No. ___05-16679___

_____
                        Debtor

## SCHEDULE B. PERSONAL PROPERTY
### (Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 10. Annuities. Itemize and name each issuer. | X | | | |
| 11. Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans. Itemize. | X | | | |
| 12. Stock and interests in incorporated and unincorporated businesses. Itemize. | | **Health Risk Management, Inc.** | - | 0.00 |
| 13. Interests in partnerships or joint ventures. Itemize. | X | | | |
| 14. Government and corporate bonds and other negotiable and nonnegotiable instruments. | X | | | |
| 15. Accounts receivable. | X | | | |
| 16. Alimony, maintenance, support, and property settlements to which the debtor is or may be entitled. Give particulars. | X | | | |
| 17. Other liquidated debts owing debtor including tax refunds. Give particulars. | X | | | |
| 18. Equitable or future interests, life estates, and rights or powers exercisable for the benefit of the debtor other than those listed in Schedule of Real Property. | X | | | |
| 19. Contingent and noncontingent interests in estate of a decedent, death benefit plan, life insurance policy, or trust. | X | | | |

Sub-Total >                    0.00
(Total of this page)

Sheet __1__ of __2__ continuation sheets attached
to the Schedule of Personal Property

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                                    Best Case Bankruptcy

In re    **SOUTH BEACH SECURITIES, INC.**                Case No. _____ **05-16679** _____

Debtor

## SCHEDULE B. PERSONAL PROPERTY
(Continuation Sheet)

| Type of Property | N O N E | Description and Location of Property | Husband, Wife, Joint, or Community | Current Market Value of Debtor's Interest in Property, without Deducting any Secured Claim or Exemption |
|---|---|---|---|---|
| 20. Other contingent and unliquidated claims of every nature, including tax refunds, counterclaims of the debtor, and rights to setoff claims. Give estimated value of each. | X | | | |
| 21. Patents, copyrights, and other intellectual property. Give particulars. | X | | | |
| 22. Licenses, franchises, and other general intangibles. Give particulars. | X | | | |
| 23. Automobiles, trucks, trailers, and other vehicles and accessories. | X | | | |
| 24. Boats, motors, and accessories. | X | | | |
| 25. Aircraft and accessories. | X | | | |
| 26. Office equipment, furnishings, and supplies. | X | | | |
| 27. Machinery, fixtures, equipment, and supplies used in business. | X | | | |
| 28. Inventory. | X | | | |
| 29. Animals. | X | | | |
| 30. Crops - growing or harvested. Give particulars. | X | | | |
| 31. Farming equipment and implements. | X | | | |
| 32. Farm supplies, chemicals, and feed. | X | | | |
| 33. Other personal property of any kind not already listed. | X | | | |

|  |  |
|---|---|
| Sub-Total > | 0.00 |
| (Total of this page) |  |
| Total > | 0.00 |

Sheet __2__ of __2__ continuation sheets attached
to the Schedule of Personal Property

(Report also on Summary of Schedules)

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037           Best Case Bankruptcy

Form B6D
(10/05)

In re    **SOUTH BEACH SECURITIES, INC.**                Case No. ____05-16879____

                               Debtor

# SCHEDULE D. CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests. List creditors in alphabetical order to the extent practicable. If all secured claims will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

■   Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | Husband, Wife, Joint, or Community | | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND MARKET VALUE OF PROPERTY SUBJECT TO LIEN | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION IF ANY |
|---|---|---|---|---|---|---|---|---|---|
| | | H W | J C | | | | | | |
| Account No. | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | Value $ | | | | | |
| Account No. | | | | | | | | | |
| | | | | Value $ | | | | | |

    0    continuation sheets attached

| | Subtotal (Total of this page) | |
|---|---|---|
| | Total (Report on Summary of Schedules) | **0.00** |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037                       Best Case Bankruptcy

Form B6E
(10/10)

In re **SOUTH BEACH SECURITIES, INC.**     Case No. **05-16679**

                  Debtor

# SCHEDULE E. CREDITORS HOLDING UNSECURED PRIORITY CLAIMS

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether husband, wife, both of them or the marital community may be liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotal" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Repeat this total also on the Summary of Schedules.

■ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets.)

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(2).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $4,925* per person earned within 90 days immediately preceding the filing of the original petition, or the cessation of business, which ever occurred first, to the extent provided in 11 U.S.C. § 507 (a)(3).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $4,925* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(5).

☐ **Deposits by individuals**

Claims of individuals up to $2,225* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(6).

☐ **Alimony, Maintenance, or Support**

Claims of a spouse, former spouse, or child of the debtor for alimony, maintenance, or support, to the extent provided in 11 U.S.C. § 507(a)(7).

☐ **Taxes and Certain Other Debts Owed to Governmental Units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C § 507(a)(8).

☐ **Commitments to Maintain the Capital of an Insured Depository Institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507(a)(9).

*Amounts are subject to adjustment on April 1, 2007, and every three years thereafter with respect to cases commenced on or after the date of adjustment.

          **0**  continuation sheets attached

Form B6F
2003

In re    **SOUTH BEACH SECURITIES, INC.**           Case No. _____ 05-16679 _____

Debtor

# SCHEDULE F. CREDITORS HOLDING UNSECURED NONPRIORITY CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number, of all entities holding unsecured claims without priority against the debtor or the property of the debtor, as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. Do not include claims listed in Schedules D and E. If all creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor", include the entity on the appropriate schedule of creditors, and complete Schedule H - Codebtors. If a joint petition is filed, state whether husband, wife, both of them, or the marital community maybe liable on each claim by placing an "H", "W", "J", or "C" in the column labeled "Husband, Wife, Joint, or Community".

If the claim is contingent, place an "X" in the column labeled "Contingent". If the claim is unliquidated, place an "X" in the column labeled "Unliquidated". If the claim is disputed, place an "X" in the column labeled "Disputed". (You may need to place an "X" in more than one of these three columns.)

Report the total of all claims listed on this schedule in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

☐   Check this box if debtor has no creditors holding unsecured claims to report on this Schedule F.

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions above.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM. IF CLAIM IS SUBJECT TO SETOFF, SO STATE. | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM |
|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | |
| attered Corporation ...30 S. Wells St. Chicago, IL 60606 | | - | | | | | 3,297,489.00 |
| Account No. | | | | | | | |
| | | | | | | | |
| Account No. | | | | | | | |
| | | | | | | | |
| Account No. | | | | | | | |
| | | | | | | | |

| | | |
|---|---|---|
| _0_ continuation sheets attached | Subtotal (Total of this page) | 3,297,489.00 |
| | Total (Report on Summary of Schedules) | 3,297,489.00 |

Copyright (c) 1996-2005 - Best Case Solutions, Inc. - Evanston, IL - (800) 492-8037

In re    **SOUTH BEACH SECURITIES, INC.**            Case No.     **05-16679**

Debtor

# SCHEDULE G. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Describe all executory contracts of any nature and all unexpired leases of real or personal property. Include any timeshare interests. State nature of debtor's interest in contract, i.e., "Purchaser," "Agent," etc. State whether debtor is the lessor or lessee of a lease. Provide the names and complete mailing addresses of all other parties to each lease or contract described.

