**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | **Case No. 04 C 3082** |
| Plaintiff, | ) | |
| vs. | ) | **Judge Virginia M. Kendall** |
| | ) | |
| DAVID NEUHAUSER, ET AL. , | ) | **Magistrate Judge Maria G. Valdez** |
| | ) | |
| Defendants. | ) | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS OF
INDIVIDUAL DEFENDANTS IN SUPPORT OF MOTION
FOR SUMMARY JUDGMENT ON ALL COUNTS**

Defendants David Neuhauser ("Neuhauser"), Andrew A. Jahelka ("Jahelka"), Richard O. Nichols ("Nichols"), and Leon A. Greenblatt III ("Greenblatt") (collectively, "Individual Defendants") have moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, and in support thereof submit the following Statement of Undisputed Material Facts.

**Description of the Parties**

1.  Plaintiff Wachovia Securities, LLC ("Wachovia") is a Delaware limited liability corporation, and successor to Prudential Securities Incorporated ("Prudential"). Reference to "Wachovia" refers to both the plaintiff and its predecessor Prudential. (Revised Second Amended Complaint (¶ 8.)[1]

2.  Defendant Neuhauser is a resident and citizen of Illinois. (¶ 9.)

3.  Defendant Jahelka is a resident and citizen of Illinois. (¶ 10.)

---

[1]  All paragraph references ("¶ ___") are to those set forth in the Revised Second Amended Complaint unless otherwise stated.  References to Exhibits to the Revised Second Amended Complaint are to "Rev. SAC, Exhibit ___."

4.  Defendant Nichols is a citizen of the United Kingdom with a domicile in Illinois. (¶ 11.)

5.  Defendant Greenblatt is a resident and citizen of Illinois. (¶ 12.)

6.  Defendant Banco Panamericano, Inc. is a South Dakota corporation with its principal place of business in Chicago, Illinois. (¶ 13.)

7.  Defendant Loop Corp ("Loop") is a South Dakota corporation with its principal place of business in Chicago, Illinois. (¶ 14; Exhibit I hereto.)  Wachovia has obtained an arbitration award against Loop in the amount of $2,439,000 in connection with the unpaid margin loans underlying this action. (1.)

8.  Defendant Loop Properties, Inc. is a South Dakota corporation with its principal place of business in Chicago, Illinois. (15.)

9. Defendant Scattered Corp. is a South Dakota corporation with its principal place of business in Chicago, Illinois. (¶ 16.)

## Venue and Jurisdiction

10.  This Court has jurisdiction over the subject matter under 28 U.S.C. § 1332, and 28 U.S.C. § 1331. (¶¶ 20-1.)

11.  Venue is proper under 28 U.S.C. § 1391(a)(2) and 735 ILCS 5/19-104 as a substantial part of the events giving rise to the claims asserted arose in the Northern District of Illinois. (¶ 22.)

**Undisputed Facts Entitling Movants to Judgment As A Matter of Law**

12. NOLA, LLC ("NOLA") is an Illinois limited liability company. (Exhibit F hereto.) Wachovia has obtained an arbitration award against NOLA in the amount of $1,387,355.39 in connection with the unpaid margin loans underlying this action. (*See*, ¶ 57.)

13. Loop and NOLA opened securities brokerage accounts with Wachovia on or about October 16, 2000, and February 28, 2001, respectively. (Rev. SAC, Exhibits B and E.)

14. By May 2001, Wachovia had extended margin loans to Loop in the approximate amount of$1,885,751, and to NOLA in the approximate amount of $1,098,460, which Loop and NOLA have been unable to re-pay. (*See*, ¶ 54.)

15. There is no evidence in the discovery record that Wachovia sought or obtained personal guarantees for the Loop or NOLA accounts from the Individual Defendants or anyone else at the time the accounts were opened, or later when the margin loans were extended to Loop and NOLA.

16. All or most of the margin debt in the Loop and NOLA accounts resulted from holdings in a publicly traded company by the name of Health Risk Management, Inc. ("HRMI"). (¶¶ 31, 39.)

