IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WACHOVIA SECURITIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04 C 3082 |
| | ) |
| DAVID NEUHAUSER; ANDREW A. | ) |
| JAHELKA; RICHARD O. NICHOLS; | ) |
| LEON A. GREENBLATT III; BANCO | ) Judge Virginia M. Kendall |
| PANAMERICANO, INC., a South Dakota | ) |
| Corporation; LOOP CORP., a South | ) |
| Dakota corporation; LOOP PROPERTIES, | ) Magistrate Judge Maria Valdez |
| INC., an Illinois corporation; and | ) |
| SCATTERED CORP., a South Dakota | ) |
| corporation; | ) |
| | ) |
| Defendants. | ) |

**PLAINTIFF'S REPLY TO DEFENDANTS' LOCAL RULE 56.1(b)(3)(C)
STATEMENT OF ADDITIONAL FACTS IN OPPOSITION TO
WACHOVIA'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

Plaintiff, Wachovia Securities, LLC ("Wachovia"), by its attorneys, Gary I. Blackman, Christopher S. Griesmeyer and Adam B. Rome of Levenfeld Pearlstein, LLC, and pursuant to Local Rule 56.1(a), respectfully submits this Reply to the Defendants' Local Rule 56.1(b)(3)(C) *Statement of Additional Facts* in opposition to Wachovia's Motion for Partial Summary Judgment.

65.   Prudential Securities, Inc. ("PSI") brought fraud claims in its arbitration proceedings against Loop and NOLA on May 8, 2003. In PSI's Statement of Claim, filed in the arbitration, it never alleged any supposed fraud in relation to the Loop and NOLA account intake forms. (D. Ex. 5, Statement of Claim). Additionally, the Loop and NOLA account intake forms were not attached to the Statement of Claim. (D. Ex. 5, Statement of Claim).

**REPLY:**   Admitted in part and disputed in part. Wachovia admits that PSI filed a Statement of Claim in Arbitration against Loop and NOLA on May 8, 2003, alleging, among

other things, fraud. Wachovia also admits that the Loop and NOLA account intake forms were not attached as exhibits to the Statement of Claim. However, Wachovia's (then PSI's) fraud claims were based, in part, on the opening of the Loop and NOLA accounts, which necessarily implicated and involved the account intake forms. (*See*, Ex. 5 to Defs.' Stmt. of Add'l Facts, at ¶¶ 5, 9, 10, 11, 12, 13, 15, 19, 22, and 23). Moreover, on January 25, 2005, Wachovia tendered its pre-hearing exchange of documents pursuant to New York Stock Exchange Arbitration Rule 619(c), which included the Loop and NOLA account intake forms – documents C00093 (and C00091, a duplicate copy) and C00107, respectively. (*See*, Exhibit 1, Wachovia's NYSE Pre-Hearing Exchange, and Group Exhibit 2, Loop and NOLA account intake forms). Wachovia also states that the attorney for Loop and NOLA during the NYSE arbitration proceeding was James W. Naisbitt – the very same attorney currently representing the Individual Defendants in this lawsuit. (*Cf.*, Exhibit 3, NYSE Arbitration Hearing Transcript, p. 2; Dkt. 38).

66. Wachovia dismissed its fraud claims against Loop and NOLA without prejudice in the arbitration proceeding, and its judgments against Loop and NOLA were based solely upon breach of contract. (D. Ex. 6, Wachovia's Motion to Voluntarily Dismiss.)

**REPLY:** Wachovia admits that it dismissed its fraud claims against Loop and NOLA without prejudice in the NYSE arbitration proceeding, and that its judgments against Loop and NOLA are based upon Wachovia's NYSE arbitration awards against those entities. Those awards, in turn, were based upon the defendants' failure to pay their margin debts.

67. The Loop and NOLA account intake forms were never attached as exhibits to Wachovia's First Amended Complaint, which was the operative pleading during discovery. (First Amended Complaint, DK 52).

