IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WACHOVIA SECURITIES, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 04 C 3082 |
| | ) |
| DAVID NEUHAUSER; ANDREW A. | ) |
| JAHELKA; RICHARD O. NICHOLS; | ) |
| LEON A. GREENBLATT III; BANCO | ) Judge Virginia M. Kendall |
| PANAMERICANO, INC., a South Dakota | ) |
| Corporation; LOOP CORP., a South | ) |
| Dakota corporation; LOOP PROPERTIES, | ) Magistrate Judge Maria Valdez |
| INC., an Illinois corporation; and | ) |
| SCATTERED CORP., a South Dakota | ) |
| corporation; | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S MOTION *IN LIMINE*
## TO BAR DEFENDANTS' EXPERT FROM TESTIFYING AT TRIAL

Plaintiff, Wachovia Securities, LLC ("Wachovia"), by its attorneys, Gary I. Blackman, Christopher S. Griesmeyer and Adam B. Rome of Levenfeld Pearlstein, LLC, respectfully moves *in limine* to bar the Defendants' expert witness, Craig L. Greene, from offering any testimony at trial. In support of this Motion, Wachovia states as follows:

1. Defendants' expert witness should be barred from testifying at trial because the Defendants have withheld (and continue to withhold) relevant evidence. Defendants also failed to timely produce thousands of pages of documents, including seven (7) binders that their expert relied upon in forming his opinions, until one business day before his deposition.

2. On April 4, 2007, the Defendants disclosed Craig Greene as their expert witness, purportedly to rebut Wachovia's alter-ego and veil piercing claims. (*See*, Exhibit A, Expert Report of Craig Greene).

3. On April 19, 2007, Wachovia's counsel wrote to Defendants, and asked them to produce, among other things: (a) Mr. Greene's complete file, (b) all documents related to Defendants' expert, (c) all communications between Mr. Greene and defense counsel, (d) all documents reviewed or relied upon by Mr. Greene, and (e) all deposition transcripts reviewed or relied upon by Mr. Greene. (*See,* Exhibit B, copy of Wachovia's April 19, 2007 letter, at p. 1, ¶¶ 1-5). Wachovia asked that Defendants produce this material no later than April 27, 2007. (*Id.* at p. 3).

4. On April 20, 2007, Wachovia served a notice for Mr. Greene's deposition upon the Defendants. (*See,* Exhibit C, Wachovia's Notice of Deposition). Wachovia's deposition notice again requested that the Defendants produce, among other things, Mr. Greene's complete file and all documents reviewed or relied upon by him. (Ex. C., p. 4, ¶¶ 1-4).[1]

5. The Court ordered the Defendants to present Mr. Greene for his deposition on September 11, 2007. (Ex. D, p. 1).

6. Defendants waited until the afternoon of Friday, **September 7, 2007** – just one business day before Mr. Greene's deposition – to produce their expert's file and the documents he purportedly relied upon to form his opinions. (*See,* Exhibit E, Defendants' transmittal letter and documents RS 4111 – RS 4236).[2] In addition to these 125 pages of documents, Defendants also waited until the afternoon of September 7, 2007 to produce Mr. Greene's file, which consisted of thousands of pages of documents contained in seven (7) binders.

---

[1] Wachovia also moved to strike Defendants' expert under a *Daubert* challenge, which the Court denied on August 31, 2007. (*See,* Exhibit D, August 31, 2007 Opinion and Order). Although Wachovia continues to maintain that Mr. Greene's opinion testimony fails to satisfy the requirements of Federal Rule of Evidence 702, the basis for the instant motion is decidedly different – namely, the Defendants' failure to produce relevant evidence that Mr. Greene reviewed and relied upon in forming his opinions.

[2] Defendants have marked documents RS 4118 and RS 4134 as "confidential," and therefore Wachovia has removed those documents from Exhibit E.

7.  Many of the documents that the Defendants produced on September 7, 2007 consist of substantive accounting records that were never produced before the close of fact discovery on February 28, 2007. (*See*, Dkt. 181). For example:

- Document RS 4116 is a financial record related to the paid-in capital of Loop.

- Documents RS 4117- RS 4123 are financial and accounting records related to Loop Corp. expenditures in 1999 and 2000.

- Documents RS 4124 – RS 4135 are account records related to the acquisition of HRMI stock on behalf of Loop Corp.

- Document RS 4141 is another accounting record related to Loop Corp.'s 2000 "pass through income."

- Documents RS 4142 – RS 4151 are additional financial and accounting records related to Loop Corp. expenditures in 2001.

8.  Each of these documents are highly relevant to Wachovia's veil piercing, alter-ego and fraudulent transfer claims. Each of these documents should have been produced well **before** the close of fact discovery, so Wachovia could question Michael May (Loop's accountant) and Richard Nichols (Loop's Treasurer) about the documents during their depositions. These documents should have been produced years ago, when Wachovia first requested them.[3]

9.  Instead, Defendants held onto these documents and did not produce them until the last possible moment – literally, one business day prior to the deposition of their expert and after it was too late to question Defendants about them. Defendants' delay is inexcusable, especially

---

[3] Wachovia first requested this information more than three years ago – on June 3, 2004 – when it served Rule 34 production requests upon the Individual Defendants, asking them to produce "[a]ny and all documents that constitute, concern, relate to, refer to, identify, describe or discuss any report of any expert witness that the Defendants may call during the trial of this lawsuit." (*See*, Exhibit F, Plaintiff's First Requests for Production, at p. 21, ¶ 41). Similarly, more than two years ago – on August 4, 2005 – Wachovia served Rule 34 production requests upon the Corporate Defendants, also asking them to produce documents that concern their expert witness. (*See*, Exhibit G, Plaintiff's First Set of Requests for Production, at p. 11, ¶ 5).

