IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.  04 C 3082 |
| | ) | |
| DAVID NEUHAUSER;  ANDREW A. | ) | |
| JAHELKA;  RICHARD O. NICHOLS; | ) | |
| LEON A. GREENBLATT III;  BANCO | ) | Judge Virginia M. Kendall |
| PANAMERICANO, INC., a South Dakota | ) | |
| Corporation; LOOP CORP., a South | ) | |
| Dakota corporation; LOOP PROPERTIES, | ) | Magistrate Judge Maria Valdez |
| INC., an Illinois corporation; and | ) | |
| SCATTERED CORP., a South Dakota | ) | |
| corporation; | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S RESPONSE TO "ADDITIONAL FINDINGS OF FACT AND CONCLUSIONS OF LAW" SUBMITTED BY DEFENDANTS AS SUPPLEMENTAL EXHIBIT 7 TO PRE-TRIAL ORDER

Plaintiff, Wachovia Securities, LLC ("Wachovia"), by its attorneys, Gary I. Blackman, Christopher S. Griesmeyer and Adam B. Rome of Levenfeld Pearlstein, LLC, respectfully submits this Response to the Additional Findings of Fact and Conclusions of Law submitted by Defendants as a Supplement to Exhibit 7 of the Parties' Pre-Trial Order.

## INTRODUCTION

Wachovia duly negotiated the terms and conditions of its Pre-Trial Order and, with the agreement of all Defendants, timely filed it with the Court on October 9, 2007. (*See*, Dkt. 300). Later that day, the Defendants filed their "Addition" to the Pre-Trial Order. (*See*, Dkt. 307). During the parties' negotiation of the language of the Pre-Trial Order, Defendants stated their intention to submit their answering statement to Wachovia's proposed findings of fact and

conclusions of law (Exhibit 7 to the Pre-Trial Order) as a separate, stand-alone documents. The Defendants did not, however, inform Wachovia of their intention to file "Additional Findings of Fact and Conclusions of Law." Accordingly, the very first time Wachovia saw Defendants' *Additional* Findings of Fact and Conclusions of Law was when it was served with a copy of the pleading on October 9, 2007. Wachovia therefore submits this Response to the Defendants' Additional Findings of Fact and Conclusions of Law.

**RESPONSE TO DEFENDANTS' "ADDITIONAL"**
**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

**I. COMMON LAW FRAUD**

**A.    ADDITIONAL FINDINGS OF FACT.**

1.    Wachovia's fraud claims are based on a theory of promissory fraud, premised in turn on a provision in the Loop brokerage agreement that the Loop account would not be used "for transactions that would violate securities laws and regulations." Wachovia claims the Individual Defendants violated securities laws and regulations by allegedly "concealing their scheme to acquire a controlling interest in HRMI." Wachovia also alleges that when the Individual Defendants opened their NOLA margin account with Wachovia they agreed to conduct trading in this account "in accordance with all applicable laws or requirements as well as the rules and practices of any market or clearing house through which [their] trades may be executed or processed." The NOLA margin agreement contains no such provision.

**RESPONSE:**    Wachovia denies that Defendants have accurately articulated Wachovia's theory of fraud, and disputes Defendants' improper attempt to limit the scope of Wachovia's fraud claim to the narrow language contained in the Complaint, ignoring facts Wachovia developed during the discovery process. Wachovia has already addressed this issue three times before, and for the reasons articulated in: (a) *Plaintiff's Response Brief in Opposition to*

*Individual Defendants' Motion in Limine to Bar Wachovia's New Fraud Claim* (Dkt. 294), (b) *Plaintiff's Response Brief in Opposition to Defendants' Motion to Strike Portions of Local Rule 56.1 Statement* (Dkt. 257) and (c) *Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Dkt. 256), Wachovia respectfully moves to strike this Paragraph 1 of the Defendants' "Additional Findings of Fact." Responding further, Wachovia admits that the Individual Defendants promised – but failed – to abide by relevant rules, regulations, and laws. Wachovia further admits that the Individual Defendants failed to disclose their acquisition of HRMI stock through the NOLA account on Schedule 13D filings.