NOTE:   A party listed on this schedule will not receive notice of the filing of this case unless the party is also scheduled in the appropriate schedule of creditors.

■ Check this box if debtor has no executory contracts or unexpired leases.

| Name and Mailing Address, Including Zip Code, of Other Parties to Lease or Contract | Description of Contract or Lease and Nature of Debtor's Interest. State whether lease is for nonresidential real property. State contract number of any government contract. |
| --- | --- |
| | |

    **0**     continuation sheets attached to Schedule of Executory Contracts and Unexpired Leases

Copyright (c) 1996-2005 - Best Case Solutions, Inc - Evanston, IL - (800) 492-8037

In re    **SOUTH BEACH SECURITIES, INC.**                                    Case No. _____ **05-16679** _____
_____
                              Debtor

# SCHEDULE H. CODEBTORS

Provide the information requested concerning any person or entity, other than a spouse in a joint case, that is also liable on any debts listed by debtor in the schedules of creditors. Include all guarantors and co-signers. In community property states, a married debtor not filing a joint case should report the name and address of the nondebtor spouse on this schedule. Include all names used by the nondebtor spouse during the six years immediately preceding the commencement of this case.

■ Check this box if debtor has no codebtors.

| NAME AND ADDRESS OF CODEBTOR | NAME AND ADDRESS OF CREDITOR |
| --- | --- |
| | |

**0**    continuation sheets attached to Schedule of Codebtors

## United States Bankruptcy Court
### Northern District of Illinois

In re    SOUTH BEACH SECURITIES, INC.          Case No.    __05-16679__

                      Debtor(s)        Chapter     __11__

## DECLARATION CONCERNING DEBTOR'S SCHEDULES

### DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I, the Authorized Agent of the corporation named as the debtor in this case, declare under penalty of perjury that I have read the foregoing summary and schedules, consisting of __10__ sheets *[total shown on summary page plus 1]*, and that they are true and correct to the best of my knowledge, information, and belief.

Date     5 31 2005         Signature

                                         Leon Greenblatt
                                         Authorized Agent

*Penalty for making a false statement or concealing property:* Fine of up to $500,000 or imprisonment for up to 5 years or both. 18 U.S.C. §§ 152 and 3571.

Form 7
(12/03)

## United States Bankruptcy Court
### Northern District of Illinois

In re **SOUTH BEACH SECURITIES, INC.**

Debtor(s)

Case No. **05-16679**

Chapter **11**

## STATEMENT OF FINANCIAL AFFAIRS

This statement is to be completed by every debtor. Spouses filing a joint petition may file a single statement on which the information for both spouses is combined. If the case is filed under chapter 12 or chapter 13, a married debtor must furnish information for both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed. An individual debtor engaged in business as a sole proprietor, partner, family farmer, or self-employed professional, should provide the information requested on this statement concerning all such activities as well as the individual's personal affairs.

Questions 1 - 18 are to be completed by all debtors. Debtors that are or have been in business, as defined below, also must complete Questions 19 - 25. **If the answer to an applicable question is "None," mark the box labeled "None."** If additional space is needed for the answer to any question, use and attach a separate sheet properly identified with the case name, case number (if known) and the number of the question.

DEFINITIONS

"*In business.*" A debtor is "in business" for the purpose of this form if the debtor is a corporation or partnership. An individual debtor is "in business" for the purpose of this form if the debtor is or has been, within the six years immediately preceding the filing of this bankruptcy case, any of the following: an officer, director, managing executive, or owner of 5 percent or more of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or self-employed.

"*Insider.*" The term "insider" includes but is not limited to: relatives of the debtor; general partners of the debtor and their relatives; corporations of which the debtor is an officer, director, or person in control; officers, directors, and any owner of 5 percent or more of the voting or equity securities of a corporate debtor and their relatives; affiliates of the debtor and insiders of such affiliates; any managing agent of the debtor. 11 U.S.C. § 101.

---

#### 1. Income from employment or operation of business

None ☐

State the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business from the beginning of this calendar year to the date this case was commenced. State also the gross amounts received during the two years immediately preceding this calendar year. (A debtor that maintains, or has maintained, financial records on the basis of a fiscal rather than a calendar year may report fiscal year income. Identify the beginning and ending dates of the debtor's fiscal year.) If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income of both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE (if more than one) |
|--------|---------------------------|
| $0.00  | No income for last two years. |

#### 2. Income other than from employment or operation of business

None ☐

State the amount of income received by the debtor other than from employment, trade, profession, or operation of the debtor's business during the two years immediately preceding the commencement of this case. Give particulars. If a joint petition is filed, state income for each spouse separately. (Married debtors filing under chapter 12 or chapter 13 must state income for each spouse whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| AMOUNT | SOURCE |
|--------|--------|
| $0.00  | None.  |

2

### 3. Payments to creditors

None ■ a. List all payments on loans, installment purchases of goods or services, and other debts, aggregating more than $600 to any creditor, made within **90 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATES OF PAYMENTS | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

None ■ b. List all payments made within **one year** immediately preceding the commencement of this case to or for the benefit of creditors who are or were insiders. (Married debtors filing under chapter 12 or chapter 13 must include payments by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR AND RELATIONSHIP TO DEBTOR | DATE OF PAYMENT | AMOUNT PAID | AMOUNT STILL OWING |
|---|---|---|---|

### 4. Suits and administrative proceedings, executions, garnishments and attachments

None ■ a. List all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filing of this bankruptcy case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| CAPTION OF SUIT AND CASE NUMBER | NATURE OF PROCEEDING | COURT OR AGENCY AND LOCATION | STATUS OR DISPOSITION |
|---|---|---|---|

None ■ b. Describe all property that has been attached, garnished or seized under any legal or equitable process within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON FOR WHOSE BENEFIT PROPERTY WAS SEIZED | DATE OF SEIZURE | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 5. Repossessions, foreclosures and returns

None ■ List all property that has been repossessed by a creditor, sold at a foreclosure sale, transferred through a deed in lieu of foreclosure or returned to the seller, within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR OR SELLER | DATE OF REPOSSESSION, FORECLOSURE SALE, TRANSFER OR RETURN | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 6. Assignments and receiverships

None ■ a. Describe any assignment of property for the benefit of creditors made within **120 days** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include any assignment by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF ASSIGNEE | DATE OF ASSIGNMENT | TERMS OF ASSIGNMENT OR SETTLEMENT |
|---|---|---|