**The Fraud Claims**

17. Wachovia's fraud claims are based on a theory of promissory fraud, premised in turn on a provision in the Loop brokerage agreement that the Loop account would not be used "for transactions that would violate securities laws and regulations." (Exhibit A hereto, Memorandum Opinion and Order of Judge William T. Hart, dated November 4, 2004, at 26.) Wachovia claims the Individual Defendants violated securities laws and regulations by allegedly "concealing their

scheme to acquire a controlling interest in HRMI." (¶ 69.)  Wachovia also alleges that when the

Individual Defendants opened their NOLA margin account with Wachovia they agreed to

conduct trading in this account "in accordance with all applicable laws or requirements as well as

the rules and practices of any market or clearing house through which [their] trades may be

executed or processed."  ¶ 69 (citing Rev. SAC, Exhibit B at 1, ¶ 4.)  Rev. SAC, Exhibit B is the

Loop margin agreement.  The NOLA margin agreement, Rev. SAC, Exhibit E contains no such

provision.  This was indicated in Judge Hart's Nov. 4, 2004 ruling.  (Exhibit A at 23, also citing

only Exhibit B at the same ¶4).   Wachovia further contends at ¶71, that the Individual

Defendants intended to use "their" Loop and NOLA accounts to further their goal of acquiring

full control of HRMI by leveraging margin credit from Wachovia beyond the legally permitted

and contractually approved levels.

18. Joseph Rubino was the individual who headed the Wachovia Margin Department and

who was a Senior Vice President of Wachovia when he left the company in March 2005.  He

testified regarding the Loop account that "[t]he client was buying securities, he was depositing

funds to cover the trades.  As far as I was, you know, we would be concerned, he was trading the

account.  He wasn't doing anything, you know visibly illegal by doing so."  (Exhibit K; Rubino

Dep. Tr. at 24L14-25; 25L1-4; 105L19-25; 106L1-7.)  Rubino testified the same was true as to

the NOLA account. ( Id., at 106L8-11.)

19. Rubino was presented by Wachovia as its Fed. R. Civ. Pro. 30(b)(6) deponent in

response to categories 1-5 of Defendants Fed. R. Civ. Pro. 30(b)(6) Notice (Exhibit L hereto).

Wachovia's counsel stated for the record at Rubino's Feb. 27, 2007 Deposition that Rubino was

being presented for each of these five categories.  Exhibit K; Rubino Dep. Tr. at 8L6-18 These

categories requested that Wachovia designate a representative to testify for Wachovia as to information regarding all aspects of the Loop and NOLA margin accounts (Category 1); regarding policies and procedures concerning the margin accounts (Category 2); regarding Wachovia's contention that the accounts were used to surreptitiously acquire a controlling interest in HRMI (Category 3); regarding whether if Wachovia had known about the allegedly "illegal" plans to use the margin accounts to "surreptitiously" acquire a controlling interest in HRMI, Wachovia would not have allowed trading on margin (Category 4); and information regarding "investigations" regarding the Individual Defendants' activities (Category 5).

20. Wachovia fully monitored the trading in the Loop and NOLA accounts and it was approved the day following the trade(s) by the Deerfield Branch Managers, or their respective designees. (Exhibit M hereto; Damrow Dep. Tr. at 95L11-24; 95L1-20.)

21. Wachovia alleges in Count VI, ¶70, that when Neuhauser opened the Loop and NOLA accounts, Neuhauser represented to his broker Kris Stelzner, that the Individual Defendants had a net worth of more than $50 million and would meet any margin calls which came due. Neuhauser denied making any such statement because he was not asked about net worth. (Exhibit N; Neuhauser Dep. Tr. at 130L11-24; 131L1-3.). No one asked him questions including net worth regarding either the Loop or NOLA accounts. (Id. at 131L17-24). Neuhauser already had an account with Wachovia and his broker solicited Neuhauser as to whether Neuhauser knew anyone who wanted to open an account. (Id. at 97L19-24; 98L1-6). Brokers were always doing that. (Id. at 97L7-18). Neuhauser's broker Stelzner, himself, recalls no conversation where Neuhauser gave Stelzner his net worth. (Exhibit O hereto; Stelzner Dep. Tr. at 45L1-11).

5

22. Stelzner first spoke with Wachovia counsel four days before his Feb. 22, 2007 Deposition. (Exhibit O; Stelzner Dep. Tr. at 9L3-11; 10L7-24; 11L1-7). Other than speaking with this counsel at that time, Stelzner had not discussed the facts or circumstances of the case with anyone else. (Id. at 11L2-4).