**REPLY:** Admitted in part and disputed in part. Wachovia admits that the Loop and NOLA account intake forms were not attached as exhibits to its First Amended Complaint,

but disputes Defendants' characterization of that document as the "operative" pleading. Instead, Wachovia contends that the "operative" documents include the full and complete factual record developed during the course of discovery, as well as all pleadings filed with the Court. Wachovia further states that the fraud claims asserted in its First Amended Complaint were based, in part, on the opening of the Loop and NOLA accounts, which necessarily implicated and involved the account intake forms. (*See,* Dkt. 52, ¶¶ 1, 23, 25, 26, 30, 34, 36, 37, and 38). Wachovia further states that it produced the Loop and NOLA account intake records to Mr. Naisbitt – the Individual Defendants' attorney – during the NYSE arbitration proceeding, and re-produced those intake records to Mr. Naisbitt during the course of discovery in this lawsuit. (*Cf.,* Ex. 1; Defs.' Ex. 8, p. 19).

  68. The first time the Loop and NOLA account intake forms were attached to a complaint by Wachovia was when Wachovia filed its Second Amended Complaint on April 3, 2007. (Second Amended Complaint, DK 192)

**REPLY:** Wachovia admits that the first time it attached the Loop and NOLA account intake forms to its Complaint was when it filed its Second Amended Complaint on April 3, 2007, but further states that the Loop and NOLA account intake forms were used as exhibits during the depositions of the following Wachovia witnesses:

- Robert Temple on February 15, 2007 (Temple Dep. Tr., pp. 78, 90);
- Doug Damrow on February 22, 2007 (Damrow Dep. Tr., pp. 46, 73-74);
- Kris Stelzner on February 22, 2007 (Stelzner Dep. Tr., pp. 48, 104);
- Patricia Roy on February 27, 2007 (Roy Dep. Tr., Attached as <u>Exhibit 4</u>, pp. 18, 29); and
- Elisabeth Niemann on March 14, 2007 (Niemann Dep. Tr., pp. 30-33);

as well as the following Defense witnesses:

- Andrew Jahelka on February 6, 2007 (Jahelka Dep. Tr., p. 167); and
- David Neuhauser on February 7, 2007 (Neuhauser Dep. Tr., pp. 100-101).

69. On May 3, 2007, this Court struck the Second Amended Complaint stating, in part, "I am not permitting you to amend your fraud count." (D. Ex. 7, Transcript of Hearing at 19.)

**REPLY:** Wachovia admits that the Court struck the Second Amended Complaint and ordered Wachovia to file a Revised Second Amended Complaint, and that the May 3, 2007 hearing transcript contains the quoted language. Wachovia further states that, as of May 3, 2007, Wachovia had not filed any motion for leave to file an amended complaint, and that the Court also stated:

> Now, if there was a request to amend the fraud count to comport with the depositions and the fact discovery that has been taking place for the period of time, which is nearly two and a half years, then a motion to do so would have been appropriate. And they're granted fairly routinely, because we're all on the same page as far as what actually came out in the depositions and through the fact discovery. (Defs.' Ex. 7, pp. 4-5).

Wachovia further states that, on May 3, 2007, the Court expressly allowed Wachovia to use the account intake forms – and assert a fraud theory premised upon misrepresentations contained in those forms – to support of its motion for summary: "To the extent that there has been discovery done on this form and it has been discussed, it will come out at trial. **It may be used in the summary judgments,** but we're not going to open up discovery, and we're not amending the complaint any further." (*Id.*) (emphasis added).

70. Wachovia's Revised Second Amended Complaint is the operative pleading in this proceeding. The Loop and NOLA account intake forms are not attached as exhibits thereto, nor are they referenced in the pleading. (Revised Second Amended Complaint, DK 209).

**REPLY:** Admitted in part and disputed in part. Wachovia admits that the account intake forms are not attached as exhibits to the Revised Second Amended Complaint, but disputes Defendants' characterization of that document as the "operative" pleading. Instead, Wachovia contends that the "operative" documents include the full and complete factual record developed during the course of discovery, as well as all pleadings filed with the Court.

4

71. In its answers to interrogatories, Wachovia never referenced the account intake forms or the misrepresentations supposedly made on the forms when it described the alleged fraud in this case. (D. Ex. 8, Wachovia Supplemental Interrogatory Answers at 9-19.)

**REPLY:** Disputed. Wachovia referenced the account intake forms in its answers to interrogatories. (*See, e.g.,* Defs.' Ex. 8, at p.19).