in light of the fact that Mr. Greene clearly possessed these documents for more than five months before producing them.[4]

10. **Mr. Greene also testified that there were <u>additional documents</u> that he reviewed which have <u>never been produced</u> in this litigation:**

> Q: Sir, I want to go back to this Exhibit 2. Is it your understanding that each of these initial capital contribution entries were, in fact, made?
>
> A: Yes.
>
> Q: And you base that on information provided on this document that was given to you by Mr. May [Loop's accountant]?
>
> A: Along with examination of the general ledger and tax returns.
>
> \* \* \*
>
> Q: The general ledger and what did you say, the income tax returns?
>
> A: Yes.
>
> Q: Other than those entries, did you do anything else to determine whether or not these initial capital contributions were made on September 12, 1997?
>
> MR. NAISBITT: I object to the extent that this has been asked and answered.
>
> THE WITNESS: Going through the accounting records, I did see and we talked about thee various rental properties, income and so forth, going through Loop Corp. So, alternatively, that kind of confirmed in my mind that these investments had, in fact, been made.
>
> BY MR. BLACKMAN:
>
> Q: **Those records that you're referring to, were those included in the binders that you gave to us?**
>
> A: <u>I'm not sure they're in there.</u>
>
> Q: **Do you know why?**
>
> A: <u>I just didn't make copies of them. I was over at Mr. May's office and we talked about how the accounting transactions flowed and so forth.</u>
>
> Q: But you're saying that those documents were relied upon when you're making your opinions?
>
> A: Wait a minute. No. I'm just simply responding to your question about whether or not I –

---

[4] Mr. Greene relied upon these documents in preparing his April 4, 2007 Report. Therefore, he clearly had access to these documents prior to that date. There is no justifiable reason for the Defendants to wait more than five months – until September 7, 2007 – to produce these documents.

Q: My question was, how is it that you confirmed that the initial capital contributions that are referenced on this document and in your report were made, and you said that you looked at some documents in Mr. May's office, correct?

A: I also said I looked at the general ledger and the income tax returns.

Q: I know the other part of it, sir. I'm now asking you about the other stuff. You talked about certain documents with respect to real estate investments that you looked at at Mr. May's office?

A: **What I saw was the operating statements for some of these rental properties, yes.**

Q: **Andy why were you shown those?**

A: **To understand the accounting and the flow of the income into Loop Corp.**

Q: Okay. And if you were show those to understand the accounting and the flow of income into Loop Corp., is there a reason why they are not a part of either your report or any of the documents that you've given me?

A: Again, I was just getting a base understanding of this accounting system. It did not go to my opinions, per se.

Q: Did it go to your opinions at all?

A: You're discussing now whether or not I am sure that these things were made. I made the comment that I saw other documentation that would indicate that these particular investments had activity that was flowing into Loop Corp.

Q: And is that relevant to you?

MR. NAISBITT: Objection, argumentative, "to you."

THE WITNESS: I'm trying to respond to you. I think it's relevant to you, sir.

BY MR. BLACKMAN:

Q: Sir, you looked at the documents in order to determine the flow of moneys into Loop Corp. and to better understand the accounting of Loop Corp. Wasn't that your testimony?

A: Flow of information. Let's keep it clear.

Q: All right.

A: And the accounting records and how the accounting was done. You've asked me repeatedly what did I look at to confirm this.

Q: I haven't put my question out yet. My question is, why were those not included in the documents that you provided me?

MR. NAISBITT: Objection, asked and answered.

THE WITNESS: They have not gone to my opinion. I don't reference them in there. I simply responded to your question. When you've asked me repeatedly what I've looked at, I've given you another item that I've looked at.

5

MR. BLACKMAN: Okay. I'm going to request – and we'll do this after the deposition – that those be produced. He is relying on those. He did review them. They're a part of the documents that you produced to us referencing initial capital contribution, and there's no reason they're not here. (*See*, Exhibit H, Sept. 11, 2007 Dep. Tr. of C. Greene, p. 73, line 4 – p. 77, line 20).

11. The fact that Mr. Greene eventually claimed not to have relied upon these documents in forming his opinions does not matter. The documents are relevant to this litigation – otherwise, he would not have looked at them during the course of his investigation – and they should have been produced.

12. Wachovia requested these documents years ago, and Defendants **still** have not completed their expert document production. Defendants' failure to do so merits but one sanction: this Court should strike Craig Greene as Defendants' expert witness and bar him from testifying a trial.

WHEREFORE, for all the reasons set forth above, Plaintiff Wachovia Securities, LLC respectfully requests that this Court enter an Order:

A. Striking Craig Greene as Defendants' expert witness;

B. Barring Craig Greene from testifying at trial;

C. Baring Defendants from utilizing or referring to documents RS 4111 – RS 4236, as well as the documents Mr. Greene looked at but failed to produce, during trial; and

D. Awarding Wachovia any such other and further relief as this Court deems just.

Dated: September 24, 2007         Respectfully submitted,

**WACHOVIA SECURITIES, LLC**

By:     /s/ Christopher S. Griesmeyer
         One of Its Attorneys

Gary I. Blackman (ARDC #6187914)
Christopher S. Griesmeyer (ARDC#6269851)
Adam B. Rome (ARDC #6278341)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)