2.      Joseph Rubino was the individual who headed the Wachovia Margin Department and who was a Senior Vice President of Wachovia when he left the company in March 2005. He will testify regarding the Loop account that "[t]he client was buying securities, he was depositing funds to cover the trades. As far as I was, you know, we would be concerned, he was trading the account. He wasn't doing anything, you know visibly illegal by doing so." Rubino testified the same was true as to the NOLA account.

**RESPONSE:**      Wachovia denies that Joe Rubino "headed" Wachvoia's Margin Department, and admits the remainder of the first sentence. Wachovia admits that, during portions of his deposition in this litigation, Mr. Rubino provided that testimony, but further states that the quoted language is taken out of context and in any event is not relevant to the claims and defenses in this litigation.

3

3.    Rubino was presented by Wachovia as one of its Fed. R. Civ. Pro. 30(b)(6) representatives.  He was unable to identify that any fraud was committed in the Loop and/or NOLA accounts.

**RESPONSE:**    Wachovia admits that Mr. Rubino was presented as *one of* – but not the only – Wachovia's Rule 30(b)(6) representative.   Wachovia further states that the most appropriate and knowledgeable persons concerning the facts and circumstances of the Individual Defendants' fraudulent activities are the Individual Defendants themselves, and further denies the second sentence.

4.    Wachovia fully monitored the trading in the Loop and NOLA accounts and all trades were approved the day following the trade(s) by the Deerfield Branch Managers, or their respective designees.

**RESPONSE:**    Wachovia denies that it "fully monitored the trading in the Loop and NOLA accounts," but admits that a branch manager would generally review a report of trades made the previous day.  Wachovia further disputes the relevance of this fact.

5.    Neuhauser denies making any statements concerning the net worth, investment experience, or income of the Loop and or NOLA.  No one asked him questions concerning net worth, investment experience or income of the Loop or NOLA accounts.

**RESPONSE:**    Wachovia admits that Neuhauser *denies* making the statements concerning Loop and NOLA, but states that he and/or Defendant Greenblatt did, in fact, make material misrepresentations regarding, *inter alia*, the net worth, investment experience and income of "Loop Corp." and "NOLA, LLC," and therefore Wachovia denies the remainder of Paragraph 5.

4

6.      Greenblatt denies making any statements to Prudential concerning the net worth, investment experience, or income of either Loop and/or NOLA.

**RESPONSE:**    Wachovia admits that Greenblatt *denies* making the statements concerning Loop and NOLA, but states that he and/or Defendant Neuhauser did, in fact, make material misrepresentations regarding, *inter alia*, the net worth, investment experience and income of "Loop Corp." and "NOLA, LLC," and therefore Wachovia denies the remainder of Paragraph 6.

7.      No Prudential employee has testified that either Greenblatt or Neuhauser made any representations to them concerning the net worth, investment experience or income of either Loop and/or NOLA.

**RESPONSE:**    Denied.

8.      No Prudential employee has testified that they ever asked Greenblatt or Neuhauser to disclose any investment accounts that were held by Loop or NOLA.

**RESPONSE:**    Denied.

9.      Prudential knew of the relationship between Loop, NOLA and Greenblatt. Prudential knew NOLA was purchasing HRMI stock. Prudential also knew that Loop was an "affiliated" person with Greenblatt. Prudential also increased the margin requirements for the Loop account twice and was entitled to raise the required margin to 100% if it so chose. Other securities firms did so.

**RESPONSE:**    Denied.

5

10.    No Prudential employee has testified that they personally participated in the decision to extend credit to Loop and/or NOLA. No written guidelines for the extension of margin credit existed for Prudential.

**RESPONSE:**    Denied.


11.    No financial statements for either Loop and/or NOLA were ever provided to Prudential and none were ever requested.

**RESPONSE:**    Denied.


12.    Under its contracts with Loop and NOLA, Prudential had the authority to require the sale of the assets in Loop and NOLA's account. Prudential never exercised that authority. A similarly situated broker dealer, First Union, in fact, exercised its authority and closed out various positions in HRMI stock, or required that they be transferred.

**RESPONSE:**    Wachovia admits the facts stated in Paragraph 12, but states that it was precluded from liquidating the Loop and NOLA accounts because the Individual Defendants' ownership interests in HRMI exceeded 10% of the stock of that company.


13.    Prudential never asked for any personal guaranties for the Loop and NOLA accounts. Prudential had earlier asked Defendant Greenblatt to personally guarantee a NOLA account and he refused.