None ■ b. List all property which has been in the hands of a custodian, receiver, or court-appointed official within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning property of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CUSTODIAN | NAME AND LOCATION OF COURT CASE TITLE & NUMBER | DATE OF ORDER | DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|---|

3

### 7. Gifts

None
■
List all gifts or charitable contributions made within **one year** immediately preceding the commencement of this case except ordinary and usual gifts to family members aggregating less than $200 in value per individual family member and charitable contributions aggregating less than $100 per recipient. (Married debtors filing under chapter 12 or chapter 13 must include gifts or contributions by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF PERSON OR ORGANIZATION | RELATIONSHIP TO DEBTOR, IF ANY | DATE OF GIFT | DESCRIPTION AND VALUE OF GIFT |
|---|---|---|---|

### 8. Losses

None
■
List all losses from fire, theft, other casualty or gambling within **one year** immediately preceding the commencement of this case **or since the commencement of this case.** (Married debtors filing under chapter 12 or chapter 13 must include losses by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| DESCRIPTION AND VALUE OF PROPERTY | DESCRIPTION OF CIRCUMSTANCES AND, IF LOSS WAS COVERED IN WHOLE OR IN PART BY INSURANCE, GIVE PARTICULARS | DATE OF LOSS |
|---|---|---|

### 9. Payments related to debt counseling or bankruptcy

None
■
List all payments made or property transferred by or on behalf of the debtor to any persons, including attorneys, for consultation concerning debt consolidation, relief under the bankruptcy law or preparation of the petition in bankruptcy within **one year** immediately preceding the commencement of this case.

| NAME AND ADDRESS OF PAYEE | DATE OF PAYMENT, NAME OF PAYOR IF OTHER THAN DEBTOR | AMOUNT OF MONEY OR DESCRIPTION AND VALUE OF PROPERTY |
|---|---|---|

### 10. Other transfers

None
■
List all other property, other than property transferred in the ordinary course of the business or financial affairs of the debtor, transferred either absolutely or as security within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include transfers by either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF TRANSFEREE, RELATIONSHIP TO DEBTOR | DATE | DESCRIBE PROPERTY TRANSFERRED AND VALUE RECEIVED |
|---|---|---|

### 11. Closed financial accounts

None
■
List all financial accounts and instruments held in the name of the debtor or for the benefit of the debtor which were closed, sold, or otherwise transferred within **one year** immediately preceding the commencement of this case. Include checking, savings, or other financial accounts, certificates of deposit, or other instruments; shares and share accounts held in banks, credit unions, pension funds, cooperatives, associations, brokerage houses and other financial institutions. (Married debtors filing under chapter 12 or chapter 13 must include information concerning accounts or instruments held by or for either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF INSTITUTION | TYPE OF ACCOUNT, LAST FOUR DIGITS OF ACCOUNT NUMBER, AND AMOUNT OF FINAL BALANCE | AMOUNT AND DATE OF SALE OR CLOSING |
|---|---|---|

### 12. Safe deposit boxes

None
■
List each safe deposit or other box or depository in which the debtor has or had securities, cash, or other valuables within **one year** immediately preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include boxes or depositories of either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF BANK OR OTHER DEPOSITORY | NAMES AND ADDRESSES OF THOSE WITH ACCESS TO BOX OR DEPOSITORY | DESCRIPTION OF CONTENTS | DATE OF TRANSFER OR SURRENDER, IF ANY |
|---|---|---|---|

4

### 13. Setoffs

None
■

List all setoffs made by any creditor, including a bank, against a debt or deposit of the debtor within **90 days** preceding the commencement of this case. (Married debtors filing under chapter 12 or chapter 13 must include information concerning either or both spouses whether or not a joint petition is filed, unless the spouses are separated and a joint petition is not filed.)

| NAME AND ADDRESS OF CREDITOR | DATE OF SETOFF | AMOUNT OF SETOFF |
|---|---|---|

### 14. Property held for another person

None
■

List all property owned by another person that the debtor holds or controls.

| NAME AND ADDRESS OF OWNER | DESCRIPTION AND VALUE OF PROPERTY | LOCATION OF PROPERTY |
|---|---|---|

### 15. Prior address of debtor

None
■

If the debtor has moved within the **two years** immediately preceding the commencement of this case, list all premises which the debtor occupied during that period and vacated prior to the commencement of this case. If a joint petition is filed, report also any separate address of either spouse.

| ADDRESS | NAME USED | DATES OF OCCUPANCY |
|---|---|---|

### 16. Spouses and Former Spouses

None
■

If the debtor resides or resided in a community property state, commonwealth, or territory (including Alaska, Arizona, California, Idaho, Louisiana, Nevada, New Mexico, Puerto Rico, Texas, Washington, or Wisconsin) within the **six-year period** immediately preceding the commencement of the case, identify the name of the debtor's spouse and of any former spouse who resides or resided with the debtor in the community property state.

NAME

### 17. Environmental Information.

For the purpose of this question, the following definitions apply:

"Environmental Law" means any federal, state, or local statute or regulation regulating pollution, contamination, releases of hazardous or toxic substances, wastes or material into the air, land, soil, surface water, groundwater, or other medium, including, but not limited to, statutes or regulations regulating the cleanup of these substances, wastes, or material.

"Site" means any location, facility, or property as defined under any Environmental Law, whether or not presently or formerly owned or operated by the debtor, including, but not limited to, disposal sites.

"Hazardous Material" means anything defined as a hazardous waste, hazardous substance, toxic substance, hazardous material, pollutant, or contaminant or similar term under an Environmental Law

None
■

a. List the name and address of every site for which the debtor has received notice in writing by a governmental unit that it may be liable or potentially liable under or in violation of an Environmental Law. Indicate the governmental unit, the date of the notice, and, if known, the Environmental Law:

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

None
■

b. List the name and address of every site for which the debtor provided notice to a governmental unit of a release of Hazardous Material. Indicate the governmental unit to which the notice was sent and the date of the notice.

| SITE NAME AND ADDRESS | NAME AND ADDRESS OF GOVERNMENTAL UNIT | DATE OF NOTICE | ENVIRONMENTAL LAW |
|---|---|---|---|

5

None ■    c. List all judicial or administrative proceedings, including settlements or orders, under any Environmental Law with respect to which the debtor is or was a party. Indicate the name and address of the governmental unit that is or was a party to the proceeding, and the docket number.

| NAME AND ADDRESS OF GOVERNMENTAL UNIT | DOCKET NUMBER | STATUS OR DISPOSITION |
|---|---|---|

### 18. Nature, location and name of business

None ■    a. If the debtor is an individual, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, partnership, sole proprietorship, or was a self-employed professional within the six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

     If the debtor is a partnership, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities, within the six years immediately preceding the commencement of this case.