23. As required by the federal securities laws and regulations, Greenblatt during the relevant time filed the following Schedule 13D's (Exhibit B hereto) publicly disclosing ownership of a sufficient percentage of HRMI stock to constitute controlling interest:

| Date | Percentage Ownership of HRMI |
|------|------------------------------|
| August 8, 2000 | 17.11% |
| October 27, 2000 | 21.09% |
| March 20, 2001 | 24.58% |
| April 5, 2001 | 29.56% |
| April 12, 2001 | 38.7% |

In addition, HRMI itself publicized these holdings. On April 3, 2001, HRMI issued a press release announcing that "Greenblatt and his affiliated companies own approximately 25% of HRM's outstanding stock" and that HRMI also agreed at that time to an increase in the percentage to 39.9%. (Exhibit C hereto at PR 12.) HRMI also disclosed the 38.7% ownership interest in its 2000 Form 10-K. (Exhibit D hereto at PR 41.)

24. No one at Prudential looked at any Schedule 13D, 10Q or any other filing with the SEC concerning HRMI. (Exhibit O, Stelzner Dep. at 142L 15-24; 143 L1-10; Exhibit K, Rubino Dep. at 75L19-25, 76L1-2, 76L10-25; Exhibit P, Neiman Dep. at 74L3-24; Exhibit Q, Temple Dep. at 94L5-13; Exhibit M, Damrow Dep. at 120L4-10). Such filings could have been easily obtained internally at Prudential. (Damrow, Exhibit M at 124L12-24, at 128L1).

25.  The Individual Defendants did not conceal a scheme to acquire controlling interest in HRMI, and did not use the Loop account for transactions that would violate securities laws and regulations.  (Exhibits B, C, and D hereto.)

26.  In 2005, after this lawsuit was filed, a trial was held in the United States Bankruptcy Court, District of Minnesota on a claim brought by Loop that it had been defrauded by the management of HRMI.  Bankruptcy Judge Robert J. Kressel found that Loop was defrauded by HRMI and ruled that Loop was entitled to a claim of $3 million in the HRMI bankruptcy as a result. (Exhibit E hereto, Judgment and Memorandum Opinion and Order, dated January 13, 2005.)

**The Piercing Claims**

27.  The Articles of Organization for NOLA were duly filed with the Illinois Secretary of State and approved on July 27, 1994, six years prior to the alleged fraud. (Exhibit F hereto at RS 2867-69.)  The Articles were submitted by the non-member corporate manager of NOLA, an Illinois corporation by the name of Nice Company, and signed by a non-party to this litigation, H. Gary Metzger, president of Nice Company.  Mr. Metzger also submitted an Application For Employer Identification Number on behalf of NOLA to the Internal Revenue Service. (Exhibit F at RS 2835.)  In 1995, the NOLA Articles of Organization were amended to reflect a new non-member corporate manager, Teletech Systems, Inc. ("Teletech"); Mr. Metzger submitted the Articles of Amendment as president of Teletech. (Exhibit F at 2838-39.)

28.  The Certificate of Incorporation for Teletech was issued by the Illinois Secretary of State on April 25, 1994. (Exhibit G hereto at 2870.)  Mr. Metzger was at all times the sole shareholder of Teletech. (Exhibit G at 2874, 2888-89.)  An Application For Employer

Identification Number was submitted by Teletech to the Internal Revenue Service on May 2, 1994. (Exhibit G at RS 2876.) Greenblatt, though never a shareholder of Teletech, acted at times as its secretary during the relevant time. (Exhibit F hereto at 2932.) On June 6, 2001, *after* the events at issue herein, Greenblatt also became the new registered agent of NOLA. (Exhibit F at 2928-29.)

29. The members of NOLA are the fathers of three of the Individual Defendants. (Exhibit H hereto, Answers to Interrogatories, at Number 1; Exhibit R, Greenblatt Dep. at 86.)

30. The NOLA brokerage account application specifically included the "LLC" designation. (Exhibit F hereto at page 1.)

31. Wachovia is itself a limited liability company. (¶ 8.)

32. There is no evidence in the discovery record of unity of interest and ownership between any of the Individual Defendants and NOLA.