72. Fact Discovery in this case was closed on February 28, 2007. (December 6, 2006 Minute Order, DK 181).

**REPLY:** Admitted in part and disputed in part. Wachovia admits that the Court's December 6, 2006 minute order established a discovery cut-off date of February 28, 2007, but states that ***Defendants*** requested the deposition of Elisabeth Niemann to take place after February 28, 2007. As an accommodation to the Defendants, Wachovia agreed not to challenge their efforts to obtain discovery after the cut-off date. Wachovia received notices of subpoena depositions from Defendants' counsel, and on January 16, 2007 Wachovia's counsel (Gary I. Blackman) offered to pare down the number of depositions, and agreed not to call Elisabeth Niemann (as well as other witnesses) at trial.

Specifically, Mr. Blackman wrote to Defendants' counsel, "I want to make sure we are on the same page. Are you taking these deps because we named some of these witnesses, or because you want to – because we don't plan on calling all of them." The lead defense counsel, Mr. Curley, responded, "Perhaps we could narrow them down if you advise us which ones you currently plan on calling," and noted "[a]ll of the individuals, except Niemann, were disclosed by you as persons with knowledge." Mr. Blackman replied, "We can commit to not calling Niemann [and other witnesses] subject to something that might come up in a dep that we don't know about or some foundation for evidence." (*See,* January 16, 2007 e-mail exchange, attached as <u>Exhibit 5</u>).

5

On January 18, 2007, Mr. Curley wrote back to Mr. Blackman, and stated that Defendants "can agree to not deposing Niemann [and another witness] at this time, and do not expect to call them at trial, subject to something that might come up in another deposition or the need for some evidentiary foundation." (*See*, January 18, 2007 e-mail exchange, attached as <u>Exhibit 6</u>). Mr. Blackman confirmed Defendants' withdrawal of their Niemann subpoena in a January 30, 2007 letter (a copy of which is attached as <u>Exhibit 7</u>).

Shortly before the February 28, 2007 discovery cut-off date, Defendants reversed their prior position and demanded that Ms. Niemann be deposed. The parties worked to schedule Ms. Niemann's deposition during a March 1-5, 2007 e-mail exchange (a copy of which is <u>Exhibit 8</u>). Ms. Niemann's deposition was scheduled for 10:00 a.m. on March 14, 2007. (*Id.*).

On March 9, 2007, Mr. Blackman wrote to Elisabeth Niemann for the first time, and scheduled a deposition preparation meeting with her at 4:00pm on March 13, 2007 – the evening before her deposition. (A copy of Mr. Blackman's march 9, 2007 letter is attached as <u>Exhibit 9</u>). It was during that evening deposition preparation meeting on March 13, 2007, that Wachovia's counsel first learned of the duplicate copy of the Loop intake form, and the existence of a "code sheet." Ms. Niemann produced copies of those documents the very next morning, during her deposition. (Niemann Dep. Tr., pp. 30-34).

73. Pursuant to an agreement between the parties, the last fact deposition in the case was of Elisabeth Niemann, who was deposed March 14, 2007. At that deposition, a legible (but still incomplete) copy of the Loop account intake form was produced for the first time. (Wachovia Ex.11, Niemann Dep. at 31-33). Niemann was able to get a copy by making a phone call to the Wachovia microfiche department. (Wachovia Ex. 11., Niemann Dep. at 31-33).

**REPLY:** Admitted in part, disputed in part. Wachovia admits that Elisabeth Niemann's deposition occurred on March 14, 2007, and that she produced another copy of the Loop account intake form at that time. Wachovia further admits that Ms. Niemann obtained

that copy of the Loop account intake form from Wachovia's new accounts department. Wachovia disputes the Defendants' characterization of that document as "incomplete."

Again, shortly before the February 28, 2007 discovery cut-off date, Defendants reversed their prior position and demanded that Ms. Niemann be deposed. The parties worked to schedule Ms. Niemann's deposition during a March 1-5, 2007 e-mail exchange. (Ex. 8). Ms. Niemann's deposition was scheduled for 10:00 a.m. on March 14, 2007. (*Id.*). On March 9, 2007, Mr. Blackman wrote to Elisabeth Niemann for the first time, and scheduled a deposition preparation meeting with her at 4:00pm on March 13, 2007 – the evening before her deposition. (Ex. 9). It was during that evening deposition preparation meeting on March 13, 2007, that Wachovia's counsel first learned of the cleaner copy of the Loop intake form, and the existence of a "code sheet." Ms. Niemann produced copies of those documents the very next morning, during her deposition. (Niemann Dep. Tr., pp. 30-34).