**RESPONSE:**    Wachovia admits the first sentence and denies the second.

6

14.     In 2005, after this lawsuit was filed, a trial was held in the United States Bankruptcy Court, District of Minnesota on a claim brought by Loop that it had been defrauded by the management of HRMI.    Bankruptcy Judge Robert J. Kressel found that Loop was defrauded by HRMI and ruled that Loop was entitled to an allowed claim of $3 million in the HRMI bankruptcy.  In addition, Loop has a pending claim for an additional $6 million dollars against the HRMI bankruptcy estate that has not been objected to.

**RESPONSE:**     Wachovia lacks sufficient information to either admit or deny the facts alleged in Paragraph 14, and further disputes their relevance to any of the claims and defenses at issue in this litigation.

## ADDITIONAL CONCLUSIONS OF LAW

15.     As set forth in pending motions in limine, to strike, and for summary judgment, any fraud relating to the so-called account intake forms is not properly before the Court.

**RESPONSE:**     Wachovia denies this statement, and refers the Court to the arguments and legal authorities set forth in its Responses to the Defendants' motions in limine, motion to strike and motion for summary judgment.

16.     Wachovia and/or Prudential failed to mitigate its damages by requiring the sale of HRMI stock.

**RESPONSE:**     Wachovia denies this statement, and states that it was precluded from liquidating the Loop and NOLA accounts because the Individual Defendants' ownership interests in HRMI exceeded 10% of the stock of that company, and that NASDAQ halted trading of HRMI stock.

17. Wachovia cannot carry its burden to prove "reasonable reliance" with clear and convincing evidence. It failed to look at any of the publicly available information concerning HRMI. Its employees failed to ask any questions concerning the financial condition of Loop and/or NOLA.

**RESPONSE:** Denied. Regarding the statements that "[Wachovia] failed to look at any of the publicly available information concerning HRMI," (which is not a "conclusion of law," but instead is a statement of fact), Wachvoia states that it would have had no reason to look at the publicly-available information concerning HRMI at the time the Individual Defendants opened their margin accounts, and in any event such publicly-available information would not have revealed the Defendants' fraud.

18. In a November 4, 2004 ruling, Judge Hart had ruled that there was no duty on the part of the Defendants to disclose their intentions to Prudential concerning the trading in the Prudential accounts.

**RESPONSE:** Denied. Judge Hart ruled that Wachovia could pursue a claim for promissory fraud.

19. Wachovia has not carried its burden by proving by clear and convincing evidence that Greenblatt defrauded Wachovia.

**RESPONSE:** Denied.

20.    Wachovia has not carried its burden by proving by clear and convincing evidence that Neuhauser defrauded Wachovia.

**RESPONSE:**    Denied.

21.    Wachovia has not carried its burden by proving by clear and convincing evidence that Nichols defrauded Wachovia.

**RESPONSE:**    Denied.

22.    Wachovia has not carried it burden by proving by clear and convincing evidence that Jahelka defrauded Wachovia.

**RESPONSE:**    Denied.

## II. FRAUDULENT TRANSFERS

**A.    ADDITIONAL FINDINGS OF FACT**

23.    Wachovia has alleged that Loop granted a security interest in certain of its assets, including operating subsidiaries to Banco, and that the grant of the security interest violated the UFTA.

**RESPONSE:**    Admitted.

24.    In relation to the granting of the security interest to Banco, the Corporate Defendants propounded an interrogatory to Wachovia where they asked: "State whether Wachovia contends that the transactions documented at RS 3448-RS 3534 did not constitute "reasonably equivalent value" for the transaction alleged at Paragraph 64 of the Amended Complaint." Wachovia answered, in part: "Unknown at this time."

9

**RESPONSE:** Wachovia has already addressed this issue three times before, and for the reasons articulated in: (a) *Plaintiff's Response Brief in Opposition to Defendants' Joint Motion in Limine to Bar Evidence and Arguments Regarding Fraudulent Conveyances* (Dkt. 295), (b) *Plaintiff's Response Brief in Opposition to Defendants' Motion to Strike Portions of Local Rule 56.1 Statement* (Dkt. 257) and (c) *Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Dkt. 256), Wachovia respectfully moves to strike this Paragraph 24 of the Defendants' "Additional Findings of Fact." Answering further, Wachovia has developed facts during the course of oral discovery – and after the close of written discovery – that clearly establish the Banco lien is a fraudulent transfer.