     If the debtor is a corporation, list the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was a partner or owned 5 percent or more of the voting or equity securities within the six years immediately preceding the commencement of this case.

| NAME | TAXPAYER I.D. NO. (EIN) | ADDRESS | NATURE OF BUSINESS | BEGINNING AND ENDING DATES |
|---|---|---|---|---|

None ■    b. Identify any business listed in response to subdivision a., above, that is "single asset real estate" as defined in 11 U.S.C. § 101.

| NAME | ADDRESS |
|---|---|

     The following questions are to be completed by every debtor that is a corporation or partnership and by any individual debtor who is or has been, within the six years immediately preceding the commencement of this case, any of the following: an officer, director, managing executive, or owner of more than 5 percent of the voting or equity securities of a corporation; a partner, other than a limited partner, of a partnership; a sole proprietor or otherwise self-employed.

     *(An individual or joint debtor should complete this portion of the statement only if the debtor is or has been in business, as defined above, within the six years immediately preceding the commencement of this case. A debtor who has not been in business within those six years should go directly to the signature page.)*

### 19. Books, records and financial statements

None ■    a. List all bookkeepers and accountants who within the two years immediately preceding the filing of this bankruptcy case kept or supervised the keeping of books of account and records of the debtor.

| NAME AND ADDRESS | DATES SERVICES RENDERED |
|---|---|

None ■    b. List all firms or individuals who within the two years immediately preceding the filing of this bankruptcy case have audited the books of account and records, or prepared a financial statement of the debtor.

| NAME | ADDRESS | DATES SERVICES RENDERED |
|---|---|---|

None ■    c. List all firms or individuals who at the time of the commencement of this case were in possession of the books of account and records of the debtor. If any of the books of account and records are not available, explain.

| NAME | ADDRESS |
|---|---|

None ■    d. List all financial institutions, creditors and other parties, including mercantile and trade agencies, to whom a financial statement was issued within the two years immediately preceding the commencement of this case by the debtor.

| NAME AND ADDRESS | DATE ISSUED |
|---|---|

7

### 25. Pension Funds.

None ■     If the debtor is not an individual, list the name and federal taxpayer identification number of any pension fund to which the debtor, as an employer, has been responsible for contributing at any time within the **six-year period** immediately preceding the commencement of the case.

NAME OF PENSION FUND                                       TAXPAYER IDENTIFICATION NUMBER

## DECLARATION UNDER PENALTY OF PERJURY ON BEHALF OF CORPORATION OR PARTNERSHIP

I declare under penalty of perjury that I have read the answers contained in the foregoing statement of financial affairs and any attachments thereto and that they are true and correct to the best of my knowledge, information and belief.

Date     5 31 2 00                 Signature                                               
                                                           Leon Greenblatt
                                                           Authorized-Agent

[An individual signing on behalf of a partnership or corporation must indicate position or relationship to debtor.]

*Penalty for making a false statement:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

**FILED**
UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS

JUN 0 1 2005

In re:

SOUTH BEACH SECURITIES, INC.,

Debtor.

)
)
)
)
)
)

Chapter 11

**KENNETH S. GARDNER, CLERK
PS REP. - DDS**

Case No. 05 B 16679

Hon. A. Benjamin Goldgar
United States Bankruptcy Judge

## NOTICE OF FILING

To:    Attached Service List

Please take notice that on June 1, 2005, the undersigned counsel filed with the Clerk of the United States Bankruptcy Court, Northern District of Illinois, Eastern Division the **Summary of Schedules; Schedules A, B, D, E, F, G, H; Declaration Concerning Debtor's Schedules; and Statement of Financial Affairs,** copies of which are herewith served upon you.

Respectfully Submitted,
SOUTH BEACH SECURITIES, INC.

By: _____
One of its attorneys

Louis D. Bernstein (I.D. No. 6192379)
Mark E. Leipold (I.D. No. 6194124)
GOULD & RATNER
222 North LaSalle Street, Suite 800
Chicago, Illinois 60601
Telephone:    (312) 236-3003
Facsimile:    (312) 236-3241

/288109.v 1 100520/001

## CERTIFICATE OF SERVICE

I, Kimberly L. Araujo, a non-attorney, certify that I caused copies of the above and foregoing **Notice of Filing; Summary of Schedules, Schedules A, B, D, E, F, G, H; Declaration Concerning Debtor's Schedules; and Statement of Financial Affairs**, to be served upon persons named below by depositing same, properly addressed and postage prepaid, in the United States mail receptacle located at 222 North LaSalle Street, on the 1st day of June, 2005, before the hour of 5:00 p.m.

Kimberly L. Araujo

Ira Bodenstein
Office of the U. S. Trustee, Region 11
227 W Monroe St
Suite 3350
Chicago, IL 60606

Scattered Corporation
330 S. Wells Street
Chicago, IL 60606-7106

# Exhibit J

# LOOP CORPORATION

330 S. Wells Street, Suite 710
Chicago, Illinois 60606
Phone: (312) 341-4041
Fax: (312) 341-9596

August 28, 1998

**VIA TELECOPIER**

Dr. Gary T. McIlroy
Chief Executive Officer
Health Risk Management, Inc.
8000 West 78th Street
Minneapolis, Minnesota 55439

> *Re: Offer to Purchase up to all of the outstanding shares of
> Health Risk Management, Inc.*

Dear Dr. McIlroy:

This letter will confirm my conversation with you today concerning the offer of Loop Corporation to purchase up to all of the outstanding shares of Health Risk Management, Inc. ("HRM" or "the Company"). Loop Corporation wishes to offer to purchase up to all of the outstanding shares of HRM at the price of $19.75 per share in an all cash friendly offer. In the event that such sale occurs, is the intention of Loop Corporation to keep senior management in place to the extent that such senior management wishes to stay. This offer is subject to Loop Corporation verifying that the books and records of HRM are complete and accurate, approval of the board, and also that the poison pill be redeemed.

We believe that there are synergies to the businesses that HRM is currently operating with our communications and internet related businesses. As such, we can assist in the implementation of cost saving measures which HRM may consider implementing. Also, we think that adding factoring the payments to providers can be a source of significant additional income to the combined companies, an area in which we have expertise. I look forward to the consumation of an agreement.

Sincerely,

Leon A. Greenblatt, III
Secretary, Loop Corporation

RS 00812

# Exhibit K

05/19/2000 14:00   3123419596          RESOURCE TECHNOLOGY        PAGE 02

MAY.19.2000  1:01PM  IHQ                        NO.139  P.2/11

## STANDSTILL AGREEMENT

This Standstill Agreement, dated as of May 19, 2000, is by and among Health Risk Management, Inc., a Minnesota corporation (the "Issuer"), Chiplease, Inc., a South Dakota corporation ("Chiplease"), Banco Panamericano, Inc., a South Dakota corporation ("Banco"), Leslie Jabine, a resident of Chicago, Illinois ("Jabine") and Leon A. Greenblatt, III, a resident of Chicago, Illinois ("Greenblatt").