33. There is no unity of interest and ownership between any of the Individual Defendants and NOLA. (Exhibits F, G, and H hereto.)

34. Loop was incorporated as a South Dakota corporation. (Exhibit I at RS 2906-08.) An Application For Employer Identification Number was submitted by Loop to the Internal Revenue Service on May 2, 1994. (Exhibit I at RS 2913.) It was authorized by the Illinois Secretary of State to transact business in Illinois on June 15, 1998. (Exhibit I at RS 2953.) It is undisputed that Jahelka, Nichols, and Greenblatt (or their family trusts) were shareholders, officers, and directors of Loop during the relevant time. Loop obtained a Certificate of Good Standing from the Illinois Secretary of State on October 3, 2000, two weeks before Loop opened its brokerage account with Wachovia, certifying that Loop had complied with all provisions of the Illinois

Business Corporation Act relating to filing of Annual Reports and payment of franchise taxes. (Exhibit I at RS 2902.)

35. There is no evidence in the discovery record of unity of interest and ownership between Neuhauser and Loop.

36. There is no unity of interest and ownership between Neuhauser and Loop. (Exhibit I hereto.)

37. There is no evidence in the discovery record that Jahelka, Nichols, and Greenblatt commingled personal funds with Loop funds, or used Loop funds for their own personal purposes.

38. There is no evidence in the discovery record that Loop was undercapitalized.

39. There is no unity of interest and ownership between Jahelka, Nichols, or Greenblatt and Loop. (Exhibit I hereto.)

40. Wachovia knew that Loop was a corporation and that NOLA was a limited liability company at the time it entered the commercial relationships with them. (Rev. SAC, Exhibits B and E.)

41. Wachovia is a voluntary contract creditor that assumed the risk in dealing with Loop and NOLA, and not an involuntary tort creditor. (Rev. SAC, Exhibits B and E.) Loop had an expense sharing agreement with several related entities. (Exhibit S, Jahelka Dep. at 3032.)

42. Craig L. Greene, CPA, has proffered an expert opinion concerning the piercing claims. (Exhibit J.)

**Breach of Contract Claim**

43.  All account statements of Wachovia on the NOLA, LLC account were addressed to NOLA, Inc. (Exhibit T).

44.  Wahovia Senior Vice President and Financial Consultant Kris Stelzner opened the NOLA account and Wachovia provided the form partnership account agreement to Neuhauser. Stelzner Dep., Ex. O at 16L22-24; 17L1.  Stelzner was not familiar with what an LLC or limited liability company was and did not know the difference between an LLC and a partnership. Stelzner Dep. Ex. O at 64L20-23, 65L7-18.  Neuhauser was told that the partnership form had to be filled out to open the NOLA account.  Neuhauser Dep. Ex. O at 118L6-20; 120L5-12.

WHEREFORE,  the Individual Defendants request that summary judgment be entered in their favor and against Wachovia on Counts I through VI of the Second Amended Complaint

Respectfully submitted,

Individual Defendants
David Neuhauser, Andrew A. Jahelka
Richard O. Nichols and Leon A. Greenblatt,

By: /s/ James W. Naisbitt
      Their Attorney

James W. Naisbitt (ARDC No. 6183543)
James W. Naisbitt, Ltd.
205 West Wacker Drive
Suite 1600
Chicago, IL 60606-1213
(312) 345-1056
Fax: (312) 236-3820

10

Dated: May 21, 2007

## CERTIFICATE OF SERVICE

I, James W. Naisbitt, an attorney, certify that I caused copies of the foregoing **STATEMENT OF UNDISPUTED MATERIAL FACTS OF INDIVIDUAL DEFENDANTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT ON ALL COUNTS,** to be electronically filed and I caused copies to additionally be served upon the person listed below electronically, on May 21, 2007.

Gary I. Blackman
Christopher S. Greismeyer
Adam Rome
Levenfeld Pearlstein, LLC
2 North LaSalle Street
Suite 1300
Chicago, IL 60602

Gregory J. Jordan
Dykema Gossett PLLC
10 South Wacker Drive
Suite 2300
Chicago, IL 60606

C. Philip Curley
John H. Wickert
Robinson Curley & Clayton, P.C.
300 South Wacker Drive, Suite 1700
Chicago, IL 60606

By:    /s/James W. Naisbitt

11