74. Prior to that time, the bottom of the Loop account intake form obscured the name of the Wachovia employees who signed it. (Wachovia Ex. 9). The newly produced Loop account intake form revealed for the first time that it had been signed by both Kris Stelzner and a Peter Cory (or Corey), an assistant branch manager of the Deerfield branch office. (Wachovia Ex. 12; Wachovia Ex.13, Niemann Dep. at 32.)

**REPLY:** Admitted in part, disputed in part. Wachovia disputes the Defendants' argumentative characterization of the intake form, but agrees that the copy of the intake form produced by Ms. Niemann during her deposition was more legible.

75. Wachovia has never identified Peter Cory as a person who had knowledge in any answers to interrogatories or in its Rule 26.1 disclosures. (D. Ex. 8, Wachovia Supplemental Interrogatory Answers; D. Ex. 9, Wachovia's Final Rule 26.1 Disclosure.)

**REPLY:** Admitted.

76. Cory's name first came up at the deposition of Kris Stelzner. (Wachovia Ex. 7., Stelzner Dep. at 21-25.) Cory had told Stelzner he had been fired relating to his conduct in opening the NOLA account. (Wachovia Ex. 7, Stelzner Dep. at 21-25.) He was also identified as the boyfriend of Amy "Gopher" (actually Goder (Wachovia Ex. 11, Niemann Dep. at 19), who was Stelzner's assistant. (Wachovia Ex. 7, Stelzner Dep. at 49-50). Cory's role in the opening of the Loop account or in approving the Loop account intake form was not addressed at the Stelzner deposition. (Wachovia Ex. 7).

**REPLY:** Admitted.

77. Goder also was never identified by Wachovia as a person with knowledge in its interrogatory answers or in its Rule 26.1 disclosures. (D. Ex. 8, Wachovia Supplemental Interrogatory Answers; D. Ex. 9, Wachovia's Rule 26.1 Final Disclosure.)

**REPLY:** Admitted.

78. No employee of Wachovia has ever been able to definitively identify the handwriting that appears on the bodies of the Loop and NOLA account intake forms. (Wachovia Exhibit 7, Stelzner Dep. at 48-49; Wachovia Ex. 11, Niemann Dep. at 33, 58-59).

**REPLY:** Disputed. Kris Stelzner only testified at his deposition that the handwriting on the intake form was not his (he did not say – nor was he asked – whether he knew *whose* handwriting was on the document). Elisabeth Niemann testified that the handwriting belonged to Amy Goder, Ms. Stelzner's assistant. (Stelzner Dep., pp. 48-49, Niemann Dep., p. 33).

79. The revised copy of the NOLA account intake form was not produced until March 28, 2007, a month after discovery was closed, when Wachovia's counsel, Gary Blackman, mailed a copy of the form to the Defendant's Counsel. (D. Ex. 10, 3/28/2007 Blackman letter). It appears that the NOLA account intake form was signed by Stelzner and Cory, although Defendants, due to the close of discovery, have not been able to take a deposition to confirm that. (D. Ex. 10, 3/28/2007 Blackman letter).

**REPLY:** Disputed. The copy of the NOLA account intake form produced on March 28, 2007 was not "revised." Wachovia further disputes the Defendants argumentative commentary. (*Cf.* Defs.' Exs. 10 – 11).

8

80. Like the Loop account intake form, the NOLA account intake form that Wachovia had produced earlier was illegible, and among the items that were obscured were the identity of the two persons who signed it. (D. Ex. 11, NOLA intake form used at depositions).

**REPLY:** Disputed. (*Cf.* Defs.' Exs. 10 – 11).

81. In its answers to interrogatories, Wachovia stated that the two persons who had participated in the decision to extend credit to Loop and NOLA were Stelzner and Damrow. (D. Ex. 8, Wachovia's Supplemental Interrogatory Answers No. 17 at 65). Stelzner denies participating in the decision to extend credit to Loop or NOLA. (Wachovia Ex. 7, Stelzner Dep. at 85-86). Damrow has no personal knowledge concerning the opening of the Loop or NOLA accounts. (Wachovia Ex.10, Damrow Dep. at 35-37).