25. Wachovia's 30(b)(6) witness on the alleged transfer of assets to Banco was unable to supplement the answer.

**RESPONSE:** Wachovia has already addressed this issue three times before, and for the reasons articulated in: (a) *Plaintiff's Response Brief in Opposition to Defendants' Joint Motion in Limine to Bar Evidence and Arguments Regarding Fraudulent Conveyances* (Dkt. 295), (b) *Plaintiff's Response Brief in Opposition to Defendants' Motion to Strike Portions of Local Rule 56.1 Statement* (Dkt. 257) and (c) *Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Dkt. 256), Wachovia respectfully moves to strike this Paragraph 25 of the Defendants' "Additional Findings of Fact." Answering further, Wachovia has developed facts during the course of oral discovery – and after the close of written discovery – that clearly establish the Banco lien is a fraudulent transfer.

26.     Wachovia has alleged that Loop transferred its interests in certain limited partnerships to Loop Properties.

**RESPONSE:**     Admitted.


27.     In relation to the transfer of the interests in certain limited partnerships to Loop Properties, the Corporate Defendants propounded an interrogatory to Wachovia where they asked: "State whether Wachovia contends that the transaction documented at RS 3448-3605 did not constitute 'reasonably equivalent value' for the transaction alleged at Paragraph 65 of the Amended Complaint." Wachovia answered, in part: "Unknown at this time."

**RESPONSE:**     Wachovia has already addressed this issue three times before, and for the reasons articulated in: (a) *Plaintiff's Response Brief in Opposition to Defendants' Joint Motion in Limine to Bar Evidence and Arguments Regarding Fraudulent Conveyances* (Dkt. 295), (b) *Plaintiff's Response Brief in Opposition to Defendants' Motion to Strike Portions of Local Rule 56.1 Statement* (Dkt. 257) and (c) *Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Dkt. 256), Wachovia respectfully moves to strike this Paragraph 27 of the Defendants' "Additional Findings of Fact." Answering further, Wachovia has developed facts during the course of oral discovery – and after the close of written discovery – that clearly establish the transactions at issue constitute a fraudulent transfer.


28.     Wachovia's 30(b)(6) witness on the alleged transfer of the interests in certain limited partnerships to Loop Properties was unable to supplement the answer.

**RESPONSE:**     Wachovia has already addressed this issue three times before, and for the reasons articulated in: (a) *Plaintiff's Response Brief in Opposition to Defendants' Joint Motion in*

*Limine to Bar Evidence and Arguments Regarding Fraudulent Conveyances* (Dkt. 295), (b) *Plaintiff's Response Brief in Opposition to Defendants' Motion to Strike Portions of Local Rule 56.1 Statement* (Dkt. 257) and (c) *Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Dkt. 256), Wachovia respectfully moves to strike this Paragraph 28 of the Defendants' "Additional Findings of Fact." Answering further, Wachovia has developed facts during the course of oral discovery – and after the close of written discovery – that clearly establish the transactions at issue constitute a fraudulent transfer.

## B.   ADDITIONAL CONCLUSIONS OF LAW

29.   Wachovia should be barred from presenting evidence and argument concerning "reasonably equivalent value" due to its failure to respond to discovery on the subject. See pending motion for summary judgment.

**RESPONSE:**   Wachovia has already addressed this issue three times before, and for the reasons articulated in: (a) *Plaintiff's Response Brief in Opposition to Defendants' Joint Motion in Limine to Bar Evidence and Arguments Regarding Fraudulent Conveyances* (Dkt. 295), (b) *Plaintiff's Response Brief in Opposition to Defendants' Motion to Strike Portions of Local Rule 56.1 Statement* (Dkt. 257) and (c) *Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Dkt. 256), Wachovia respectfully moves to strike this Paragraph 29 of the Defendants' "Additional Conclusions of Law." Answering further, Wachovia has developed facts during the course of oral discovery – and after the close of written discovery – that clearly establish the transactions at issue constitute fraudulent transfers.

30.    As set forth in the pending motion in limine, Wachovia should be barred from alleging that certain transfers not alleged in the Revised Second Amended Complaint are fraudulent transfers.