WHEREAS, Chiplease, Banco, Jabine and Greenblatt have represented that as of the date hereof they and their respective affiliates collectively own of record and/or beneficially an aggregate of 675,500 shares of common stock of the Issuer, and as of the date hereof, the Issuer has 4,661,801 outstanding shares of common stock, $0.01 par value ("Common Stock");

WHEREAS, on April 4, 1997, the Issuer entered into a Rights Agreement amended October 1, 1999 (as amended, the "Rights Agreement") with Norwest Bank Minnesota, N.A. as Rights Agent pursuant to which the Issuer declared a dividend of preferred stock purchase rights;

WHEREAS, Chiplease, Banco, Jabine and Greenblatt wish to purchase additional shares of the Issuer that would cause Chiplease, Banco, Jabine or Greenblatt to become an "Acquiring Person" as defined by the Rights Agreement;

WHEREAS, Chiplease, Banco, Jabine and Greenblatt acknowledge, for themselves and on behalf of their respective affiliates, that all shares of the Issuer's stock now or hereafter beneficially owned by Chiplease, Banco, Jabine, Greenblatt or their respective affiliates are, or shall be, held solely for investment purposes, and not for the purpose of seeking to acquire control of the Issuer; and

WHEREAS, the Issuer has agreed not to object to or protest any purchases made in accordance with the terms hereof, and to take action under the Rights Agreement or any other similar agreements in the future to permit the acquisition of shares by Chiplease, Banco, Jabine or Greenblatt up to the agreed upon limits set forth herein without triggering any distribution under the Rights Agreement, if Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, agree to and fully comply with the terms and conditions of this Standstill Agreement, and Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, have agreed to such terms and conditions;

NOW, THEREFORE, in consideration of the foregoing and the agreements, terms and conditions contained herein, the parties hereto agree as follows:

1.    The Issuer agrees that it shall not object to, or file any protest with, any agency with whom Chiplease, Banco, Jabine or Greenblatt is required to make a Regulatory Filing (defined below) as a result of beneficial ownership or acquisition of the Issuer's outstanding Common Stock, provided that Chiplease, Banco, Jabine, Greenblatt and their respective affiliates

- 1 -

RS 02415

timely file and cooperate with the Issuer in filing all applications for any permit, license, clearance or other regulatory approval required by any federal, state or local regulatory body (collectively a "Regulatory Clearance"), and promptly, within the time period required by the regulatory body, comply with all requests by such regulatory body for information from or about, or compliance by, Chiplease, Banco, Jabine, Greenblatt or any of their respective affiliates. If at any time Chiplease, Banco, Jabine, Greenblatt or any of their respective affiliates fails to receive, or causes the Issuer to fail to receive, a Regulatory Clearance that affects the business or prospects of the Issuer, then the Issuer and Chiplease, Banco, Jabine, Greenblatt and their respective affiliates, will immediately jointly use best efforts to satisfy the concerns and requirements of the regulatory authority in order to secure such required Regulatory Clearance within such period of time as will not cause the Issuer to lose the business opportunity. In this regard, Chiplease, Banco, Jabine, Greenblatt and their respective affiliates will immediately use best efforts to timely cooperate in good faith and to take, within such time frame as will avoid loss of the business opportunity, such actions as the regulatory authority may indicate are required to secure the Regulatory Clearance or to make such Regulatory Clearance unnecessary. Notwithstanding anything in this Standstill Agreement to the contrary, at no time shall any one of Chiplease, Banco, Jabine, Greenblatt or any of their respective affiliates individually own of record or through nominees 10% or more of the Issuer's outstanding Common Stock.

2.    For a period commencing the date hereof and ending on the later of (i) the date on which the aggregate beneficial ownership of the Issuer's Common Stock of Chiplease, Banco, Jabine, Greenblatt and their respective affiliates is collectively less than 10% of the then outstanding Common Stock of the Issuer and (ii) the fifth anniversary of the date hereof, neither Chiplease nor Banco nor Jabine nor Greenblatt, nor any of their respective affiliates, will directly or indirectly:

(a)    own, hold or acquire, or agree to acquire, ownership (beneficial or otherwise) of any shares of Common Stock of the Issuer, or rights or options or convertibles to acquire any such shares, that would result in the aggregate beneficial ownership of Chiplease, Banco, Jabine, Greenblatt and their respective affiliates to exceed collectively 1,165,000 shares of the total outstanding Common Stock of the Issuer, as adjusted to reflect stock dividends or stock splits, during the years of this Standstill Agreement; provided, however, neither Chiplease nor Banco nor Jabine nor Greenblatt, nor any of their respective affiliates, shall effect any purchase of Common Stock of the Issuer otherwise permitted by this Standstill Agreement unless they first as a precondition thereto fully comply with all Regulatory Filings;

(b)    make, or in any way participate in, any "solicitation" or request for "proxies" (as such terms are defined or used in Regulation 14A under the Securities Exchange Act of 1934, as amended (the "Exchange Act")) or become a "participant" in or in any way encourage or facilitate any "election contest" (as such terms are defined or used under the Exchange Act) to vote any securities of the Issuer;

(c)    demand, or join in any demand for, a meeting of the shareholders of the Issuer, or initiate or propose any shareholder proposals for submission to a vote of shareholders of the Issuer except for a shareholder resolution required by Minnesota Statutes § 302A.671 to

-2-

HRMI 023506

RS 02416

give full voting rights to shares acquired and held in compliance with this Standstill Agreement, or nominate or otherwise propose, any person for election to the Board of Directors of the Issuer, except during the period of the agreement under this Section 2, Chiplease, Banco, Jabine, Greenblatt and their respective affiliates may nominate Andrew A. Jahelka, or such other individual reasonably acceptable to the Issuer's Board of Directors, (the "Designated Director") to be a member of the Issuer's Board of Directors, and the Issuer will include the Designated Director in its nominees for election to the Issuer's Board of Directors and will use all reasonable efforts to cause the Designated Director to be elected to such Board of Directors, including but not limited to recommending shareholders vote for the Designated Director and members of the Issuer's Board of Directors voting their shares for him;

　　　　　(d)　　communicate with, seek to advise, encourage or influence any person or entity, in any manner, with respect to the voting of any Common Stock of the Issuer (including by taking a public position with respect to any matter to be submitted to shareholders of the Issuer for their approval);