**REPLY:** Disputed. Messrs. Stelzner and Damrow were the employees assigned to the Loop and NOLA accounts. (Defs.' Ex. 8, at p. 65).

82. Niemann testified that the only person besides Stelzner and/or Goder who would have had to have seen the Loop and NOLA account intake forms (aside from administrative employees who would have input the information into Wachovia's computer system) before Loop and NOLA would have been allowed to trade on margin was the person signing the forms, in this case, Peter Cory. (Wachovia Ex. 11, Niemann Dep. at 43-49).

**REPLY:** Disputed. Defendants have mischaracterized Ms. Niemann's testimony. Ms. Niemann simply testified that "I believe at the time the financial advisor or sales assistant would bring it [the intake form] to one of the managers to have them sign off on it, and then they would key the information into the system." (Niemann Dep., p. 44).

83. It was not the practice of Wachovia to forward copies of the account intake form to the margin/credit department which is located in New York City. (Wachovia Ex. 11, Niemann Dep. at 46-47). Whether the securities were marginable was a decision made by the Credit Department in New York City who did not look at the new account forms. (Wachovia Ex. 11, Niemann Dep. at 46-47).

**REPLY:** Disputed. By her own testimony, Ms. Niemann did not know the answers to Defendants' questions. (Niemann Dep., pp. 46-47). Doug Damrow, Kris Stelzner, and even Elisabeth Niemann all testified that Wachovia relies upon the information provided to it by the customer when deciding whether to open a margin account. (Damrow Dep., pp. 169-

9

172; Stelzner Dep., pp. 171-174; Niemann Dep., pp. 140-141).

84.  At the time Niemann produced the legible Loop account intake form at her deposition, she produced a copy of a code form. (Wachovia Ex. 11, Niemann Dep. at 35-39). Niemann pulled a copy of the code form out of the files at the Deerfield office, but it was a code form that was used for retail as opposed to institutional accounts, such as the Loop and NOLA accounts. (Wachovia Ex. 11, Niemann Dep. at 35) The code form she produced was not from the Loop or NOLA files. (Wachovia Ex. 11, Niemann Dep. at 35). Even using the more legible form, Niemann was not able to definitively state who filled out the Loop account form. (Wachovia Ex. 11, Niemann Dep. at 38).

**REPLY:** Admitted in part, disputed in part. Wachovia admits that Ms. Niemann produced a copy of a code form, used for retail accounts, during her deposition. (Niemann Dep. Tr., pp. 35-37). Wachovia disputes Defendants' characterization of Ms. Niemann's testimony, "[e]ven using the more legible form, Ms. Niemann was not able to definitively identify who filled out the Loop account form.") (Niemann Dep., p. 38). Wachovia further states that much of the information contained on the account intake form – and which Defendants misrepresented regarding NOLA and Loop – does not require any code sheet to interpret. For example, on the Loop account intake form, it states that the customer had "10 years" of experience trading in equities, bonds, options, futures and mutual funds; in the NOLA intake form, it states that the customer had "15 years" of experience. (Ex. 2).

85.  A copy of the code form for institutional clients was not produced until March 28, 2007, a month after the close of discovery. (D. Ex. 10, March 28, 2007 Blackman letter). The code form produced was not the "actual back of the Loop and NOLA account intake forms." (Id.)

**REPLY:** Admitted in part, disputed in part. Wachovia admits that the code form for institutional clients was produced on March 28, 2007, when it was received by Mr. Blackman from Ms. Niemann. Wachovia disputes Defendants' references to "after the close of discovery." It was the Defendants who sought to depose Ms. Niemann, and to take her deposition after the February 28, 2007 discovery cut-off date. Wachovia permitted this as an

10

accommodation to Defendants' schedule. During her deposition on March 14, 2007, Ms. Niemann referenced the institutional code sheet. (Niemann Dep., p. 37). She produced it after her deposition.

86. Until the production of the code form, Wachovia's employees could not interpret the Loop and NOLA account intake forms. For instance, Stelzner could not interpret the codes on the account intake form. (Wachovia Ex. 7, Stelzner Dep. at 65-66). Thus, for example, Stelzner could not tell what the alleged net earnings of Loop Corp. allegedly were by looking at the codes. (Wachovia Ex. 7, Stelzner Dep. at 66).