**RESPONSE:**    Wachovia has already addressed this issue three times before, and for the reasons articulated in: (a) *Plaintiff's Response Brief in Opposition to Defendants' Joint Motion in Limine to Bar Evidence and Arguments Regarding Fraudulent Conveyances* (Dkt. 295), (b) *Plaintiff's Response Brief in Opposition to Defendants' Motion to Strike Portions of Local Rule 56.1 Statement* (Dkt. 257) and (c) *Plaintiff's Reply Brief in Support of Motion for Partial Summary Judgment* (Dkt. 256), Wachovia respectfully moves to strike this Paragraph 30 of the Defendants' "Additional Conclusions of Law."    Answering further, Wachovia has developed facts during the course of oral discovery – and after the close of written discovery – that clearly establish the transactions at issue constitute fraudulent transfers.

31.    To the extent that Wachovia is allowed to introduce evidence on transactions not mentioned in the Revised Second Amended Complaint, all or most of the transfers are barred by the statute of limitations set forth at 740 ILCS 160/10.

**RESPONSE:**    Denied.

32.    Wachovia has not carried its burden of proving that the alleged transfer of EZ Links stock to Scattered was a fraudulent transfer under the UFTA.

**RESPONSE:**    Denied.

13

33.     Wachovia has not carried its burden of proving that the alleged transfer in connection with the April 1, 2002 loan extension from Banco to Loop was a fraudulent transfer under the UFTA.

**RESPONSE:**     Denied.


34.     Wachovia has not carried its burden of proving that the alleged transfer of the Loop's interests in Old Colony Partners, LP and 200 West Partners, LP to Loop Properties was a fraudulent transfer under the UFTA.

**RESPONSE:**     Denied.


### III. and IV.: PIERCING THE CORPORATE VEIL AND ALTER EGO

**A.     ADDITIONAL FINDINGS OF FACT**

35.     The Articles of Organization for NOLA were duly filed with the Illinois Secretary of State and approved on July 27, 1994, six years prior to the alleged fraud.  The Articles were submitted by the non-member corporate manager of NOLA, an Illinois corporation by the name of Nice Company, and signed by a non-party to this litigation, H. Gary Metzger, president of Nice Company.  Mr. Metzger also submitted an Application For Employer Identification Number on behalf of NOLA to the Internal Revenue Service.  In 1995, the NOLA Articles of Organization were amended to reflect a new non-member corporate manager, Teletech Systems, Inc. ("Teletech"); Mr. Metzger submitted the Articles of Amendment as president of Teletech.

**RESPONSE:**     Admitted.  Wachovia further states that NOLA was involuntarily dissolved on December 28, 1998, and that Mr. Greenblatt did not file the paperwork to reinstate NOLA until May 31, 2001 -- ten days after the margin debt came due in the NOLA account.

36.     The Certificate of Incorporation for Teletech was issued by the Illinois Secretary of State on April 25, 1994.  Mr. Metzger was at all times the sole shareholder of Teletech.  An Application For Employer Identification Number was submitted by Teletech to the Internal Revenue Service on May 2, 1994.  Greenblatt, though never a shareholder of Teletech, acted at times as its secretary during the relevant time.  On June 6, 2001, *after* the events at issue herein, Greenblatt also became the registered agent of NOLA.

**RESPONSE:**     Denied.


37.     The members of NOLA are the fathers of three of the Individual Defendants.

**RESPONSE:**     Wachovia admits that, currently, the three members of NOLA, LLC are the fathers of Messrs. Greenblatt, Nichols and Jahelka.


38.     The NOLA brokerage account application specifically included the "LLC" designation.

**RESPONSE:**     Wachovia admits that the account application contains the words "NOLA, LLC."


39.     Wachovia is itself a limited liability company.

**RESPONSE:**     Admitted.


40.     There is no unity of interest and ownership between any of the Individual Defendants and NOLA.

**RESPONSE:**     Denied.


15

41.    Loop was incorporated as a South Dakota corporation.    An Application For Employer Identification Number was submitted by Loop to the Internal Revenue Service on May 2, 1994.) It was authorized by the Illinois Secretary of State to transact business in Illinois on June 15, 1998. Loop obtained a Certificate of Good Standing from the Illinois Secretary of State on October 3, 2000, two weeks before Loop opened its brokerage account with Wachovia, certifying that Loop had complied with all provisions of the Illinois Business Corporation Act relating to filing of Annual Reports and payment of franchise taxes.