　　　　　(e)　　vote the shares of Common Stock in any manner other than in accordance with the recommendations of the Issuer approved by a majority of the Issuer's directors who are not also officers or employees of the Issuer and are not the Designated Director; provided, if no such recommendation is made, then Chiplease, Banco, Jabine, Greenblatt and their respective affiliates shall vote all Common Stock beneficially owned by any of them in the same proportion as the votes cast by other holders of Common Stock; further provided, upon request from the Issuer approved by a majority of the Issuer's directors who are not also officers or employees of the Issuer and are not the Designated Director, Chiplease, Banco, Jabine, Greenblatt and their respective affiliates shall cause to be executed and delivered to the Issuer, at least two weeks prior to any scheduled shareholder meeting, sufficient written proxies appointing as agent or proxy one or more of the Issuer's officers or directors to vote as required by this Section all shares of Common Stock beneficially owned by any of them upon the matters that are voted upon by the shareholders at the meeting; further provided, neither Chiplease nor Banco nor Jabine nor Greenblatt nor any of their respective affiliates nor any record holder of Common Stock beneficially owned by Chiplease, Banco, Jabine, Greenblatt or any of their respective affiliates shall appoint a person, other than a director or officer of the Issuer as provided above, as its proxy without the written consent of the Issuer; further provided, Chiplease, Banco, Jabine, Greenblatt and their respective affiliates shall be present, either in person or by such proxy requested by the Issuer's directors, at all meetings of shareholders for purposes of determining the existence of a quorum at such meeting; provided, however, the Issuer's Board of Directors will cause the Issuer to comply with the requirements of the Minnesota Control Share Acquisition Act and will allow the other parties hereto to encourage and vote for a resolution submitted pursuant to such Act with respect to all shares acquired pursuant to and in compliance with this Standstill Agreement if and when such Act becomes applicable;

　　　　　(f)　　make an offer to acquire the Issuer or cause such an offer to be made unless another offer is made first by an independent party not acting jointly or in concert with, or otherwise encouraged or assisted by, Chiplease, Banco, Jabine, Greenblatt or any of their respective affiliates or associates in connection with such an offer, and the Board of Directors

- 3 -

HRMI 023507

RS 02417

05/19/2000   14:00    3123419596          RESOURCE TECHNOLOGY          PAGE   05

MAY.19.2000   1:03PM   IHQ                              NO.139   P.5/11

invites Chiplease, Banco, Jabine, Greenblatt or any of their respective affiliates or associates to make such an offer or to cause such an offer to be made;

(g)   otherwise seek to control the management or policies of the Issuer or any of its affiliates;

(h)   institute, prosecute or pursue against the Issuer (or any of its officers, directors, representatives, trustees, employees, attorneys, advisors, agents, affiliates or associates) any claim with respect to any action hereafter approved by a majority of the Issuer's directors who are not also officers or employees of the Issuer (other than any claim: (x) to enforce this Standstill Agreement, (y) for any intentional fraudulent acts, or (z) any intentional violations of securities laws);

(i)   form, join or in any way participate in a "group" (as such term is used in Section 13(d)(3) of the Exchange Act or under the Minnesota Business Corporation Act) with respect to any securities of the Issuer in connection with any action or matter otherwise prohibited by the terms of this Standstill Agreement;

(l)   offer, sell or transfer, directly or indirectly, beneficial ownership of any shares of Common Stock to any person or group of persons who would after such sale beneficially or of record own more than 5% of the total outstanding Common Stock, unless such purchaser agrees, prior to such purchase, in a writing satisfactory to the Issuer to abide by the terms of this Standstill Agreement for the remaining period of the Standstill Agreement; provided, however, that the exemptive action taken under the Rights Agreement as described in Section 5 hereof shall not apply to any such purchaser; further provided, the foregoing restriction shall not prevent Chiplease, Banco, Jabine, Greenblatt or their respective affiliates from tendering shares of Common Stock to a person making a tender offer or exchange offer which is not in violation of Section 2(f) hereof if it is recommended to the Issuer's shareholders by the Issuer's Board of Directors; or

3.   Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, jointly and severally represent and warrant to the Issuer that the beneficial ownership information required by and set forth in Schedule 3 attached hereto is true and complete, as of the date hereof, and such parties understand and intend that the Issuer will rely upon such information in entering into and proceeding with the terms and provisions of this Standstill Agreement, and such parties agree to deliver promptly to the Issuer within not more than ten days a revised, updated Schedule 3 in the event of any change to any information required by such Schedule 3.

4.   Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, hereby agree to sign and deliver Exhibit A to the Issuer upon execution of this Standstill Agreement and hereby authorize and direct all transfer agents, inspectors of election, vote tellers, proxy tabulators, brokers, banks, depositaries, or other nominees, and their representatives or agents, including but not limited to ADP Investor Communication Services, to provide promptly to the Issuer upon the Issuer's request information

- 4 -

HRMI 023508

RS 02418

as may be necessary to confirm the beneficial ownership of Chiplease, Banco, Jabine, Greenblatt and their respective affiliates and to confirm their compliance with the voting, transfer and other agreements of this Standstill Agreement. Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, will promptly upon the Issuer's request provide such additional written authorizations and directions as may be necessary to obtain such confirming information.

5.      The Issuer shall, following the execution of this Standstill Agreement and compliance by Chiplease, Banco, Jabine, Greenblatt and their respective affiliates and provided that the representations and warranties made pursuant to Section 3 are true and correct, take action under the Rights Agreement, and under any future rights agreements that are adopted by the Issuer, to provide that Chiplease, Banco, Jabine and Greenblatt shall not become an Acquiring Person as a result of purchase(s) of Common Stock made in accordance with the terms and conditions hereof provided that, prior to such purchase(s), Chiplease, Banco, Jabine, Greenblatt and their respective affiliates have fully complied with all of the terms and conditions of this Standstill Agreement. Chiplease, Banco, Jabine, Greenblatt and their respective affiliates, shall nonetheless become an Acquiring Person if their aggregate beneficial ownership of Common Stock collectively exceeds the limits set forth in Section 2 above.

6.      If any party to this Agreement shall fail to comply with any provisions of this Standstill Agreement, then (in addition to any injunctive and/or damage remedies that may be available to the Issuer) the non-prevailing party shall be responsible for and pay to the prevailing party all expenses and costs, including legal and other professional fees, incurred by the prevailing party in enforcing the provisions of this Standstill Agreement, and while such failure to comply continues, the exemptive action provided in Section 5 above shall no longer remain effective for further increases in the beneficial ownership of shares of the Issuer by Chiplease, Banco, Jabine, and Greenblatt or their respective affiliates.

7.      Each party hereto represents and warrants for itself or himself that such party has full legal right, power and authority to enter into this Standstill Agreement, that the execution and delivery hereof by such party has been duly authorized and that this Standstill Agreement constitutes a valid, binding and enforceable agreement of such party in accordance with its terms.