**REPLY:** Disputed. Stelzner was able to interpret the account intake form – he simply could not remember precisely what the exact breakpoints for the financial resources code numbers were: "These numbers represent something – pertaining to certain – if a client has a net income and it falls between 50 and 100,000, that might be code 1. It if falls between 100 and 200,000, then it might be code 2; therefore, it's coded this way. But I don't recall the numbers." (Stelzner Dep., pp. 68-69). Other information in the intake form did not require the code to decipher – such as the customer's representation that Loop had "10 years" of investment experience in trading equities, bonds, options, futures and mutual funds. (*Id.* at pp. 173-174).

87. Neither Neuhauser (D. Ex. 1, at ¶ 11, Neuhauser Affidavit) or Greenblatt (D. Ex. 2 at ¶ 9, Greenblatt Affidavit) was shown a copy of the account intake form when the accounts were opened. It was not the practice of Wachovia to show account intake forms to clients. (Wachovia Ex. 11, Niemann Dep. at 39).

**REPLY:** Wachovia admits that Neuhauser and Greenblatt were not "shown" a copy of the intake form, but states that the information identified on those forms was nonetheless provided by Neuhauser and Greenblatt. (Damrow Dep., pp. 169-172; Niemann Dep., pp. 140-141; Stelzner Dep., pp. 170-174). Indeed, the false information that Greenblatt provided to Wachovia concerning Loop Corp.'s financial resources is consistent with the false

information that he provided to Marine Bank in 2001 in connection with a $3.2 million loan to Loop Corp. (*See*, Marine Bank Loan Review Summary Sheet, MB-PROD 001432-1440, produced pursuant to subpoena and attached as <u>Exhibit 10</u>). According to Marine Bank's records, Greenblatt represented that Loop Corp.'s assets were $61,900,000, and its total net worth was $44,599,000. (Ex. 10, MB-PROD 001433). That should have been plenty of collateral to secure a $3.2 million loan, but Loop Corp. and Greenblatt nonetheless defaulted on the loan (much like they failed to pay Loop's margin debts to Wachovia in this case), and on July 29, 2004, Marine Bank was forced to file suit against a number of the same players that find themselves defendants in this lawsuit, including Loop, Greenblatt, Banco Panamericano, and Loop Properties. (*See*, Circuit Court of Cook County Docket Sheet, *Marine Bank v. Loop Corp.*, et al. Case No. 04 CH 12239, a copy of which is attached as <u>Exhibit 11</u>).

      88. Wachovia has no manuals or guidelines concerning the extension of margin credit to clients. (D. Ex. 8, Wachovia Supplemental Answer to Interrogatories ¶17 at 65; Wachovia Ex. 11, Niemann Dep. at 14). Wachovia did not have any official training for its financial advisors in filing out the account intake forms. (Wachovia Ex. 11, Niemann Dep. at 14).

      **REPLY:** Admitted.

      89. In 2005, after this lawsuit was filed, a trial was held in the United States Bankruptcy Court, District Of Minnesota on a claim brought by Loop that it had been defrauded by the management of HRMI. Bankruptcy Judge Robert J. Kressel found that Loop was defrauded by HRMI and ruled that Loop was entitled to a claim of $3 million in the HRMI bankruptcy as a result. (D. Ex. 4, Judgment and Memorandum Opinion and Order, dated January 13, 2005).

      **REPLY:** Admitted – although whether or not Loop may have been defrauded by HRMI has no bearing whatsoever on whether or not the Individual Defendants (or, Loop for that matter) should be liable for defrauding Wachovia.

**WHEREFORE**, Plaintiff respectfully requests that the Court grant its pending Motion for Partial Summary Judgment.

Dated: July 9, 2007                                Respectfully submitted,

                                              **WACHOVIA SECURITIES, LLC**

                                              By:   /s/ Christopher S. Griesmeyer
                                                            One of Its Attorneys

Gary I. Blackman (ARDC #6187914)
Christopher S. Griesmeyer (ARDC #6269851)
Adam B. Rome (ARDC #6278341)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380 (Telephone)
(312) 346-8434 (Facsimile)