**RESPONSE:**    Admitted.


42.    There is no unity of interest and ownership between Neuhauser and Loop.

**RESPONSE:**    Denied.


43.    Wachovia knew that Loop was a corporation and that NOLA was a limited liability company at the time it entered the commercial relationships with them.

**RESPONSE:**    Denied.


44.    Wachovia is a voluntary contract creditor that assumed the risk in dealing with Loop and NOLA, and not an involuntary tort creditor. Loop had an expense sharing agreement with several related entities.

**RESPONSE:**    Denied.


16

## ADDITIONAL CONCLUSIONS OF LAW

45.     Capitalization should be looked at the point of formation. *Real Colors, Inc. v. Patel,* 39 F.Supp.2d 978, 993 (N.D. Ill. 1999) Additionally, courts will also consider whether parties infuse cash into the company during the regular course of business. *Id.* Under either of these standards, Loop was adequately capitalized.  NOLA was also adequately capitalized in 2001 after the infusion of capital to NOLA's subsidiary South Beach.

**RESPONSE:**     Wachovia admits that the Defendants have accurately cited a portion of the *Real Colors* opinion, but states the case also states that the issue of capitalization (as well as the other seven factors identified by the Court) is non-determinative as to whether or not there is a unity of interest and ownership such that the separate personalities of the corporation and the individual no longer exist.  Wachovia further denies that Loop and NOLA were adequately capitalized.

46.     There is nothing uncommon about cost sharing agreements between related entities. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec,* 476 F.Supp.2d 913, 934-35 (N.D. Ill. 2007).

**RESPONSE:**     Wachovia contests the applicability of the *Judson* case, which dealt with parent-subsidiary liability, and further states that the Court in *Judson* acknowledged that a unity of officers and directors is a factor used to pierce the corporate veil.  *Id.*  Wachovia further states that legitimate cost-sharing agreements between related entities are memorialized in writing and accounted for in corporate books and records – unlike the purported "oral" agreement in this case (the terms of which no Defense witness has been able to articulate).

17

47. Wachovia cannot pierce the veil based upon alleged "commingling" that did not economically harm Loop. For instance, to the extent that Loop did not pay rent or that it allegedly was overpaid by RTC for the time of May and Sharp, those factors improved the financial condition of Loop. The same holds true for infusions of loans of by Banco. In a piercing case, there must be a nexus between the activity and the harm to the creditor. *Sea-Land Servs. v. Pepper Source,* 993 F.2d 1309, 1313 (7[h] Cir. 1993). A creditor cannot complain about an act of "commingling" which "only increased [the debtor's] assets." *Macaluso v. Jenkins,* 95 Ill. App. 3d 461 (2[od] Dist 1981).

**RESPONSE:** Denied. The commingling of assets is directly related to the Defendants' failure to observe corporate formalities, insolvency, absence of corporate records, and use of a corporate shell as a mere façade for the operation of its dominant shareholder, Leon Greenblatt. *See, e.g., Real Colors, Inc. v. Patel*, 39 F. Supp. 2d 978, 993 (N.D. Ill. 1999). Wachovia further states that it has been directly harmed by the Defendants' use of corporate sham companies to obtain loans from Wachovia that they now refuse to pay.

48. Wachovia has not carried its burden of proving that the Court should pierce the corporate veil of Loop and hold Greenblatt, Nichols, Jahelka and Neuhauser personally liable for the debts of Loop.

**RESPONSE:** Denied.

49.     Wachovia has not carried its burden of proving that the Court should pierce the corporate veil of NOLA and hold Greenblatt, Nichols, Jahelka and Neuhauser personally liable for the debts of NOLA.

**RESPONSE:**     Denied.

50.     Wachovia has not carried its burden of proving that the Court should find that Greenblatt, Nichols, Jahelka and Neuhauser are the alter egos of Loop and/or NOLA.

**RESPONSE:**     Denied.

51.     Wachovia has not carried its burden of proving that the Court should find that Loop and NOLA are alter egos of each other.