8.      All notices or other communications to a party required or permitted under this Standstill Agreement shall be in writing and shall be given by hand delivery, courier service (with acknowledgment of receipt), telecopy (with confirmation of transmission), or by certified mail, postage prepaid with return receipt requested, addressed to the applicable party as follows:

If to the Issuer, to:

    Health Risk Management, Inc.
    10900 Hampshire Avenue South
    Bloomington, Minnesota 55438
    Attention:    Chief Executive Officer
                  Telecopy Number:  (612) 946-7516

- 5 -

HRMI 023509

RS 02419

and if to Chiplease, Banco, Jabine or Greenblatt, to:

> Banco Panamericano, Inc.
> 330 South Wells Street, Suite 718
> Chicago, Illinois 60606-7103
> Attention: President
> Telecopy Number: (312) 341-9596

Any party may change the above-specified recipient and/or mailing address by notice to all other parties given in the manner herein prescribed. All notices shall be deemed given on the day when actually delivered as provided above (if delivered personally, by courier or by telecopy) or on the day shown on the return receipt (if delivered by mail).

9. As used herein, the terms "affiliate," "beneficial ownership," "beneficially own," and "beneficial owner" have the meanings ascribed thereto by the Rights Agreement or the Minnesota Business Corporation Act.

10. If any term, provision, covenant or restriction of this Standstill Agreement is held by a court of competent jurisdiction to be invalid, void or unenforceable, the remainder of the terms, provisions, covenants and restrictions of this Standstill Agreement shall remain in full force and effect, unless such action would substantially impair the benefits to either party of the remaining provisions of this Standstill Agreement.

11. This Standstill Agreement shall be binding upon, and inure to the benefit of, the parties hereto and their respective heirs, personal representatives, successors, assigns, and affiliates, but shall not be assignable or transferable, whether voluntarily, involuntarily, by operation of law or otherwise, by Chiplease, Banco, Jabine, Greenblatt or any of their respective affiliates, without the prior written consent of the Issuer.

12. The parties hereto acknowledge and agree that irreparable damages will occur if any of the provisions of this Standstill Agreement is not performed in accordance with its specific terms or is otherwise breached. It is accordingly agreed that the parties shall be entitled to an injunction or injunctions to prevent or cure breaches of the provisions of this Standstill Agreement and to enforce specifically the terms and provisions hereof, this being in addition to any other remedy to which they may be entitled by law or equity.

13. This Standstill Agreement shall be governed by and construed and enforced in accordance with the laws of the State of Minnesota applicable to contracts made and to be performed therein. The parties agree and consent to be subject to the exclusive jurisdiction of, and exclusive venue in, the U.S. District Court for the District of Minnesota and, in the absence of such federal jurisdiction, the parties agree and consent to be subject to the jurisdiction of the District Court for the State of Minnesota, County of Hennepin, and the parties irrevocably waive any defense of an inconvenient forum to the maintenance of any action or proceeding in such

-6-

HRMI 023510

RS 02420

05/19/2000  14:00    3123419596          RESOURCE TECHNOLOGY        PAGE   08

MAY.19.2000  1:05PM   IHG                      NO.139   P.8/11

courts. Further, the parties hereto specifically agree that either party may effect valid service of process by any means authorized under Minnesota law.

14.    For the convenience of the parties, any number of counterparts of this Standstill Agreement may be executed by the parties hereto and each such executed counterpart shall be, and shall be deemed to be, an original instrument. The parties acknowledge that delivery of executed copies of this Standstill Agreement may be effected by facsimile transmission or other comparable means.

15.    This Standstill Agreement, together with the Schedules and Exhibit hereto, sets forth and integrates the entire understanding between the parties and supersedes any and all prior or contemporaneous written or oral agreements or representations with respect to the subject matter hereof. This Standstill Agreement may not be altered or amended except by a subsequent written agreement signed by the parties.

16.    Effective upon the execution of this Standstill Agreement, Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, hereby: (a) agree to file a dismissal with prejudice, pursuant to Rule 41 of the Federal Rules of Civil Procedure, of all of their claims in (i) Banco Panamericano, Inc. et al v. Health Risk Management, Inc. (Banco I) currently pending before the United States District Court for the Northern District of Illinois, Eastern Division (Court File No. 99 C 2529), and (ii) Banco Panamericano, Inc. v. Health Risk Management, Inc. (Court File No. 00-1164 HK/JMM) currently pending before the United States District Court for the District of Minnesota; (b) withdraw their demand contained in their February 26, 1999 letter or in any other correspondence to the Issuer for a special meeting of the shareholders of the Issuer; (c) withdraw the shareholder proposal set forth in their November 17, 1999 letter or in any other correspondence to the Issuer or to the Securities and Exchange Commission for consideration at the Issuer's 2000 annual meeting of shareholders, including the withdrawal of their counsel's April 25, 2000 letter and other correspondence to the Securities and Exchange Commission regarding such shareholder proposal; (d) agree to notify the Court Commissioner of the Minnesota Supreme Court that Banco I, the underlying case in Court File No. C5-00-63, has been dismissed; and (e) agree to execute and file such letters, documents, orders and forms to effect or confirm the foregoing as may be reasonably requested by the Issuer or its counsel.

17.    The Issuer shall, within five (5) business days of the other parties' delivery to the Issuer of evidence of such other parties' compliance with their agreements set forth in Sections 4 and 16, pay $50,000 of the legal expenses incurred by such other parties in connection with this Standstill Agreement and the litigation matters referenced in Section 16 to Robinson, Curley & Clayton, P.C.

-7-

HRMI 023511

RS 02421

05/19/2000  14:08   3123419596        RESOURCE TECHNOLOGY          PAGE  09

MAY.19.2000  1:06PM   IHG                          NO.139   P.9/11

IN WITNESS WHEREOF, each party hereto has executed this Standstill Agreement as of the day and year first above written.

HEALTH RISK MANAGEMENT, INC.          CHIPLEASE, INC.

By: _____          By: _____
     Chief Executive Officer               President


                                      BANCO PANAMERICANO, INC.