**RESPONSE:**     Denied.

## IV. BREACH OF CONTRACT

### A.     ADDITIONAL FINDINGS OF FACT

52.     All account statements of Wachovia on the NOLA, LLC account were addressed to NOLA, Inc.

**RESPONSE:**     Admitted.

53.     Wachovia Senior Vice President and Financial Consultant Kris Stelzner opened the NOLA account and Wachovia provided the form partnership account agreement to Neuhauser. Stelzner was not familiar with what an LLC or limited liability company was and did not know the difference between an LLC and a partnership. Neuhauser was told that the partnership form had to be filled out to open the NOLA account.

**RESPONSE:** Admitted. Wachvoia further states that Neuhauser read and understood the form when he completed and signed it, that he represented to Wachovia that NOLA was a duly authorized partnership, and Wachovia relied upon the representations of Neuhauser in opening the account.

54. Wachovia has alleged that Neuhauser severed himself from the NOLA, LLC account and that from that point forward all trades were made by Greenblatt. At the point Neuhauser told Wachovia he no longer had anything to do with NOLA, the Prudential Account had a positive balance.

**RESPONSE:** Wachovia admits the first sentence, and lacks sufficient information to either admit or deny the alleged facts in the second sentence. Wachovia further states that, regardless of whether Mr. Neuhauser purported to "sever" himself from the NOLA account, he remained liable as a partner of NOLA for the debts of the partnership. Furthermore, Mr. Neuhauser is also personally liable for the conduct he committed in the name of "NOLA, LLC" during the time period when it was involuntarily dissolved.

## B.    ADDITIONAL CONCLUSIONS OF LAW

55. Wachovia has suffered no damages as it was owed no money by NOLA, LLC when Neuhauser informed Prudential he no longer had anything to do with the account.

**RESPONSE:** Denied.

56. Wachovia has alleged that NOLA, LLC is both an LLC whose veil should be pierced and a partnership, whose alleged general partner is liable for its debts. These are

factually and legally inconsistent theories of liability, and, at trial, Wachovia should be required to chose between these inconsistent theories. They cannot both be true at the same time.

**RESPONSE:** Denied.

57. Wachovia should be estopped from asserting that Neuhauser is personally liable for the NOLA, LLC debt as it provided the partnership form to Neuhauser when it knew all along NOLA, LLC was an LLC.

**RESPONSE:** Denied.

58. Wachovia has not carried its burden of proving that Neuhauser was a party to the NOLA, LLC/Prudential Margin agreement and he is not personally liable for the breach of that agreement.

**RESPONSE:** Denied.

Dated: October 23, 2007

Respectfully submitted,
**WACHOVIA SECURITIES, LLC**

By:   /s/ Christopher S. Griesmeyer
One of Its Attorneys

Gary I. Blackman (ARDC #6187914)
Christopher S. Griesmeyer (ARDC #6269851)
Adam B. Rome (ARDC #6278341)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380 (Telephone)
(312) 346-8434 (Facsimile)

## CERTIFICATE OF SERVICE

I, Christopher S. Griesmeyer, an attorney, hereby certify that on October 23, 2007, I electronically filed Plaintiff's Response to "Additional Findings of Fact and Conclusions of Law" Submitted by Defendants as Supplemental Exhibit 7 to Pre-Trial Order with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the individuals listed:

**Atty for Banco Panamericano**
**and Scattered Corp.:**
C. Philip Curley, Esq.
John H. Wickert, Esq.
Alan R. Dolinko, Esq.
Robinson Curley & Clayton, P.C.
300 South Wacker Drive
Suite 1700
Chicago, Illinois 60606

**Atty for Neuhauser, Jahelka, Nichola,**
**Greenblatt (Individual Defendants)**
James W. Naisbitt, Esq
James W. Naisbitt, Ltd
205 West Wacker Drive,
Suite 1600
Chicago, Illinois 60606

**Atty for Loop Corp. and**
**Loop Properties**
Gerald C. Willis, Jr.
Paul W. McAndrews
McAndrews Held & Malloy, Ltd.
500 West Madison Street
34th Floor
Chicago, Illinois 60661

/s/   Christopher S. Griesmeyer
Gary I. Blackman (ARDC# 6187914)
Christopher S. Griesmeyer (ARDC# 6269851)
Adam B. Rome (ARDC# 6278341)
LEVENFELD PEARLSTEIN, LLC
2 North LaSalle Street, Suite 1300
Chicago, Illinois 60602
(312) 346-8380
(312) 346-8434 (Facsimile)
cgriesmeyer@lplegal.com

22