                                      By: _____
                                           President


                                      _____
                                      Leslie Jabine


                                      _____
                                      Leon A. Greenblatt, III

Attachments:

     Schedule 3
     Exhibit A

(2237949/7)

- 8 -

HRMI 023512

RS 02422

## Schedule 3
to
## Standstill Agreement

The following sets forth true and complete responses to the information requested with respect to all shares of the Issuer's Common Stock beneficially owned by Chiplease, Banco, Jatline, Greenblatt or any of their respective affiliates:

| Name of beneficial owner | Total number of shares beneficially owned in thousands | Portion (number) held of record in beneficial owner's name | Portion (number) held by broker/bank for beneficial owner in depository name | | Nominee or depository name in which broker/bank holds the shares |
|---|---|---|---|---|---|
| | | | Number of shares | Name of broker/bank holding the shares | |
| Chiplease, Inc. | 32.4 | | 32.4 | various | cede |
| Banco Panamericano, Inc. | 364.8 | | 364.100 | various | cede |
| Leslie Jabine | 71 | .180 | 71 | Rob. Baied | cede |
| Leon A. Greenblatt, III | 166.9 | | 166.9 | various | cede |
| Loop Corporation | 40.4-0- | | 40.4 | various | cede |
| Loop Properties, Inc. | -0- | | | | |
| Loop Telecom, Inc. | -0- | | | | |
| Scattered Corporation | -0- | | | | |
| Rumpelstilskin U.S.A. Corp. | -0- | | | | |
| Acclaim Hospitality Communications, Inc. | -0- | | | | |
| Greater Chicago Videopoli, Inc. | -0- | | | | |
| EZ Links Corp. | -0- | | | | |
| Other Affiliates | -0- | | | | |

HRMI 023513

RS 02423

05/19/2000 14:00 3123419596 RESOURCE TECHNOLOGY PAGE 11

MAY.19.2000 1:07PM IHQ NO.139 P.11/11

[Exhibit A]

To: Transfer agents, inspectors of election, vote tellers, proxy tabulators, brokers, banks, depositories, other nominee holders, and their representatives or agents, including but not limited to ADP Investor Communication Services

Ladies/Gentlemen:

Reference is made to all shares of common stock of Health Risk Management, Inc. ("HRM") beneficially owned by any of the undersigned or their affiliates.

You are hereby authorized and instructed to provide promptly to HRM upon HRM's request information as is necessary to confirm to HRM the amount of HRM shares beneficially owned by any of the undersigned or their affiliates and held by you and information concerning the voting or transfer of HRM shares by the undersigned or their affiliates, which information includes but is not limited to when and how any of the HRM shares of the undersigned or their affiliates were voted on any specific items submitted to the shareholders or were transferred.

Date: May 19, 2000

Very truly yours,

Chiplease, Inc.

By: _____
        President

Banco Panamericano, Inc.

By: _____
        President

(S) Leslie Jo Su
Leslie Jarbine by _____

_____
Leon A. Greenblatt, III

HRMI 023514

RS 02424

# FIRST AMENDMENT TO STANDSTILL AGREEMENT

This First Amendment to Standstill Agreement, dated as of March 23, 2001 (the "First Amendment"), is by and among Health Risk Management, Inc., a Minnesota corporation (the "Issuer"), Chiplease, Inc., a South Dakota corporation ("Chiplease"), Banco Panamericano, Inc., a South Dakota corporation ("Banco"), Leslie Jabine, a resident of Chicago, Illinois ("Jabine") and Leon A. Greenblatt, III, a resident of Chicago, Illinois ("Greenblatt").

WHEREAS, on May 19, 2000, the parties hereto entered into a Standstill Agreement (the "Original Standstill Agreement") whereby the Issuer agreed to take action under a Rights Agreement between the Issuer and Norwest Bank Minnesota, N.A., a national banking association, dated April 4, 1997, and amended on October 1, 1999, and May 19, 2000 (as amended, the "Rights Agreement") to permit the further acquisition of common stock of the Issuer by Chiplease, Banco, Jabine and Greenblatt up to the agreed upon limit of 1,165,000 shares collectively without triggering any distribution under the Rights Agreement;

WHEREAS, Chiplease, Banco, Jabine and Greenblatt wish to purchase additional shares of the Issuer that would cause Chiplease, Banco, Jabine and Greenblatt or their respective affiliates collectively to own more than the 1,165,000 shares of Issuer agreed upon in the Original Standstill Agreement and to become an "Acquiring Person" as defined by the Rights Agreement;

WHEREAS, the parties hereto have agreed to amend the Original Standstill Agreement to allow for the further acquisition of additional shares of up to 40% of the total outstanding shares of Issuer by Chiplease, Banco, Jabine, Greenblatt and their respective affiliates;

WHEREAS, the Issuer has agreed to take action under the Rights Agreement or any other similar agreements in the future to permit the acquisition of shares by Chiplease, Banco, Jabine and Greenblatt up to the agreed upon limits set forth herein without triggering any distributions under the Rights Agreement, if Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, agree to and fully comply with the terms and conditions of this First Amendment, and Chiplease, Banco, Jabine and Greenblatt, for themselves and on behalf of their respective affiliates, have agreed to such terms and conditions;

NOW, THEREFORE, in consideration of the foregoing and the agreements, terms and conditions contained herein, the parties agree as follows:

1.  Paragraph "2(a)" of the Original Standstill Agreement is hereby amended to read in its entirety as follows:

"(a) own, hold or acquire, or agree to acquire, ownership (beneficial or otherwise) of any shares of Common Stock of the Issuer, or rights or options or convertibles to acquire any such shares, that would result in the aggregate beneficial ownership of Chiplease, Banco, Jabine, Greenblatt and their respective affiliates to exceed collectively a number of shares representing 40% of the total outstanding Common Stock of the Issuer, during the years of this

PLAINTIFF'S
EXHIBIT
_75_

LP 2133

RS 02810

Standstill Agreement provided, however, neither Chiplease nor Banco nor Jabine nor Greenblatt nor any of their respective affiliates, shall effect any purchase of Common Stock of the Issuer otherwise permitted by this Standstill Agreement unless they first as a precondition thereto fully comply with all Regulatory Filings;"

2. Paragraph "2(g)" of the Original Standstill Agreement is hereby deleted in its entirety;

3. Paragraph "3" of the Original Standstill Agreement is hereby amended to provide that updates to Schedule 3 shall be delivered to the Issuer quarterly.

4. Except as amended hereby, the Original Standstill Agreement shall remain in full force and effect.

5. This First Amendment shall be governed by and construed and enforced in accordance with the laws of the State of Minnesota applicable to contracts made and to be performed therein.

6. For the convenience of the parties, any number of counterparts to this First Amendment may be executed by the parties hereto and each such executed counterpart shall be, and shall be deemed to be, an original instrument. The parties acknowledge that delivery of executed copies of this First Amendment may be effected by facsimile transmission or other comparable means.


[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

LP 2134

RS 02811

IN WITNESS WHEREOF, each party hereto has executed this First Amendment as of the day and year first above written.

HEALTH RISK MANAGEMENT, INC.

By: _____
    Name:
    Title:

CHIPLEASE, INC.

By: _____
    Leon Greenblatt
    President

BANCO PANAMERICANO, INC.

By: _____
    Leon Greenblatt
    President


_____
Leslie Jabine


_____
Leon A. Greenblatt, III

LP 2135

RS 02812