UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

| | | |
|---|---|---|
| WACHOVIA SECURITIES, LLC, | ) | Case no. 04 C 3082 |
| Plaintiff, | ) | Hon. Virginia M. Kendall |
| v. | ) | |
| DAVID NEUHAUSER, *et al.*, | ) | Mag. Judge Maria G. Valdez |
| Defendants. | ) | |

## DEFENDANT LEON A. GREENBLATT III'S NOTICE OF APPEAL

Leon A. Greenblatt III, by his undersigned attorneys, hereby gives notice that he appeals to the United States Court of Appeal for the Seventh Circuit from the final judgment entered in this matter on January 4, 2010, including but not limited to the issues raised by the judgment and Memorandum Opinion and Order of this Court entered on October 22, 2008, and all interlocutory orders entered throughout the case. By this appeal, Mr. Greenblatt seeks reversal of all relief granted against him by the United States District Court for the Northern District of Illinois, including but not limited to reversal of the judgment against him on Counts II and IV of Plaintiff's Revised Second Amended Complaint.

**LEON A. GREENBLATT III**

By: /s/ Louis D. Bernstein

One of his attorneys

Louis D. Bernstein (ARDC No. 6192379)

The Bernstein Law Offices

215 West Ontario, Third Floor

Chicago, IL  60654

Phone: 312-546-4641

Email:  lbernstein@law-ldb.com

## CERTIFICATE OF SERVICE

Louis D. Bernstein, an attorney, certifies that on the 27th day of January 2010, he caused the foregoing notice to be served via ECF on all attorneys registered to receive electronic notice in this case, including:

Gary Irwin Blackman

Levenfeld Perlstein LLC

2 N. LaSalle St., Suite 1300

Chicago, IL 60602


Gerald C. Willis, Jr.

McAndrews Held & Mallory, Ltd.

500 W. Madison St., 34th Floor

Chicago, IL 60661


Peter James Schmidt

Polsinelli Shalton Flanigan Suelthaus

2 Prudential Plaza, Suite 4525

Chicago, IL 60601

Norman Berger

Michael Hayes

Varga Berger Ledsky Hayes & Casey

224 S. Michigan Ave., Suite 350

Chicago, IL 60604


C. Philip Curley

Alan Dolinko

Susan Valentine

Robinson Curley & Clayton, P.C.

300 S. Wacker Dr., Suite 1700

Chicago, IL 60606


Christopher Griesmeyer

Greiman Rome & Griesmeyer, PC

200 W. Madison St., Suite 755

Chicago, IL 60606

/s/ Louis D. Bernstein

## SEVENTH CIRCUIT COURT OF APPEALS INFORMATION SHEET

Include the names of all plaintiffs (petitioners) and defendants (respondents) who are parties to
the appeal.  Use a separate sheet if needed.


NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION DOCKET NUMBER:  04cv3082

| PLAINTIFF (Petitioner) | v. | DEFENDANT (Respondent) |
|---|---|---|
| Wachovia Securities, et al/Appellee | | Leon A. Greenblatt, III/Appellant |

(Use separate sheet for additional counsel)

| PETITIONER'S COUNSEL | | RESPONDENT'S COUNSEL | |
|---|---|---|---|
| Name | Adam Brent Rome | Name | Louis David Bernstein |
| Firm | Levenfeld Pearlstein, LLC | Firm | The Bernstein Law Firm, LLC |
| Address | 2 North LaSalle Street Suite 1300 Chicago, IL 60602 | Address | 411 North LaSalle Street #200 Chicago, IL 60654 |
| Phone | 312-476-7585 | Phone | 312-953-9552 |

| Other Information | | | |
|---|---|---|---|
| District Judge | Kendall | Date Filed in District Court | 4/29/2004 |
| Court Reporter | B. Wilson    5885 | Date of Judgment | 10/23/2008, 1/4/2010 |
| Nature of Suit | 190 | Date of Notice of Appeal | 1/27/2010 |

COUNSEL:        Appointed [ ]        Retained [ X ]        Pro Se [ ]

FEE STATUS:        Paid [ X ]        Due [ ]        IFP [ ]

                   IFP Pending [ ]        U.S. [ ]        Waived [ ]

Has Docketing Statement been filed with the District Court Clerk's Office?        Yes [ ]        No [ X ]

If State/Federal Habeas Corpus (28 USC 2254/28 USC 2255), was Certificate of Appealability:

        Granted [ ]        Denied [ ]        Pending [ ]

If Certificate of Appealability was granted or denied, date of order: _____

If defendant is in federal custody, please provide U.S. Marshall number (USM#): _____

**IMPORTANT: THIS FORM IS TO ACCOMPANY THE SHORT RECORD SENT TO THE CLERK OF
THE U.S. COURT OF APPEALS PURSUANT TO CIRCUIT RULE 3(A).   Rev 04/01**

# UNITED STATES DISTRICT COURT
## FOR THE Northern District of Illinois – CM/ECF LIVE, Ver 3.2.2
### Eastern Division

Wachovia Securities, LLC

Plaintiff,

v.

Case No.: 1:04–cv–03082
Honorable Virginia M. Kendall

David Neuhauser, et al.

Defendant.

## NOTIFICATION OF DOCKET ENTRY

This docket entry was made by the Clerk on Wednesday, October 22, 2008:

MINUTE entry before the Honorable Virginia M. Kendall: Enter Memorandum Opinion and Order: As to Counts II and IV, judgment in favor of Wachovia and against Defendants Loop, Jahelka, Nichols and Greenblatt, jointly and severally, in the amount of ;2,478,418.80 with interest from September 22, 2005 through the date of judgment. The Court also awards Wachovia its actual costs and attorneys fees incurred since September 22, 2005 through the date of judgment. As to Counts VII and IX, judgment in favor of Wachovia and against Loop and Banco. As to Counts VIII and X, judgment in favor of Scattered and Loop Properties and against Wachovia. To satisfy Wachovia's claim, the Court voids Banco's lien or security interest over Loop's assets, Loop's post–May 22, 2001 compensation payments to Jahelka and Nichols, and Loop's post–May 22, 2001 "investments" in EZ Links. Wachovia may levy execution on the transferred assets or its proceeds. Wachovia shall submit a fee petition to the Court within 21 days of this Order. Wachovia's Motion to Strike Defendants' Post Trial Position Paper is denied. Wachovia's Motion to Strike Gregory Jordan's affidavit is denied. Civil case terminated. Mailed notice(jms, )

**ATTENTION:** This notice is being sent pursuant to Rule 77(d) of the Federal Rules of Civil Procedure or Rule 49(c) of the Federal Rules of Criminal Procedure. It was generated by CM/ECF, the automated docketing system used to maintain the civil and criminal dockets of this District. If a minute order or other document is enclosed, please refer to it for additional information.

For scheduled events, motion practices, recent opinions and other information, visit our web site at ***www.ilnd.uscourts.gov***.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| WACHOVIA SECURITIES, LLC, | ) |
| | ) |
| | ) |
| Plaintiff, | )    Case No. 04 C 3082 |
| v. | ) |
| | )    Judge Virginia M. Kendall |
| ANDREW A. JAHELKA, RICHARD O. | ) |
| NICHOLS, LEON A. GREENBLATT IIII, | ) |
| BANCO PANAMERICANO, INC., LOOP | ) |
| CORP., LOOP PROPERTIES, INC., and | ) |
| SCATTERED CORP., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendant Loop Corp. ("Loop") traded stock on margin using an account at Prudential

Securities Incorporated ("Prudential"). Stip. ¶ 2. Plaintiff, Wachovia Securities, LLC ("Wachovia")

is Prudential's successor in interest.[1] *Id.* On May 22, 2001, the stock collapsed resulting in a $1.9

million debt. Wachovia subsequently obtained an NYSE Arbitration Award, which was reduced to

judgment against Loop in the amount of $2,478,418.80. Stip. ¶ 17, 18; PTX 38. Seven years later,

the debt remains unpaid and Wachovia contends that Defendants Andrew A. Jahelka ("Jahelka"),

Richard O. Nichols ("Nichols"), and Leon A Greenblatt, III ("Greenblatt") looted Loop by

transferring its assets to themselves, insiders, and related entities, which made it impossible for

Wachovia to collect. Dk. 319 at 3. Wachovia now seeks to hold Jahelka, Nichols, and Greenblatt[2]

jointly and severally liable for the obligations of Loop, as the alter ego of Loop, under the doctrine

---

[1] For purposes of these proposed Findings of Fact and Conclusions of Law, the Court shall refer to Prudential as "Wachovia."

[2] Pursuant to the Court's Memorandum and Opinion Order of November 20, 2007, David Neuhauser ("Neuhauser") was dismissed as a defendant and Counts I, V and VI were dismissed in their entirety.

of piercing the corporate veil (Counts II and IV) and seeks all remedies available under the Illinois Uniform Fraudulent Transfer Act, 740 ILCS 160/5(a)(1) ("UFTA") against Loop, Banco Panamericano ("Banco"), Loop Properties, Inc. ("Loop Properties"), and Scattered Corp. ("Scattered")(Counts VII through X).[3] Wachovia also seeks actual costs and attorneys fees incurred since September 22, 2005 through the date of judgment.[4]

## PROCEDURAL HISTORY

On November 29, 2007, this Court denied Wachovia's Motion for Summary Judgement as to Neuhauser and Greenblatt with respect to Count I and granted summary judgment in favor of Neuhauser, Jahelka, Nichols, and Greenblatt with respect to Counts I and VI. Additionally, the Court granted in part and denied in part Neuhauser, Jahelka, Nichols, and Greenblatt's Motion for Summary Judgment as to Counts II through V. Specifically, the motion was denied as to Loop, Greenblatt, Jahelka, and Nichols; granted as to Loop and Neuhauser; and granted as to NOLA, LLC and Neuhauser, Jahelka, Nichols, and Greenblatt. Finally, the Court denied Banco, Loop Properties, and Scattered's Motion for Summary Judgment as to Counts VII through X brought under the Illinois Uniform Fraudulent Transfer Act.

From January 7, 2008 to January 16, 2008, the court conducted a bench trial to resolve the remaining claims. After listening to the testimony presented by both parties and reviewing the documents entered into evidence at trial, the following constitutes the Court's findings of fact and

---

[3] Citations to the sworn testimony of the witnesses at trial have been abbreviated to "Tr. Vol. 2A, Pg. __"; citations to the Plaintiff's and Defendants' trial exhibits that were admitted into evidence by the Parties' Final Pre-Trial Order have been abbreviated to "Dkt. 300, Ex __"; citations to Plaintiff's and Defendants' trial exhibits will be abbreviated to "PTX" and "DTX," respectively; and citations to the parties' pre-trial stipulations of fact have been abbreviated to "Stip."

[4] Wachovia's Motion to Strike Defendants' Post Trial Position Paper is denied as the court finds that Dependants complied with the Court's order at the close of trial.

conclusions of law pursuant to Federal Rule of Civil Procedure 52.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

I.    **Background**

      A.    The Parties

Wachovia is a banking and financial lending institution.  Stip. ¶ 2.  Defendant Loop is a

small, closely-held company owned by Defendants Greenblatt, Jahelka, and Nichols, or their

respective family trusts or estate planning entities.[5]  (Stip. ¶ 19).  Loop's respective ownership

interests are:  Greenblatt (50%), Jahelka (30%), and Nichols (20%).  *Id.*  Jahelka is Loop's President,

Nichols is it's Treasurer, and Greenblatt was the company's Secretary.  *Id.;* Tr. Vol. 4-B, Pg. 168.

On September 28, 2000, Neuhauser, acting on behalf of Loop and at Greenblatt's direction,

opened a margin account at Wachovia in the name of "Loop Corp."  Stip. ¶ 13.  Loop's account was

used exclusively to acquire shares of stock in Health Risk Management, Inc. ("HRMI") on margin.

Stip. ¶ 15; PTX 37.  On May 22, 2001, the NASDAQ halted trading in HRMI and the value of the

Loop account at Wachovia fell into a debit balance.  Stip. ¶ 16.  As a result, Defendants' Loop

account incurred a margin debt of $1,885,751.44 resulting almost entirely from holdings in HRMI.

*Id.*; Stip ¶ 17.  Although Wachovia subsequently obtained an NYSE Arbitration Award which was

reduced to a judgment against Loop in the amount of $2,478,418.80, Loop has not paid the

judgment.  Stip. ¶ 17, 18; PTX 38.

After the margin debt came due, Loop transferred over a million dollars in assets and made

a number of payments to its shareholders and companies such as Banco, Resource Technology

---

[5] Defendants Greenblatt, Jahelka and Nichols shall be collectively referred to as the "Individual Defendants," Defendants Loop, Loop Properties, Inc., Scattered Corp. and Banco Panamericano, Inc. shall be collectively referred to as the "Corporate Defendants." Greenblatt, Jahelka, Nichols, Loop, Banco, Loop Properties, and Scattered will collectively be referred to as the "Defendants."

Corporation ("RTC"), H&M Partners, EZ Links, Scattered, 200 West Partners, Telegraph Properties, and Loop Telecom, LP. PTX 26.

B.     The Companies

Greenblatt, Jahelka, and Nichols either own, operate, or have an interest in a web of corporate entities including Loop, Scattered, Banco, and Loop Properties and operate them out of a suite of interconnected offices on the seventh floor of a building located at 330 South Wells in Chicago (the "Wells Building").

Loop was incorporated in South Dakota on September 12, 1997 as a wholly-owned subsidiary of Rumpelstiltskin USA, Corp. ("Rumpelstiltskin"). Tr. Vol. 4-B, Pg. 170; PTX 1. Loop maintains its registered office in Suite 711 of the Wells Building. Stip. ¶ 20. Loop was "spun off" from Rumpelstiltskin to Greenblatt, Nichols and Jahelka with the same 50%, 30%, and 20% ownership structure. Tr. Vol. 4-B, Pg. 171; Tr. Vol. 5B, Pg. 147-149. The "spin off" documents were purportedly a part of Loop's corporate records—records that Greenblatt was responsible for maintaining as Loop's Secretary. Tr. Vol. 4-B, Pgs. 168, 171-173.

Defendant Banco is a South Dakota corporation with its principal place of business in adjoining Suite 718 of the Wells Building. Stip. ¶ 32. Banco is wholly-owned by one of Mr. Greenblatt's family trusts. *Id.*; Tr. Vol. 4-B, Pg. 188. Greenblatt is the sole officer, director and employee of Banco. *Id.* Defendant Scattered was also incorporated under South Dakota law and operates out of Suite 711 (the same Suite as Loop) of the Wells Building. Stip. ¶ 9. Like Loop, Scattered's owners are Greenblatt (50%), Jahelka (30%), and Nichols (20%). Stip. ¶ 54; Tr. Vol. 4-B, Pg. 186. Greenblatt's 50% share of Scattered is held by the same family trust that owns Banco and the trustee of that trust is Defendant Nichols. Tr. Vol. 4-B, Pg. 186. Defendant Loop Properties

4

is an Illinois corporation operating out of Suite 711 of the Wells Building. Stip. ¶ 8. Loop Properties is owned 90% by Scattered and 10% by Loop. Tr. Vol. 4-B, pg. 185.

In addition to Loop, Greenblatt owns and controls a number of related companies, and operates them out of the seventh floor of the Wells Building. RTC is owned 100% by Rumpelstiltskin. Tr. Vol. 4B, pg. 190. RTC's address is "c/o Scattered Corp." *Id.* Rumpelstiltskin, in turn, is owned by Greenblatt (50%), Jahelka and Nichols (collectively 50%). Tr. Vol. 4-B, Pg. 191. Rumpelstiltskin's address is "c/o Elizabeth Sharp," who was employed as the in-house counsel for Loop before she became the in-house counsel for Loop Properties and then finally (and currently) the in-house counsel of Scattered. *Id.* Even though Elizabeth Sharp ("Sharp") is currently employed as in-house counsel for Scattered, she is also Rumpelstiltskin's attorney. Tr. Vol. 4B, pg. 192. Chiplease, Inc. ("Chiplease") is 100% owned by one of Greenblatt's family trusts—the same trust that owns Banco—and according to Greenblatt, the address of Chiplease is "wherever you [i.e., Greenblatt] happen to be." Tr. Vol. 4B, pg. 192. Repurchase Corp. ("Repurchase") is 100% owned by another one of Greenblatt's family trusts, and Greenblatt is solely responsible for the day-to-day operations of that company. Tr. Vol. 4B, pg. 192.

South Beach Securities, Inc. ("South Beach") operates out of Suite 718 of the Wells Building. (PTX 50). South Beach is wholly owned by NOLA, LLC ("NOLA"). Tr. Vol. 5-A, Pg. 53. According to NOLA's bankruptcy filings, the address of South Beach is "300 South Wacker, Suite 1700," which is the address of the Robinson, Curley & Clayton law firm, defense counsel for Banco and Scattered in this litigation. PTX 48.

NOLA operates out of Suites 711 and 718 of the Wells Building. PTX 44, 45, 46; PTX 75, pg. 2. NOLA's members are the Individual Defendants' fathers. Tr. Vol. 5-A, Pg. 53. NOLA's

5

manager was Teletech Systems.  *Id.*  Teletech operates out of Suite 711 of the Wells Building and its lone officer and employee is Greenblatt.  Tr. Vol. 5-A, Pg. 53; PTX 70.

EZ Links is owned, at least partially, by Loop.  PTX 26.  According to Michael May ("May"), Loop's former in-house accountant who is now employed by Scattered, EZ Links is providing the health care benefits for Scattered's employees.  Stip. ¶ 29.

Because many of the Court's findings of fact and conclusions of law pertaining to the piercing issues concern Greenblatt's credibility and Banco's loans to Loop, the Court will address these matters prior to discussing the factors under the piercing claims.

## II.  The Court's Findings Regarding Defendant Leon Greenblatt and the Banco-Loop Loans

### A.  Banco's Loan to Loop

On January 3, 2000, Loop obtained a $9.9 million line of credit from Banco.  Stip.  33; PTX 19-20.  Loop executed a promissory note payable to Banco and entered into a security agreement with Banco as part of the loan.  *Id*.  Greenblatt signed the agreement on behalf of the lender (Banco) and Jahelka signed on behalf of the borrower (Loop).  *Id.* The Banco loan was secured by a lien against all of Loop's assets.  *Id*.  Although Loop's by-laws state that the Board of Directors must authorize such a loan by a written resolution, Jahelka did not recall ever seeing a written resolution and no such resolution was produced in this case .  PTX 2, Art. V, § 2; Tr. Vol. 3A, pg. 5; Tr. Vol. 5A, pgs. 18-19.

#### 1.  The terms of the Banco-Loop loan were designed to shield Loop from its creditors.

##### i.  *Greenblatt's dual status as lender and borrower*

Greenblatt's dual status as lender (i.e., 100% owner of Banco), and borrower (i.e., 50%

owner of Loop), created a conflict of interest. Greenblatt admitted that his dual status affected his
decision-making as lender, although he claimed that it somehow did not affect his decision-making
as borrower:

> Q:    Did you find that your dual status as 50 percent
> owner of Loop Corp. and as the lender ever
> influenced your decisions as a lender?
>
> A:    Yes.
>
> Q:    And did you ever find that your status - your status as a 50
> percent owner of Loop Corp. and the lender ever influenced
> your decisions as the 50 percent owner of Loop?
>
> A:    No.

Tr. Vol. 5A, pg. 65. Accordingly, Greenblatt's dual status as a lender and borrower created a clear
conflict of interest that was conveniently ignored by the Individual Defendants and had a significant
negative impact on the negotiation of the loan, its terms, its enforcement, and Loop's third-party
creditors.

*ii.*    *The non-existent Banco-Loop "negotiation"*

Despite having a clear conflict of interest, Greenblatt "negotiated" the terms of the loan.
Banco is owned by Greenblatt's family trust and Greenblatt is its only employee. During the
negotiation process between Loop and Banco, Jahelka and Nichols represented Loop and Greenblatt
represented Banco. Tr. Vol. 3A, p. 32-33; Tr. Vol. 4B, pg. 216. Greenblatt was also a 50%
shareholder of Loop. Tr. Vol. 3A, pg. 32. Neither side was represented by counsel. Tr. Vol. 3A,
p. 34-35.

As Banco's only employee, Greenblatt did little if any due diligence before deciding to loan

7

Loop $9.9 million. "Banco"—a.k.a. Greenblatt[6]—did not receive a loan application from Loop nor did it obtain a title commitment; Greenblatt did not perform a formal appraisal of Loop's assets, but instead performed an "off-the-cuff" valuation . Tr. Vol. 4B, pgs. 218-218. According to Greenblatt, he was qualified to appraise Loop's assets prior to entering into the loan because he believes himself to be an expert in the commercial real estate industry. *Id.*

Jahelka confirmed that Banco did not require Loop to provide Banco with any documentation prior to Banco agreeing to make the loan because Greenblatt, as a 50% owner of Loop, would have already been familiar with its financial condition. Tr. Vol. 3A, pg. 40. Although Banco obtained a blanket security interest over all of Loop's assets, Greenblatt did not obtain a personal guarantee from Loop's shareholders when it made the loan. According to Greenblatt, "Banco considers personal guarantees essentially worthless." Tr. Vol. 5A, pg. 19. Jahelka did not know why Greenblatt, on behalf of Banco, didn't asked for the personal guarantees of the shareholders. Tr. Vol. 3A, pg. 55. Although the loan and security agreement referenced a number of schedules that were to be attached as exhibits to the loan, there were no schedules attached to any of the loan documents produced as exhibits in this case and Jahelka did not know whether any such schedules were prepared. Tr. Vol. 3A, pg. 59.

Jahelka and Nichols' due diligence was non-existent. Jahelka could not recall asking Banco

---

[6] Throughout the trial, Greenblatt continually referred to himself in the third person as "Banco." Jahelka and Nichols followed suit and referred to Greenblatt's decisions as "Banco's decisions." Banco is 100% owned by Greenblatt and Greenblatt hired himself as its only employee. Thus "Banco" is Greenblatt and Greenblatt is Banco. Yet, Greenblatt insisted on testifying that "*Banco* considers personal guarantees essentially worthless." The Court finds that Banco was nothing more than Greenblatt's one-man enterprise and the Individual Defendants' attempts to paint Banco as anything else simply detracted from their credibility. For simplicity's sake and not because the Court is persuaded by the Individual Defendants' efforts to frame Banco as separate and apart from Greenblatt, the Court will refer to "Banco" as Banco and Greenblatt as Greenblatt.

for a lower interest rate nor did he recall any discussions between himself, Nichols, and Greenblatt regarding pledging collateral. Tr. Vol. 3A, pgs. 37-38. When asked why Loop agreed to give Banco $32 million in collateral to secure a $9.9 million line of credit, Jahelka testified that Banco gave Loop the best terms available to it at the time. Loop, however, does not possess any documentation reflecting applications to any other banks or lenders other than Banco. Tr. Vol. 3A, pgs. 39-40.

Greenblatt conceded that his status as the 100% owner of Banco (the lender) and 50% owner of Loop Corp. (the borrower) allowed him to streamline the due diligence process, granting funds to Loop far quicker than they would have received from an arm's length lender. Tr. Vol. 4B, pg. 219-220. ("It is absolutely true that the knowledge that I had enabled Loop to skip a large portion of the process that it would have had to have gone through at a regular commercial bank or savings and loan or other insurance company or similar type lender.") With Greenblatt negotiating the terms of the loan agreement as the sole owner of the lender and as a 50% shareholder of the borrower, the terms of the loan agreement enabled Greenblatt, Nichols, and Jahelka to remain liquid while blocking Loop's third-party creditors from collecting their judgment.

Banco's loan agreement effectively shielded Loop from its creditors and was drafted carefully to ensure that Greenblatt controlled Loop from the date of the loan forward.[7] The Banco-Loop loan granted Banco a first-position security interest over all of Loop's assets, including its operating subsidiaries, partnership interests, inventory, accounts, general intangibles, as well as all proceeds and products of any of those interests. PTX 19, pg. 13, § 4.1. Pursuant to Loop's note, interest would accrue at the rate of 12% per year, and the maturity date of the note was December

---

[7] Although Greenblatt controlled Loop's decisions as its senior secured lender and pursuant to section 7.6, Jahelka and Nichols were complicit in the scheme. They agreed to the terms of the loan which shielded Loop, of which they owned 50%, from its creditors.

31, 2001.  PTX 20.

The terms also placed Banco, and thus Greenblatt, in a position of power over Loop's assets. Jahelka admitted that Loop's pledge of $32 million in collateral to Banco, was regardless of whether Loop owed Banco a $1 or $10 million.  Tr. Vol. 3A, pg. 43.  Despite having pledged $32 million worth of real estate to collateralize the line of credit, Loop did not have complete access to the funds to do with them as Loop pleased.  Tr. Vol. 3A, pg. 44.

Conveniently, the parties' guaranty and security agreement states that the relationship between Loop and Banco is "solely that of borrower or guarantor and lender," and disclaims any fiduciary responsibilities by Banco.  PTX 19, pg. 28, § 10.4.  Nevertheless, Greenblatt conceded at trial that he owed fiduciary duties to Loop Corp. and Loop's shareholders, which created a conflict of interest for him, when he testified as follows:

> Q:    And didn't you owe fiduciary duties to Loop Corp. and to Loop Corp.'s shareholders at the time that this loan document was entered into?
>
> A:     Yes. There's no question of that.
>
> Q:    Okay. And then you didn't think it was a conflict of interest for you to be the 50 percent owner of Loop Corp. owing fiduciary duties to Loop and its shareholders while at the same time representing Banco, the lender in this transaction?
>
> A:    That's not the case. There definitely was some conflict in interest.
>
> Q:    Okay. Yet you went through with the loan anyways?
>
> A:    Mr. Jahelka and Mr. Nichols approved the loan on behalf of Loop without my determination as part of the judgment.

Tr. Vol. 5A, pg. 25.

10

Nichols admitted that he had to get Greenblatt's approval to make distributions even prior to the time that Loop defaulted on Banco's loan:

> Q:    Why would you need to get your lender's approval to make a distribution to yourself before May of 2001?
>
> A:    It is just something that I just did.
>
> Q:    Well didn't you have control over your own company at that time?  Weren't you allowed as shareholders and officers and directors to pay yourselves what you wanted to?
>
> A:    Well, to the extent that there was a draw down from Banco's line, I would always go to Mr. Greenblatt for just - if nothing else, to let him know that we are drawing down on that line.

Tr. Vol. 4B, pgs. 140-141.  Perhaps recognizing the impact of his testimony, Nichols subsequently changed his answer.[8] Tr. Vol. 4B, pgs. 141-145.  When asked whether after May of 2001 Banco had to approve all of Loop's payments to third-parties, Nichols responded "not all payments, no."  Tr. Vol. 4B, pg. 159.

> Q:    When you say you viewed it that way, were you ever a party to a conversation with anybody representing Banco, where Banco said to you or Mr. Jahelka that every payment, whether it is compensation or to a third party creditor, must be approved by Banco?
>
> A:    I do recall conversations with Banco which provided Banco with that level of oversight.
>
> Q:    So Mr. Greenblatt would tell you who you could and could not pay?
>
> A:    He definitely had oversight.

---

[8] *See United States v. Woods*, 233 F.3d 482, 484 (7th Cir. 2000) (at a bench trial the "trial judge is in the best position to judge the credibility of witnesses who offer conflicting testimony….").

11

Q:      Well, did he have the final say as to who could and could not be paid?

A:      Given his status as the senior secured lender, yeah.

Tr. Vol. 4B, pg. 160.

The fact that the Individual Defendants enforced and ignored the terms of the Banco-Loop loan agreement at Greenblatt's behest is proof that the loan was a sham transaction designed to put Greenblatt in control of Loop's assets. The evidence showed that the terms favoring Banco's priority lien over Loop's assets were enforced but other terms, such as terms favorable to third-party creditors, were ignored. For example, Loop did not provide Banco with financial information pertaining to it on a regular or quarterly basis even though Section 5.3 of the Banco loan required it to do so. Tr. Vol. 3A, pg. 58. Similarly, Banco did not require Loop to provide it with unqualified audited consolidated financial statements prepared by an independent Certified Public Accountant even though it was required by Sections 6.1 and 6.2 of the guaranty and security agreement. PTX 19, Pgs. 16-17. Tr. Vol. 5-A, pg. 22. At trial, Greenblatt explained that Banco did not require audited financial information because he was already aware of Loop's financial condition by virtue of his status as a 50% owner:

Q:      And Banco really wouldn't need to obtain this information, because, you know, you're the owner of Banco and you're also a 50 percent owner of Loop Corp. and you'd already know this information, correct?

A:      Banco wouldn't require an audit, because Banco is aware that the - the manner in which the financial statements were constructed and is aware that it was constructed properly.

Q:      And Banco's aware of that fact because you happen to be the 50 percent owner of Loop Corp., right?

A:      Yes.

12

Tr. Vol. 5A, pg. 24.

On the other hand, Banco enforced Section 7.6 of the loan agreement which prohibited Loop from making distributions to its shareholders without Banco's approval. Jahelka explained that the process for obtaining Banco's approval consisted of Jahelka, Nichols and Greenblatt meeting to discuss making a distribution and Greenblatt consenting to that distribution on Banco's behalf. Jahelka testified that when Greenblatt wanted a distribution, he, as Loop's 50% shareholder, would ask himself, as Loop's lender if it was okay and he would tell himself yes. Even Jahelka was at a loss to explain the logistics of how Greenblatt, as a 50% shareholder, was able to ask Greenblatt, as Banco's only employee, for approval to make a distribution to himself. Tr. Vol. 3A, pgs. 60-61. Of course, there is nothing documenting Greenblatt's decision to permit Jahelka and Nichols to distribute money to themselves from Loop's coffers. Tr. Vol. 3A, pg. 60.

### 2. The Banco Loan shielded Loop from creditors such as Wachovia

The Banco loan documents provided very little restriction on the use of proceeds. Loop was permitted to use the proceeds from the Banco loan for start-up costs, "projects"— which were defined as "the projects operated by Loop and its Subsidiaries"— and costs "already incurred." PTX 19, Pg. 21, § 7,.15; Pg. 7, §1.1; Tr. Vol. 5A, pg. 75. According to Greenblatt, Loop's investment in HRMI via its margin account at Wachovia constituted such a "project." Tr. Vol. 5A, pg. 76. But when a margin debt came due on the Wachovia account, Greenblatt refused to allow the Banco funds to be utilized to pay the debt. Greenblatt rationalized his decision by claiming the initial purchase of the HRMI stock was a "cost" and the margin debt incurred in the account was "financing." Tr. Vol. 5-A, Pg. 95. Greenblatt's refusal to allow Loop to repay the debt and Loop's assent to Banco's refusal occurred in spite of the clear language of the loan documents which

13

permitted the proceeds of the loan to be used for repayment of prior indebtedness. When asked about this particular loan term, Jahelka acknowledged: "As I read this term, it would appear that is does not require Banco's approval for payment of prior indebtedness." Tr. Vol. 3A, pg. 51.

While Banco refused to allow Loop to use the proceeds of the loan to pay down its margin debt, it was quite comfortable with Loop "investing" in related companies such as EZ Links:

> Q:     And in that transaction Banco allowed Loop to use the proceeds of that sale as opposed to funneling those proceeds up to Banco and paying off the loan, right?
>
> A:     Yes. That was - to the extent there were proceeds, Banco made its decision to allow Loop to keep the proceeds and fund probably EZ Links at the same time. I don't really recall, but, yes, if we allowed them to keep the proceeds, Banco would not have to make any further advances.

Tr. Vol. 5A, pg. 47. Moreover, Banco was quite comfortable allowing Loop to divest collateral on its loan with Banco's approval so long as it involved other Greenblatt-related entities. For example, Loop transferred its ownership interests in the real estate partnerships to Loop Properties with Banco's knowledge and consent. Tr. Vol. 5A, pg. 44.

In 2001, Loop defaulted on Banco's loan. Stip. ¶¶ 35-37. When Loop defaulted, Banco didn't enforce the loan agreement by sending a written notice of default demanding payment or filing suit against Loop or seeking foreclosure. In fact, Jahelka did not know of any actions taken by Banco since May 2001 to enforce its rights under any loan agreement with Loop. Tr. Vol. 3A, pg. 70-74. Instead, Banco decided to lend Loop an additional $17 million and add 12% interest onto the loan amounting to $1 million year. Stip. 35-37; Tr. Vol. 5A, pg. 96-98; Tr. Vol. 3A, pg. 70-74. Greenblatt elected to extend an additional $17 million to Loop in lieu of foreclosing on the $9.9 million because he felt it would "maximize the value of Loop's assets." Tr. Vol. 5B, pgs. 106-109.

14

Consequently, the current balance on Loop's loan to Banco is approximately $16 to $17 million, with perhaps an additional $1 million in interest. Tr. Vol. 4B, p. 191. May testified that Loop did not pay off the Banco line in full at the end of 2003 and that Banco made additional advances to Loop as late as 2004. Tr. Vol. 1-B, Pg. 220.

In summary, Banco chose to loan additional money to a company in default rather than use the proceeds from the sale of Loop's assets to pay Loop's debts to creditors like Wachovia. On this issue, Greenblatt flippantly testified that he would never advance funds to Loop in order to pay off Loop's margin debt with Wachovia because "[i]t's not Banco's general practice to make advances on troubled debt to pay under—to pay lower classes of creditors." Tr. Vol. 5A, pgs. 128. Based on the foregoing, the Court finds that the Loop-Banco Loan Agreement was devised to keep Greenblatt in control of Loop's assets and to avoid paying Loop's creditors.

> 3. <u>Loop's failure to maintain arm's length relationships among related entities</u>

Banco's participation in the Loop loan is evidence of Loop's failure to maintain arm's length relationships among related entities.[9] First, Banco and Loop are related entities in that they share a common owner—Greenblatt. Additionally, the evidence at trial showed that Banco sold a $3 million participation interest in the Loop loan to a number of "participating entities," including Old Colony Properties, Telegraph Properties, 200 West Properties and H&M Partners. PTX 21, Tr. Vol. 5A, pgs. 93-95. Greenblatt signed the participation agreement on behalf of Banco and the participants. *Id.*, Tr. Vol. 5A, pg. 92. Old Colony Properties, Telegraph Properties, 200 West

---

[9] As discussed in § III, failing to maintain arm's length relationships with related entities is one of the factors the courts use to decide whether to pierce the corporate veil. The Court finds that the Banco-Loop loan evidence is also proof that Loop failed to adhere to corporate formalities and failed to maintain corporate records.

15

Properties and H&M Partners are Loop's subsidiaries. *Id.* In other words, Loop's subsidiaries contributed $3 million to assist Banco in funding the $9.9 million to Loop and Loop subsequently pledged its interest in the participating entities to Banco as collateral to secure the loan. *Id.*; PTX 21, PTX 19. According to Greenblatt:

> Q: So the participants here, the participating entities, they're not only participants in the loan, but they are themselves the collateral securing the loan, right?
>
> A: It's true that they're participants, and it's true that they've pledged collateral for the loan.
>
> Q: Well, they themselves are the collateral, right?
>
> A: Yes.

Tr. Vol. 5A, pg. 94-95.

By entering into participation agreements with subsidiaries of the borrower, which also happened to be pledged as collateral, Greenblatt effectively created a complex lending structure that ultimately resulted in Loop contributing the funds (via its subsidiaries) that Banco would then turn around and lend back to Loop. As a result, control over the funds and use of the pledged assets remained effectively unchanged. Accordingly, this Court finds that the Banco loan was nothing more than a vehicle to avoid Loop's creditors by ensuring that all of Loop's assets were fully encumbered by a blanket lien in favor of Greenblatt, the dominant shareholder of both Banco and Loop.

4.     Greenblatt's Testimony Regarding Banco-Loop Loan Documents

Review of Banco's loan statements to Loop was critical to the Court's analysis of piercing the corporate veil. Wachovia claimed that after Loop's margin debt became due, Loop, at Banco's

16

direction, diverted its assets to other related entities such as Scattered, EZ Links, Telegraph, and Loop Telecom rather than pay its creditors. Defendants argued Loop's post-debt transfer of assets was an attempt to avoid its creditors because Banco gave Loop "dollar-for-dollar" credit on the Banco line in exchange for the transfers. Wachovia, not surprisingly, requested documentation that would reflect Banco's purported "dollar-for-dollar" credit since no such documentation had been produced in discovery.

During Wachovia's case in chief, Greenblatt testified that Banco sent either monthly or quarterly loan statements to Loop but that he didn't have them because he didn't know their whereabouts. Tr. Vol. 5A, pp. 30-31. Apparently, "Loop" searched for the loan statements but couldn't find them. Tr. Vol. 5A, p. 71. When questioned by defense counsel, Greenblatt was more cooperative and testified that the loan statements were also a part of Banco's books and records and that it would have maintained those records for three years or as long as the IRS required it keep them. Tr. Vol. 6A, pp. 85-88. When asked whether he destroyed the records as opposed to not being able to find them, Greenblatt stated, "It was my testimony that I couldn't find them, but also that I testified that I wasn't required to keep them that long." *Id.* When asked, "Well, regardless of whether you're required to keep them, you did not destroy them, did you?" Greenblatt replied, "I have no recollection.*" Id.* Regarding Banco's potential destruction of key evidence Greenblatt stated:

> Q:     Okay. So it is possible that you would have destroyed the Banco Panamericano loan statements to Loop Corp. in 2000, 2001, 2002?
> [objections omitted]
>
> A:     There's no way that I would have destroyed them in 2000, 2001, or 2002. If they were destroyed, which could have been the case because we don't keep records longer than the

17

IRS requires to keep them, they would have been done in 2004.
\*\*\*

Q:      Okay.  And were you aware in 2004 that a lawsuit had been filed against Loop and Banco Panamericano?

A:      Yes.

Q:      Okay.  So you wouldn't have destroyed them after the lawsuit was filed, would you?

A:      You know, I have no idea what I would have done then.  But the– if I knew they were to be kept for a lawsuit, I certainly wouldn't have been destroying them.  But you didn't even subpoena– you didn't even ask for them.

A:      Well, sir, I'm not sure I understand your testimony.  Is it your testimony that you may have thrown out documents after 2004 under the assumption that they weren't asked for?

A:      No.
[portion omitted]

Q:      Now, do you recall whether or not those documents related to the loan statements that would have gone to Loop on a monthly or quarterly basis or a yearly basis, whether those were destroyed?

A:      It's our general operating procedure not to keep records longer than the IRS requires us to keep them.  I don't particularly recall whether they were destroyed or not.

Q:      Okay.  Is it possible they were [destroyed]?

A:      Yes.

Tr. Vol. 6A, pp. 86-88.

The next day, Greenblatt insisted that counsel had not previously asked about Banco's loan "statements," but had in fact asked him about Banco's loan "invoices."

Q:      Okay.  So is it your testimony today that when you said last

18

> week that you couldn't find the loan statements that reflected those credits, is it your testimony that those loan statements do exist?
>
> A:    I think you're asking me about something different than you asked me last week.
>
> Q:    No -
>
> A:    You asked me last week about whether I sent invoices reflecting the loans, and this [morning] you're asking me about the loan statement.
>
> Q:    No, sir. I will tell you that you were specifically asked last week: Was there a loan statement that was sent to Loop that reflected the credits given to it by Banco on a dollar-by-dollar basis? You stated that there was, and then you stated that you couldn't find them. So that's the question that I'm following up on this morning.
>
> A:    That's not what I'm talking about.
>
> Q:    Okay.
>
> A:    You asked me about invoices that I sent to Loop versus statements of Loop's balance on the loan.
>
> Q:    Okay. Well, the record will reflect what it reflects.

Tr. Vol. 6A, pp. 90-91. Then, Greenblatt testified that the "loan statements"—which he referred to as the loan balance—were in fact in Banco's possession but hadn't been produced because Wachovia didn't ask for them. Tr. Vol. 6A, p. 92.

After the bench trial, documents supporting Defendants' dollar-for-dollar defense magically appeared. Greenblatt produced the documents—this time calling them Banco's "ledger" along with an affidavit in support of their admission. Dk. 362, Ex. A. Banco's "ledger" was located four years after the lawsuit was filed and after the conclusion of the trial. Greenblatt's affidavit and Banco's

19

"ledger" are stricken pursuant to Federal Rule of Evidence 37 (b)(2)(A)(ii) and 37(c)(1)(C).[10]

Greenblatt's counsel was forced to concede—despite his client's testimony to the contrary—that

Wachovia asked for the entirety of Banco's financial records via requests for production 92 through

102. And despite counsel's arguments in their post-trial submission briefs, the propriety of the

Banco-Loop loan has been at issue since Wachovia filed its First Amended Complaint. Dk. 362, p.

3; Dk. 52. In short, Banco's loan statements fall within the purview of Wachovia's discovery

requests and should have been produced. Banco's failure to do so until after trial merits striking the

"exhibits." Greenblatt's affidavit is also stricken on the basis that it was filed post-trial and without

leave of court giving no opportunity to Wachovia for cross-examination.

Nevertheless, even if this Court agreed to consider Banco's never-before-seen miracle

documents, this Court deems them unreliable. First, the exhibit consists of a self-described

electronic and computerized ledger maintained by "Banco." The entries on the document were made

by Greenblatt personally or under his "direct supervision" and are based on unspecified "Banco

---

[10] Federal Rule of Civil Procedure 37
(b) Failure to Comply with a Court Order.
(2)     Sanctions in the District Where the Action Is Pending.
        (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
        (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
***
(c)     Failure to Disclose, to Supplement an Earlier Response, or to Admit.
(1) Failure to Disclose or Supplement. If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:
        (C) may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi). Fed.R.Civ.P. 37 (2008).

records," "Greenblatt's own notes," and "other financial documents." Banco Memo. Ex. A, p. 3. Greenblatt's self-serving, eleventh-hour fabrication cannot fix his inconsistent testimony at trial. Moreover, Greenblatt only made the entries "periodically" or "usually quarterly" though "sometimes there may have been a longer time between the transactions and the entries." Greenblatt only attests that the ledger is "a printout of the computerized, electronic ledger as it existed at the time of trial" and not that it accurately reflects the payments and credits on the loan. *Id*. Moreover, Greenblatt admits that the ledger has not been audited. *Id*. The document lacks foundation, is hearsay, is unauthenticated, and is highly questionable based on Greenblatt's incentive to create a document to support his trial testimony after that testimony was effectively attacked at trial. Greenblatt's credibility is not rehabilitated by his admission that the 2000 and 2001 "loan statements" that "formed the basis for his deposition and trial testimony have been discarded." Dk. 362, Ex. A. It is important to note that Greenblatt's demeanor on the stand supports this Court's decision to strike his post-trial exhibit. His flippant, condescending air in response to legitimate fact-finding questions further convinces the Court that he was intentionally evading the truth.

It comes to no surprise to the Court that Michael May's ("May") testimony contradict's Greenblatt's. May is Loop's former in-house accountant who is currently employed by Scattered and has done work for several Greenblatt entities. He testified that he was responsible for keeping track of the amount owed on the Banco line of credit and that Loop did not receive loan statements from Banco. Tr. Vol. 1B, p. 236.

In summary, the Court finds that the Banco-Loop loans were designed to fraudulently shield Loop from its creditors by placing Greenblatt in control of Loop's fully encumbered assets. The Court also finds Leon Greenblatt to be an inherently incredible witness. Based on the foregoing, the

Court finds that Banco failed to produce admissible evidence that Banco gave Loop "dollar-for-dollar" credit for Loop's transfers of assets made after its debt to Wachovia was incurred and that the Banco-Loop loans are proof that Loop's corporate veil should be pierced.

**III.     Piercing the Corporate Veil to reach Greenblatt, Nichols and Jahelka**

A.     Choice of Law

After four years of litigating, extensive briefing, including nine months of briefing on the Defendants' Motions for Summary Judgment, Defendants appeared for the bench trial and, for the first time, argued in their opening statements for the application of South Dakota law to the piercing the corporate veil claims. Wachovia opposed Defendants' sudden reliance on South Dakota law to the Court's conclusions of law, but doesn't deny that South Dakota law is applicable.  Instead both parties agreed to compromise by applying the facts of the case to both Illinois and South Dakota law at trial and in their submission papers to the Court and the parties agreed that Illinois and South Dakota law are substantially similar.  *Id*; *see also* (Tr. Vol. 7 A at 10:14-16).

Remarkably, Defendants have argued that Illinois law applies to the piercing claims since they filed their motions for summary judgment in October 2006.  Over the next nine months, the parties flooded the docket with motions and briefs and continued to assert that Illinois law applied to Wachovia's piercing claims.  On November 29, 2007, the Court ruled on the Defendants' Motions for Summary Judgment granting them in part and denying them in part.  Dk. 319.  In the Court's Memorandum and Opinion Order, the Court applied Illinois law on the issue of piercing the corporate veil because both parties cited Illinois law in their briefs.  *Id*.  In October 2007, Defendants submitted their answer to Wachovia's proposed findings of fact and conclusions of law and, once again, cited Illinois law as being applicable to the piercing claims.  Dk. 307.  Then, on January 4,

2008 the parties appeared for a pre-trial conference. The Court's Memorandum and Opinion Order was discussed at length and neither party raised the choice of law issue. A mere three days later, Defendants appeared for the bench trial and disclosed, for the first time, that South Dakota law applies to the piercing claims. Defendants provided no explanation for their failure to address the choice-of-law issue earlier in the proceedings. Rather, when the Court inquired as to the parties' sudden shift in applicable law, Loop's counsel stated:

> Q:   And did you present that in your motion for summary
>      judgment? I don't recall you arguing any South Dakota law
>      in your motion for summary judgment.
>
> A:   I was not involved in that.

Tr. Vol. 7A, pg. 14-16. In Defendants' post-trial position papers, they devote one paragraph to the matter of South Dakota law as being appropriate for the piercing claims without providing further explanation as to why the parties failed to address the matter prior to trial. Def. Pos. Paper Corp. Veil, p. 2.

Defendants have waived any objection to the application of Illinois law to the piercing claims by failing to address the choice-of-law issue earlier in the proceedings. *See Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n.1 (7th Cir. 1985) (noting that acquiescence to court's choice of law amounts to waiver...objection to such choice). Despite the fact that both parties, citing *Stromberg Metal Works versus Press Mechanics*, 77 F.3d 928 (7th Cir. 1996), appear to agree that South Dakota law governs the piercing claims, the same parties acquiesced in the application of Illinois law for four years. *See Casio, Inc. v. S.M. & R. Co.*, 755 F.2d 528, 530-31 (7th Cir. 1985) ("parties can within broad limits stipulate the substantive law to be applied to their dispute, and that is what we deem them to have done here by not objecting to the district judge's

23

application of the substantive law of Illinois to their dispute."); *accord International Adm'rs v. Life Ins. Co.*, 753 F.2d 1373, 1376 (7th Cir. 1985). Thus, Defendants are deemed to have waived any objection to application of Illinois law which may have been available.

Nevertheless, the Seventh Circuit has held that efforts to "pierce the corporate veil" are governed by the law of the state of incorporation, *see Kern v. Chicago & Eastern Illinois R.R.*, 6 Ill. App. 3d 247, 250-51, 285 N.E.2d 501, 503-04 (1st Dist. 1972), and Loop was incorporated in South Dakota. *See Stromberg*, 77 F.3d at 933. Accordingly, the Court will apply Illinois law on the basis of the parties' waiver consistent with its November 20, 2007 Memorandum and Opinion Order, but will also briefly address South Dakota law since it is substantially the same.

B.      Piercing the Corporate Veil under Illinois Law

In general, "[a] corporation is a legal entity that exists separately and distinctly from its shareholders, officers, and directors," *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 775(Ill. App. Ct. 2005), and parties related to a corporation are normally not subject to corporate liabilities. *See Dimmitt & Owens Fin., Inc. v. Superior Sports Prods., Inc.*, 196 F. Supp. 2d 731, 738 (N.D. Ill. 2002). However, an exception to this rule exists when an "individual or entity uses a corporation merely as an instrumentality to conduct that person's or entity's business." *Fontana*, 840 N.E.2d at 775-76. In such situations, the corporate veil of limited liability may be "pierced" and the individual held liable for the underlying cause of action. *Sea-Land Servs., Inc. v. Pepper Source*, 941 F.2d 519, 520 (7th Cir. 1991) (*quoting Van Dorn Co. v. Future Chem. & Oil Corp.*, 753 F.2d 565, 569-70 (7th Cir. 1985)). "[P]iercing the corporate veil" is an equitable remedy designed to prevent those who fail to respect a corporation's separate legal existence from hiding behind the corporation to avoid liability for their wrongdoing. *Fontana*, 840 N.E.2d at 776; *see also Dimmitt*,

24

196 F. Supp. 2d at 738. A party seeking to pierce the corporate veil must demonstrate that: (1) there is "such unity of interest and ownership" between the individual and the corporation "that the separate personalities of the corporation and the individual . . . no longer exist;" and (2) the circumstances are "such that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice." *Hystro Prods., Inc. v. MNP Corp.*, 18 F.3d 1384, 1388-89 (7th Cir. 1994).

To determine whether the "unity of interest and ownership" between an individual and a corporation is such that the corporate fiction should be disregarded, courts consider the following factors: "(1) inadequate capitalization; (2) failure to issue stock; (3) failure to observe corporate formalities; (4) nonpayment of dividends; (5) insolvency of the debtor corporation; (6) non-functioning of the other officers or directors; (7) absence of corporate records; (8) commingling of funds; (9) diversion of assets from the corporation by or to a shareholder; (10) failure to maintain arm's length relationships among related entities; and (11) whether the corporation is a mere facade for the operation of the dominant shareholders." *Dimmitt*, 196 F. Supp. 2d at 738; *see also Fontana*, 840 N.E.2d at 778; *accord Hystro*, 18 F.3d at 1389). The court's task is to decide whether these factors, taken as a whole, demonstrate that the corporation is actually the alter ego of the individual, no one factor is determinative. *See Dimmitt*, 196 F. Supp. 2d at 738.

1.    <u>Inadequate Capitalization</u>

Wachovia proved that Loop was inadequately capitalized at its formation. A court will find a corporation to be undercapitalized only when it "has 'so little money that it could not and did not actually operate its nominal business as its own.'" *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008); *citing Firstar Bank, N.A. v. Faul*

*Chevrolet, Inc.*, 249 F. Supp. 2d 1029, 1041 (N.D. Ill. 2003) (*quoting Browning-Ferris Indus. of Ill., Inc. v. Ter Maat*, 195 F.3d 953, 961 (7th Cir. 1999)).[11]

According to Loop's Annual Reports filed with the Illinois Secretary of State and prepared under penalty of perjury by Greenblatt and Jahelka, Loop was capitalized with $1,000 of paid-in capital. PTX 7-12. This is also confirmed on the Application for Authority to Transact Business that Loop filed with the State on June 15, 1998. PTX 4, pg. 4. Loop's share certificates also confirm that 25,000 shares of the company were issued with a par value of $0.04 per share (i.e., $1,000).

Defendants contend that Loop was actually infused with more than $10 million worth of investments in stock and real estate at the time it was incorporated. The only support the Defendants have for this contention is Greenblatt's testimony and the missing documents allegedly prepared during the Rumpelstiltskin to Loop "spin off" (the "spin-off documents"). Greenblatt[12] was responsible as Loop's corporate secretary to keep and maintain the purported "spin-off" documents; yet, now he is unable to locate them. Tr. Vol. 4B, pgs. 172-173; *see also,* PTX 98, Pg. 6.[13]

---

[11] South Dakota law determines undercapitalization at the point of formation of the corporation. *Kansas Gas & Electric v. Ross*, 521 N.W.2d 107, 117 (S.D. 1994). A corporation which is adequately capitalized at formation but later suffers losses is not undercapitalized, and "simply identifying evidence of financial problems is insufficient." *Id*. The South Dakota Supreme Court also made it clear that the burden is on the plaintiff to prove undercapitalization. *Id*. at 115.

[12] As discussed herein, documents under Greenblatt's care that would allegedly support Loop's adherence to the corporate form are suspiciously missing.

[13] At trial, Mr. Greenblatt initially disagreed that he did not know where the "spin-off" documents were kept, he subsequently admitted the following deposition testimony:

Q:     And so you will agree with me then that during your deposition I asked
        you the following: "Q: Where are the spin-off documents kept?" "A: I don't know."

A:     Yes.

(Tr. Vol. 4-B, Pgs.. 173-175).

Because these documents were undoubtedly in Loop's, and specifically Greenblatt's, control and neither party produced them, an unfavorable evidentiary presumption arises and the Court may infer that the documents either never existed, or if they did, would have shown negative financial standing. *See, e.g., Dimmitt*, 196 F. Supp. 2d at 738; ("An unfavorable evidentiary presumption arises if a party, without reasonable excuse, fails to produce evidence which is under his control."); *see also McCracken v. Olson Cos., Inc.*, 500 N.E.2d 487, 492 (Ill. App. Ct. 1986) (when there is a failure to produce a legitimate explanation as to the unavailability of business records, it can reasonably be inferred that those documents would have revealed the corporations' poor financial standing).

Having been "unable" to locate the purported documents supporting the Individual Defendants' assertion that Loop was adequately capitalized, Defendants introduced a one-page summary document prepared by May, Loop's accountant, as evidence that Loop was infused with $10 million of assets at its formation. PTX 98.

May created Exhibit 98 after discovery closed for the purpose of preparing Loop's expert witness, Craig Green, CPA. Tr. Vol. 1A, pg. 120; PTX 98, Pg. 6. The document lists a number of real estate and stock investments that were purportedly transferred to Loop on September 12, 1997 which total in excess of $10 million. PTX 98, pg. 6. The document does not identify the basis for the valuations of the investments, identify the source of the investments, or describe the method by which the assets were transferred into Loop. *Id.* No back-up documentation used to create PTX 98 was ever introduced.

May admitted that he prepared PTX 98 without ever seeing any source documents that would have verified that the investments were in fact transferred to Loop. Tr. Vol. 1A pg. 125, Vol. 1B,

pg. 133. Instead, May's belief that the assets were transferred into Loop is based entirely upon the word-of-mouth of Loop's shareholders: Jahelka, Nichols and Greenblatt. Thus, May had no first-hand knowledge of this purported initial capitalization and admitted that he was simply "instructed by the shareholders that the transfer did take place."[14] *Id.* May testified during his deposition that he did not know whether Loop had, in fact, received $10 million of paid-in-capital at the time it was formed. *Id.,* pg. 123. Accordingly, the Court finds that PTX 98, May's "list" is unreliable and lacks foundation. It is another example of the Defendants' manipulation of records to support their trial position.

Defendants' contention that Loop was infused with $10 million in capital is controverted by documents introduced in evidence at trial; namely, Loop's filings with the Secretary of State. PTX 4. According to Greenblatt, PTX 4 is a certificate of authority to transact business that Loop filed with the Illinois Secretary of State. Tr. Vol. 4B, pg. 175. Greenblatt signed this form on June 11, 1998 in his capacity as Loop's Secretary. *Id.*, pg. 176, PTX 4, pg. 4. Section 10 of PTX 4 required Loop to provide an estimate as to the total value of all property of the company:

10(a)   Give an estimate of the total value of all property of the corporation for the following year:

10(b)   Give an estimate of the total value of all property of the corporation for the following year *that will be located in Illinois*: PTX 4, Pg. 4, (emphasis added).

In response to both inquiries, Mr. Greenblatt recorded "$1,000"—*not* the $10 million worth

---

[14] Mr. Jahelka did not know why this document was never produced prior to the deposition of Loop's expert, Mr. Green (Tr. Vol. 3-A, Pg. 25); did not know who created the document (Tr. Vol. 3-A, Pg. 27); and though he had seen documents that reflect that the interests reflected on the document were actually transferred to Loop, did not know why they had not been produced in this case. Tr. Vol. 3-A, Pg. 27. When asked whether Loop had all the transfer certificates evidencing that these assets were actually transferred to Loop as part of its initial capitalization, he stated that he didn't know what Loop had. Tr. Vol. 3A, pgs. 28-29.

of assets that were supposedly infused into Loop when it was incorporated on September 12, 1997,

just nine months earlier.  Greenblatt was unable to explain the discrepancy:

> Q:    Okay.  And then you will see down in Section 10A and 10B it asks you to give an estimate of the total value of all the property of the corporation for the following year, and it lists, $1,000.  Do you see that?
>
> A:    Yes.
>
> Q:    Why doesn't it list $10 million worth of value of property held by Loop Corp.?
>
> A:    Because I believe that includes the definition of property in Illinois, and that was all that there was.
>
> Q:    Okay.  Well, I will agree with you that that is what section B says, "Give an estimate of the total value of all the property of the corporation for the following year that will be located in Illinois," but section A isn't so limited.  So, I guess I am wondering why it is that $10 million isn't listed there?
>
> A:    I have no idea.

Tr. Vol. 4B, pg. 179.

Even if Exhibit 98 had a modicum of evidentiary value as to Loop's actual initial

capitalization, it fails to disclose the extent to which the real estate assets were encumbered by

mortgages, or whether the other investments were pledged as security for another obligation.  PTX

98, pg. 6.  "The consideration of whether a corporation is adequately capitalized is based on the

policy that shareholders should in good faith put at the risk of the business unencumbered capital

reasonably adequate for the corporation's prospective liabilities." *Fontana*, 840 N.E.2d at 779;

*citing Fiumetto v. Garrett Enterprises, Inc.*, 749 N.E.2d 992 (2001).  In fact, Greenblatt admitted

that he did not know if the real estate assets that were purportedly transferred into Loop on the date

of its incorporation— which comprises the bulk of the $10 million worth of the initial capital

29

contribution identified in PTX 98—were encumbered by mortgages. Tr. Vol. 4B, pg. 181. With respect to the assets and securities that were allegedly transferred into Loop in order to initially capitalize it, Jahelka testified that those are no longer owned by Loop; that he did not recall when they were liquidated; and does not know why Loop didn't produce any corporate records that reflect the sale of those securities. Tr. Vol. 4B, pg. 113.

The only credible evidence of Loop's actual capitalization at the time of its inception are the filings that show capitalization of $1000 of paid-in-capital. In fact, the only source of Loop's funds seems to be the fully encumbered "loans" from Banco. There was no evidence at trial that Loop was capable of operating its nominal business without help from Banco, and therefore, it was inadequately capitalized. *See Judson,* 529 F.3d at 379. In fact, May testified that Loop depended upon Banco for financing and to continue its operations and investments:

> Q:    Okay. And is it your understanding that Loop Corp. was
>       dependent upon financing from Banco in order to operate?
>
> A:    They relied on Banco to increase their investments.
>
> Q:    Okay. And without that funding from Banco, Loop Corp.
>       couldn't operate and it couldn't increase those investments; is
>       that right?
>
> A:    Yes.

In other words, the evidence at trial showed that Loop was operating on $1000 paid-in-capital even though it was engaging in acquiring millions of dollars of HRMI stock on margin with third-party institutions such as Wachovia.

### 2.    Failure to Issue Stock

Wachovia also proved that Loop failed to issue stock for valuable consideration. Loop issued stock to its shareholders at the time of its inception and its share certificates confirm that

25,000 shares of the company were issued, with a par value of $0.04 per share (i.e., $1,000). PTX 1. However, Wachovia argued at trial that Loop's shares were not given to the Individual Defendants in exchange for proper consideration. Once again, the Individual Defendants pointed to the alleged Rumpelstiltskin "spin off" records as proof that consideration was given to Loop in exchange for the Individual Defendants' shares. As previously discussed, Loop was responsible for maintaining those records and the Defendants failed to produce them. Thus, Wachovia is entitled to an adverse inference in its favor on this issue. *See, Berlinger's,* 372 N.E.2d at 1048; *see also, McCracken,* 500 N.E.2d at 492. On this basis, the Court infers that Loop's share certificates were worth nothing more than the value of the paper on which they were printed.

### 3. Failure to Observe Corporate Formalities

The evidence overwhelmingly established that Loop failed to observe corporate formalities. In fact, formality was the exception and not the rule for the Individual Defendants in Greenblatt's web of companies. Loop's directors, officers, and shareholders (Greenblatt, Jahelka, and Nichols) failed to adhere to Loop's By-Laws, failed to prepare and maintain corporate records, failed to file income taxes, and failed to observe formalities when they distributed money to the directors, officers, and shareholders and in their dealings with other Greenblatt-controlled entities.

#### i. *Failure to adhere to Loop's By-Laws*

The Court finds that the Individual Defendants failed to adhere to Loop's By-laws. Article III of Loop's By-Laws established the corporate governance standards for directors. PTX. 2, pg. 5. According to Section 2 of Article III, Loop was required to have at least one director, but not allowed to have any more than two directors:

> Section 2. Number, Tenure and Qualifications. The number of directors of the corporation shall be not less than one (1) and not greater than two (2). Each director

31

shall hold office until the next annual meeting of shareholders or until his/her successor shall have been elected and qualified. Directors need not be residents of Illinois or shareholders of the corporation.

*Id.*

Loop had three directors—Greenblatt, Nichols and Jahelka. Stip. ¶ 19; Tr. Vol. 2B, pg. 208. When confronted by Wachovia's counsel on the issue, Jahelka, Loop's President, testified that he could not recall whether the officers or directors of Loop ever amended that provision. *Id.* Secretary of State filings contradict the Individual Defendants' testimony at trial and at their depositions on this issue because Loop's application filed with the Illinois Secretary of State identifies Kevin Werner and Leigh Rabman as directors in addition to the Individual Defendants. PTX 4, Pgs. 3, 5; Neuhauser Resp. 56.1(b) ¶ 2. Thus, according to Loop's Illinois application, Loop had five directors—three more than the By-Laws allowed. Jahelka never saw any resignations by any of the directors and testified that if such resignations did exist he would have expected them to be in Loop's "corporate minute book."[15] Tr. Vol. 2-B, Pg. 206-210. Accordingly, Wachovia proved that the Individual Defendants were operating Loop in contravention of the company's own By-Laws regardless of whether they had three or five directors.

Additionally, Loop's By-Laws established that the directors "shall hold office until the next annual meeting of shareholders" (PTX 2, Art. III, § 2, Pg. 5) and that an annual meeting of the shareholders shall be held on the second Wednesday in March of each year at 10:00 a.m. PTX 2, Art. II, § 1. However, Jahelka testified that no meeting between the shareholders was ever determined to be the "annual meeting." Tr. Vol. 2B, pg. 206- 210; Tr. Vol. 3A, pg. 76.

---

[15] The Court's discussion regarding Loop's failed to produce a "corporate minute book" is discussed below.

Accordingly, Wachovia proved that the Individual Defendants were operating Loop in contravention of the company's own By-Laws by failing to hold an annual meeting of the shareholders.

Loop's By-Laws also state that no loan should be contracted on behalf of the corporation and that no evidence of indebtedness shall be issued unless authorized by a resolution of the Board of Directors. Jahelka did not recall ever seeing a written resolution and Greenblatt admitted he had no reason to dispute that Loop's directors decision to borrow the $9.9 million was not documented in any formal board resolution. PTX 2, Art. V, § 2; Tr. Vol. 3A, pg. 5; Tr. Vol. 5A, pgs. 18-19. Defendants' failure to produce a formal resolution documenting the Banco loan allows this Court to infer an unfavorable evidentiary presumption. *See, e.g., Berlinger's*, 372 N.E.2d at 1038; *see also McCracken*, 500 N.E.2d at 492; (when there is a failure to produce a legitimate explanation as to the unavailability of business records, it can reasonably be inferred that those documents would have revealed the corporation's poor financial standing). It seems that the only time a formal resolution occurred was when Loop entered into transactions with entities that were not controlled, owned, or managed by Greenblatt, Jahelka, or Nichols. *See* DTX 11, 100 (the only resolutions produced at trial).

Though Defendants argue that Loop's By-Laws did not require that *informal* actions taken by agreement of the shareholders be documented in minutes, Loop's By-Laws required consent in writing should the shareholders wish to undertake informal action without a meeting and there was no evidence that Loop's shareholders obtained such consent in writing. PTX 2, Art. II, § 14, pg. 4. When formal meetings were required by the By-Laws, such as the annual meeting, Wachovia introduced evidence that no such meetings ever took place. Moreover, the Court finds that the transactions at issue, such as Loop's loan from Banco, Loop's payments to the Individual

33

Defendants, and Loop's post-debt transactions were not "informal" actions that would not require records of votes, minutes, or resolutions. Therefore, the Court finds that Loop failed to observe corporate formalities by adhering to its own By-Laws.

Finally, Loop failed to prepare and maintain corporate records documenting compensation and/or distributions to shareholders. Tr. Vol. 3A, pg. 62.

### ii. *Failure to Prepare and Maintain Corporate Records*

<u>Loop's Corporate Minute Book and Loop's Meeting Minutes</u>

Loop's By-Laws specifically reference keeping minutes of the shareholders' and Board of Directors' meetings "in one or more books provided for that purpose." PTX 2, Art. IV, § 9, pg. 8. At trial, testimony regarding the existence or whereabouts of Loop's corporate "minute book" was a game of implausible deniability and finger-pointing. In short, though it was undisputed that Greenblatt was responsible for maintaining Loop's corporate records as its Secretary, no corporate minute book or notes of meetings were produced at trial and the Individual Defendants' testimony was either that key documents were lost, were given to corporate counsel, or were never prepared in the first instance.

Nichols' testimony regarding the existence of notes from Loop's shareholders' meetings was impeached. When asked at trial whether it was "fair to state that you don't recall any notes taken in any officer or director meetings..." Nichols said, "No." Yet, at Nichols' deposition, he testified that he didn't recall notes being taken at the officer's and director's meetings. Tr. Vol. 4B, pg. 134. Subsequently, Nichols testified that a corporate red book, a red binder that purportedly contained Loop's corporate records and "some meeting minutes," existed at one time. Tr Vol. 4B, pg. 137. Nichols hasn't seen the red book since 1998 or 1999 and believes that it was lost when the law firm

34

that incorporated Loop, Gulcher & Gulcher, shipped boxes of documents from its offices to a location that Nichols did not identify during testimony.  *Id.*  According to Nichols, any subsequent corporate records would have been kept by in-house counsel, Elizabeth Sharp ("Sharp").  *Id.*  Of course, that testimony was also impeached by Nichol's deposition testimony at which time he stated, that he did not know where minutes of Loop's meetings where kept if they existed.  Tr. Vol. 4B, pg. 136-137.

Jahelka also pointed the finger at Sharp[16] stating that she maintained Loop's minute book, which incidentally, he "hope[s]" contains the resignations of Loop's mystery directors, Werner and Rabman and the resolutions of the Board of Directors for the Banco loans.  Tr. Vol. 2B, pg. 208-10, Tr. Vol. 3A, p. 6.  As for Greenblatt, he testified that Freeborn & Peters kept the Rumpelstiltskin "spin off" documents but his testimony was impeached by his deposition testimony; namely, that he did not know where Loop's records were kept.  Tr. Vol. 4B, pgs. 172-76. May testified that he never saw Loop's corporate "minute book" which purportedly contained Loop's corporate records, corporate records that purportedly included vital documents regarding Loop's initial capitalization, formation, distributions, and resolutions involving millions of dollar of loans and property transfers. Tr. Vol.1B, p. 142.  At the end of the day, it was undisputed that Greenblatt,  as Loop's Secretary, was responsible for maintaining Loop's corporate records—not his lawyers.  *Id.*

Since two out of the three Individual Defendants attest that Loop's in-house counsel, Sharp, maintained Loop's corporate records, it is appropriate to address her testimony on the matter. Unfortunately, however, Sharp was less than helpful.  Sharp's testimony regarding the existence and

---

[16]  The Individual Defendants have blamed Loop's counsel for Loop's failure to prepare or maintain corporate records.  However, Greenblatt was forced to concede  that as Loop's Secretary it was his responsibility—and not his lawyers'—to maintain Loop's corporate records.  *Id.*

whereabouts of Loop's minute book is condensed below and is contained in trial transcript volume 2A, pages 100 through 140. During her trial testimony, Sharp testified that a certain Loop resolution was contained within Loop's "minute book." Much to her observable annoyance, Wachovia's counsel's next question was "where is that minute book?" Sharp initially testified that the minute book, along with Loop's annual reports, was in a filing cabinet in her office. Wachovia's counsel expressed surprise at Sharp's answer considering Wachovia had been "asking for the minute book for the last two or three or four years and there's been testimony in depositions that nobody knows where it is and that they're still looking for it." Defendants' counsel objected stating, "I believe that mischaracterizes the evidence. I think she said the annual reports are what she is referring to and those have all been produced, as I understand."[17] Then, Sharp testified, defensively, that Loop and Loop Properties assembled "all the corporate records that were available" and produced them in this case. Contradicting her own testimony from just a few minutes earlier, Sharp testified that a corporate "minute book" or "red binder" was not produced, but a "series of papers that were loose in a file" were produced which comprised "everything that there is for corporate records for Loop."

A few minutes later, Sharp revealed that when she was first hired by Loop, she was not responsible for maintaining Loop's records, but rather, performed litigation services only. During that time period, Sharp believes that Loop's records were not kept on site. Sometime after she was hired, a law firm, most likely Freeborn & Peters or Chuhak and Tecson, sent Loop's corporate records to *Loop's offices*— but not to her directly. Sharp surmised that Loop's officers would have been charged at that point in time with maintaining Loop's records created prior to 1999 which

---

[17] Incidentally, the record belies counsel's speaking objection. Apparently, Sharp was paying attention because she quickly and defensively included that Loop had produced all of its corporate documents in discovery. Sharp's testimony conflicts with that of her clients who previously testified that they didn't know why certain Loop documents to which they were referring weren't produced.

contradicts Nichol's testimony that Loop's prior counsel lost its records during shipping. Sharp stated that she didn't begin doing Loop's corporate governance work until 1999, 2000, or 2001. When Sharp assumed the task, however, she did not assemble Loop's pre-1999/2000 corporate records that may or may not have existed prior to the time that she began doing Loop's transactional work. Though Sharp ceased working for Loop in 2003 and began working for Loop Properties, she oversaw Loop's production of documents in this case.

To say that the Individual Defendants and Sharp were evasive when questioned about Loop's corporate minute book and Loop's record keeping is an understatement. As a result, questioning on the matter was a fruitless exercise and tested the Court's patience. In summary, May has never seen a corporate minute book; Nichols and Jahelka testified that Sharp has it; Sharp first testified that one existed but later testified that it was really a series of documents-all of which were produced; Sharp's testimony conflicted with Nichol's, and Greenblatt—who by all accounts was in charge of Loop's records—pleaded ignorance and referred the matter to Freeborn & Peters. In the end, no meeting minutes documenting vital events in Loop's corporate history were ever produced and the evidence showed that it is more likely than not that minutes were never kept in the first place. Accordingly, this Court finds Loop's failure to maintain records of meeting minutes is proof that it failed to adhere to the corporate form. Many of these "missing" documents concerned transfers of property in and out of Loop during critical times, and thus, this Court further finds that Loop's failure to document important events in its corporate history was part of its scheme to defraud creditors, such as Wachovia.

Loop's Accounting Records

May, as Loop's accountant, was responsible for preparing Loop's accounting records, but

did not prepare or maintain profit-and-loss statements, account payable records, account receivable records, or operating budgets on Loop's behalf. Tr. Vol. 1A, pg. 116. May did not prepare or maintain any sort of capital account reconciliation reports or any other records concerning the capital accounts of its owners. Tr. Vol. 1A, pg. 116. As a result, whenever a shareholder sought to take a distribution from Loop, there was no way for May to know whether that shareholder had, in fact, contributed sufficient capital into the company to fund the distribution.

<u>Loop failed to maintain records of fee sharing agreements and bills and invoices reflecting Sharp's and May's legal and accounting services</u>

Loop also failed to maintain corporate records documenting its employees' legal and accounting services provided to other Greenblatt entities. May and Sharp served as Loop's "accounting and legal team" that would provide accounting and legal services to other entities that were owned, directly or indirectly, by Greenblatt such as RTC, EZ Links, Loop Telecom, Green Gas Delaware Business Trust, Rumpelstiltskin, Chicago Videopath. Tr. Vol. 1-A, Pgs. 247-302; Stip. 29. May testified that Loop used a rate of $150 per hour to calculate how much to charge the Greenblatt-related entities for his accounting services, but May also admitted that he never kept track of his time. *Id*. May did not prepare bills or invoices to account for Loop's legal and accounting services nor did he send invoices to the other Greenblatt Entities for reimbursement purposes. *Id*. May prepared invoices to account for his work for RTC which was in bankruptcy and had a trustee appointed. *Id*. However, RTC did not record May and Sharp's time. *Id*. Neither RTC nor Loop performed an audit to determine if the amount of the bills accurately reflected the actual amount of time that Sharp and May spent providing legal and accounting services to RTC while they were working for Loop. *Id*. May and Sharp's bills prepared for Loop and sent to RTC comprised a single line-item for "legal and accounting services." *Id*. Accordingly, there was no way to break

down the 10,900 hours[18] that May and Sharp allegedly spent working for RTC while they were

employed by Loop because the bills did not itemize their efforts. Ultimately, RTC was paid an

astonishing amount of more than $1,635,000 for May and Sharp's "legal and accounting services."

*Id.*; PTX 31.[19]

Similarly, Jahelka testified that no records were kept to reflect May's time spent doing

Loop's work while May was employed by Loop Properties and Scattered. Tr. Vol. 2-B, Pg. 176.

Likewise, while Loop employed Sharp, Sharp performed legal services for other Greenblatt entities

such as Old Colony Properties, LP, 200 West Partners, LP, 401 Partners, LP, South Loop Properties,

Telegraph Properties, Randolph Properties, LP, RTC, EZ Links Golf, LLC, and Chicago VideoPath.

Tr. Vol. 2A, pg. 180-81. There were no engagement letters between Sharp's current employee and

the other Greenblatt entities for whom she did work and Sharp was never paid directly by those

entities. *Id.* Although Sharp thought that there existed an oral fee sharing agreement between the

various entities for whom she did work, like most business records in this case, none was presented

at trial, and she could not say whether one actually existed, nor could she recall asking the Individual

Defendants whether a fee-sharing agreement existed. *Id.* at 185-86. Sharp did not know whether

all the entities for whom she did work reimbursed Loop; nor did she see bills that were issued to the

entities. *Id.* Nevertheless, Sharp failed to keep track of her time other than when she worked on

---

[18] The exhorbitant number of billable hours is highly questionalbe considering that a 40-hour work week yields about 2000 work hours in a year. Most impressive is the fact that their 10,900 of work occurred over only a three-year period while they say they were also busy helping Greenblatt with other related entities. PTX 31; Exhibit E, pgs. 69-70; to PTX 31; Tr. Vol. 1A, pp. 94-95. But like most individuals involved in Greenblatt's entities, they were paid in spite of lack of documentation.

[19] Incidentally, although May, acting as an accountant with a fiduciary duty, was aware that Loop had an unpaid margin debt to Wachovia as of May 2001, he did not know why Loop did not use the $1.6 million that it received from RTC to pay down its debt to Wachovia. Tr. Vol. 1A, pg. 277.

forcible entry and detainer cases. Tr. Vol. 2A, pg. 186. Thus, it seems that the only time Loop felt the need to keep track of its employee's hours was when it was required to do so by law.

Sharp testified that in March 2001, her representation of Telegraph (in a lawsuit brought by the City of Chicago) was a full-time job. *Id.* at 183-85. However, Jahelka could not recall the existence of an oral fee-sharing agreement with Telegraph in relation to Sharp's work nor could he recall whether Telegraph ever reimbursed Loop for Sharp's time. Tr. Vol. 3A, pgs. 11-13. With respect to Randolph Properties and 200 West Partners, Jahelka was not aware of any oral fee sharing agreement or reimbursement in relation to Sharp's work nor could he recall whether Loop sought reimbursement. Tr. Vol. 3A, pgs. 13-15. Jahelka testified that neither Sharp nor May kept track of their time. On this point, Nichols testified that although he believed an oral fee agreement existed between Loop and various entities, he had delegated the billing and collection responsibilities to May and did not recall actually seeing any bills sent to the other entities for reimbursement. May, as noted above, testified that he was unaware of any such fee-sharing agreement and confirmed that he never saw any written document regarding fee-sharing between the Greenblatt-related entities.

Based on the above evidence, this Court finds that Loop failed to maintain any documentation of its employees' time, bills, invoices, or fee-sharing agreements for the purpose of seeking reimbursement for its employees' work for other Greenblatt entities. Further, this Court finds that a corporation that observed corporate formalities would have required its employees to keep track of their time and would have sought reimbursement for its employees' work performed for the benefit of entities other than Loop. This evidence supports Wachovia's claim that Loop did not have a separate existence from other entities controlled by the Individual Defendants and that Loop's employees failed to observe corporate formalities.

40

<u>Other missing records</u>

Additionally, the Court finds that Loop failed to maintain records concerning the following transactions and that, as a result, Loop failed to adhere to the corporate form. First, Loop failed to produce reliable documentary evidence associated with the Banco-Loop loan as previously discussed. See Tr. Vo. 5A, pg. 18-19.

Second, Jahelka testified that after Loop incurred its debt to Wachovia, it was "obligated" to invest $3 million in EZ Links, a related company, pursuant to a "commitment to fund." Tr. Vol. 2B, pg. 240. Yet, Jahelka was not aware of any document that required Loop to make an investment in EZ Links at that time. Jahelka did not recall ever seeing a written commitment and stated that he didn't believe that one existed in Loop's records. Tr. Vol. 2B, pg. 241. Similarly, Nichols testified that Loop does not have in its records a written commitment to fund that required it to invest in EZ Links after May of 2001. Tr. Vol. 4B, pg. 156.

Third, as previously discussed, Loop failed to maintain records that, presumably, would have established Loop's initial capitalization. Loop also failed to maintain employment agreements with its employees and failed to issue W-2 or 1099 forms documenting Nichol's and Jahelka's compensation in 2001 and 2002 (as discussed later on in this Opinion) regarding Loop's taxes and payments to insiders. On both issues, the Court finds that Loop's failure to maintain vital records such as those documenting its formation and employee compensation is evidence of its failure to adhere to corporate formalities.

Fourth, Loop did not maintain capital accounts records for the shareholders. Tr. Vol. 4A, p. 79. Rather, May relied on Greenblatt, Jahelka and Nichols' assertions that there was sufficient

equity in the company to merit distributions.[20] And, May testified that there are no records reflecting discussions among the shareholders regarding the distribution process, agreements that were entered into among the shareholders that provide for one shareholder receiving a distribution over the others, and discussions with Loop's general counsel, Sharp, as to whether that process was proper. Tr. Vol. 4A, pg. 146.

Finally, Jahelka testified that there are no other documents that reflect the Board of Director's decision to begin compensating themselves after Wachovia's debt became due, nor are there documents that reflect the sudden change in payments from "return of equity" to compensation after May 2001. Tr. Vol. 2B, pg. 23. Moreover, when Loop defaulted on its $9.9 million loan, Banco did not send it a written notice of default because Greenblatt, as Greenblatt explained, owned 100% of Banco and 50% of Loop. Tr. Vol. 5A, p. 96-97.

In summary, the evidence showed that Loop failed to observe corporate formalities because

---

[20]

| | |
|---|---|
| Q: | Okay. Now, you testified earlier that you never prepared any sort of capital account reconciliation and reports. And, so, I guess I'm wondering how it is that Loop Corp. knew that, for example, Andrew Jahelka had at least $242,000 in his capital account as of 2000, so he could get paid that amount from Loop Corp.? |
| A: | It's generally up to the shareholders to keep track of their own basis. |
| Q: | Okay. So that's not something you would do as the company's accountant? |
| A: | No. |
| Q: | Okay. So when Andrew Jahelka says, you know, I want to pay myself $242,000 and take a distribution from Loop Corp. in 2000 in this amount, it's not up to you as Loop Corp.'s accountant to say, "Well wait a minute. Let's take a look here to figure out how much money Mr. Jahelka has paid into the company to figure out if there's enough to pay that $242,000 to Mr. Jahelka," is that right? |
| A: | The basis is, you know, kept and calculated by the shareholders. |
| Q: | Not by you, the accountant? |
| A: | No. |
| Q: | Okay. And the same would hold true obviously for the [equity] payments to Mr. Nichols and Mr. Greenblatt, right? |
| A: | Correct. |

Tr. Vol 1B, p. 166- 167.

42

it failed to prepare and maintain vital corporate records.  Had Loop adhered to the corporate form, its officers would have kept meeting minutes documenting important corporate decisions, and at minimum, of the annual meeting (that never occurred according to Jahelka).  Had Loop been more than a shell company, it would have kept a corporate minute book and would have followed its own By-Laws.  Had Loop maintained separate identities between itself, its shareholders, and other related entities, it would have maintained vital corporate records that would document the important events in its corporate history such as Loop's initial capitalization, formation, distributions, employee transfers, resignations, and votes, notes, or resolutions documenting important decisions involving millions of dollar of loans and property transfers.  PTX 2, Art. IV, § 9, pg. 8.  In other words, Loop failed to adhere to the corporate form, was nothing more than a shell company, and failed to maintain a corporate identify separate and apart from its shareholders and related entities.

Additionally, the Court finds that the Individual Defendants' testimony on Loop's record-keeping was not credible and that Loop's corporate records were within its control but not produced. The Court finds that Wachovia proved that meeting minutes were not maintained and likely never existed, that Loop failed to maintain crucial corporate records; and that Greenblatt, Loop's secretary, failed to adhere to Loop's By-Laws to maintain corporate records; and ultimately, that Loop failed to adhere to the corporate formalities as a result.

### iii.    Loop's Taxes

May testified that he prepared tax returns for Loop for the years 2000, 2001, and 2002 but filed the returns on April 2003—long after the deadlines had passed.  Tr. Vol. 1A, pgs. 140, 146, 152, 156; PTX 13-15.  May could not explain why he prepared Loop's tax returns one to three years after they were due nor could he explain why he prepared Loop's returns when he was employed

43

by Loop Properties or why Loop did not compensate Loop Properties' for his services. *Id.*, pgs. 149-150. According to May, there was "no rhyme or reason" as to what address he used as Loop's tax preparer. *Id.*, pg. 150. On some of Loop's tax returns, May used his home address; on other returns, he used Loop Properties' address.

In order to prepare Loop's tax returns for 2000 - 2002, May prepared year-end trial balances, which in turn, were prepared based upon Loop's bank records. *Id.*, pg. 142. May admitted that the bank records only gave him an idea of how much money was going into and out of the company and not the purpose behind the payments. *Id.*, pg. 145. If May wanted to learn why a given payment was made, he asked Jahelka and relied on whatever characterization he provided for the payment. *Id.* In other words, May did nothing to independently verify or confirm Jahelka's characterization of Loop's transactions. *Id.*

This Court finds that Loop's failure to timely file taxes from 2000 to 2002 is evidence of its failure to adhere to the corporate form. This Court recognizes that—standing along— Loop's failure to timely file taxes or its failure to file them does not justify piercing the corporate veil. However, this evidence, coupled with all of the other evidence discussed herein, is one more reason why Loop's veil should be pierced.

        *iv.*      *Conclusion regarding Loop's failure to observe corporate formalities*

In summary, the Court recognizes that "merely missing one annual meeting is not a sufficient showing of failure to observe corporate formalities"; but such is not the case here. *See People v. V & M Indus., Inc*., 700 N.E.2d 746, 751-52 (Ill. App. Ct. 1998). Loop failed to adhere to its By-Laws, failed to hold annual meetings, failed to maintain vital corporate records, failed to take meeting minutes, failed to pay its taxes in a timely fashion or failed to pay them at all. Loop's

44

employees worked for other entities without reimbursement and payments between related entities and from Loop to its shareholders were neither documented nor adequately calculated. Accordingly, Loop failed to observe corporate formalities. *See id;* (failure to hold regular meetings, take minutes, maintain corporate records showed failure to observe corporate formalities); *see also Ted Harrison Oil Co., Inc. v. Dokka*, 617 N.E.2d 898, 902 (Ill. App. Ct. 1993) (finding a "complete lack of corporate formalities" where "[n]o records were kept and the company did not hold formal shareholder or director meetings.")[21]

4.   Insolvency of the Debtor Corporation

On the issue of Loop's insolvency, Defendants, on the one hand, claim that Loop is a "dead company" and thus, unable to pay Wachovia's judgment; and on the other, Greenblatt, Jahelka and Nichols can't quite bring themselves to admit that Loop is insolvent because it shows that Loop's assets were looted after it incurred its margin debt.[22]   Loop's owners, officers, and shareholders claimed to be unable to attest to its financial status or solvency.   For example, Jahelka stated that he did not know if Loop had sufficient assets to satisfy Wachovia's judgment and offered that

---

[21]   The Court is not suggesting that informal/day to day decisions had to be formally documented under Loop's By-Laws or according to South Dakota law. However, the Court finds that Loop failed to document significant corporate decisions regarding loans and transfers of property and that Loop's By-Laws contemplated documenting corporate resolutions and at least some of the directors' and shareholders' meetings. The Court further holds that the Individual Defendants' lack of corporate formality is distinguishable from that of the directors in *Kansas City & Electric v. Ross* because the evidence showed that this was not a "mere failure upon occasion to follow all the forms prescribed by law for the conduct of corporate activities." 521 N.W.2d 107, 115 (S.D. 1994); *quoting Larson v. Western Underwriters, Inc.*, 87 N.W. 2d 883, 887 (S.D. 1958).   The Court finds that the degree to which Loop failed to keep corporate records justifies veil piercing. *See Kansas City*, 521 N.W. 2d at 113 (court must look at the degree to which each factor is established.)

[22]   For example, Loop argued that it is a dead company, but also argued that it was adequately capitalized by Loop's limited partnership assets.   In the same breath, Loop argues that its transfer of the limited partnerships post-HRMI collapse was not a "transfer" under the UFTA because the limited partnerships were fully encumbered-- and thus-- not "assets."

Wachovia could have them appraised or could determine their value by liquidating them. Greenblatt testified that he is unable to calculate the value of Loop's assets or even determine if the value of Loop's assets exceeded its liabilities. Greenblatt's best estimate of the value of Loop's assets was "somewhere between zero and 20 million." Tr. Vol. 5A, p. 107. Yet, Defendants were also adamant that Loop is unable to pay Wachovia's $2.4 million judgment. The evidence at trial supports a finding that Loop is insolvent.[23] For example, (a) Sharp defended Loop and Loop Properties when she was employed by (and receiving her salary from) Scattered; (b) Loop has relied on other Greenblatt entities to contribute to its legal fees in this matter; (c) and Chiplease is currently or has previously paid for Loop's legal fees. Most significantly, Loop's accountant testified that Loop depended upon Banco for financing and to continue its operations and investments and couldn't operate without those investments.

As noted above, there was no reliable evidence that Loop was adequately capitalized at is inception. In fact, the evidence showed that one of Loop's first orders of business was to borrow nearly $10 million from Greenblatt/Banco. Even after Loop went into default on its $9.9 million loan, Banco continued to lend more money to Loop because Loop had no other means for obtaining the funds necessary to run its business. After incurring the debt, the Individual Defendants chose to pay down the loan on the Banco line, in essence, to pay back Greenblatt instead of paying off Loop's third-party creditors.

Certainly, Defendants were well aware that Loop's solvency would be at issue at trial considering the Court's ruling on the Motions for Summary Judgment. Yet, Defendants produced

---

[23] As discussed below, Loop was insolvent as a result of the Individual Defendants' fraudulent transfers of assets, decisions to pay themselves before creditors, and carefully crafted web of companies designed to shield them from creditors.

no records or other evidence regarding Loop's present financial status or its solvency. That fact, coupled with Wachovia's proffered evidence of insolvency at trial, leads the Court to conclude that Loop is an insolvent corporation. *See Berlinger's*, 372 N.E.2d at 1048; *see also McCracken*, 500 N.E.2d at 492 (when there is a failure to produce a legitimate explanation as to the unavailability of business records, it can reasonably be inferred that those documents would have revealed the corporations' poor financial standing).

### 5. Absence of Corporate Records

Based on the Court's findings, as set forth above, associated with Loop's failure to observe corporate formalities with regard to record keeping, the Court finds that there is a conspicuous absence of vital corporate records that justifies piercing Loop's corporate veil.

### 6. Jahelka and Nichols were non-functioning officers

Greenblatt's control over Loop's other officers and employees rendered them non-functioning and Loop was a mere facade for the operation of the Individual Defendants, especially Greenblatt. First, Wachovia proved that Loop's other directors and officers, Jahelka and Nichols, were non-functioning as a result of Banco, a.k.a Greenblatt's, control over Loop's decisions after the Banco-Loop loan. In addition to Greenblatt's control over Loop's payments to its shareholders, Banco, and third-party creditors, much of the day-to-day investment decisions and financial activities of Loop— including opening brokerage accounts and calling in trades for HRMI stock—were effectively controlled by Greenblatt.

Additionally, other employees, such as May and Neuhauser, worked directly for Greenblatt or at his behest and performed tasks unrelated to their employment at Loop. May, for example, performed accounting services for several Greenblatt-related entities during the course of his

47

employment at Loop, Loop Properties, and Scattered, but May also performed uncompensated side-duties for Greenblatt personally.  For example, May prepared Greenblatt's personal tax returns in exchange for White Sox World Series tickets and a pool table.  Tr. Vol. 1A, pg. 107.[24]  As set forth in more detail below, Greenblatt directed May to hold himself out as Loop and Banco's Vice President to entities such as the IRS when it suited his purposes even though May never held those positions.  Moreover, as discussed throughout this Opinion, May and Sharp changed employers and prepared filings at Greenblatt's direction without independently verifying their accuracy.

Neuhauser worked as Greenblatt's personal clerk and for Greenblatt-related entities such as South Beach and RTC.  Tr. Vol. 2A, pgs. 114-115, 119.  One of Neuhauser's jobs was to assist Greenblatt with an investment strategy involving HRMI.  *Id.*, pg. 120.   To that tend, Neuhauser would purchase HRMI stock on the open market at Greenblatt's direction through a number of brokerage accounts.  *Id.*, pg. 121.  Two such brokerage accounts were opened at Wachovia—the Loop and NOLA accounts.  *Id.*, pgs. 122-123, 129; PTX 43; Tr. Vol. 2A, pg. 132.

Greenblatt also asked Neuhauser to open an account on behalf of NOLA at RJ Steichen & Co., and in doing so Neuhauser held himself out as NOLA's "Secretary" (much like May held himself out as Loop's Vice President and Banco's Assistant Vice President) even though Neuhauser admitted that he did not hold that position.  *Id.*, pg. 133; PTX 75. Neuhauser also opened accounts at First Union Securities and Northern Trust Securities on behalf of other Greenblatt-related entities such as Chiplease and Teletech at Greenblatt's direction.  *Id.*, pgs. 137, 139-140; PTX 58; PTX 70. On May 14, 2001, Neuhauser and Greenblatt jointly signed a letter on behalf of Loop directing First

---

[24] The Courts finds that this evidence also supports a finding the Loop failed to observe corporate formalities and failed to maintain arm's length relationships among related entities.

Union Securities to wire cash and accrued interest from Neuhauser and Greenblatt's accounts— held in the name of Banco, Chiplease, Loop, South Beach and Repurchase. PTX 61. At trial, Neuhauser admitted signing this letter and testified that did not know whether Loop's address and contact information as set forth on that letterhead—i.e., Suite 711 of the Wells Building—was correct. Tr. Vol. 2-A, Pgs. 140-141.

Four days earlier, again at Greenblatt's direction, Neuhauser signed a series of individual letters on behalf of South Beach, Repurchase Corp., Loop, Chiplease and Banco. *Id.*, Pgs. 149-155, 165; PTX 62-66. Neuhauser did not recall writing any of those letters, did not know why he would have signed them, and did not know if the addresses and telephone numbers for the various entities were correct. *Id.* Based on the aforementioned evidence and in part on Neuhauser's demeanor at trial,[25] the Court finds that Neuhauser was nothing other than Greenblatt's pawn in a larger scheme to shield Loop from its creditors in the event that its investments went sour.

Based on the foregoing, the Court concludes that Loop was, in reality, little more than a façade for the operations of Greenblatt, its dominant shareholder. Defendants argue that Greenblatt should not be considered to be a "dominant" shareholder because he owned only 50% of Loop and his ownership interests were numerically counterbalanced by Jahelka's 30% and Nichols' 20% interests. But the percentage of ownership interest is just one factor in determining whether a shareholder is "dominant." In this case, Greenblatt's unique position as the 100% owner of Banco —Loop's lender and its sole source of financing—gave him sufficient power and influence over Loop's operations to render him the "dominant shareholder." The Defendants even admitted that,

---

[25] Neuhauser presented as a young, naive, frightened, and impressionable witness. Oftentimes, Neuhauser looked in Greenblatt's direction for guidance before answering counsel's questions at trial. Claims against Neuhauser were dismissed during the summary judgment phase of this litigation.

49

after Loop defaulted on its loan, Banco (i.e., Greenblatt) had "substantial oversight" over Loop's operations and activities. Even Greenblatt was forced to concede that his position as an owner of Loop effected the decisions he made in his capacity as Loop's lender, but he was loathe to admit that the converse was true—i.e., that his position as Loop's lender effected the decisions he made as an owner of Loop. Moreover, both Nichols (Loop's Treasurer), and May (Loop's accountant) testified that after HRMI imploded and Loop went into default under its loan, Banco (i.e., Greenblatt) effectively ran the financial decisions of Loop.

Moreover, the fact that Greenblatt forced May to falsely hold himself out to the public as Loop's "Vice President" and Banco's "Assistant Vice President" demonstrates the extent of Greenblatt's influence over Loop's employees. Similarly, David Neuhauser testified at length about how he opened and managed brokerage accounts for Loop, South Beach, RTC, Chiplease, Banco, Teletech, and NOLA, all at the direction and request of Greenblatt—not Jahelka, and not Nichols.

Also noteworthy is Jahelka's inability to answer 216 questions posed by Wachovia's counsel. Despite serving as Loop's President and Loop's 30(b)(6) representative, Jahelka testified: (a) that he "did not know" 100 times, (b) that he could not recall or remember 102 times, and (c) answered "not to my knowledge" 14 times. The person most knowledgeable about Loop's financial affairs is also the person who offered the most evasive and least helpful answers: Greenblatt. Greenblatt served as puppet master while the other officers and directors sat blithely by and followed his orders to Loop's creditor's detriment.[26] Accordingly, the evidence showed that Jahelka and Nichols were non-functioning officers and directors and that Loop was a mere facade for Greenblatt's operations.

---

[26] To be clear, the Court finds that Greenblatt controlled Loop's financial decisions to the detriment of its creditors and to the benefit of Greenblatt's pocket. That said, Jahelka and Nichols were not naive to Greenblatt's scheme and knowingly assisted him in his efforts to improperly shield Loop from its creditors.

50

All of the players in Greenblatt's scheme comfortably allowed him to control his web of entities, took directions from him, and ffollowed his will because they financially benefitted from their acquiescence, including Tahelka, Nichols, May, Jordan and Sharp.

       7.     <u>Evidence regarding the diversion of Loop's assets to shareholders or</u>
               <u>entities to the detriment of creditors</u>

After the Loop margin debt became due,[27] Loop made nearly $1.2 million in payments to insiders or related entities; namely, Banco, Nichols, Jahelka, RTC, Scattered, EZ Links, Telegraph, and Loop Telecom.[28] PTX 26. Defendants argue that Loop's payments to Banco were repayments of the Banco line of credit as evidenced by Banco's "ledger" and PTX 26. PTX 26; PTX 27; Tr. Vol 1B, pgs. 223-28. The Court has already concluded that evidence that Banco gave Loop "dollar-for-dollar" credit was unreliable and inadmissable. Even if this Court were to ignore the lack of evidence supporting Banco's "dollar-for-dollar" credit theory, the evidence is undisputed that Loop chose to pay down $386,550 in debt to Banco rather than pay third-party creditors like Wachovia.

Although presented to the Court to demonstrate the normalcy of business operations at Loop, the payment of compensation was anything but normal at Loop. In 2001 and 2002, Loop failed to

---

[27] Consistent with its Memorandum and Opinion Order of November 20, 2007 and its rulings during the bench trial, the Court will only consider transfers out of Loop's coffers after its margin debt became due.

[28]

| | |
|---|---|
| 7/5/01 to 1/2/02 | Loop pays Banco $93,500 |
| 6/11/01 to 11/15/01 | Loop pays Nichols $65,000 |
| 6/12/01 to 9/25/01 | Loop pays Jahelka $67,500 |
| 7/23/01 | Loop pays RTC $20,000 |
| 6/21/01 | Loop pays Scattered $2,000 |
| 6/11/01 to 12/13/01 | Loop pays EZ Links $461,338.52 |
| 5/25/01 | Loop pays Telegraph $20,000 |
| 1/8/02 to 11/7/02 | Loop pays Banco 293,450 |
| 1/03/02 to 10/17/02 | Loop pays Nichols $48,000 |
| 1/18/02 to 10/17/02 | Loop pays Jahelka $30,000 |
| 2/15/02 to 10/15/02 | Loop pays EZ Links $57,000 |
| 5/16/02 to 11/09/02 | Loop pays Loop Telecom $15,775.  PTX 26. |

issue W-2 forms for Jahelka and Nichols even though it did so for May and Sharp during the same time period. *Id.*, pgs. 151, 153; 177-178; PTX 26, §§ P, Q; PTX 15, line 7. Similarly, Loop reported its compensation to May and Sharp on Loop's tax returns but failed to do so with respect to Nichols' and Jahelka's "compensation payments." *Id.*; PTX 13, PTX 14; Tr. Vol. 1B, pgs. 150-151. May explained that he did not report Nichols' and Jahelka's compensation on Loop's 2001 tax returns because the payments were made off-the-books. May could not explain why the payments were made outside of Loop's normal payroll process because it was a decision made by the shareholders (Jahelka, Nichols, and Greenblatt). *Id.*, pgs. 175-176. Like Loop, Loop Properties did not file tax returns or issue W-2 forms when Nichols and Jahelka began taking compensation from it. *Id.* In fact, Loop Properties didn't even file tax returns for 2003 or 2004. *Id.*, pgs. 185-187; PTX 27, Pgs. 2-3. As for the $210,500 in payments to Jahelka and Nichols, Defendants argue that the payments were made to compensate them "modest[ly]" for their work and that they were "underpaid." PTX 26-27; Tr. Vol. 2B, pgs. 213-15. These "modest" payments are proof yet again that Loop, i.e. Jahelka, Nichols, and Greenblatt, chose to pay themselves rather than Loop's creditors.

Loop also diverted its assets to other related entities such as Scattered ($2,000), EZ Links ($518,338.52), Telegraph ($20,000), and Loop Telecom ($15,775) rather than pay its creditors. Unbelievably, Greenblatt testified that Loop made these payments directly to these entities in order to avoid the one-week hold banks place on deposited funds. Tr. Vol. 5A, pgs. 49-50. As these payments make clear, Banco was perfectly content to pay Jahelka, Nichols and Greenblatt-related entities but morally opposed to paying Loop's third-party creditors. Defendants' failed to produce reliable and admissible evidence that Loop's assets were transferred to the above entities in exchange for "dollar-for-dollar" credit on the Banco line. There is no evidence to show that Banco

would ever foreclose on Loop's loan nor did Greenblatt allow Loop to use Banco's loan to do anything other than pay Greenblatt-related entities even though the Agreement allowed Loop to do so. In other words, Banco never behaved like a typical lender. Based on the foregoing, the Court finds that Loop diverted its assets to its shareholders and related entities after it incurred its debt to Wachovia.

        8.    <u>Loop's failure to maintain arm's length relationships among related entities</u>

             i.    *Shared office space, phantom suite numbers, and lack of leases*

Greenblatt operates his various companies out of a suite of interconnected offices located on the seventh floor of the Wells Building. Loop operates out of Suite 710 of the Wells Building, along with Loop Properties, Scattered, and Rumpelstiltskin. Stip. ¶ 23. The Individual Defendants' offices are located on the 7th floor of the Wells Building. Tr. Vol. 2B, pgs. 195-97. The entities for whom he worked do not have their own phone or fax numbers and do not separately pay utility bills. Tr. Vol. 2B, pg. 198. If an individual wanted to call Loop, he would need to call Nichols, Greenblatt, or Jahelka directly.

After 2003, Scattered paid the rent for Suite 710 under a lease signed by Jahelka. Stip. ¶ 24. Scattered's lease was with 200 West Partners, LLP which was a real estate partnership in which Loop held an ownership interest. Stip. ¶ 24; PTX 19, Pg. 6. The general partner of 200 West Partners, LLP is 200 West Properties, Inc. Stip. ¶ 24. The current owner of 200 West Properties, Inc. is Loop Properties. *Id.* Although Scattered was a party to the lease, Scattered paid no rent for Suite 710 from 1999 through 2003. Stip. ¶ 25. Loop never paid rent for its office space and was never a party to a lease. Stip. ¶ 21; Tr. Vol. 1A, pg. 104. Jahelka couldn't explain why Loop didn't pay a portion of the rent nor could he recall Scattered asking Loop for rental payments. Tr. Vol. 2B,

53

pg. 200-201.

Because the various companies comprising the enterprise all operated out of the same common space, the Individual Defendants were often inconsistent when they referred to Loop's suite number.  For example, Greenblatt signed a series of letters on May 10, 2001 on behalf of South Beach, Repurchase, Loop, and Chiplease.  PTX 62-65.  The letterhead for each of those letters is identical: 330 South Wells, Suite 711, Chicago, Illinois, USA  60606, Tel:  (312) 341-4042, Fax: (312) 341-9596.  On May 10, 2001, Greenblatt signed an identical letter for Banco and although the suite number was different (Suite 718) the telephone and fax numbers were identical.  PTX 66.  The Illinois Secretary of State form that Greenblatt signed on June 11, 1998 identified Loop's address as Suite 711 and its date of incorporation as September 12, 1997, but the IRS form that Greenblatt signed seven months later identified Loop's address as Suite 718 and its date of incorporation as October 1, 1997.  PTX 4, Pg. 3, PTX 5, Pg. 1.  Greenblatt could not explain that discrepancy and offered the following glib response at trial:

> Q:     Following up on that I take it then you don't know why this IRS form identifies Loop's address as Suite 718 and its date of incorporation as October 1st 1997, when it has been stipulated that the address of Loop Corp. is Suite 711, and it was incorporated on September 12, 1997?
>
> A:     I have no idea.  I don't think the IRS cares.

Tr. Vol. 4B, pg. 184.  Similarly, on January 12, 1998, May identified Loop's address as "Suite 718" on an IRS Form but admitted at trial that he had no idea if Suite 718 was Loop's correct address at the time that he submitted it.  PTX 6; Tr. Vol. 1A, pgs. 80-81.  May did not consider suite numbers to be very important because the numerous offices on the seventh floor of the Wells Building were really just shared office space.  *Id*.  May suggested that the fact that Loop, Loop Properties,

54

Scattered, Banco and other entities shared the same office space, furniture, telephone number, and fax number was not relevant because Loop was "just a holding company." May testified:

> Q:    Are you saying it doesn't matter because, from your perspective, all these        entities are essentially one big corporate enterprise?
>
> A:    No. It doesn't matter because of the holding companies – I'm not going out  into the general public representing that, you know, I'm Loop Corp. or        Scattered. It's just not the nature of that corporation just holding investments.
>
> Q:    Okay. So when Loop Corp. goes and opens a margin account at Wachovia,         Loop Corp. isn't holding itself out to the general public; is that it?
>
> A:    That's holding it out to Wachovia.
>
> Q:    Okay. And Wachovia's not part of the general public though; is that it?
>        [Objection omitted]
>
> A:    I guess Wachovia would be part of the general public.

Tr. Vol. 1B, pgs. 235-236.

Evidence that Loop shared office space, phone, and fax numbers with related entities is not persuasive standing alone due to the fact that it is logical for closely held corporations to share expenses. The fact that its directors and officers played fast and loose with the entities' employees' titles and when company forms were submitted to government agencies coupled with the lack of lease agreements and rental payments is more persuasive. Considering that evidence with the evidence of shared employees and related transactions, the Court concludes  that the Defendants failed to observe corporate formalities and failed to maintain arm's length relationships among entities.

> ii.    *Changing employers, titles, and health benefits*

55

May was employed as Loop's in-house accountant from 1999 through 2002. Tr. Vol. 1A, pgs. 74-75. In 2002, May and Sharp were employed by Loop and then Loop Properties, Tr. Vol. 1A, pgs. 95-97; Stip. ¶¶ 27-28. From 2003 until 2005, May and Sharp were employed as Loop Properties' in-house accountant and in-house counsel, respectively. In 2005, May and Sharp began working for Scattered. *Id*.; Stip. ¶ 27. When Jahelka advised May and Sharp about their change in employment, Sharp did not find it strange because it was a "business decision' and that "[a]s an employee," she was simply "looking for [her] paycheck." Tr. Vol. 1A, pg. 99.

May's and Sharp's unexplainable changes in employers were changes in name only. For example, May and Sharp's offices, salaries, telephones, telephone numbers, fax machines, fax numbers, and e-mail addresses remained the same even though their employers switched from Loop to Loop Properties to Scattered. Tr. Vol. 1A, pg. 100; Tr. Vol. 1B, Page 88-93. In fact, May and Sharp continued to perform the same accounting and legal services for the exact same Greenblatt-related entities for which they were working when they were employed at Loop. *Id.*, pg. 101; Stip. ¶¶ 27-28. Sharp's legal work for the non-Loop Greenblatt entities continued even after her employment changed. Tr. Vol. 1B, Page 90. While May was employed by Loop, his e-mail address was mmay@scattered.com. Tr. Vol. 1A, pgs. 104-105. When May was employed by Loop, he received health care benefits from RTC. *Id.*, pg. 106; Stip. ¶ 29. Now that he is employed by Scattered, he receives his health care benefits from EZ Links. *Id.*, pg. 107; Stip. ¶ 29. As previously discussed, neither May nor Sharp kept track of their time unless it was mandated by law. When May and Sharp worked for other Greenblatt entities while they were working for Loop, Loop was not reimbursed.

Jahelka did not recall seeing written resolutions, notes or minutes with respect to the decision

56

to transfer May and Sharp's employment from Loop to Loop Properties or from Loop Properties to Scattered. Tr. Vol. 3A, pg. 17. The Corporate Defendants' "employees" did not attempt to hold themselves out as employees of a distinct corporate entity. For example, Sharp did not identify the name of her employer on either her business cards or her stationery. Tr. Vol. 1B, pg. 96. When Sharp filed her appearance in court, she filed it as "Elizabeth D. Sharp" including whatever her current suite and phone number was at the time. Tr. Vol. 1B, pg. 96.

Sharp also represented different entities with competing interests at the same time. For example, at Greenblatt's request, Sharp served as Loop's in-house counsel and Banco's Registered Agent simultaneously. Tr. Vol. 1B, pg. 99. The January 3, 2000 Guaranty and Security Agreement between Loop and Banco (Loop's lender) identified Sharp as Banco's contact person to whom notices under that Agreement should be directed even though Sharp was Loop's in-house counsel at the time. Tr. Vol. 1B, pg, 102-104; PTX 19, Sec. 10.6, pg. 29. Notwithstanding this clear conflict, Sharp never obtained or requested conflict waivers from Loop even though she was acting as both Loop's in-house counsel and Banco's Registered Agent. Tr. Vol. 1B, pg. 99.

Further evidence of Loop's lack of corporate formality and failure to maintain arm's length between related entities is Loop's employees propensity to play fast and loose with it employee's titles. May, at Greenblatt's direction, held himself out as an officer and director of Greenblatt's various companies. For example, although May admitted was never an owner, director or shareholder of Loop, he held himself out as Loop's Vice President on January 12, 1998 in a tax filing that he submitted to the IRS. Tr. Vol. 1-A, Pg. 77; PTX 6. May volunteered that "Once, I think, I was a VP in filling out a form for them to get an identification number." Tr. Vol. 1A, pg. 77. May conceded that he was never compensated for his duties as Loop's "V.P." and that it was

"just a title position." The position lasted "just a few days" until the IRS issued the FEIN number. Tr. Vol. 1A, pgs. 79-80.

In addition to holding himself out as the Loop's Vice President, May falsely held himself out to Loop's creditors as Banco's "Assistant Vice President" at Greenblatt's direction. PTX 107; Tr. Vol. 1A, pg. 112. May did so in a letter from Banco (Loop's lender) to Golf Venture, LLC (one of Loop's creditors. PTX 107. In May's letter, May invites Golf Venture to enter into an agreement with Banco and to contact Elizabeth Sharp—Loop's in-house lawyer—to document the deal on behalf of Banco. PTX 107. May testified:

> Q:    Okay. But why would they – if they [Golf Venture] want to enter into an agreement with Banco, why would they contact Ms. Sharp to document the agreement when Liz Sharp is the in-house counsel for Loop?
>
> A:    I don't know.
>
> Q:    Okay. And you weren't concerned at all that you were holding yourself out as the assistant vice president of Banco at a time when you were Loop's accountant; is that right?
>
> A:    Correct.
>
> Q:    And that's because Mr. Greenblatt asked you to write this letter; is that right?
>
> A:    Yes.

Tr. Vol. 1A, pgs. 114-115.

May's constantly changing titles, duties, and positions between the related companies is evidence that the Defendants had little respect for the corporate form and failed to maintain arm's length relationships between the related companies. As Wachovia argued in its post-trial brief, given May's ever-changing titles, employers, and hats, it is no wonder why May effectively viewed

58

his real employers to be Greenblatt, Nichols and Jahelka.

>    iii.     *The Banco Loan and other transactions between*
>            *The related companies*

Though not a part of Loop's UFTA claims, Wachovia submitted evidence that on January 26, 2001, Loop loaned approximately $2.2 million to South Beach—an entity wholly owned by a related Greenblatt company, NOLA, LLC. PTX 49, Tr. Vol. 5A, pg. 53. NOLA's members are the fathers of Greenblatt, Nichols and Jahelka, and NOLA's manager in charge of running its day-to-day operations was Teletech Systems, Inc. *Id.* Greenblatt is Teletech's sole officer. Greenblatt signed the loan on behalf of South Beach. *Id.*, pg. 54. Nevertheless, Greenblatt did not perceive any conflict of interest in representing South Beach as the borrower. PTX 49, Tr. Vol. 5A, pgs. 55-56.

South Beach subsequently used the $2.2 million loan from Loop to purchase HRMI stock (the same stock that Loop was rapidly acquiring in its margin account with Loop). South Beach's investment in HRMI stock did not pan out and Loop sold the $2.2 million note to Scattered for $100,000, or 4.5 cents-on-the-dollar. Tr. Vol. 5A, pg. 61. Greenblatt testified that Scattered never collected anything on the note because South Beach has no assets. Tr. Vol. 5B, pg. 106. The disposition of Loop's loan to South Beach is more fully set forth in a recent opinion by Judge Goldgar in *In re South Beach Securities, Inc.* which Wachovia submitted to the Court during trial. Judge Goldgar held:

>    The evidence presented at the plan confirmation hearing was
>    sparse-partly because South Beach saw fit to offer very little evidence
>    to support confirmation, but also because Greenblatt, the sole
>    witness, was taciturn and uncooperative, purporting not to remember
>    even basic information about himself and his affairs….Debtor South
>    Beach Securities is a Mississippi corporation incorporated in 1984,
>    but Greenblatt was unable to say who had formed South Beach. Its
>    mailing address is 330 South Wells Street, Chicago, Illinois. It has a
>    single officer and director, one William Johnson. Johnson receives no

59

compensation and has never received any. According to Greenblatt, Johnson's only duty as an officer and director of South Beach is to occupy those positions. His qualification to act as an officer and director, Greenblatt said, is simply that "[h]is heart is beating."

***

The sole shareholder of South Beach is NOLA, LLC, and a limited liability company with a mailing address of 330 South Wells Street, Chicago, Illinois. The members of NOLA include Greenblatt's father, Leon Greenblatt, II, James Nichols, and possibly Robert Jahelka. NOLA has no current business operation and has never had one. NOLA has no assets and owns no property other than the stock of South Beach. Greenblatt described NOLA as "hopelessly insolvent," though how NOLA could have generated debts when it never had a business operation is unclear.

NOLA is managed (for want of a better term) by Teletech Systems, Inc., a non-member of which Greenblatt is president. Managing NOLA is Teletech's only function, but NOLA does not pay Teletech for its services. Greenblatt is Teletech's only employee, and he, too, is unpaid. Although he is Teletech's president and sole employee, Greenblatt claimed not to know who owns Teletech's stock, where its books and records are, whether it has a checking account, or where it banks. Like South Beach and NOLA – and Greenblatt, Teletech's address is 330 South Wells Street, Chicago, Illinois.

On January 26, 2001, South Beach entered into an agreement with another entity, Loop Corp., entitled "Subordinated Loan Agreement for Equity Capital." Under the agreement, Loop lent South Beach $2,198,326. The loan was to be repaid five years later and during the interim would accrue 12% interest annually. According to the agreement, the loan was to be used as part of South Beach's "capital." Asked how South Beach found Loop as a lender, Greenblatt testified that he "arranged" it. Asked what that meant, he said only that he "participated in the funding of the loan" and did not elaborate further. Greenblatt executed the agreement on behalf of South Beach as an "authorized person." Andrew A. Jahelka executed the agreement on Loop's behalf.

The same year that Loop lent South Beach $2,198,326, South Beach lent NOLA a "significant" amount of money, probably $3.2 million. The purpose of the loan was to enable NOLA to buy the stock of a company called Health Risk Management ("HRM").

On December 31, 2002, Loop and another entity, Scattered

> Corporation, executed an "Assignment and Sale of Loan." Under the document, Loop assigned to Scattered its interest in the January 2001 loan agreement with South Beach in return for $100,000. Greenblatt is an officer and director of Scattered. The other officers and directors are Andrew Jahelka and Richard Nichols…Andrew Jahelka executed the assignment as president of Loop, and Greenblatt did so as secretary of Scattered.

*In re South Beach Securities, Inc.*, 376 B.R. 881, 883-85 (N.D. Ill. 2007) (internal citations and footnotes omitted). The Court finds that Loop's loan to South Beach is evidence that it failed to maintain arm's length relationships between related entities.

Though no one factor was determinative, taken as a whole, the evidence overwhelmingly demonstrated that Loop is actually the alter ego of the Individual Defendants. *See Dimmitt*, 196 F. Supp. 2d at 738. The Court finds that Loop was inadequately capitalized, failed to observe corporate formalities, is insolvent, employs non-functioning officers or directors, is missing vital corporate records, and diverted assets to its shareholders and related entities, failed to maintain arm's length relationships among related entities, and that Loop was a mere facade for the operation of the dominant shareholders. *See Dimmitt*, 196 F. Supp. 2d at 738; *see also Fontana*, 840 N.E.2d at 778; *accord Hystro*, 18 F.3d at 1389. Accordingly, Wachovia proved its case as to the first prong under the doctrine of piercing the corporate veil.

D.     <u>Adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice</u>

Now that the Court has found there is "such unity of interest and ownership" between the Individual Defendants and Loop "that the separate personalities of the corporation and the individual[s] . . . no longer exist," Wachovia must prove that adherence to the fiction of separate corporate existence would sanction a fraud or promote injustice. *Hystro,* 18 F.3d at 1388-89. In order to satisfy the second prong, Wachovia must point to more than the mere prospect of an

61

unsatisfied judgment and must show that "some 'wrong' beyond a creditor's inability to collect [will] result" if the veil is not pierced, such as the individuals being unjustly enriched or unfairly avoiding liability after draining corporate assets. *See Sea-Land*, 941 F.2d at 522-24; *see also Hystro*, 18 F.3d at 1390. Actual fraud is not a necessary predicate to piercing the corporate veil; limited liability may be discarded to prevent injustice or inequitable consequences. *Fontana*, 840 N.E.2d at 782, *citing Central States, Southeast & Southwest Areas Pension Fund v. Gaylur Products, Inc.*, 384 N.E.2d 123 (1978). One example of inequitable conduct that justifies veil piercing: "a corporate owner who used his several corporations to avoid responsibilities to creditors." *Hystro*, 18 F.3d at 1390; (*citing Sea-Land*, 993 F.2d at 1312).

Based on the evidence presented at trial, Greenblatt, Nichols and Jahelka will be unjustly enriched if this Court does not pierce Loop's corporate veil. While certainly the dominant shareholder, Greenblatt didn't act alone. Jahelka and Nichols are educated businessmen who either drafted or knowingly assented to the terms of the Banco-Loop loan agreements. Thus, Greenblatt may have been the puppet master—but Jahelka and Nichols happily tied themselves to his strings.

Allowing the Defendants to hide behind Loop's veil would sanction a fraud and promote injustice because Loop's shell status, the Banco-Loop loan, and its shareholders' representations on the margin accounts falsely created the appearance of a vital company capable of covering its losses when all the while Loop's assets were fully encumbered by a company insider. Wachovia was powerless to negotiate with Loop because the Individual Defendants would simply use Banco's status as a "senior secured lender" as an excuse for its "inability" to pay its margin debt.

Wachovia's inability to collect on its judgment resulted from the Individual Defendants' scheme to fully encumber Loop's assets and then turn control over to Greenblatt to decide who

would get paid. With only minor exceptions, the only time that the Individual Defendants agreed to use Banco's loan was when they paid themselves, paid Banco, or paid related entities. Their claim that their diversion of assets following HRMI's collapse was innocent because Loop received "dollar- for-dollar" credit on the Banco line was not credible. Even if it were true that such a credit was given to Loop, the credit was worthless because it paid down a loan that a company insider had no intention of collecting.

Additionally, the Court finds that Loop's misuse of the corporate form harmed Wachovia. The Individual Defendants knew that Loop was using its account at Wachovia to acquire HRMI stock on margin; that Loop was inadequately capitalized and that it couldn't function without Banco's loan; that Loop's assets were fully encumbered by Banco, its sole source of financing; and that if Loop defaulted on its margin debt, its creditors would be at Greenblatt's mercy. Since it wasn't Greenblatt's "general practice to make advances on troubled debt to pay under – to pay lower classes of creditors," (Tr. Vol. 5A, pg. 48), the Individual Defendants shielded themselves from their debts. Making matters worse for Wachovia, the Individual Defendants diverted assets, paid themselves and paid related entities rather than enforce the term of the Banco loan that expressly permitted Loop to use Banco funds to pay for costs incurred in connection with Loop's investments and then embarked on this years-long litigation forcing Wachovia to fight for its judgment. PTX 19, § 7.15, pg. 21). Accordingly, Wachovia proved that there is a nexus between Loop's misuse of the corporate form and Wachovia's harm. *See Kansas City*, 521 N.W.2d at 113. If Loop's corporate veil is not pierced, Greenblatt, Jahelka, and Nichols will be unjustly enriched because they will be rewarded for using, transferring, and diverting money to which Wachovia was legally entitled. Such an inequitable result is exactly what the doctrine of piercing the corporate veil is

designed to prevent. *See, e.g., Hystro*, 18 F.3d at 1391 ("The attempt to do corporate business without providing any sufficient basis of financial responsibility to creditors is an abuse of the separate entity and will be ineffectual to exempt the shareholders from corporate debts.") Therefore, the Court finds in favor of Wachovia and against Jahelka, Nichols, Greenblatt, and Loop on Counts II (declaratory judgment) and IV (piercing the corporate veil).[29]

### 1.  Attorney's Fees

In connection with this finding, the Court awards attorneys' fees and costs to Wachovia incurred from September 22, 2005 through the date of judgment. Under Illinois law, a party who prevails on a veil-piercing claim can recover attorneys' fees if the underlying statute or contract provides for an award of fees. *See Fontana*, 840 N.E.2d at 785. Wachovia's $2.4 million judgment is based upon Loop's failure to pay its margin debt in breach of its securities agreement. PTX 33. Under Paragraph 6 of that agreement, Loop agreed to pay for Wachovia's reasonable attorneys' fees in the event Wachovia took any legal action to collect any amount due:

> I agree to pay commissions, charges, interest and fees at [Wachovia's] prevailing rates, which may change without notice to me except as otherwise provided by law. I also agree to pay [Wachovia's] reasonable attorneys' fees and interest at the highest

---

[29] The Court will briefly address South Dakota law due to the Defendants' eleventh hour revelation that it applies. South Dakota law was also addressed when applicable in the body of the Court's Opinion. South Dakota law, however, requires brief mention because it is substantially the same as Illinois law. Like Illinois, South Dakota applies essentially the same two-prong test: (a) the "separate corporate identity" prong, and (b) the "fraud **or** inequitable consequences" prong. *Id.* Unlike Illinois, South Dakota enumerates six factors relevant to the "separate corporate identity" and "fraud or inequitable consequences" prongs. *Brevet*, 604 N.W.2d at 274, *citing Kansas Gas & Electric*, 521 N.W.2d at 113. "Those factors include: (1) undercapitalization; (2) failure to observe corporate formalities; (3) absence of corporate records; (4) payment by the corporation of individual obligations; (5) fraudulent misrepresentation by corporate directors; and (6) use of the corporation to promote fraud, injustice of illegality." *Id.* South Dakota's factors are subsumed within the eleven factors used by Illinois courts, and thus, the Court does not need to readdress them here. South Dakota's requirement that there must exist some "nexus" between the shareholders' disregard of the corporate fiction and the resulting injustice or inequity to the plaintiff has also been addressed and needs no repeating. *See, e.g., Sea-Land*, 993 F.2d at 1313; *Kansas Gas & Electric*, 521 N.W.2d at 113.

lawful rate in the event [Wachovia] takes legal action to collect any
amount due from me to [Wachovia].  PTX 33, Pg. 1, ¶ 6.

Wachovia obtained a NYSE arbitration award against Loop and the panel of arbitrators awarded Wachovia attorneys fees pursuant to the above provision in the securities agreement.  PTX 38.  The NYSE arbitration award was confirmed and reduced to judgment by Judge Hart on September 22, 2005 when he entered judgment "in favor of Petitioner, Wachovia Securities, LLC and against Respondent, Loop Corp., in the amount of $2,478,418.80 (consisting of compensatory damages in the amount of $2,349,000.00, attorneys' fees in the amount of $90,000 and interest in the amount of $39,411.87)."  *Id.*  When Judge Hart ruled that "[p]etitioner's right to additional attorneys' fees for post-judgment proceedings shall not be construed to have merged into this judgment," he specifically left open the possibility of Wachovia recovering additional attorneys' fees in any post-judgment proceedings.  *Id.* ¶ 2.

With Loop's veil pierced, the Individual Defendants are liable for the underlying judgment as well as Loop's obligation under the Agreement to pay attorneys' fees.  Wachovia's recovery of attorneys' fees is not "double-dipping" because the $90,000 in attorneys' fees awarded by the NYSE was incurred in connection with Wachovia's efforts to obtain a judgment against Loop.  Since then, Greenblatt, Nichols and Jahelka have not only refused to pay that judgment, but they have forced Wachovia to incur additional fees and costs to collect that judgment.  Thus, like Loop, Greenblatt, Nichols and Jahelka are jointly and severally liable for Wachovia's attorneys' fees incurred in this post-judgment proceeding to pierce Loop's corporate veil.

## IV.    **Wachovia's claims under the Illinois Uniform Fraudulent Transfer Act (Counts VII through X)**

Wachovia also seeks remedies available to it under Sections 160/5(a)(1) and (2) and Section

65

160/6(a)(1) of the UFTA. The UFTA indicates two types of fraudulent transfers, actual fraud and constructive fraud. 740 ILCS § 160; *In re Martin*, 145 B.R. 933, 946 (Bankr. N.D. Ill. 1992). Actual fraud or "fraud-in-fact" results where the "debtor transfers property with the intent to hinder, delay, or defraud his creditors" while constructive fraud or "fraud-in-law" "occurs when (1) a voluntary gift is made, (2) there is an existing or contemplated indebtedness against the debtor, and (3) the debtor has failed to retain sufficient property to pay the indebtedness." *Id.*

Since actual fraud will not be presumed under Illinois law, Wachovia must prove all elements of actual fraud by clear and convincing evidence. *Hofmann v. Hofmann*, 446 N.E.2d 499 (1983). Therefore, Wachovia must show that it is highly probable that Loop transferred its assets in question to Scattered, Loop Properties, and Banco with an actual intent to hinder, delay or defraud its creditor, Wachovia. *In re Martin*, 145 B.R. at 946. Various factors are helpful in determining actual intent to defraud. *Id.* at 168. Some of the "badges of fraud" enumerated in the UFTA include whether: 1) the transfer or obligation was to an insider; 2) the debtor retained possession or control of the property transferred after the transfer; 3) before the transfer was made or obligation was incurred, the transfer was of substantially all the debtor's assets; 4) the debtor removed or concealed assets; 5) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; 6) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; and 7) the transfer occurred shortly before or shortly after a substantial debt was incurred. 740 ILCS 160/5(b)(1)-(11). "When the badges of fraud are present in sufficient number, it may give rise to an inference or presumption of fraud" and the creditor may prove actual intent. *Id*.

With respect to the claim of constructive fraud or "fraud in law," the Court looks to § 5(a)(2)

66

of the Act. Establishing fraud in law does not require proof of actual intent to defraud. *General Electric Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1079 (7th Cir. 1997); *Scholes v. Lehmann*, 56 F.3d 750, 757 (7th Cir. 1995). Rather, transfers made for less than reasonably equivalent value, leaving a debtor unable to meet its obligations, are deemed or presumed to be fraudulent. *In re Zeigler*, 320 B.R. 362, 374 (Bankr. N.D. Ill. 2005). Whether "reasonably equivalent value" has been given is typically a question of fact. *Id.* Wachovia need only prove constructive fraud by a preponderance of the evidence. *See Bay State Milling Co. v. Martin*, 145 B.R. 933, 946 (Bankr. N.D. Ill. 1992).

In determining whether reasonably equivalent value was received under the UFTA, courts should consider how that phrase has been construed under the Bankruptcy Code. *Grochocinski v. Zeigler (In re Zeigler)*, 320 B.R. 362, 374-75 (Bank. N.D. Ill. 2005); *In re Image Worldwide, Ltd.*, 139 F.3d 574, 577 (7th Cir. 1998). The Seventh Circuit has recognized that there is no fixed formula for determining reasonable equivalence. *Id.*; *citing Barber v. Golden Seed Co.*, 129 F.3d 382, 387 (7th Cir. 1997). That determination will depend on all the facts of each case. *Id.* Several factors that have been utilized to determine reasonably equivalent value include: (1) whether the value of what was transferred is equal to the value of what was received; (2) the market value of what was transferred and received; (3) whether the transaction took place at arm's length; and (4) the good faith of the transferee. *Id.*; *Grigsby v. Carmell (In re Apex Auto. Warehouse, L.P.)*, 238 B.R. 758, 773 (Bankr. N.D. Ill. 1999). "Reasonably equivalent value is measured at the time of the transfer." *Id.*; *citing Berland v. Mussa (In re Mussa)*, 215 B.R. 158, 172 (Bankr. N.D. Ill. 1997). Nominal consideration is inadequate to satisfy the reasonably equivalent value standard. *Id.*; *citing Image Worldwide*, 139 F.3d at 580.

67

Wachovia seeks to void the following transfers: 1) Banco's lien or security interests over Loop's assets; 2) Loop's transfer of its ownership interests in real estate to Loop Properties; 3) Loop's transfer of assets to Scattered; 4) Loop's investment in EZ Links; and 5) Loop's post-HRMI collapse payments to Jahelka and Nichols. Wachovia relied on factors 1, 2, 5, 9, and 10[30] to prove its case under 740 ILCS 160/5(b). The Court has already ruled that each of the aforementioned transfers was made to insiders and has further ruled that transfers made prior to the date Loop's debt to Wachovia became due will not be considered. *See Wachovia Sec., LLC v. Neuhauser*, 528 F. Supp. 2d 834, 2007 U.S. Dist. LEXIS 88041 (N.D. Ill. 2007).

A.     <u>Banco's April 1, 2002 security interest over Loop's Assets</u>

Banco's loan to Loop has been addressed by the Court at length. In addition to the reasons previously articulated, the Court finds that the April 1, 2002 Banco/Loop loan, the loan made after Loop incurred its debt to Wachovia, was made for one purpose, to prevent Loop's creditors from reaching its assets.[31] The loan was made between insiders, while Loop was insolvent and dependant upon Banco to operate, and after it incurred its debt to Wachovia. The loan further encumbered Loop's assets and was made after Loop was already in default on Banco's line. The evidence showed that the purpose behind the loan was to further encumber Loop's assets thereby giving Greenblatt even more control over its decision to pay creditors. Because Greenblatt, as a 50% shareholder, effectively retained control of Loop's assets before and after the transfer, Loop retained

---

[30] (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property after the transfer; (5) the transfer was of substantially all of the debtor's assets; (9) the debtor was insolvent or became insolvent shortly after the transfer was made; and (10) the transfer occurred shortly before or shortly after a debt was incurred;740 ILCS 160/5(b).

[31] The Court also finds, as it has previously set forth, that the first loan was also made with the intent to hinder, delay, and defraud creditors.

possession or control over all of its assets indicative of a sham transaction. Accordingly, Wachovia proved by clear and convincing evidence that Banco's blanket lien was made with the actual intent to hinder and delay Wachovia's efforts to collect Loop's judgment under 740 ILCS 160/5(b)(1), (2), (5), and (9) and Banco's security interest in Loop's assets constitutes a "fraudulent transfer" under the UFTA.[32]

Additionally, Wachovia proved constructive fraud by a preponderance of the evidence that the April 1, 2002 Banco loan was not at arm's length and was given in bad faith. First, Greenblatt owned Loop and controlled Banco, and therefore, Wachovia proffered sufficient evidence that the transaction was not at arm's length. Second, Wachovia proffered sufficient evidence that the transaction was not made in good faith because Banco decided to loan more money to Loop even though Loop was currently in default and Loop pledged its assets to Banco after the margin debt became due. Therefore, Wachovia proved that the Banco-Loop transfer was one without consideration. Accordingly, the Court finds in favor of Wachovia and against Defendant Banco on Count IX.

B.    Transfer of Loop's Real Estate Interests to Loop Properties

Loop held ownership interests in limited partnerships which, in turn, owned various parcels of commercial real estate in Chicago. Stip. ¶ 22. In September 2002, after Loop incurred its debt to Wachovia, Loop transferred all of its ownership interests in real estate partnerships 200 West Partners, LP, and Old Colony Partners, LP to Loop Properties. Stip. ¶ 53. Loop Properties is a wholly-owned subsidiary of Loop (100% of its stock), and thus, when Loop transferred the

---

[32] Defendants argue that a transfer of property under the UFTA does not include property to the extent that it is encumbered by a valid lien. 710 ILCS 160/2(b). As this Court concluded, however, there was nothing "valid" about Banco's loans to Loop.

properties to Loop Properties for no consideration (Tr. Vol. 3A, pgs. 22-23) it retained possession or control of the transferred properties while shielding them from Loop's creditors. Tr. Vol. 3A, pgs. 22-23. Loop was in default under its $9.9 million loan to Banco, insolvent, and sought an extension on its line of credit at the time the transfer was made.

Defendants claim that Loop's transfer of real estate to Loop Properties was not made to hinder, delay, or defraud Loop's creditors, but rather, was done at third-party lender Marine Bank's request. Tr. Vol. 3A, p. 12-21; 45-46. Defendants introduced evidence that in January 2001, Loop entered a loan agreement with Marine Bank for $3.25 million at a 10% interest rate. DTX 89. Marine Bank required Loop to provide security for its loan and Banco agreed to subordinate its position as Loop's senior secured creditor on Old Colony Partners, LP and 200 West Partners, LP, to Marine Bank. Greenblatt testified that Marine Bank then took physical possession of the stock certificates reflecting Loop's 100% ownership of Old Colony Partners, Inc. and 200 West Properties, Inc., the corporate general partners of the limited partnerships. Tr. Vol. 6A, Greenblatt at 74-75; DTX 119.

The Court finds that although Wachovia introduced evidence of three factors of fraud, it failed to prove by clear and convincing evidence that Loop's transfer to Loop Properties violated the UFTA. Wachovia's evidence was rebutted by Defendants' documentary evidence of third-party Marine Bank's interest in the properties and Wachovia failed to show that there was an actual transfer of an "asset" as defined under the UFTA. *See In re Royal Crown Bottlers, Inc.* 23 B.R. 28, 30 (Bankr. D. Ala. 1982 (because the subsidiary corporation is an asset of the parent corporation, the benefits the asset will ordinarily accrue to the benefit of its owner); *see also In Re Jeffrey Bigelow Design Group, Inc.*, 956 F.2d 479, 485 (4th Cir. 1992) (the focus in a fraudulent transfer

70

case is whether the net effect of the transfer has depleted the debtor's assets). Under constructive fraud, Wachovia proved by a preponderance of the evidence that the value of what was transferred was equal to the value of what was received via Jahelka's testimony. However, based on Marine Bank's involvement, Wachovia failed to prove that the transaction took place at arm's length and was made in bad faith. *See Grigsby*, 238 B.R. at 773. Accordingly, the Court finds in favor of Loop Properties and against Wachovia on Count X.

      C.      <u>Transfers to Scattered Corp.</u>

Wachovia also seeks to void Loop's March 19, 2001 to June 21, 2001 transfer of $242,000 to Scattered. Consistent with its Memorandum and Opinion Order of November 20, 2007 as well as its rulings during the bench trial, this Court will not consider Loop's transfers of assets made prior to the date that its margin debt to Wachovia became due. Of the $242,000 transfers from Loop to Scattered only $2,000 was transferred after May 22, 2001. Accordingly, this Court finds in favor of Scattered and against Wachovia on Count VIII[33] under the UFTA.

      D.      <u>Investment in EZ Links and "Compensation" to Shareholders</u>

Wachovia seeks to void Loop's "investment" in EZ Links as well as its "compensation" payments to Nichols and Jahelka.[34] As stated above, after May 22, 2001, Loop "invested" $518,338.52 in EZ Links—a related entity—rather than pay down its debt to Wachovia. EZ links was an insider, and hence, when the Individual Defendants, especially Greenblatt, "invested" in EZ

---

[33] Wachovia appears to have abandoned its quest to void Loop's purported transfer of EZ Links stock to Scattered as it was alleged in the RSAC. RSAC, p. 36.

[34] Though Wachovia seeks to void Loop's investments in EZ Links and payments to Nichols and Jahelka from the beginning of 2001, this Court—in keeping with its Memorandum and Opinion Order of November 20, 2007 as well as its rulings during trial—will only consider payments made after Loop incurred its debt to Wachovia.

Links, they were essentially investing in themselves. In dong so, they retained possession and control of the transferred assets but shielded themselves from Loop's creditors. Furthermore, the transfer occurred shortly after a substantial debt was incurred.

There was no credible explanation as to why Loop chose to "invest" in EZ Links when it purportedly could not pay its third-party creditors. The Individual Defendants' story that Loop was obligated to invest in EZ Links pursuant to a $3,000,000 commitment to fund was unsupported at trial and not credible especially in light of Jahelka's and Nichols' uncertainty as to its existence and the Defendants' failure to produce a record of the "commitment." An agreement to "invest" $3 million in a company is the kind of record that a corporation would maintain and the Court finds that Loop's failure to produce it justifies an adverse inference that one never existed. The Court further finds Jahelka and Nichols' testimony to be not credible on this issue and that the purpose of the transfer was not to invest in a related entity but to further divest Loop of assets that could be given to its third-party creditors. Accordingly, because Loop's $518,338.52 "investment" in EZ Links was made to hinder, delay, or defraud Loop's creditors, the Court finds in favor of Wachovia and against Defendants on Count VII.

Additionally, the Court finds that Wachovia proved by clear and convincing evidence that Loop's "modest compensation" to Nichols and Jahelka in the amount of $210,500 were made to hinder, delay, or defraud Loop's creditors. The payments were suspiciously absent from Loop's tax returns and those of its shareholders. Moreover, the asset transfers were made to insiders shortly before and after Loop was rendered insolvent and incurred its multi-million dollar margin debt to Wachovia. Accordingly, these payments satisfy a number of the factors of fraud and violated the UFTA. The Court finds in favor of Wachovia and against the Defendants on Count VII.

## V.      Loop's Legal Fees and Gregory's Jordan's Testimony

### A.      Loop's Legal Fees

It has been the Defendants' position for a number of years in this litigation that Loop has been unable to pay Wachovia's judgment because it does not have the funds to do so.  Because attorneys were so vigorously defending the suit, this Court questioned how Loop has been able to pay for its attorneys for the last four years.  The Court ruled before and during trial that Loop's inability to pay its legal fees is relevant to the case.  Whether other insider entities are paying Loop's legal fees is relevant to whether Loop commingled funds or whether it failed to maintain arm's length relationships with other related entities.  As such, evidence regarding Loop's legal fees was relevant to the Court's decision regarding whether Loop's corporate veil should be pierced.

Loop's attorneys, Sharp and Jordan, testified regarding Loop's legal fees but only after strenuously opposing Wachovia's subpoenas.  Sharp eventually testified but only after the Court ordered her to withdraw from representing Loop (over her strenuous objection) in light of the fact that her deposition testimony created a clear conflict of interest and instructing her that the Rules of Professional Conduct do not permit her to serve as an advocate when she will be testifying as a material witness in the dispute. Dk. 296.  According to Sharp, while she was employed by Scattered in July 2005,  Jahelka asked her to represent Scattered and Loop Properties in this matter.[35]  Sharp doesn't know whether Jahelka asked her to represent the companies in his capacity as Loop's President or as an officer of Scattered.  Tr. Vol. 1B, pg. 22.  Sharp also did not know whether

---

[35] At some point in time, Sharp met with Jahelka, Greenblatt, Nichols and Banco's attorney, C. Philip Curley, to discuss who would represent the various defendants.  Of course, Sharp did not know in what capacity Jahelka was attending (as President of Loop, Loop Properties, or Scattered) and did not know whether Greenblatt was attending in his capacity as an officer/shareholder of Loop or in his capacity as the sole employee of Loop's lender, Banco.  Tr. Vol. 1B, pg. 30-31.

Jahelka made arrangements for Loop or Loop Properties to reimburse Scattered for her time. Tr.

Vol. 1B, pg 22. Claiming attorney-client privilege, Sharp refused to testify as to why she was not

asked to represent Scattered considering she was employed by Scattered and not Loop or Loop

Properties at that time. Tr. Vol. 1B, pg. 27-28. When asked why Scattered allowed Sharp to

represent Loop, Jahelka testified:

> A:     It is an arrangement.  Because of the common ownership,
> because the shareholders of Scattered are common to the
> shareholders of Loop Corp., and Loop Corp. is effectively
> contributing to Loop Corp. by providing Ms. Sharp's services
> to defend Loop Corp. in that matter. (Tr. Vol. 2-B, Pg. 184).
>
> * * *
>
> Q:     What is the benefit to Scattered, the corporation, of having its
> lawyer spend the time that she [did] representing Loop Corp.?
>
> A:     I understand and I think I answered that by saying she is
> providing a benefit to Scattered's shareholders by doing so.
> Does that make sense to Your Honor?  It would be - - it is no
> different than if she were to provide legal services to me as an
> individual while she is being paid by Scattered.  I am
> effectively - - it is a form of distribution.  It is non-cash.  I
> would be - - you know, I would be taking the benefit.  In this
> case, it is all proportional to the same shareholders of
> Scattered.  When she provides those services they come out
> to us individually, and they are effectively contributed to
> Loop so that Loop can defend itself in this matter.
>
> Court:  There is your answer.

Tr. Vol. 2B, pgs. 185-186. On this issue, Greenblatt initially testified that Scattered received no

benefit from this arrangement:

> Q:     When Ms. Sharp was representing Loop and Loop Properties
> in this case she was in-house counsel for and employed by
> Scattered Corp., correct?
>
> A:     Yes.

> Q:     And what benefit did Scattered Corp. get out of Ms. Sharp
>        providing legal services to Loop Properties and Loop Corp.
>        in this case?
>
> A:     None.

Tr. Vol. 4B, pgs. 2,0-211.  Later on, however, Greenblatt changed his mind and testified that

Scattered received a tangible benefit from Sharp's representation; namely, that Scattered "had happy

shareholders."  Tr. Vol. 4B, pgs. 212-213.  Scattered's shareholders were undoubtedly happy

because they are also Loop's shareholders.  Tr. Vol. 4B, pgs. 214-215.

At one point, Greenblatt testified that Loop's shareholders were paying for its legal fees in

this litigation.  Tr. Vol. 4B, pg. 203.  Once again, this testimony is inconsistent with Greenblatt's

later testimony, Dykema Gosset's records (discussed herein), and Mr. Willis's representations that

Chiplease—another Greenblatt-related entity[36]— paid for Loop's legal fees arising from this lawsuit.

Tr. Vol. 5A, pgs. 91-92.  Then, Greenblatt changed his testimony on the matter not once, but twice.

First, Greenblatt claimed that Loop's shareholders intend to reimburse Chiplease for Loop's legal

fees, and then he said that Chiplease was paying for Loop and Loop Properties' defense because he

had an indirect ownership interest in Chiplease, and therefore, felt Chiplease should pay for his

expenses:

> Q:     Okay. Well, why is Chiplease paying for Loop and Loop
>        Properties' representation in this case?
>
> A:     Chiplease paid for Loop and Loop Properties' representation
>        because Chiplease paid for my expenses.
>
> Q:     And why is Chiplease paying for your expenses?

---

[36] Chiplease is 100% owned by one of Greenblatt's family trusts—the same one that owns Banco—and according to Greenblatt, the address of Chiplease is "wherever [Greenblatt] happen[s] to be." Tr. Vol. 4B, pg. 192.

75

A:    Because I own it indirectly.

Q:    Okay.  What benefit does Chiplease, the entity, get out of defending Loop and Loop Properties in this case?

A:    None.

Tr. Vol. 5-B, pg. 108.  After that, Greenblatt flip-flopped between saying that Loop's shareholders paid Loop's fees—to Loop paying its own legal fees—to denying that Loop ever paid for its defense. Tr. Vol. 4-B, Pg. 206-208.  Thus, the only thing consistent about Greenblatt's testimony on this issue is that it changes.

No one, however, was less credible than Gregory Jordan, Loop and Greenblatt's outside counsel, as discussed below.  Nevertheless, the Court finds that related entities paid for Loop's defense yet never sought reimbursement.  The evidence supports Loop's failure to observe corporate formalities and its failure to maintain arm's length relationships among related entities.

B.    Wachovia's subpoenas and Jordan's attempts to avoid testifying

Jordan is Loop's counsel in a post-judgment citation presently before the Honorable Maria Valdez.  Tr. Vol. 1B, pg 239.  Jordan also represented May and Sharp during their depositions associated with this case and has represented other entities in which either Loop or its shareholders have a financial interest including:  Banco Panamericano, Chiplease, 200 West Partners, EZ-Links Golf, Repurchase Corporation, South Beach Securities and Teletech Systems.    Tr. Vol. 1B, pg. 245-47.    Jordan is currently a partner with the law firm of Polsinelli, Shalton, Flanigan and Suelthaus, P.C.  ("Polsinelli") and, prior to July 1, 2007, was a partner at Dykema Gossett ("Dykema").  Tr. Vol. 1B, pg. 239.

Wachovia issued a trial subpoena to compel Jordan to testify in this case.  The purpose of

76

the Subpoena was to inquire of Jordan at trial whether Loop was, in fact, a "dead company" as he had previously represented and whether Loop received payments from Greenblatt-related entities for its legal bills. Dk. 282-2; 288-290. On September 27, 2007, Jordan moved to quash Wachovia's subpoena on the on the grounds that "Wachovia cannot compel Mr. Jordan to disclose confidential information" and that "…this information is privileged because in the event the information had any relevance to the alter ego claims at issue in this case, it would necessarily, in effect, reveal confidential communications by that person or entity to Mr. Jordan." Dk. 284. This Court denied Jordan's motion. Dk. 296. In the same order, the Court ordered the parties to brief the privilege issue that Jordan raised in his brief. *Id*. In his brief, Jordan argued that the areas of inquiry were too broad and that "…disclosing the name of the payor would reveal that payor's motivation for paying the fees, …"; that Jordan's testimony "has no possible relevance to this litigation"; and that "revealing the identity of the individual or entity, if any, who paid the fees would reveal information conveyed in confidence to Mr. Jordan." Dk. 298. Finally, Defendants' moved *in limine* to bar Jordan from testifying on the basis of Federal Rule of Civil Procedure 26(a)(1). On January 3, 2008, this Court ruled that the information requested did not invoke the attorney/client privilege and ordered Jordan to testify at trial. Dk. 335.

      C.    <u>Jordan's testimony</u>

      Gregory Jordan lied under oath when he testified on January 7, 2008. From the beginning, Jordan displayed behavior indicative of his disrespect for the proceedings. Jordan was recalcitrant, arrogant, and irritated that the Court would dare compel him to testify. When asked reasonable questions, Jordan responded in a condescending and evasive manner. Jordan testified under oath that he had been representing Loop without compensation on three occasions:

77

Q:     Is it your testimony then that you have not been paid by any third-party?

A:     That is my testimony.

Q:     And you have been working then for free since Spring of 2006?

A:     Yes.

Tr. Vol. 1B, pg. 241.

At a later point in his testimony, Jordan again testified that he was working for free while employed by Dykema and Polsinelli.  Notably, Jordan said that he actually checked to see whether Dykema had not received payment on Loop's bills and he confirmed this was the case *prior* to taking the witness stand because he "didn't want to be wrong."

The Court:     Have you received payment for any of those [Loop's] bills?

Jordan:        No.  Dykema hasn't received payment and Polsinelli hasn't received payment.

The Court:     Based -

Jordan:        And I confirmed that before I came up, because I didn't want to be wrong.

Tr. Vol. 1B, pg. 252.

Finally, Jordan stated that he did not intend to bill Loop for his trial testimony because the bill "wouldn't get paid."

Q:     Are you being compensated for being here today?

A:     No

Q:     You don't intend to send anybody a bill?

A:     Even if I did, it wouldn't get paid.

Q:     Okay.  Why is that?

78

> A:      Well because I have two clients potentially I could bill for this. NOLA, LLC and Loop Corp, neither of which I have ever received any compensation.
>
> Q:      Was it your testimony that you've received no compensation for doing any work for Loop or Nola from any other party?
>
> A:      Yes, that's correct.
>
> Q:      That's your testimony?
>
> A:      That's correct; that's my testimony.

Tr. Vol. 1B, pg. 238.  The Court found Jordan's testimony incredulous and allowed Wachovia to subpoena his law firms' records on the matter.

Records from Jordan's law firm prove that Jordan was lying when he testified that he had confirmed the accuracy of his testimony before taking the witness stand and that he was working for free.  After his testimony, the Court granted Wachovia's request to issue a trial subpoena for any billing records related to Jordan's work.  Dykema produced records showing that on Tuesday, January 8, 2008, the day *after* Jordan's trial testimony, Jordan emailed another attorney at Dykema asking "Can you confirm that Dykema has never received any monies from Loop Corp."[37]  Dk. 364.  The next day, Jordan received a response to his inquiry stating, in part:

> On 4/18/07 we received two checks from Chiplease totaling $100,000.  Greg, you sent an email to Kirsten directing her to tell Arin Martinez to apply them against certain invoices, including Loop Corp's then outstanding invoices.  A PDF of the checks and your email is attached.  The amount that you directed be applied against Loop Corp's invoices was sufficient to pay all then outstanding invoices.  *See* Dykema E-mail dated January 9, 2008 with attached Gregory Jordan email dated April 18, 2007 and Chiplease checks number 1222 and 1223, Plaintiff Appendix Group Exhibit 5.

---

[37] Of course, Jordan turned to the Court during the trial and asserted that he had already checked this prior to his testimony.

Attached to Dykema's response email were two checks dated April 17, 2007 made payable to Dykema and drawn on an account at Chiplease, Inc. (330 South Wells, Suite 718) in the amounts of $29,184.59 and $70,815.41 along with a copy of an email, dated April 18, 2007, from Jordan describing in detail how the checks should be applied. *Id.* Jordan himself directed Dykema to use Chiplease's $100,000 check to pay legal fees incurred by Greenblatt personally, Scattered, Chiplease, and Loop. *Id.*

The Dykema email proves that Jordan lied when he testified that he confirmed the accuracy of his testimony prior to taking the stand and that he lied when he testified that Loop was working for free and that its bills were not paid by third-parties. His bills, in truth, had been paid by Chiplease (one of Greenblatt's many entities) and he had directed his firm's accounting office to apply those funds to his outstanding bills. Even if this Court were to give Jordan the benefit of the doubt, Jordan—at best—was aware that his testimony was inaccurate as of 8:30 a.m. the following morning and, despite being an officer of the court, and despite knowing that the proceedings were ongoing, Jordan failed to disclose this information to the Court. The only way the Court became aware of the supporting information was when the Court permitted Wachovia to subpoena the billing records, which were received after the trial ended.

Dykema's email as well as Jordan's testimony before Magistrate Judges in this District also prove that Jordan falsely testified that despite receiving no compensation, he continued to work for Loop out of principal. During this trial, Jordan testified:

> Q: Well, if they are a dead company and if they both [Loop and NOLA] have no assets and you are referring to the NOLA judgment as well, which is currently pending before Judge Filip, then why defend them?
>
> A: Because I thought it was one of those things where this big

bank, Wachovia, was going and trying to punish and get
behind a situation of Loop and NOLA…and maybe I am
wrong and maybe I picked the wrong case to make a stand in,
but I made a stand in saying, this is ridiculous…

Q:     So it's your testimony that over the last two years in these
battles that have been brought before Judge Filip and Judge
Valdez and the representation of Loop and Loop Properties,
that this is pro bono being done by you to make a statement
that Wachovia should not be pursuing a dead company with
no assets; that something you chose to embrace and take a
stand on?

A:     I swore under oath today, to be clear, and, yes, that is exactly
correct, and I have told you on a number of occasions…

Tr. Vol. 1-B, pg. 243, 244.  Dykema's email confirms that Jordan's work was not being done on a

"pro bono basis."  Moreover, Jordan's martyr-like statement that he would continue to work for free

is also untrue in light of Jordan's post-trial statements to Judges Valdez and Keys when he sought

to withdraw from representing Loop and NOLA on the basis that he does not "want to work for

free."[38]  His altruistic proclamation that he wanted to take a stand is also false since he had directed

his firm to apply payment for his services to another account, thus perpetrating the fraud of his

clients and concealing the truth of the attorney fee payments.

Jordan's contumacious conduct has infected at least three courtrooms in the Northern District

of Illinois.  On February 14, 2008, while Jordan was representing NOLA, Judge Keys granted

Wachovia's Motion for Sanctions as a result of NOLA's failure to designate a 30(b)(6)

representative and awarded Wachovia attorneys' fees and costs incurred as a result of having to brief

---

[38]   Judge Keys refused to grant Jordan's motion to withdraw and ordered Jordan to produce
Greenblatt for deposition—something for which NOLA—represented by Jordan—was previously ordered
but failed to comply.  During this proceeding, Judge Keys stated when referring to Greenblatt: "Well, I can
tell you that if he doesn't come, the marshals are going to come out and put him in handcuffs and bring him
here.  We'll bring him in, and he'll take his  deposition down here, if necessary."  Magistrate Keys Sanctions
Order, Jordan Motions to Withdraw and Transcript dated 3/21/08. Appendix Exhibits 10-12.

the matter. *Wachovia Securities v. NOLA, LLC*, 05 C 7213, Dk. 70. On March 21, 2008, Judge

Keys found NOLA to be in contempt of court—a decision upheld by the Honorable Robert W.

Gettleman. *Wachovia Securities v. NOLA, LLC,* 05 C 7213, Dk. 95. Judge Gettleman held:

> If this isn't "stringing along" the court and the plaintiff, nothing is. It
> has been 27 months since judgment was entered, 26 months since the
> citation was issued, two years since Judge Filip initially entered a
> rule to show cause on the citation, 15 months since Magistrate Judge
> Keys ordered defendant to produce a Rule 30(b)(6) designee for
> deposition in Chicago, one year since Judge Filip ordered Mr.
> Nichols to travel to Chicago for a deposition, 11 months since
> Magistrate Judge Keys issued a similar order and threatened to hold
> Nichols in contempt of court, and three months since Magistrate
> Judge Keys ordered defendant to produce Greenblatt for a deposition
> (none of which orders were appealed). Enough is enough.

*Id*. Then, on July 9, 2008, Judge Key's reported and recommended that Wachovia's Motion for

Sanctions against Jordan be granted and that Jordan's Motion for leave to withdraw as counsel for

NOLA be denied. *Id*.; Dk. 97. Judge Keys' held Jordan personally liable for Wachovia's fees in

costs because Jordan "....stood before this Court and gave assurances that he was attempting to

locate Mrs. Nichols, while subsequent events reveal that neither he nor NOLA, ever received

consent from Mr. Nichols to serve as NOLA's 30(b)(6) representative." *Id*. Judge Keys held:

> After careful review of the events that have transpired thus far, it
> appears that Mr. Jordan has allowed himself to fall into the
> unfortunate position of attempting to serve two masters– NOLA, a
> now defunct limited liability company, who has no assets and has
> never had a business operation, and Leon Greenblatt III, the past
> president and sole employee of Teletech Systems, Inc, which Mr.
> Greenblatt set up for the sole purpose of "managing" NOLA. As
> Judge Goldgar found, both of these entities were created for the soul
> purpose of avoiding taxes. In his representation of NOLA, for which
> he claims to have not been paid for more than a year and a half, and
> which he claims to have undertaken out of principle rather than from
> any expectation that he will be paid...., Mr. Jordan's interests here
> would not appear to be the same as those of Mr. Leon Greenblatt, III,
> his other client in several other related and unrelated matters.

82

> Because of this connection with Mr. Greenblatt, Mr. Jordan's strategy
> has left his client in this case, NOLA, vulnerable sanctions, in an
> attempt to avoid having Mr. Greenblatt testify at Wachovia's 30(b)(6)
> examination and to protect Mr. Greenblatt from other potential legal
> problems.

*Id.* Judge Keys concluded that Jordan's representation "crossed the line between zealous advocacy

and willful obstruction and bad faith." *Id.* Clearly, Jordan has shown no respect for his duties as

an officer of the court in this case and others.

Turning back to Jordan's testimony before this Court, Jordan testified that at some point he

learned that Loop had no money:

| | |
|---|---|
| Court: | At what point did you make this determination that Loop was a dead company and had no assets? |
| Jordan: | I couldn't tell you…it was probably, like, I don't know, late fall '06. If it [in the Loop Citation Proceedings] started in the Spring of '06, probably late Fall of '06, early '07, and I think that's when I went in front of Judge Valdez and said, this is ridiculous. This is a dead company…(Tr. Vol. 1-B, page 250, 251). |
| *** | |
| Court: | And how many hours have you billed since you believed that it was a dead company? |
| Jordan: | Truthfully, not many. |
| Court: | What does that mean? |
| Jordan: | I couldn't tell you exactly… |
| Court: | More than 50, 100? How many? |
| Jordan: | Some 25, 30, 35 maybe, tops. |

Tr. Vol. 1B, pg. 252. However, Jordan's law firm's records reveal that Jordan and his colleagues

generated bills in the amount of $20,569.64 representing approximately 75 hours of time between

September 11, 2007 and January 16, 2008. Wachovia Appendix Exhibit 6. Contrary to Jordan's testimony that the Loop's bills were sent to Jahelka (Tr. Vol. 1B, pgs. 244-245), they were sent to Greenblatt. *Id.*

Despite testifying that Jordan's firm had never been paid for work done on behalf of NOLA, the records reveal that Chiplease paid Dykema on NOLA's behalf in April of 2007. Wachovia Appendix Exhibit 7. Additionally, and despite testifying that NOLA has no assets and has never paid for its representation (Tr. Vol. 1B, pg. 238) Jordan and his colleagues billed for work for NOLA through December, 2007 and sent the bills to Greenblatt to be paid by Chiplease. Wachovia Appendix Group Exhibit 7.

This Court finds that Jordan's testified falsely as detailed above. Even if this Court were to assume that Jordan was somehow mistaken regarding payments by third-parties on Loop's behalf (something that the Court does not believe), Jordan was still obliged to correct his inaccurate testimony as an officer of the court—and did not. As the Court concludes below, it is unable to hold Jordan in contempt under the law. However, the Court sanctions Jordan under §1927 because his unreasonable refusal to testify and false testimony compelled Wachovia to expend monies to brief matters and issue subpoenas. It also wasted the Court's time and resources. Reviewing Jordan's testimony before this Court, before Judge Valdez, and his sanctionable behavior before Judge Keys, it is apparent that Jordan has no respect for his oath of office or the judiciary.

D.     Sanctions

Wachovia petitions to sanction Jordan in his individual capacity and ask for the Court to order that: "1) Mr. Jordan be ordered to reimburse Plaintiff for all attorney's fees incurred by it since September 2007 and related to Jordan and his testimony; 2) reimburse Plaintiff for fees incurred by

84

Wachovia in the post judgment proceedings before Magistrates Keys and Valdez; 3) for other relief this Court deems just." Dk. 364. Wachovia does not cite to a specific rule or statute in support of its motion to sanction Jordan until its Reply when it clarified that it seeks to petition Jordan pursuant to 28 U.S.C. § 1927. Dk. 376.

Although the Court finds that Jordan committed perjury on January 7, 2008, it is unable to hold Jordan in civil contempt. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 738-39 (7th Cir. 1999) ("[O]ur review of relevant authority makes clear . . . that civil contempt is an improper method by which to punish perjurious or false testimony absent some element of obstruction of justice."). The Court can, however, grant Wachovia's Petitions for Sanctions and order Jordan to reimburse Wachovia for all attorney's fees incurred by it since September 2007 that are related to Jordan and his testimony pursuant to Section 1927[39] on the basis of Jordan's unreasonable and vexatious conduct associated with Wachovia's trial subpoenas, Jordan's Motion to Quash, and post-trial submissions on the matter.[40] A District Court has discretion to impose § 1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice," *Pacific Dunlop Holdings, Inc. v. Barosh*, 22 F.3d 113, 119 (7th Cir. 1994); pursued a claim that is "without a plausible legal or factual basis and lacking in justification," *id.*; or "pursued a path that a reasonably careful attorney would have known, after

---

[39] § 1927. Counsel's liability for excessive costs

> Any attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

[40] This Court will not impose sanctions based on Jordan's appearances before other Judges.

appropriate inquiry, to be unsound," *Kapco Mfg. Co. v. C & O Enters., Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989). Based on the foregoing, Jordan has displayed a complete disregard for the orderly process of justice, has committed perjury, and has failed to uphold his duties as an officer of the Court and should be sanctioned. Wachovia is ordered to submit its fee petition to the Court within 21 days of this Order. Additionally, a copy of this opinion will be forwarded to the Illinois Attorney Registration & Disciplinary Commission.

## VI.   Conclusion and Order

For the foregoing reasons, the Court finds in favor of Wachovia and against Defendants Loop, Jahelka, Nichols, and Greenblatt as to Counts II and IV and awards judgment against Defendants Greenblatt, Nichols, and Jahelka, jointly and severally, in the amount of $2,478,418.80 with interest from September 22, 2005 through the date of judgment. The Court also awards Wachovia its actual costs and attorneys fees incurred since September 22, 2005 through the date of judgment.

The Court finds in favor of Wachovia and against Loop and Banco on Counts VII and IX. The Court finds in favor of Scattered and Loop Properties and against Wachovia on Counts VIII and X. In accordance with 740 ILCS 160/8,[41] Banco's lien or security interest over Loop's assets,

---

[41]§ 740 ILCS 160/8.  [Creditor; action for relief]

  Sec. 8. (a) In an action for relief against a transfer or obligation under this Act, a creditor, subject to the limitations in Section 9 [740 ILCS 160/9], may obtain:

(1) avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim;

(2) an attachment or other provisional remedy against the asset transferred or other property of the transferee in accordance with the procedure prescribed by the Code of Civil Procedure [735 ILCS 5/1-100 et seq.];

(3) subject to applicable principles of equity and in accordance with applicable rules of civil procedure,

Loop's post-May 22, 2001 "compensation payments" to Jahelka and Nichols, and Loop's post-May 22, 2001 "investments" in EZ Links are hereby voided to satisfy Wachovia's claim.[42] Having twice obtained a judgment against Defendants, Wachovia may levy execution on the transferred assets or its proceeds in accordance with 740 ILCS 160/8.

In accordance with the Court's order granting Wachovia its attorneys' fees and costs under Counts II and IV and its order granting Wachovia's Petitions for Sanctions against Jordan, Wachovia shall submit a fee petition to the Court within 21 days of this Order. Wachovia's Motion to Strike Defendants' Post Trial Position Paper is denied as the Court finds that Dependants complied with the Court's order at the close of trial and Wachovia's Motion to Strike Gregory Jordan's affidavit is denied.

So ordered.

_____
Virginia M. Kendall
United States District Judge
Northern District of Illinois

Date: October 22, 2008

---

(A) an injunction against further disposition by the debtor or a transferee, or both, of the asset transferred or of other property;

(B) appointment of a receiver to take charge of the asset transferred or of other property of the transferee; or

(C) any other relief the circumstances may require.

(b) If a creditor has obtained a judgment on a claim against the debtor, the creditor, if the court so orders, may levy execution on the asset transferred or its proceeds.

[42] By its terms, the UFTA allows only equitable remedies such as avoidance, attachment, an injunction, or appointment of a receiver. *DFS Secured Healthcare Receivables Trust v. Caregivers Great Lakes, Inc.*, 384 F.3d 338, 353-55 (7th Cir. 2004).

# United States District Court
## Northern District of Illinois
### Eastern Division

WACHOVIA SECURITIES   et al

**JUDGMENT IN A CIVIL CASE**

v.

Case Number: 04 C 3082

NEUHAUSER

☐     Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury rendered its verdict.

X     Decision by Court.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that As to Counts II and IV, judgment in favor of Wachovia and against Defendants Loop, Jahelka, Nichols and Greenblatt, jointly and severally, in the amount of $2,478,418.80 with interest from September 22, 2005 through the date of judgment.  The Court also awards Wachovia its actual costs and attorneys fees incurred since September 22, 2005 through the date of judgment.

As to Counts VII and IX, judgment in favor of Wachovia and against Loop and Banco.  As to Counts VIII and X, judgment in favor of Scattered and Loop Properties and against Wachovia.  To satisfy Wachovia's claim, the Court voids Banco's lien or security interest over Loop's assets, Loop's post-May22, 2001 compensation payments to Jahelka and Nichols, and Loop's post-May 22, 2001 "investments" in EZ Links.  Wachovia may levy execution on the transferred assets or its proceeds.

Wachovia shall submit a fee petition to the Court within 21 days of this Order.

Wachovia's Motion to Strike Defendants' Post Trial Position Paper is denied.

Wachovia's Motion to Strike Gregory Jordan's affidavit is denied.

This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 10/23/2008

_____

/s/ J. Smith, Deputy Clerk

## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Virginia M. Kendall | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3082 | **DATE** | 1/4/2010 |
| **CASE TITLE** | WACHOVIA SECURITIES et al vs. NEUHAUSER | | |

### DOCKET ENTRY TEXT

The Court finds Judge Valdez's Report and Recommendation well-reasoned and thorough, including the $41,517.00 reduction calculated by Wachovia for fees associated with Attorney Jordon and redacted time entries. the Court overrules defendants Greenblatt, Jahelka, and Nicolas's objections to Judge Valdez's Report and Recommendation, and rules that the prejudgment interest rate should apply to the judgment. The amount of interest to be awarded, then, is the judgment amount of $2,478,418.80, multiplied by the interest rate (.05), multiplied by the number of days between September 22, 2005 and October 22, 2008 (1126) divided by the number of days in a year (365). That brings the total interest award to $382, 287.61. Court also orders that the Illinois prejudgment statutory interest rate should apply. Plaintiffs' motion for a final appealable order is granted.

■[ For further details see text below.]

Notices mailed by Judicial staff.

---

### STATEMENT

    Plaintiff Wachovia filed suit against Defendants Andrew A. Jahelka ("Jahelka"), Richard O. Nicolas ("Nicolas"), Leon A. Greenblatt III ("Greenblatt"), Banco Panamericano, Inc., Loop Corp., Loop Properties, Inc., and Scattered Corp. to collect a judgment debt of over $2.4 million. This Court entered a verdict in favor of Wachovia in a bench trial, and awarded Wachovia its actual costs and attorney's fees incurred between September 22, 2005 and the date of judgment. The Court also awarded sanctions against Loop's counsel Gregory Jordan, ordering him to reimburse Wachovia for all attorneys fees related to various acts of misconduct. On September 2, 2009, Magistrate Judge Maria Valdez issued a Report and Recommendation granting in part and denying in part Wachovia's Petition for Attorney's Fees. Wachovia filed response briefs on September 14, 2009, reducing its Petition by $41,517 to compensate for fees associated with Attorney Jordan and redacted time entries. Defendants Greenblatt, Jahelka, and Nicolas ("Objecting Defendants") now object to Magistrate Judge Valdez's Report and Recommendation. Wachovia also moves for a Final and Appealable Order determining the appropriate interest rate to be applied to the judgment. For the reasons stated, the Court denies Greenblatt, Jahelka, and Nicolas's Objections to Judge Valdez's Report and Recommendation. The Court also orders that the Illinois prejudgment statutory interest rate should apply.

    When a Magistrate Judge issues a Report and Recommendation and a party files objections to that Report, the District Court should "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and may either accept, reject, or modify these recommendations. 28 U.S.C. § 636(b)(1). Objecting Defendants first argue that Judge Valdez's Report and Recommendation improperly places the burden of proving reasonableness of the attorney's fees on them, rather than on Wachovia. This Court has wide discretion to determine the amount of an attorney's fee award. *See*

**STATEMENT**

*Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983); *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 551 (7th Cir. 1999). Although "the burden of proving the 'market rate' is on the fee applicant," "once the attorney provides evidence establishing his market rate, the burden shifts to the defendant to demonstrate why a lower rate should be awarded." *Spegon*, 175 F.3d at 554-55. The "market rate" for an attorney is the "rate that lawyers of similar ability and experience in the community normally charge their paying clients for the work in question," where the attorney's actually billing rate is "presumptively appropriate to use as the market rate." *Id.* at 555 (internal citation omitted). Wachovia's attorney, Gary Blackman, submitted two Affidavits in support of Wachovia's fee petition setting forth the market rate and averring that the hourly rates charged were comparable to the market rate for similar services performed for other Chicago clients. (R. 384, Ex. A at ¶¶ 8-9.) Furthermore, the "best evidence of the market value of legal services is what people will pay for it," *Stark v. PMM Am., Inc.*, 354 F.3d 666, 675 (7th Cir. 2004), and Blackman's Affidavits declare that Wachovia in fact paid all of the legal fees now sought. (R. 421, Ex. A ¶¶ 4-5). Based on these Affidavits, the Court finds that Wachovia has met its burden of showing reasonableness, such that the Objecting Defendants carry the burden of demonstrating that a lower rate should be awarded.

Objecting Defendants maintain that the fee petition improperly awards Wachovia attorney's fees for satellite matters beyond the veil-piercing counts (Counts II and IV) on which the Court issued judgment. Fees outside the scope of costs permitted by a prior order are not reimbursable. *See, e.g.*, *Heriaud v. Ryder Transp. Servs.*, No. 03-289, 2006 WL 681041 at *2-3 (N.D. Ill. March 14, 2006, Judge Paul Plunkett). For that reason, the attorney's fees and costs related to the portion of the Court's order sanctioning Attorney Jordan are not properly included in Wachovia's petition. However, as Judge Valdez reasoned, although the elements of different legal theories may differ, the facts forming the basis of those legal theories are often the same, such that an attorney's work might apply to numerous or all of the counts in a Complaint. It is reasonable, then, for Wachovia to maintain that much of its attorneys' research and time corresponded to both the veil-piercing and the other counts in its Complaint. The Objecting Defendants offer no evidence to counter Blackman's Affidavit maintaining that he subtracted over $140,000 in fees that were not directly related to the judgment on the veil-piercing counts. (R. 421 at ¶¶ 4-6.)

Objecting Defendants also take issue with what they deem "unreasonably lumped time entries" in Wachovia's fee petition. (R. 446 at p. 3.) "Although 'block billing' does not provide the best possible description of attorneys' fees, it is not a prohibited practice." *Farfaras v. Citizens Bank & Tr.*, 433 F.3d 558, 569 (7th Cir. 2006). Wachovia's time entries attached as exhibits to its fee petition generally contain detailed descriptions of the tasks performed. The exceptions are those entries redacted due to privilege concerns, which should be stricken from Wachovia's fee petition as Judge Valdez recommended. For these reasons, the Court finds Judge Valdez's Report and Recommendation well-reasoned and thorough, including the $41,517.00 reduction calculated by Wachovia for fees associated with Attorney Jordon and redacted time entries.

With respect to the second remaining issue of the appropriate interest rate to be applied to the judgment, the Court's opinion awarded interest "from September 22, 2005 through the date of judgment." (*See* R. 381). This order clearly provided for prejudgment interest: the date of commencement precedes the date of judgment, and the award was meant to compensate Wachovia for the lost time value of its money. *See Rowe v. Maremont Corp.*, 850 F.2d 1226, 1243 (7th Cir. 1988) ("The decision to award prejudgment interest rests in the trial court's discretion; the purpose of prejudgment interest is to compensate plaintiffs for the lost time value of money."). Because this case was decided under Illinois law, the 5% prejudgment interest rate set forth in the Illinois Interest Act applies. *See* 815 ILCS 205/2. The amount of interest to be awarded, then, is the judgment amount of $2,478,418.80, multiplied by the interest rate (.05), multiplied by the number of days between September 22, 2005 and October 22, 2008 (1126) divided by the number of days in a year (365). That brings the total interest award to $382, 287.61.

| STATEMENT |
| --- |

For the reasons stated, the Court overrules Greenblatt, Jahelka, and Nicolas's objections to Judge Valdez's Report and Recommendation, and rules that the prejudgment interest rate should apply to the judgment. This Judgment Order constitutes a final and appealable ruling.

# United States District Court
## Northern District of Illinois
### Eastern Division

WACHOVIA SECURITIES   et al

v.

NEUHAUSER et al

**JUDGMENT IN A CIVIL CASE**

Case Number: 04 C 3082

☐   Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been
tried and the jury rendered its verdict.

■   Decision by Court.  This action came to trial or hearing before the Court.  The issues
have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that  judgment is entered in favor of plaintiffs
Wachovia Securities et al and against defendants Neuhauser et al in the amount of
$2,478,418.80, multiplied by the interest rate (.05), multiplied by the number of days between
September 22, 2005 and October 22, 2008 (1126) divided by the number of days in a year
(365). That brings the total interest award to $382, 287.61.  Court also orders that the Illinois
prejudgment statutory interest rate should apply.  Plaintiffs are awarded attorney fees as
outlined in this court's order of 1/4/2010 and Magistrate Judge Valdez' report and
recommendation dated September 2, 2009 This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 1/4/2010

_____

/s/ J. Smith, Deputy Clerk

APPEAL, TERMED, VALDEZ

# United States District Court
## Northern District of Illinois - CM/ECF LIVE, Ver 4.0.3 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:04-cv-03082
## Internal Use Only

| | |
|---|---|
| Wachovia Securities, et al v. Neuhauser | Date Filed: 04/29/2004 |
| Assigned to: Honorable Virginia M. Kendall | Date Terminated: 10/22/2008 |
| Demand: $0 | Jury Demand: Defendant |
| Case in other court:  08-03992 | Nature of Suit: 190 Contract: Other |
|                        08-04018 | Jurisdiction: Diversity |
|                        08-04096 | |
|                        10-01203 | |
|                        Cir Ct of Cook Co, 04CH 5504 | |
| Cause: 28:1332 Diversity-Other Contract | |

## Plaintiff

**Wachovia Securities, LLC**
*a Delaware corporation*

represented by **Adam Brent Rome**
Levenfeld Pearlstein, LLC
2 North LaSalle Street
Suite 1300
Chicago, IL 60602
(312476-7585
Email: arome@lplegal.com
*ATTORNEY TO BE NOTICED*

**Beau T. Greiman**
Levenfeld Pearlstein
2 North LaSalle Street
13th Floor
Chicago, IL 60602
(312)346-8380
Email: bgreiman@lplegal.com
*ATTORNEY TO BE NOTICED*

**Christopher Scott Griesmeyer**
Greiman, Rome & Griesmeyer, P.C.
200 West Madison
Suite 755

Chicago, IL 60606
(312) 428-2750
Email: cgriesmeyer@lplegal.com
*ATTORNEY TO BE NOTICED*

**Gary Irwin Blackman**
Levenfeld Pearlstein
2 North LaSalle Street
13th Floor
Chicago, IL 60602
(312)346-8380
Email: gblackman@lplegal.com
*ATTORNEY TO BE NOTICED*

**Steven Pascal Gomberg**
Freeborn & Peters, LLP
311 S. Wacker
Suite 3000
Chicago, IL 60606
(312)360-6647
Fax: (312)360-6574
Email:
sgomberg@freebornpeters.com
*TERMINATED: 01/29/2008*

V.

**Defendant**

**David Neuhauser**                    represented by    **James Worlton Naisbitt**
James W. Naisbitt, Ltd.
300 S. Wacker Dr.
Suite 1700 A
Chicago, IL 60606-1441
(312)360-1171
Email: jnaisbitt@aol.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Philip Curley**
Robinson, Curley & Clayton, P.C.

300 South Wacker Drive
Suite 1700

Chicago, IL 60606
(312) 663-3100
Email:
pcurley@robinsoncurley.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Andrew A Jahelka**                    represented by **James Worlton Naisbitt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Smolens**
Law Office of Mark F. Smolens
300 South Wacker Drive
Suite 1700A
Chicago, IL 60606
(312) 662-1900
Fax: 312-663-0303
Email:
ryansmolensjones@hotmail.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael D Hayes**
Varga, Berger, Ledsky, Hayes &
Casey
224 South Michigan Avenue
Suite 350
Chicago, IL 60604
(312) 341-9400
Email: mhayes@vblhc.com
*TERMINATED: 01/22/2010*
*LEAD ATTORNEY*

**C. Philip Curley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Norman Benjamin Berger**
Varga Berger Ledsky Hayes &
Casey
224 South Michigan Avenue

Suite 350
Chicago, IL 60604
(312)341-9400
Email: nberger@vblhc.com
*TERMINATED: 01/22/2010*

**Defendant**

**Richard O Nichols**       represented by   **James Worlton Naisbitt**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Mark F. Smolens**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael D Hayes**
(See above for address)
*TERMINATED: 01/22/2010*
*LEAD ATTORNEY*

**C. Philip Curley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Norman Benjamin Berger**
(See above for address)
*TERMINATED: 01/22/2010*

**Defendant**

**Leon A Greenblatt, III**       represented by   **James Worlton Naisbitt**
(See above for address)
*TERMINATED: 01/12/2009*
*LEAD ATTORNEY*

**C. Philip Curley**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Colleen E. McManus**
Much Shelist Denenberg Ament
& Rubenstein, PC

191 N. Wacker Drive
Suite 1800
Chicago, IL 60606
(312) 521-2000
Email:
cmcmanus@muchshelist.com
*TERMINATED: 01/22/2010*

**Louis David Bernstein**
The Bernstein Law Firm, LLC
411 N. LaSalle Street
#200
Chicago, IL 60654
312-953-9552
Fax: 866-929-7392
Email: lbernstein@law-ldb.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Loop Corp.**                    represented by   **Gerald C. Willis , Jr.**
*a South Dakota corporation*                       McAndrews, Held & Malloy, P.C.

Northwestern Atrium Center
500 West Madison Street
Suite 3400
Chicago, IL 60661
(312) 775-8000
Email: jwillis@mcandrews-
ip.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Elizabeth D. Sharp**
Elizabeth D. Sharp, Esq.
330 South Wells Street
#706
Chicago, IL 60606
(312) 344-5018
Email: liz.sharp@sbcglobal.net
*TERMINATED: 10/18/2007*

**Paul W. McAndrews**
McAndrews, Held & Malloy, Ltd.

500 West Madison
Suite 3400
Chicago, IL 60661
(312)775-8000
Email:
pwmcandrews@mcandrews-
ip.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Loop Properties, Inc.**          represented by   **Elizabeth D. Sharp**
*an Illinois corporation*                          (See above for address)
                                                   *TERMINATED: 10/18/2007*

**Defendant**

**Scattered Corp.**                represented by   **Alan R. Dolinko**
*a South Dakota corporation*                        Robinson, Curley & Clayton, P.C.

                                                   300 South Wacker Drive
                                                   Suite 1700
                                                   Chicago, IL 60606
                                                   (312) 663-3100
                                                   Email:
                                                   adolinko@robinsoncurley.com
                                                   *ATTORNEY TO BE NOTICED*

                                                   **C. Philip Curley**
                                                   (See above for address)
                                                   *ATTORNEY TO BE NOTICED*

                                                   **John Henry Wickert**
                                                   Robinson, Curley & Clayton, P.C.

                                                   300 South Wacker Drive
                                                   Suite 1700
                                                   Chicago, IL 60606
                                                   (312) 663-3100
                                                   Email:
                                                   jwickert@robinsoncurley.com
                                                   *TERMINATED: 02/23/2009*

**Defendant**

**Banco Panamericano, Inc.**                 represented by **Alan R. Dolinko**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **C. Philip Curley**
                                             (See above for address)
                                             *ATTORNEY TO BE NOTICED*

                                             **John Henry Wickert**
                                             (See above for address)
                                             *TERMINATED: 02/23/2009*

V.

**Respondent**

**200 West Partners LP**                     represented by **Gregory James Jordan**
                                             Jordan, Kowal & Apostol LLC
                                             32nd Floor
                                             200 South Wacker Drive
                                             Chicago, IL 60606
                                             312-854-7181
                                             Fax: 312-276-9285
                                             Email: gjordan@akjltd.com
                                             *LEAD ATTORNEY*

                                             **Peter James Schmidt**
                                             Polsinelli Shalton Flanigan
                                             Suelthaus PC
                                             180 N. Stetson
                                             Suite 4525
                                             Chicago, IL 60601
                                             312-873-3627
                                             Fax: 312-873-3650
                                             Email: pschmidt@polsinelli.com
                                             *ATTORNEY TO BE NOTICED*

**Respondent**

**Chiplease, Inc.**                          represented by **Gregory James Jordan**
                                             (See above for address)
                                             *LEAD ATTORNEY*

                                             **Peter James Schmidt**
                                             (See above for address)

*ATTORNEY TO BE NOTICED*

**Respondent**

**EZ Links Golf LLC**                   represented by **Gregory James Jordan**
                                        (See above for address)
                                        *LEAD ATTORNEY*

                                        **Peter James Schmidt**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

**Respondent**

**EZ Links Golf, Inc.**                 represented by **Gregory James Jordan**
                                        (See above for address)
                                        *LEAD ATTORNEY*

                                        **Peter James Schmidt**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

**Respondent**

**Old Colony Partners LP**              represented by **Gregory James Jordan**
                                        (See above for address)
                                        *LEAD ATTORNEY*

                                        **Peter James Schmidt**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

**Respondent**

**Old Colony Properties, Inc.**         represented by **Gregory James Jordan**
                                        (See above for address)
                                        *LEAD ATTORNEY*

                                        **Peter James Schmidt**
                                        (See above for address)
                                        *ATTORNEY TO BE NOTICED*

**Respondent**

**Randolph Properties, Inc.**           represented by **Gregory James Jordan**
                                        (See above for address)
                                        *LEAD ATTORNEY*

|  |  |  |
|---|---|---|
|  |  | **Peter James Schmidt**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Respondent** |  |  |
| **Repurchase Corp.** | represented by | **Gregory James Jordan**<br>(See above for address)<br>*LEAD ATTORNEY* |
|  |  | **Peter James Schmidt**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Respondent** |  |  |
| **Rumpelstiltskin (USA)** | represented by | **Gregory James Jordan**<br>(See above for address)<br>*LEAD ATTORNEY* |
|  |  | **Peter James Schmidt**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Respondent** |  |  |
| **South Beach Securities, Inc.** | represented by | **Gregory James Jordan**<br>(See above for address)<br>*LEAD ATTORNEY* |
|  |  | **Peter James Schmidt**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Respondent** |  |  |
| **Sterling Telemanagement Consultants LLC** | represented by | **Gregory James Jordan**<br>(See above for address)<br>*LEAD ATTORNEY* |
|  |  | **Peter James Schmidt**<br>(See above for address)<br>*ATTORNEY TO BE NOTICED* |
| **Respondent** |  |  |
| **Sterling Telemanagement, Inc.** | represented by | **Gregory James Jordan**<br>(See above for address) |

*LEAD ATTORNEY*

**Peter James Schmidt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**
**Telegraph Properties, Inc.**          represented by  **Gregory James Jordan**
(See above for address)
*LEAD ATTORNEY*

**Peter James Schmidt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**
**Teletech Systems, Inc.**          represented by  **Gregory James Jordan**
(See above for address)
*LEAD ATTORNEY*

**Peter James Schmidt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**
**Michael May**          represented by  **Gregory James Jordan**
(See above for address)
*LEAD ATTORNEY*

**Peter James Schmidt**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Respondent**
**Gregory J Jordan**

**Respondent**
**Elizabeth Sharp**

**Counter Claimant**
**Wachovia Securities, LLC**          represented by  **Christopher Scott Griesmeyer**
*TERMINATED: 06/02/2004*          (See above for address)
*ATTORNEY TO BE NOTICED*

**Gary Irwin Blackman**
(See above for address)
*ATTORNEY TO BE NOTICED*

**Steven Pascal Gomberg**
(See above for address)
*TERMINATED: 01/29/2008*

V.

**Counter Defendant**

**David Neuhauser**          represented by  **James Worlton Naisbitt**
*TERMINATED: 06/02/2004*                    (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **C. Philip Curley**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Andrew A Jahelka**          represented by  **James Worlton Naisbitt**
*TERMINATED: 06/02/2004*                    (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **C. Philip Curley**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Richard O Nichols**          represented by  **James Worlton Naisbitt**
*TERMINATED: 06/02/2004*                    (See above for address)
                                            *LEAD ATTORNEY*
                                            *ATTORNEY TO BE NOTICED*

                                            **C. Philip Curley**
                                            (See above for address)
                                            *ATTORNEY TO BE NOTICED*

**Counter Defendant**

**Leon A Greenblatt, III**          represented by  **James Worlton Naisbitt**

*TERMINATED: 06/02/2004*         (See above for address)
*TERMINATED: 01/12/2009*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**C. Philip Curley**
(See above for address)
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/29/2004 | 1 | NOTICE OF REMOVAL by defendant from Circuit Court of Cook County with copy of complaint and summons, case no. 04 CH 5504 - Civil cover sheet - Appearance(s) of Christopher Scott Griesmeyer, Gary Irwin Blackman, Steven Pascal Gomberg as attorney(s) for defendant ( Documents: 1-1 through 1-3) (cdy) (Entered: 04/30/2004) |
| 04/29/2004 | | RECEIPT regarding payment of filing fee paid; on 4/29/04 in the amount of $150.00, receipt # 1092430. (cdy) (Entered: 04/30/2004) |
| 05/05/2004 | 2 | MINUTE ORDER of 5/5/04 by Hon. William T. Hart: Status hearing set for 05/26/04 at 11:00 a.m. Defendant's notice of removal fails to adequately allege diversity. The citizenship of a limited liability company is the citizenship of all its members. See Cosgrove v. Bartolotta, 150 F.3d 729, 731 (7th Cir. 1998). By 05/19/04, defendant shall file a statement setting forth the principal place of business of Prudential Securities Group, Inc. Mailed notice (cdy) (Entered: 05/06/2004) |
| 05/10/2004 | | SCHEDULE set on 5/10/04 by Hon. William T. Hart : Status hearing reset to 11:00 5/24/04 . Mailed notice (clw) (Entered: 05/10/2004) |
| 05/19/2004 | 3 | AMENDMENT by defendant of notice of removal; Notice (cdy) (Entered: 05/21/2004) |
| 05/21/2004 | 4 | ANSWER, affirmative defenses to removal complaint [1-1] and COUNTERCLAIM by defendant against plaintiffsi (Attachments); Notice (cdy) (Entered: 05/24/2004) |
| 05/24/2004 | | SCHEDULE set on 5/24/04 by Hon. William T. Hart : Status hearing held and continued to 11:00 6/30/04 . Mailed notice (clw) (Entered: 05/24/2004) |

| | | |
|---|---|---|
| 06/02/2004 | 5 | MINUTE ORDER of 6/2/04 by Hon. William T. Hart: Wachovia Securities, LLC, improperly named as Prudential Equity Group, Inc., is not proceeding with its claim in arbitration against plaintiffs. Plaintiffs' complaint is withdrawn. Parties are re-aligned and case caption is amended on its face to reflect plaintiff as Wachovia Securities, LLC and defendants are David Neuhauser, Andrew A. Jehelka, Richard O. Nichols and Leon A. Greenblatt, III. Therefore, the answer and affirmative defenses of Wachovia Securities, LLC are withdrawn and the counterclaims of Wachovia Securities, LLC are amended on their face and shall be referred to as Wachovia Securities, LLC's complaint. Defendants are given to 06/14/04 to answer or otherwise plead. (Entered Order.) Mailed notice (cdy) (Entered: 06/09/2004) |
| 06/02/2004 | | (Court only) *** Party David Neuhauser; Richard O Nichols; Wachovia Securities, LLC; Leon A Greenblatt, III and Andrew A Jahelka terminated. (cdy, ) (Entered: 03/11/2005) |
| 06/07/2004 | 6 | MOTION by defendants to reinstate the complaint (Attachments); Notice (cdy) (Entered: 06/10/2004) |
| 06/09/2004 | 7 | MINUTE ORDER of 6/9/04 by Hon. William T. Hart: Answer brief to defendants' motion to reinstate the complaint [6-1] due 06/16/04. Reply to answer brief due 06/23/04. Mailed notice (cdy) (Entered: 06/10/2004) |
| 06/14/2004 | 9 | 12(b)(6) MOTION by defendants to dismiss complaint ; Notice (cdy) (Entered: 06/24/2004) |
| 06/16/2004 | 8 | RESPONSE brief in opposition by Wachovia Securities, LLC to defendant's motion to reinstate the complaint [6-1] (Attachments); Notice. (rbf) (Entered: 06/17/2004) |
| 06/23/2004 | 10 | MINUTE ORDER of 6/23/04 by Hon. William T. Hart: Answer brief to defendants' 12(b)(6) motion to dismiss complaint [9-1] due 07/21/04. Reply to answer brief due 08/04/04. Ruling on defendants' 12(b)(6) motion to dismiss complaint will be by mail. Status hearing set for 06/30/04 is stricken. Discovery is stayed until defendants' 12(b)(6) motion to dismiss complaint is resolved. Mailed notice (cdy) (Entered: 06/24/2004) |
| 06/23/2004 | 11 | REPLY Brief in support by defendants to their motion to reinstate the complaint [6-1] (Attachments); Notice. (rbf) (Entered: 06/24/2004) |
| 07/12/2004 | 12 | MOTION by plaintiff for leave to file response brief in excess of |

| | | |
|---|---|---|
| | | 15 pages ; Notice (cdy) (Entered: 07/15/2004) |
| 07/14/2004 | 13 | MINUTE ORDER of 7/14/04 by Hon. William T. Hart: Plaintiff's motion for leave to file response brief in opposition to defendants' Rule 12(b)(6) motion to dismiss in excess of 15 pages [12-1], is granted. Mailed notice (cdy) (Entered: 07/15/2004) |
| 07/21/2004 | 14 | RESPONSE BRIEF by plaintiff Wachovia Sec LLC in opposition to defendants 12(b)(6) motion to dismiss complaint [9-1] (Attachments); Notice. (jmp) (Entered: 07/23/2004) |
| 07/22/2004 | 15 | TRANSCRIPT of proceedings for the following date(s): 05/24/04; before Honorable William T. Hart (cdy) (Entered: 07/23/2004) |
| 07/26/2004 | 16 | AGREED MOTION by defendants Neuhauser, Jahelka, Nichols and Greenblatt to extend time to file reply brief , and to file brief in excess of fifteen pages ; Notice (cdy) (Entered: 07/29/2004) |
| 07/28/2004 | 17 | MINUTE ORDER of 7/28/04 by Hon. William T. Hart: Defendants' agreed motion to extend time to file reply brief to their motion to dismiss to 08/18/04 and [16-1], for leave to file brief in excess of 15 pages [16-2] is granted. Mailed notice (cdy) (Entered: 07/29/2004) |
| 08/18/2004 | 18 | REPLY MEMORANDUM by defendants in support of their 12 (b)(6) motion to dismiss complaint [9-1]; Notice (cdy) (Entered: 08/19/2004) |
| 11/04/2004 | 19 | MINUTE ORDER of 11/4/04 by Hon. William T. Hart: Status hearing set for 11:00 a.m. on 12/8/04. Motions to reinstate the complaint [6-1] and to dismiss complaint [9-1] are granted in part and denied in part. Within 15 days, Wachovia shall file a motion in New York Stock Exchange arbitration Proceeding 2003-011927 requesting that the claims in that proceeding as against the Newhauser Individuals be dismissed without prejudice. Counts I, II and III of Wachovia's complaint are dismissed except to the extent they include a claim for promissory fraud based on the Neuhauser Individuals' contractual promise that they would use the Loop account for lawful transactions. Within 15 days, the Neuhauser Individuals shall answer the remaining allegations of Wachovia's complaint. All discovery is to be completed by 2/27/05. Entered Memorandum Opinion and Order. Notices mailed by judge's staff (vmj) (Entered: 11/05/2004) |
| 11/08/2004 | 20 | AGREED MOTION by defendants David Neuhauser, Andrew A |

| | | |
|---|---|---|
| | | Jahelka, Richard O Nichols, Leon A Greenblatt III, to extend time to file answer , and to reset status hearing ; Notice of motion. (rbf) (Entered: 11/12/2004) |
| 11/10/2004 | 21 | MINUTE ORDER of 11/10/04 by Hon. William T. Hart : Status hearing reset to 11:00 12/15/04. Defendants' agreed motion to extend time to file answer [20-1], and to reset status hearing is granted [20-2]. Mailed notice (rbf) (Entered: 11/12/2004) |
| 11/29/2004 | 22 | ANSWER by defendants to removal complaint [1-1]; Notice (cdy) (Entered: 11/30/2004) |
| 12/13/2004 | 23 | MOTION by defendant to quash third party subpoenas (Attachments); Notice (cdy) (Entered: 12/23/2004) |
| 12/15/2004 | | SCHEDULE set on 12/15/04 by Hon. William T. Hart : Status hearing reset to 11:00 12/22/04 . Mailed notice (clw) (Entered: 12/15/2004) |
| 12/22/2004 | 24 | MINUTE ORDER of 12/22/04 by Hon. William T. Hart: Status hearing held and continued to 04/06/05 at 11:00 a.m. Defendants' motion to quash third party subpoenas [23-1], is denied. Written discovery is to be completed by 03/15/05; oral discovery is to be completed by 07/29/05. Mailed notice (cdy) (Entered: 12/23/2004) |
| 02/04/2005 | 25 | MOTION by Defendants for protective order. (gma, ) (Entered: 02/07/2005) |
| 02/04/2005 | 26 | NOTICE of Motion by C. Philip Curley for presentment of MOTION by Defendants for protective order 25 before Honorable William T. Hart on 2/16/2005 at 11:00 AM. (gma, ) (Entered: 02/07/2005) |
| 02/04/2005 | 27 | MEMORANDUM by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in Support of motion for protective order 25 ; Exhibits. (gma, ) Modified on 12/16/2005 (ym, ). (Entered: 02/07/2005) |
| 02/10/2005 | 28 | AMENDED NOTICE of Motion by C. Philip Curley for presentment of MOTION by Defendants for protective order 25 before Honorable William T. Hart on 2/16/2005 at 11:00 AM. (gma, ) (Entered: 02/10/2005) |
| 02/11/2005 | 29 | RESPONSE BRIEF by plaintiff Wachovia Securities, LLC in opposition to defendants' motion for protective order 25 ; Notice; Exhibits. (mjc, ) Modified on 2/2/2006 (ym, ). (Entered: |

| | | |
|---|---|---|
| | | 02/15/2005) |
| 02/16/2005 | 30 | MINUTE entry before Judge William T. Hart : Defendants' motion for protective order 25 is entered and continued to 3/9/2005 at 11:00 AM. Mailed notices. (clw, ) (Entered: 02/16/2005) |
| 03/03/2005 | 31 | AGREED MOTION by Plaintiff, Defendants for entry of stipulated protective order (gma, ) (Entered: 03/03/2005) |
| 03/03/2005 | 32 | NOTICE of Motion by Gary Irwin Blackman for presentment of AGREED MOTION by Plaintiff, Defendants for entry of stipulated protective order 31 before Honorable William T. Hart on 3/9/2005 at 11:00 AM. (gma, ) (Entered: 03/03/2005) |
| 03/03/2005 | 33 | MOTION by Plaintiff Wachovia Securities, LLC to compel answers to interrogatories and production of documents (gma, ) Modified on 10/11/2006 (lcw, ). (Entered: 03/03/2005) |
| 03/03/2005 | 34 | NOTICE of Motion by Gary Irwin Blackman for presentment of MOTION by Plaintiff Wachovia Securities, LLC to compel answers to interrogatories and production of documents 33 before Honorable William T. Hart on 3/9/2005 at 11:00 AM. (gma, ) (Entered: 03/03/2005) |
| 03/03/2005 | 35 | MEMORANDUM OF LAW by Wachovia Securities, LLC in support of plaintiff's motion to compel answers to interrogatories and production of documents 33 ; Notice. (cdy, ) (Entered: 03/07/2005) |
| 03/04/2005 | 37 | REPLY BRIEF by defendants in support of motion for protective order; Notice. (cdy, ) Modified on 4/7/2005 (cdy, ). (Entered: 03/08/2005) |
| 03/07/2005 | 36 | MOTION by Defendants to substitute James W. Naisbitt as counsel (gma, ) (Entered: 03/07/2005) |
| 03/09/2005 | 38 | ATTORNEY appearance for defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III; Notice.(cdy, ) (Entered: 03/11/2005) |
| 03/09/2005 | 39 | MINUTE entry before Judge William T. Hart : Defendants' motion to substitute counsel 36 is granted; C. Philip Curley and John H. Wickett are withdrawn as counsel for defendants; James W. Naisbitt is given leave to file his appearance as counsel for defendants. Agreed motion for entry of stipulated protective order 31 is denied without prejudice. Plaintiff's motion to compel 33 |

| | | |
|---|---|---|
| | | and defendants' motion for protective order 37 are continued to 4/6/2005 at 11:00 a.m. Written discovery cut-off date of 03/15/05 is vacated. Mailed notice (cdy, ) (Entered: 03/14/2005) |
| 04/04/2005 | | (Court only) ***Motions terminated: (cdy, ) (Entered: 04/07/2005) |
| 04/06/2005 | 40 | MINUTE entry before Judge William T. Hart : Defendants' motion for protective order 25 is granted as stated in open court; dates are from 1/1/2000 through 4/29/2004. Supplement to plaintiff's motion to compel is due by 4/13/05; answer due by 4/20/05. Status hearing held and continued to 7/6/2005 at 11:00 AM. Mailed notice (clw, ) (Entered: 04/06/2005) |
| 04/06/2005 | 41 | MINUTE entry before Judge William T. Hart : Enter stipulated order for confidential treatment of documents, testimony and information. No notices. (cdy, ) (Entered: 04/08/2005) |
| 04/06/2005 | 42 | STIPULATED ORDER FOR CONFIDENTIAL TREATMENT OF DOCUMENTS, TESTIMONY AND INFORMATION. Signed by Judge William T. Hart on 4/6/2005. (cdy, ) (Entered: 04/08/2005) |
| 04/13/2005 | 43 | SUPPLEMENTAL BRIEF by Wachovia Securities, LLC in support of plaintiff's motion to compel answers to interrogatories and production of documents; Notice. (cdy, ) (Entered: 04/18/2005) |
| 04/20/2005 | 44 | MEMORANDUM by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in Opposition to plaintiff's motion to compel; plaintiff's memorandum in support; and plaintiff's supplemental brief in support of plaintiff's motion to compel. (rbf, ) (Entered: 04/20/2005) |
| 04/20/2005 | 45 | NOTICE by all defendants of filing regarding defendants memorandum in opposition to plaintiff's motion to compel, plaintiff's memorandum in support and plaintiff's supplemental brief in support of plaintiff's motion to compel. (rbf, ) (Entered: 04/20/2005) |
| 05/04/2005 | 46 | TRANSCRIPT of proceedings for the following dates: 12/22/04 and 04/06/05; Before the Honorable William T. Hart. (46-1 through 46-2). (cdy, ) Modified on 5/6/2005 (cdy, ). (Entered: 05/06/2005) |
| 05/10/2005 | 47 | MINUTE entry before Judge William T. Hart : Plaintiff's motion to compel 33 is granted in part and denied in part. Consistent with |

|            |    |                                                                                                                                                                                                                                                |
|------------|----|------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |    | today's ruling, defendants shall respond to the interrogatories and document requests within 20 days. Notices mailed by judge's staff. (cdy, ) (Entered: 05/12/2005)                                                                              |
| 05/10/2005 | 48 | MEMORANDUM Opinion and Order. Signed by Judge William T. Hart on 5/10/2005.(cdy, ) (Entered: 05/12/2005)                                                                                                                                         |
| 05/13/2005 | 49 | MOTION by Plaintiff Wachovia Securities, LLC for leave to file first amended complaint (gma, ) (Entered: 05/13/2005)                                                                                                                             |
| 05/13/2005 | 50 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of MOTION by Plaintiff Wachovia Securities, LLC for leave to file first amended complaint 49 before Honorable William T. Hart on 5/18/2005 at 11:00 AM. (gma, ) (Entered: 05/13/2005) |
| 05/18/2005 | 51 | MINUTE entry before Judge William T. Hart : Plaintiff's motion for leave to file amended complaint with summons to issue 49 is granted. Status hearing previously set for 7/6/2005 at 11:00 a.m. stands. Mailed notice. (cdy, ) (Entered: 05/20/2005) |
| 05/18/2005 | 52 | FIRST AMENDED complaint by Wachovia Securities, LLC,against David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III; Notice. (cdy, ) (Entered: 05/20/2005) |
| 05/18/2005 | 53 | SUMMONS Issued as to Defendants Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. (cdy, ) (Entered: 05/20/2005)                                                                                                        |
| 06/03/2005 | 60 | SUMMONS returned executed by Wachovia Securities, LLC as to Banco Panamericano, Inc. on 5/24/2005, answer due 6/13/2005. (cdy, ) (Entered: 06/13/2005)                                                                                           |
| 06/03/2005 | 61 | SUMMONS Returned Executed by Wachovia Securities, LLC as to Loop Properties, Inc. on 5/24/2005, answer due 6/13/2005. (cdy, ) (Entered: 06/13/2005)                                                                                              |
| 06/03/2005 | 62 | SUMMONS Returned Executed by Wachovia Securities, LLC as to Scattered Corp. on 5/24/2005, answer due 6/13/2005. (cdy, ) (Entered: 06/13/2005)                                                                                                    |
| 06/06/2005 | 54 | MOTION by Defendants to strike paragraphs 55 through 57 of first amended complaint pursuant to Federal Rule of Civil Procedure 12(F) (gma, ) (Entered: 06/06/2005)                                                                               |
| 06/06/2005 | 55 | NOTICE of Motion by James Worlton Naisbitt for presentment of                                                                                                                                                                                   |

| | | |
|---|---|---|
| | | MOTION by Defendants to strike paragraphs 55 through 57 of first amended complaint pursuant to Federal Rule of Civil Procedure 12(F) 54 before Honorable William T. Hart on 6/8/2005 at 11:00 AM. (gma, ) (Entered: 06/06/2005) |
| 06/06/2005 | 56 | MOTION by Defendants for a ten-day extension of time to answer or otherwise plead to plaintiff Wachovia's first amended complaint (gma, ) (Entered: 06/06/2005) |
| 06/06/2005 | 57 | NOTICE of Motion by James Worlton Naisbitt for presentment of MOTION by Defendants for a ten-day extension of time to answer or otherwise plead to plaintiff Wachovia's first amended complaint 56 before Honorable William T. Hart on 6/8/2005 at 11:00 AM. (gma, ) (Entered: 06/06/2005) |
| 06/06/2005 | 58 | AFFIDAVIT of James W. Naisbitt (gma, ) (Entered: 06/06/2005) |
| 06/08/2005 | 59 | MINUTE entry before Judge William T. Hart : Defendants' motion to strike 54 is denied without prejudice. Defendants' motion for extension of time to 6/17/05 to answer or otherwise plead to the first amended complaint 56 is granted Mailed notice (clw, ) (Entered: 06/08/2005) |
| 06/13/2005 | 63 | MOTION by Defendants Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. to extend time to answer or otherwise plead (gma, ) (Entered: 06/13/2005) |
| 06/13/2005 | 64 | NOTICE of Motion by defendants for presentment of MOTION by Defendants Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. to extend time to answer or otherwise plead 63 before Honorable William T. Hart on 6/22/2005 at 11:00 AM. (gma, ) (Entered: 06/13/2005) |
| 06/13/2005 | 65 | ATTORNEY appearance for defendants Scattered Corp., Banco Panamericano, Inc. by Alan R. Dolinko, John Henry Wickert, C. Philip Curley; Notice. (cdy, ) (Entered: 06/15/2005) |
| 06/13/2005 | 66 | ATTORNEY appearance for defendant Loop Properties, Inc. by Elizabeth D. Sharp; Notice. (cdy, ) Modified on 8/10/2007 (lcw, ). (Entered: 06/15/2005) |
| 06/14/2005 | 69 | RESPONSE BRIEF by plaintiff Wachovia Securities, LLC in opposition to additional defendants' motion to extend time and employment of Robinson, Curley & Clayton, P.C. as counsel for additional defendants; Notice. (cdy, ) (Entered: 06/17/2005) |
| 06/15/2005 | 67 | MOTION by Defendant Loop Properties, Inc. to withdraw |

| | | |
|---|---|---|
| | | appearance for defendant (gma, ) (Entered: 06/16/2005) |
| 06/15/2005 | 68 | NOTICE of Motion by Scattered Corp., Banco Panamericano, Inc. for presentment of MOTION by Defendant Loop Properties, Inc. to withdraw appearance for defendant 67 before Honorable William T. Hart on 6/22/2005 at 11:00 AM. (gma, ) (Entered: 06/16/2005) |
| 06/17/2005 | 70 | MOTION by Plaintiff to deem service effected upon defendant Loop Corp. or to compel appearance of defendant Greenblatt (gma, ) (Entered: 06/17/2005) |
| 06/17/2005 | 71 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of MOTION by Plaintiff to deem service effected upon defendant Loop Corp. or to compel appearance of defendant Greenblatt 70 before Honorable William T. Hart on 6/22/2005 at 11:00 AM. (gma, ) (Entered: 06/17/2005) |
| 06/17/2005 | 72 | ANSWER by individual defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols and Leon A Greenblatt, IIIto first amended complaint and affirmative defenses ; Notice. (mjc, ) (Entered: 06/23/2005) |
| 06/20/2005 | 427 | REPLY in Support of motion to extend time to answer or otherwise plead by Defendants Scattered Corp., Banco Panamericano, Inc. (Poor Quality Original - Paper Document on File.) (Previously misplaced document.) (td, ) (Entered: 02/09/2009) |
| 06/20/2005 | 428 | NOTICE of Filing by Scattered Corp., Banco Panamericano, Inc. re reply in Support of motion to extend time to answer or otherwise plead 427 . (Previously misplaced document.) (td, ) (Entered: 02/09/2009) |
| 06/22/2005 | 73 | MINUTE entry before Judge William T. Hart : Motion hearing held. Motion for extension of time to answer 63 is granted. Defendants are given to 7/1/2005 to answer or otherwise plead to the amended complaint. Plaintiff's motion to deem service effected or to compel 70 is denied without prejudice as moot. Defendant Loop Properties, Inc.'s motion to withdraw appearance of C. Philip Curley, John H. Wickert and Alan R. Dolinko as its counsel since Elizabeth D. Sharp will be its sole counsel of record 67 is granted. Discovery deadline is vacated. Status hearing reset for 9/14/2005 at 11:00 AM. Mailed notice (clw, ) (Entered: 06/24/2005) |
| | | |

| 07/01/2005 | 74 | ATTORNEY Appearance for Defendant Loop Corp. by Elizabeth D. Sharp (las, ) (Entered: 07/07/2005) |
| 07/01/2005 | 75 | ANSWER to first amended complaint by Loop Corp., Loop Properties, Inc., Scattered Corp and Banco Panamericano, Inc. ; Notice(las, ) (Entered: 07/07/2005) |
| 07/06/2005 | 76 | NOTICE by defendants of filing attorney appearance 74 (eav, ) (Entered: 07/12/2005) |
| 07/11/2005 | 77 | CORPORATE disclosure pursuant to Fed.R.Civ.P. 7.1 and Local Rule 3.2 by Loop Corp., Loop Properties, Inc.; Notice. (cdy, ) (Entered: 07/14/2005) |
| 07/11/2005 | 78 | CORPORATE disclosure pursuant to Fed.R.Civ.P. 7.1 and L.R. 3.2 by Scattered Corp., Banco Panamericano, Inc.; Notice. (cdy, ) (Entered: 07/14/2005) |
| 08/03/2005 | 79 | MOTION by Plaintiff Wachovia Securities, LLC to reassign and consolidate related case (gma, ) (Entered: 08/04/2005) |
| 08/03/2005 | 80 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of MOTION by Plaintiff Wachovia Securities, LLC to reassign and consolidate related case 79 before Honorable William T. Hart on 8/10/2005 at 11:00 AM. (gma, ) Modified on 5/14/2008 (gmr, ). (Entered: 08/04/2005) |
| 08/03/2005 | 82 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion to consolidate cases, motion to reassign case 79 before Honorable William T. Hart on 8/10/2005 at 11:00 a.m. (cdy, ) (Entered: 08/09/2005) |
| 08/05/2005 | 81 | RESPONSE by Defendant Loop Corp. to petition and motion to confirm arbitration award; Notice. (cdy, ) (Entered: 08/09/2005) |
| 08/10/2005 | 83 | MINUTE entry before Judge William T. Hart : Plaintiff's motion to consolidate cases 79 is denied without prejudice. Plaintiff's motion to reassign case 05 C 3788 as related 79 is granted. No notice (clw, ) (Entered: 08/10/2005) |
| 09/01/2005 | 84 | MOTION by Plaintiff Wachovia Securities, LLC to disqualify C. Phillip Curley, Elizabeth D. Sharp, Robinson Curley & Clayton P.C. (gma, ) (Entered: 09/01/2005) |
| 09/01/2005 | 85 | NOTICE of Motion by Wachovia Securities, LLC for presentment of MOTION by Plaintiff Wachovia Securities, LLC to disqualify C. Phillip Curley, Elizabeth D. Sharp, Robinson Curley & Clayton P.C. 84 before Honorable William T. Hart on |

| | | 9/14/2005 at 11:00 AM. (gma, ) (Entered: 09/01/2005) |
|---|---|---|
| 09/01/2005 | 86 | MEMORANDUM OF LAW by Wachovia Securities, LLC in Support of MOTION by Plaintiff Wachovia Securities, LLC to disqualify C. Phillip Curley, Elizabeth D. Sharp, Robinson Curley & Clayton P.C 84 . (Poor Quality Original - Paper Document on File.) (gma, ) Modified on 10/21/2008 (gmr, ). (Entered: 09/01/2005) |
| 09/08/2005 | 87 | ATTORNEY Appearance for Plaintiff Wachovia Securities, LLC by Beau T. Greiman; Notice. (cdy, ) (Entered: 09/13/2005) |
| 09/14/2005 | 88 | MINUTE entry before Judge William T. Hart : Plaintiff's motion to disqualify counsel 84 is denied without prejudice. Status hearing held on 9/14/05. Parties are to file a discovery plan by 10/3/2005. Status hearing set for 10/5/2005 at 11:00 AM. Mailed notice (clw, ) (Entered: 09/20/2005) |
| 09/22/2005 | 89 | MOTION by Defendants Scattered Corp., Banco Panamericano, Inc. for extension of time to respond to discovery and for protective order.( Exhibits) (vcf, ) (Entered: 09/23/2005) |
| 09/22/2005 | 90 | NOTICE of Motion by Scattered Corp., Banco Panamericano, Inc. for presentment of motion for extension of time to respond to discovery and for protective order 89 before Honorable William T. Hart on 9/28/2005 at 11:00 AM. (vcf, ) (Entered: 09/23/2005) |
| 09/28/2005 | 91 | MINUTE entry before Judge William T. Hart : Defendants' motion for extension of time to respond to discovery and for protective order 89 is granted. Mailed notice (clw, ) (Entered: 09/28/2005) |
| 10/03/2005 | 92 | JOINT DISCOVERY PLAN by Wachovia Securities, LLC (Griesmeyer, Christopher) Modified on 10/4/2005 (ntf, ). (Entered: 10/03/2005) |
| 10/03/2005 | 93 | NOTICE by Wachovia Securities, LLC of joint discovery plan 92 (Griesmeyer, Christopher) Modified on 10/4/2005 (ntf, ). (Entered: 10/03/2005) |
| 10/05/2005 | 94 | MINUTE entry before Judge William T. Hart : Status hearing held on 10/5/05. Completion of written discovery by 12/31/2005; all fact discovery by 3/31/2006; expert discovery by 5/31/2006. Status hearing set for 3/22/2006 at 11:00 AM. Mailed notice (clw, ) (Entered: 10/07/2005) |
| 10/25/2005 | 95 | MOTION by Plaintiff Wachovia Securities, LLC to compel |

| | | |
|---|---|---|
| | | *production of documents* (Griesmeyer, Christopher) (Entered: 10/25/2005) |
| 10/25/2005 | 96 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion to compel 95 before Honorable William T. Hart on 11/2/2005 at 11:00 AM. (Griesmeyer, Christopher) (Entered: 10/25/2005) |
| 10/25/2005 | 97 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 95 *production of documents* (Attachments: # 1 Exhibit Exhibits 1 through 8# 2 Exhibit Exhibits 9 through 13# 3 Exhibit Exhibits 14 through 18# 4 Exhibit Exhibits 19 through 23# 5 Exhibit Exhibits 24 through 29# 6 Exhibit Exhibits 30 through 33)(Griesmeyer, Christopher) (Entered: 10/25/2005) |
| 10/25/2005 | 98 | MOTION by Plaintiff Wachovia Securities, LLC to compel *Michael May, CPA's Production of Documents* (Griesmeyer, Christopher) (Entered: 10/25/2005) |
| 10/25/2005 | 99 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion to compel 98 before Honorable William T. Hart on 11/2/2005 at 11:00 AM. (Griesmeyer, Christopher) (Entered: 10/25/2005) |
| 10/25/2005 | 100 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 98 *Michael May, CPA's Production of Documents* (Attachments: # 1 Exhibit A through C# 2 Exhibit D through H# 3 Exhibit I through K# 4 Exhibit L through O# 5 Exhibit P through R# 6 Exhibit S# 7 Exhibit T# 8 Exhibit U (part one)# 9 Exhibit U (part two)# 10 Exhibit V)(Griesmeyer, Christopher) (Entered: 10/25/2005) |
| 10/27/2005 | 101 | TRANSCRIPT of proceedings for the following dates: 09/14/05; Before the Honorable William T. Hart. (mjc, ) (Entered: 10/28/2005) |
| 10/31/2005 | 102 | MOTION by Plaintiff Wachovia Securities, LLC to strike *Defendants' Designation of Discovery Objections* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 103 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to strike 102 (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 104 | MOTION by Plaintiff Wachovia Securities, LLC to compel *Loop Corp.Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |

| | | |
|---|---|---|
| 10/31/2005 | 105 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 104 *Loop Corp. Answers to Interrogatories* (Attachments: # 1 Exhibit)(Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 106 | MOTION by Plaintiff Wachovia Securities, LLC to compel *Loop Properties' Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 107 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 106 *Loop Properties' Answers to Interrogatories* (Attachments: # 1 Exhibit)(Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 108 | MOTION by Plaintiff Wachovia Securities, LLC to compel *Scattered Corp. Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 109 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 108 *Scattered Corp.'s Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 110 | MOTION by Plaintiff Wachovia Securities, LLC to compel *Banco Panamericano's Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 111 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 110 *Banco Panamericano's Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 112 | MOTION by Plaintiff Wachovia Securities, LLC to compel *Individual Defendants' Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 113 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 112 *Individual Defendants' Answers to Interrogatories* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 114 | MOTION by Plaintiff Wachovia Securities, LLC to compel *Corporate Defendants' Production of Documents* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 115 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 114 *corporate defendants' Production of Documents* (Attachments: # 1 Exhibit)(Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 116 | MOTION by Plaintiff Wachovia Securities, LLC to compel |

| | | |
|---|---|---|
| | | *Individual Defendants' Production of Documents* (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 117 | MEMORANDUM by Wachovia Securities, LLC in Support of motion to compel 116 *Individual Defendants' Production of Documents* (Attachments: # 1 Exhibit)(Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 10/31/2005 | 118 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion to compel 116 , motion to compel 106 , motion to compel 114 , motion to compel 110 , motion to strike 102 , motion to compel 108 , motion to compel 104 , motion to compel 112 before Honorable William T. Hart on 11/2/2005 at 11:00 AM. (Griesmeyer, Christopher) (Entered: 10/31/2005) |
| 11/02/2005 | 119 | MINUTE entry before Judge William T. Hart : Motion hearing held. Plaintiff's motion to strike 102 is granted. Briefing schedule set on plaintiff's motions to compel 95 , 98 , 104 , 106 , 108 , 114 , 110 , 112 , 116 as follows: Responses due by 11/9/2005 Replies due by 11/16/2005. Rule by mail. Mailed notice (clw, ) (Entered: 11/02/2005) |
| 11/02/2005 | 120 | MINUTE entry before Judge William T. Hart : The stipulated confidentiality order is amended to include third parties. Status hearing reset 1/11/06 at 11:00 a.m. Mailed notice (mjc, ) (Entered: 11/07/2005) |
| 11/02/2005 | 121 | ORDER Signed by Judge William T. Hart on 11/2/2005.(mjc, ) (Entered: 11/07/2005) |
| 11/09/2005 | 122 | MEMORANDUM by Loop Corp. in Opposition to *Plaintiff's Motion to Compel Loop* (Attachments: # 1 Exhibit 12.20.04 Letter# 2 Exhibit 03.26.04 Letter# 3 Exhibit Interrogatory Answers)(Sharp, Elizabeth) (Entered: 11/09/2005) |
| 11/09/2005 | 123 | MEMORANDUM by Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. in Opposition to *Motion to Compel Production of Documents* (Wickert, John) (Entered: 11/09/2005) |
| 11/09/2005 | 124 | MEMORANDUM by Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. in Opposition to *Motion to Compel Answers* (Attachments: # 1 Exhibit Judgment# 2 Exhibit Supplemental Answers and Objections# 3 Exhibit Transcript Proceedings 8-24-05# 4 Exhibit Notification of Docket Entry# 5 Exhibit Opinion and Order# 6 Exhibit Wachovia Subsidiaries# 7 |

| | | |
|---|---|---|
| | | Exhibit Wachovia Counterclaim/Chart# 8 Exhibit Transcript of Proceedings 4-6-05# 9 Exhibit Group Exhibit I and J)(Wickert, John) (Entered: 11/09/2005) |
| 11/09/2005 | 125 | RESPONSE by 200 West Partners LP, Chiplease, Inc., EZ Links Golf LLC, EZ Links Golf, Inc., Old Colony Partners LP, Old Colony Properties, Inc., Randolph Properties, Inc., Repurchase Corp., Rumpelstiltskin (USA), South Beach Securities, Inc., Sterling Telemanagement Consultants LLC, Sterling Telemanagement, Inc., Telegraph Properties, Inc., Teletech Systems, Inc. to MOTION by Plaintiff Wachovia Securities, LLC to compel *production of documents* 95 (Jordan, Gregory) (Entered: 11/09/2005) |
| 11/09/2005 | 126 | NOTICE by 200 West Partners LP, Chiplease, Inc., EZ Links Golf LLC, EZ Links Golf, Inc., Old Colony Partners LP, Old Colony Properties, Inc., Randolph Properties, Inc., Repurchase Corp., Rumpelstiltskin (USA), South Beach Securities, Inc., Sterling Telemanagement Consultants LLC, Sterling Telemanagement, Inc., Telegraph Properties, Inc., Teletech Systems, Inc. re response to motion, 125 (Jordan, Gregory) (Entered: 11/09/2005) |
| 11/09/2005 | 127 | RESPONSE by Michael May to MOTION by Plaintiff Wachovia Securities, LLC to compel *Michael May, CPA's Production of Documents* 98 (Jordan, Gregory) (Entered: 11/09/2005) |
| 11/09/2005 | 128 | NOTICE by Michael May re response to motion 127 (Jordan, Gregory) (Entered: 11/09/2005) |
| 11/09/2005 | 136 | MEMORANDUM by Individual Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in Opposition to plaintiff's motions to compel: (1) answers to second set of interrogatories; (2) documents pursuant to second request for production; and (3) plaintiff's memoranda in support of motions to compel 104 , 98 , 116 , 106 , 112 , 95 , 114 , 110 , 108 ; Notice. (mjc) (Entered: 11/14/2005) |
| 11/11/2005 | 129 | RESPONSE by Michael May to MOTION by Plaintiff Wachovia Securities, LLC to compel *Michael May, CPA's Production of Documents* 98 (Schmidt, Peter) (Entered: 11/11/2005) |
| 11/11/2005 | 130 | RESPONSE by Respondents 200 West Partners LP, Chiplease, Inc., EZ Links Golf LLC, EZ Links Golf, Inc., Old Colony Partners LP, Old Colony Properties, Inc., Randolph Properties, Inc., Repurchase Corp., Rumpelstiltskin (USA), South Beach |

| | | |
|---|---|---|
| | | Securities, Inc., Sterling Telemanagement Consultants LLC, Sterling Telemanagement, Inc., Telegraph Properties, Inc., Teletech Systems, Inc. to motion to compel 95 (Schmidt, Peter) (Entered: 11/11/2005) |
| 11/11/2005 | 131 | ATTORNEY Appearance for Respondents 200 West Partners LP, Chiplease, Inc., EZ Links Golf LLC, EZ Links Golf, Inc., Old Colony Partners LP, Old Colony Properties, Inc., Randolph Properties, Inc., Repurchase Corp., Rumpelstiltskin (USA), South Beach Securities, Inc., Sterling Telemanagement Consultants LLC, Sterling Telemanagement, Inc., Telegraph Properties, Inc., Teletech Systems, Inc., Michael May by Peter James Schmidt (Schmidt, Peter) (Entered: 11/11/2005) |
| 11/11/2005 | 132 | ATTORNEY Appearance for Respondents 200 West Partners LP, Chiplease, Inc., EZ Links Golf LLC, EZ Links Golf, Inc., Old Colony Partners LP, Old Colony Properties, Inc., Randolph Properties, Inc., Repurchase Corp., Rumpelstiltskin (USA), South Beach Securities, Inc., Sterling Telemanagement Consultants LLC, Sterling Telemanagement, Inc., Telegraph Properties, Inc., Teletech Systems, Inc., Michael May by Gregory James Jordan (Jordan, Gregory) (Entered: 11/11/2005) |
| 11/14/2005 | 133 | MOTION by Plaintiff Wachovia Securities, LLC for leave to file excess pages *for Reply Brief* (Griesmeyer, Christopher) (Entered: 11/14/2005) |
| 11/14/2005 | 134 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion for leave to file excess pages 133 before Honorable William T. Hart on 11/16/2005 at 11:00 AM. (Griesmeyer, Christopher) (Entered: 11/14/2005) |
| 11/14/2005 | 135 | *Amended* NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion for leave to file excess pages 133 before Honorable William T. Hart on 11/16/2005 at 11:00 AM. (Griesmeyer, Christopher) (Entered: 11/14/2005) |
| 11/16/2005 | 137 | REPLY by Wachovia Securities, LLCin Support of MOTION by Plaintiff Wachovia Securities, LLC to compel *Michael May, CPA's Production of Documents* 98 (Griesmeyer, Christopher) (Entered: 11/16/2005) |
| 11/16/2005 | 138 | REPLY *BRIEF IN SUPPORT OF MOTIONS TO COMPEL INDIVIDUAL DEFENDANTS' ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS RESPONSIVE TO REQUESTS TO PRODUCE* (Attachments: # 1 |

| | | |
|---|---|---|
| | | Exhibit 1 and 2)(Griesmeyer, Christopher) (Entered: 11/16/2005) |
| 11/16/2005 | 139 | REPLY *BRIEF IN SUPPORT OF MOTIONS TO COMPEL CORPORATE DEFENDANTS' ANSWERS TO INTERROGATORIES AND PRODUCTION OF DOCUMENTS RESPONSIVE TO REQUESTS TO PRODUCE* (Attachments: # 1 Exhibit 1 through 3# 2 Exhibit 4 through 6)(Griesmeyer, Christopher) (Entered: 11/16/2005) |
| 11/16/2005 | 140 | MINUTE entry before Judge William T. Hart : Plaintiff's motion for leave to file consolidated reply brief in excess of 15 pages 133 is granted. (clw, ) (Entered: 11/17/2005) |
| 01/11/2006 | 141 | MINUTE entry before Judge William T. Hart : Status hearing held on 1/11/2006. Fact discovery is extended to 4/28/2006. Status hearing set for 4/26/2006 at 11:00 AM. (clw, ) (Entered: 01/11/2006) |
| 01/23/2006 | 144 | EXECUTIVE COMMITTEE ORDER: Case reassigned to Judge Virginia M. Kendall for all further proceedings. Signed by Executive Committee on 1/23/06. Mailed notice(cem, ) (Entered: 01/27/2006) |
| 01/24/2006 | 142 | MINUTE entry before Judge William T. Hart : Status hearing set for 4/26/2006 is stricken since this case has been reassigned to Judge Kendall. (clw, ) (Entered: 01/24/2006) |
| 01/24/2006 | 143 | TRANSCRIPT of proceedings for the following dates: 11/2/05; Before the Honorable William T. Hart. (mjc, ) (Entered: 01/27/2006) |
| 01/27/2006 | 145 | MINUTE entry before Judge Virginia M. Kendall : Initial status hearing set for 2/21/06 at 10:45 a.m. before Judge Kendall in Courtroom 1719. By 2/10/06, counsel are directed to confer, prepare, and file a Joint Status Report as directed in the Order Requiring Status Report and Setting Status Hearing for Newly Assigned Cases to the Calendar of Judge Kendall. Mailed notice (gmr, ) (Entered: 01/27/2006) |
| 02/03/2006 | 146 | TRANSCRIPT of proceedings for the following dates: 6/22/05; Before the Honorable William T. Hart. (mjc, ) (Entered: 02/06/2006) |
| 02/10/2006 | 147 | STATUS Report *Joint Status Report* by Wachovia Securities, LLC (Griesmeyer, Christopher) (Entered: 02/10/2006) |
| 02/21/2006 | 148 | MINUTE entry before Judge Virginia M. Kendall: Status hearing |

| | | |
|---|---|---|
| | | held and continued to 9/13/06 at 9:00 a.m. Previously set discovery schedule is stricken. Fact discovery ordered closed on 6/30/06. Expert discovery ordered closed on 8/31/06. Jury trial set for 1/8/07 at 9:30 a.m. Final pretrial conference set for 12/21/06 at 10:00 a.m. Any dispositive motion shall be filed by 9/15/06. Response by 10/16/06. Reply by 11/6/06. Mailed notice (jmm, ) (Entered: 02/22/2006) |
| 02/23/2006 | 149 | EXECUTIVE COMMITTEE ORDER:Case referred to Magistrate Judge Michael T. Mason for discovery motion(s), all discovery motions, discovery supervision, settlement conference and all pending motions to compel. Signed by Judge Executive Committee on 2/23/06. (mjc, ) (Entered: 02/27/2006) |
| 02/24/2006 | 150 | EXECUTIVE COMMITTEE ORDER:Case referred to Magistrate Judge Maria Valdez in accordance with Internal Operating Procedure 14(B). Signed by Judge Executive Committee on 2/24/06. (mjc, ) (Entered: 02/28/2006) |
| 03/02/2006 | 151 | MINUTE entry before Judge Maria Valdez : Initial status hearing is set before Magistrate Judge Maria Valdez on 3/21/06 at 9:30 a.m., in Courtroom 1300. Parties shall deliver a copy of an initial status report, to chambers, Room 1318, four business days before the initial status hearing. The parties must follow the format for an Initial Status Report found on the Judge's website available at www.ilnd.uscourts.gov, or the parties can contact courtroom deputy, Yolanda Pagan, at 312/408-5135 for a copy. If the parties have recently prepared and filed an initial status report, the submission of the previously filed initial status report is sufficient. Mailed notice (yp, ) (Entered: 03/02/2006) |
| 03/21/2006 | 152 | MINUTE entry before Judge Maria Valdez : Magistrate Judge Status hearing held on 3/21/2006. Oral argument on Plaintiffs' motion to compel production of documents 95 ; motion to compel Michael May, CPA's Production of Documents 98 ; motion to compel Loop Corp. Answers to Interrogatories 104 ; motion to compel Loop Properties' Answers to Interrogatories 106 ; motion to compel Scattered Corp. Answers to Interrogatories 108 ; motion to compel Banco Panamericano's Answers to Interrogatories 110 ; motion to compel Individual Defendants' Answers to Interrogatories 112 ; motion to compel Corporate Defendants' Production of Documents 114 ; motion to compel Individual Defendants' Production of Documents 116 set for 4/10/2006 at 10:00 AM. Mailed notice (yp, ) (Entered: 03/21/2006) |

| 04/10/2006 | 153 | MINUTE entry before Judge Maria Valdez : Motion hearing held on 4/10/2006 104 , 98 , 116 , 106 , 112 , 95 , 114 , 110 , 108 and continued to 4/14/2006 at 10:00 AM. Mailed notice (yp, ) (Entered: 04/10/2006) |
| --- | --- | --- |
| 04/13/2006 | 154 | MINUTE entry before Judge Maria Valdez : At the request of the parties, oral argument on plaintiffs' motion to compel 95 , 98 , 106 , 108 , 104 , 110 , 112 , 114 , 116 are reset for 4/21/2006 at 10:00 AM. Oral argument on plaintiff's motion to compel set for 4/14/05 is stricken. Mailed notice. (yp, ) (Entered: 04/13/2006) |
| 04/21/2006 | 155 | MINUTE entry before Judge Maria Valdez : Oral argument held on 4/21/06. The parties advised the Court that they have resolved most of the outstanding discovery matters except two and will be submitting a stipulation to the Court concerning the agreement on discovery. Based on this, the Court hereby denies as moot Plaintiff's motions # 95 , 98 , 104 , 106 , 108 , 110 , 112 , 116 . As to the remaining outstanding discovery issues, this Court after hearing argument of counsel, hereby denies without prejudice Plaintiff's Motion to Compel Corporate Defendants' Production of Documents Responsive to First Set of Requests to Produce 114 as it relates to document requests numbers 24 and 33. The Court finds that the request is over broad but gives Plaintiff Wachovia leave to narrow document requests 24 and 33 and propound them anew to the Corporate Defendants. Status hearing set for 7/11/2006 at 09:30 AM. Mailed notice (yp, ) (Entered: 04/21/2006) |
| 04/25/2006 | 156 | Supplemental Stipulated Order on Plaintiff's Motion to Compel by Wachovia Securities, LLC (Griesmeyer, Christopher) (Entered: 04/25/2006) |
| 04/27/2006 | 157 | MINUTE entry before Judge Maria Valdez : Enter Supplemental Stipulated Order on plaintiff's motion to compel. Mailed (vmj, ) (Entered: 05/01/2006) |
| 04/27/2006 | 158 | SUPPLEMENTAL STIPULATED ORDER on plaintiff's motion to compel. Signed by Judge Maria Valdez on 4/27/2006.(cdy, ) (Entered: 05/02/2006) |
| 06/16/2006 | 159 | MOTION by Plaintiff Wachovia Securities, LLC to vacate *Joint Motion to Vacate or Modify* (Griesmeyer, Christopher) (Entered: 06/16/2006) |
| 06/16/2006 | 160 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion to vacate 159 before Honorable Virginia |

| | | |
|---|---|---|
| | | M. Kendall on 6/21/2006 at 09:00 AM. (Griesmeyer, Christopher) (Entered: 06/16/2006) |
| 06/20/2006 | [161](#) | MINUTE entry before Judge Virginia M. Kendall : Joint Motion to vacate or modify case management order [159](#) is granted. The presentment date of 6/21/06 for said motion is stricken. The Court's Order of February 21, 2006 is modified as follows: Fact Discovery ordered closed by 8/31/06. Expert Discovery ordered closed by 10/13/2006. Any dispositive motions shall be filed by 10/31/2006. Response due by 11/24/06. Replies due by 12/18/06. Final Pretrial Conference set for 2/1/2007 at 10:00 AM. Jury Trial set for 2/20/2007 at 09:15 AM. Status hearing reset to 10/17/2006 at 09:00 AM. Mailed notice (gmr, ) (Entered: 06/20/2006) |
| 07/11/2006 | [162](#) | MINUTE entry before Judge Maria Valdez : Magistrate Judge Status hearing held on 7/11/2006 and continued to 9/12/2006 at 09:30 AM. Mailed notice (yp, ) (Entered: 07/11/2006) |
| 09/12/2006 | [163](#) | MINUTE entry before Judge Maria Valdez : Magistrate Judge Status hearing held on 9/12/2006 and continued to 10/4/2006 at 09:30 AM. Mailed notice (yp, ) (Entered: 09/12/2006) |
| 10/04/2006 | [164](#) | MINUTE entry before Judge Maria Valdez : Magistrate Judge Status hearing held on 10/4/2006. Settlement Conference set for 10/13/2006 at 11:00 AM. Mailed notice (yp, ) (Entered: 10/04/2006) |
| 10/13/2006 | [166](#) | MINUTE entry before Judge Maria Valdez : Settlement conference held on 10/13/2006 and continued to 10/16/2006 at 11:00 AM. Mailed notice (yp, ) (Entered: 10/16/2006) |
| 10/16/2006 | [165](#) | MINUTE entry before Judge Virginia M. Kendall : At the Court's direction, status hearing set for 10/17/2006 is stricken and reset to 11/20/2006 at 09:00 AM. Mailed notice (gmr, ) (Entered: 10/16/2006) |
| 10/16/2006 | [167](#) | MINUTE entry before Judge Maria Valdez : Settlement conference held on 10/16/06. Parties will continue to engage in settlement discussions. Status hearing on report of settlement set for 11/28/06 at 9:30 a.m. Mailed notice (yp, ) (Entered: 10/17/2006) |
| 10/24/2006 | [168](#) | MINUTE entry before Judge Virginia M. Kendall : At the Court's direction, the previously set Trial Schedule is modified as follows: Pretrial Order due by 1/22/2007. Jury Trial set for 2/12/2007 at 09:15 AM. Final pretrial conference remains set for |

| | | |
|---|---|---|
| | | 2/1/2007 at 10:00 AM. Mailed notice (gmr, ) (Entered: 10/24/2006) |
| 10/31/2006 | 169 | MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for summary judgment *on all Counts* (Naisbitt, James) (Entered: 10/31/2006) |
| 10/31/2006 | 170 | STATEMENT by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in Support of motion for summary judgment 169 (Attachments: # 1 Exhibit A Part1 Memo Opinion and Order# 2 Exhibit A Part 2 Memo Opinion and Order# 3 Exhibit B SEC Schedule 13D's# 4 Exhibit C Press Release# 5 Exhibit D SEC Form 10-K# 6 Exhibit E Part 1 Judgment and Memo Opinion and Order# 7 Exhibit Part 2 Judgment and Memo Opinion and Order# 8 Exhibit F Documents related to NOLA, L.L.C.# 9 Exhibit G Documents related to Teletech Systems, Inc.# 10 Exhibit H Interrogatory Answers of Individual Defendants# 11 Exhibit I Documents related to Loop Corp)(Naisbitt, James) (Incorrect Event Used - Docket Text Edited by Clerk's Office) Modified on 11/1/2006 (gma, ). (Entered: 10/31/2006) |
| 10/31/2006 | 171 | MEMORANDUM by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in Support of motion for summary judgment 169 *on all Counts* (Naisbitt, James) (Entered: 10/31/2006) |
| 10/31/2006 | 172 | MOTION by Defendants Scattered Corp., Banco Panamericano, Inc. for summary judgment *on all Counts* (Curley, C.) (Entered: 10/31/2006) |
| 10/31/2006 | 173 | MEMORANDUM by Scattered Corp., Banco Panamericano, Inc. in Support of motion for summary judgment 172 *on all Counts* (Curley, C.) (Entered: 10/31/2006) |
| 10/31/2006 | 174 | STATEMENT by Defendants Scattered Corp., Banco Panamericano, Inc. MOTION by Defendants Scattered Corp., Banco Panamericano, Inc. for summary judgment *on all Counts* 172 (Attachments: # 1 Exhibit 1 Relevant portions of Supplemental Answers and Objections of Defendant Scattered Corp. to Plaintiff's First Set of Interrogatories# 2 Exhibit 2 Relevant portions of Plaintiff's Supplemental Answers and Objections to Corporate Defendants' First Set of Interrogatories# 3 Exhibit 3 Relevant portions of Supplemental Answers and Objections of Banco Panamericano, Inc. to Plaintiff's First Set of |

| | | |
|---|---|---|
| | | Interrogatories# 4 Exhibit 4 Relevant portions of Supplemental Answers and Objections of Defendant Loop Properties, Inc. to Plaintiff's First Set of Interrogatories)(Curley, C.) (Entered: 10/31/2006) |
| 11/01/2006 | 175 | NOTICE of Correction regarding memorandum in support of motion,, 170 (Incorrect Event Used) (gma, ) (Entered: 11/01/2006) |
| 11/03/2006 | 176 | MOTION by Plaintiff Wachovia Securities, LLC to strike MOTION by Defendants Scattered Corp., Banco Panamericano, Inc. for summary judgment *on all Counts* 172 , MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for summary judgment *on all Counts* 169 , MOTION by Plaintiff Wachovia Securities, LLC to stay *Defendants' Motions for Summary Judgment* (Griesmeyer, Christopher) (Entered: 11/03/2006) |
| 11/03/2006 | 177 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion to strike, motion to stay, motion for relief,,,,, 176 before Honorable Virginia M. Kendall on 11/8/2006 at 09:00 AM. (Griesmeyer, Christopher) (Entered: 11/03/2006) |
| 11/07/2006 | 178 | MINUTE entry before Judge Virginia M. Kendall : Motion to strike motions for summary judgment 176 is denied, Motion to stay briefing regarding Defendants' motions for summary judgment 176 is granted. The presentment date of 11/8/2006 for said motion is stricken. Status hearing set for 11/20/2006 is stricken and reset to 11/29/2006 at 09:00 AM. Mailed notice (gmr, ) (Entered: 11/07/2006) |
| 11/28/2006 | 179 | MINUTE entry before Judge Virginia M. Kendall : At the Court's direction, status hearing set for 11/29/2006 is stricken and reset to 12/6/2006 at 09:00 AM. Mailed notice (gmr, ) (Entered: 11/28/2006) |
| 11/28/2006 | 180 | MINUTE entry before Judge Maria Valdez : Magistrate Judge Status hearing held on 11/28/2006. Parties advised in open Court of a settlement inpass. Settlement will not be reached at this time. Status hearing to be set at a later date. Mailed notice (yp, ) (Entered: 11/28/2006) |
| 12/06/2006 | 181 | MINUTE entry before Judge Virginia M. Kendall : Status hearing held and continued to 3/6/2007 at 09:00 AM. Defendants' motions for summary judgment 169 172 are withdrawn without prejudice. The parties' oral motion to modify case and trial schedules is |

| | | |
|---|---|---|
| | | granted as follows: Fact Discovery ordered closed by 2/28/2007. Expert Discovery ordered closed by 3/28/2007. Any dispositive motions shall be filed by 4/27/2007. Responses due by 5/25/2007. Replies due by 6/8/2007. The Court will rule by mail. Pretrial Order due by 7/9/2007. Final Pretrial Conference set for 7/16/2007 at 10:00 AM. Trial set for 7/30/2007 at 09:15 AM. Mailed notice (gmr, ) (Entered: 12/07/2006) |
| 12/11/2006 | 182 | MINUTE entry before Judge Maria Valdez : On Court's own motion, status hearing is set for 3/1/2007 at 09:30 AM. Mailed notice (yp, ) (Entered: 12/11/2006) |
| 12/22/2006 | 183 | ATTORNEY Appearance for Plaintiff Wachovia Securities, LLC by Adam Brent Rome (Rome, Adam) (Entered: 12/22/2006) |
| 03/01/2007 | 184 | MINUTE entry before Judge Maria Valdez :Magistrate Judge Status hearing held on 3/1/2007. Referral to remain open on the outstanding discovery matters. Mailed notice (yp, ) (Entered: 03/02/2007) |
| 03/06/2007 | 185 | MINUTE entry before Judge Virginia M. Kendall :Status hearing held. Oral motion to extend deadlines is granted as follows: Expert Discovery ordered closed by 4/20/2007. Any dispositive motions shall be filed by 5/21/2007. Responses due by 6/21/2007. Replies due by 7/5/2007. The Court will rule by mail. Pretrial Order due by 7/20/2007. Final Pretrial Conference set for 7/27/2007 at 10:00 AM. Trial remains set for 7/30/2007 at 9:15 AM.Mailed notice (gmr, ) (Entered: 03/07/2007) |
| 03/15/2007 | 186 | MINUTE entry before Judge Virginia M. Kendall :By agreement of counsel, Jury Trial set for 7/30/2007 is stricken and reset to 9/4/2007 at 9:15 AM. Pretrial Order due by 8/21/2007. Final Pretrial Conference set for 8/28/2007 at 10:00 AM.Mailed notice (gmr, ) (Entered: 03/15/2007) |
| 03/21/2007 | 187 | MOTION by Plaintiff Wachovia Securities, LLC to dismiss *Certain Counts of 1st Amended Complaint* (Rome, Adam) (Entered: 03/21/2007) |
| 03/21/2007 | 188 | NOTICE of Motion by Adam Brent Rome for presentment of motion to dismiss 187 before Honorable Virginia M. Kendall on 3/27/2007 at 09:00 AM. (Rome, Adam) (Entered: 03/21/2007) |
| 03/26/2007 | 189 | MOTION by Plaintiff Wachovia Securities, LLCRuling on Designation of Certain Depositions as Confidential (Rome, Adam) (Entered: 03/26/2007) |
| | | |

| | | |
|---|---|---|
| 03/26/2007 | [190](#) | NOTICE of Motion by Adam Brent Rome for presentment of motion for miscellaneous relief [189](#) before Honorable Virginia M. Kendall on 3/29/2007 at 09:00 AM. (Rome, Adam) (Entered: 03/26/2007) |
| 03/27/2007 | [191](#) | MINUTE entry before Judge Virginia M. Kendall :Motion hearing held. The Court interprets Plaintiff's motion to voluntary dismiss [187](#) as a motion for leave to file Second Amended Complaint. Plaintiff is given leave to file its Second Amended Complaint by 4/3/2007. The presentment date of 3/29/2007 for Plaintiff's objection to (and motion for ruling on) the designation of Elizabeth Sharp, Andrew Jahelka, Michael May, Richard Nichols and Leon Greenblatt's depositions as confidential [189](#) is hereby stricken and shall be re-noticed for presentment before Magistrate Judge Valdez.Mailed notice (gmr, ) (Entered: 03/27/2007) |
| 04/03/2007 | [192](#) | *Second* AMENDED complaint by Wachovia Securities, LLC against David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III (Attachments: # [1](#) Exhibit # [2](#))(Griesmeyer, Christopher) (Entered: 04/03/2007) |
| 04/17/2007 | [193](#) | *All Defendants'* ANSWER to amended complaint *and Affirmative Defenses* by Banco Panamericano, Inc.(Wickert, John) (Entered: 04/17/2007) |
| 04/19/2007 | [194](#) | MOTION by Plaintiff Wachovia Securities, LLCfor Ruling on Designation of Certain Depositions as Confidential (Attachments: # [1](#) Exhibit)(Rome, Adam) (Entered: 04/19/2007) |
| 04/19/2007 | [195](#) | NOTICE of Motion by Adam Brent Rome for presentment of motion for miscellaneous relief [194](#) before Honorable Maria Valdez on 4/26/2007 at 09:45 AM. (Rome, Adam) (Entered: 04/19/2007) |
| 04/23/2007 | [196](#) | MINUTE entry before Judge Maria Valdez : The Court enters briefing schedule as to Plaintiff's motion for ruling on the designation of certain depositions as confidential [194](#) as follows: Responses due by 4/30/2007; Replies due by 5/3/2007. Ruling on motion is set before Honorable Maria Valdez on 5/17/2007 at 09:30 AM. Presentment date of 4/26/07 is hereby stricken. Mailed notice (yp, ) (Entered: 04/23/2007) |
| 04/30/2007 | [197](#) | RESPONSE by David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A |

|  |  | Jahelka, Richard O Nichols, Leon A Greenblatt, III to MOTION by Plaintiff Wachovia Securities, LLCfor Ruling on Designation of Certain Depositions as Confidential 194 (Attachments: # 1 Exhibit A)(Wickert, John) (Entered: 04/30/2007) |
|---|---|---|
| 04/30/2007 | 198 | MOTION by Defendants David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for sanctions (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 # 4 Exhibit D)(Curley, C.) (Entered: 04/30/2007) |
| 04/30/2007 | 199 | NOTICE of Motion by C. Philip Curley for presentment of motion for sanctions, 198 before Honorable Virginia M. Kendall on 5/3/2007 at 09:00 AM. (Curley, C.) (Entered: 04/30/2007) |
| 05/01/2007 | 200 | MOTION by Plaintiff Wachovia Securities, LLC to strike *OR BAR THE EXPERT TESTIMONY OF CRAIG L. GREENE AND TO MODIFY EXPERT DISCOVERY SCHEDULE* (Blackman, Gary) (Entered: 05/01/2007) |
| 05/01/2007 | 201 | MEMORANDUM by Wachovia Securities, LLC in support of motion to strike 200 *or Bar Defendants' Expert Craig L. Greene and To Modify Expert Discovery Deadlines* (Attachments: # 1 Exhibit Exhibit 1A# 2 Exhibit 1B# 3 Exhibit 1C# 4 Exhibit 2# 5 Exhibit 3# 6 Exhibit)(Blackman, Gary) (Entered: 05/01/2007) |
| 05/01/2007 | 202 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion to strike 200 before Honorable Virginia M. Kendall on 5/9/2007 at 09:00 AM. (Blackman, Gary) (Entered: 05/01/2007) |
| 05/02/2007 | 203 | RESPONSE by Wachovia Securities, LLC to MOTION by Defendants David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for sanctions 198 (Blackman, Gary) (Entered: 05/02/2007) |
| 05/02/2007 | 204 | RESPONSE by Wachovia Securities, LLC to MOTION by Defendants David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for sanctions 198 *Notice of Filing* (Blackman, Gary) (Entered: 05/02/2007) |
| 05/02/2007 | 205 | NOTICE by Wachovia Securities, LLC re response to motion, 203 (Blackman, Gary) (Entered: 05/02/2007) |
| 05/03/2007 | 206 | REPLY by Wachovia Securities, LLC to response to motion, 197 *Brief in Support of Plaintiff's Motion for Ruling on the* |

| | | |
|---|---|---|
| | | *Designation of Certain Depositions as Confidential* (Attachments: # 1 Exhibit)(Griesmeyer, Christopher) (Entered: 05/03/2007) |
| 05/03/2007 | 208 | MINUTE entry before Judge Virginia M. Kendall :Motion hearing held. For the reasons stated on the record in open court, Motion for sanctions 198 is denied. Second Amended Complaint filed on 4/3/2007 is hereby stricken. Plaintiff shall re-file the Second Amended Complaint consistent with the Court's comments. Defendants' Answer to the Second Amended Complaint is hereby stricken.Mailed notice (gmr, ) (Entered: 05/08/2007) |
| 05/07/2007 | 207 | RESPONSE by David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to MOTION by Plaintiff Wachovia Securities, LLC to strike *OR BAR THE EXPERT TESTIMONY OF CRAIG L. GREENE AND TO MODIFY EXPERT DISCOVERY SCHEDULE* 200 (Attachments: # 1 # 2 # 3)(Wickert, John) (Entered: 05/07/2007) |
| 05/08/2007 | 209 | *REVISED SECOND* AMENDED complaint by Wachovia Securities, LLC against all defendants (Attachments: # 1 Exhibit # 2 Exhibit # 3 Notice of Filing)(Griesmeyer, Christopher) (Entered: 05/08/2007) |
| 05/08/2007 | 210 | REPLY by Wachovia Securities, LLC to response to motion, 207 *PLAINTIFF'S REPLY TO DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION TO BAR OR STRIKE DEFENDANT'S EXPERT AND TO MODIFY EXPERT DISCOVERY SCHEDULE* (Blackman, Gary) (Entered: 05/08/2007) |
| 05/09/2007 | 211 | MINUTE entry before Judge Virginia M. Kendall :Motion to strike or bar the expert testimony of Craig L. Greene and to modify expert discovery schedule 200 is taken under advisement.Mailed notice (gmr, ) (Entered: 05/10/2007) |
| 05/11/2007 | 212 | MOTION by Defendants David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for leave to file *Surreply* (Attachments: # 1 Exhibit Exhibit 1) (Wickert, John) (Entered: 05/11/2007) |
| 05/11/2007 | 213 | NOTICE of Motion by John Henry Wickert for presentment of motion for leave to file, 212 before Honorable Maria Valdez on 5/16/2007 at 09:45 AM. (Wickert, John) (Entered: 05/11/2007) |
| | | |

| | | |
|---|---|---|
| 05/14/2007 | 214 | MINUTE entry before Judge Maria Valdez : Defendants' motion for leave to file surreply instanter 212 is granted. Presentment date of 5/16/07 is stricken. Ruling on motion set for 5/17/07 at 9:30 a.m. to stand. Mailed notice (yp, ) (Entered: 05/14/2007) |
| 05/14/2007 | 215 | SUR-REPLY by Defendants David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III (Attachments: # 1)(Wickert, John) (Entered: 05/14/2007) |
| 05/17/2007 | 216 | MINUTE entry before Judge Maria Valdez : Motion hearing held on 5/17/2007. Plaintiff's motion for ruling on the designation of certain depositions as confidential 194 is taken under advisement.Mailed notice (yp, ) (Entered: 05/17/2007) |
| 05/21/2007 | 217 | MOTION by Plaintiff Wachovia Securities, LLC to seal document *To File Its Separate Statement of Undisputed Facts Under Seal* (Attachments: # 1 Text of Proposed Order Order to File Under Seal)(Rome, Adam) (Entered: 05/21/2007) |
| 05/21/2007 | 218 | NOTICE of Motion by Adam Brent Rome for presentment of motion to seal document 217 before Honorable Virginia M. Kendall on 5/29/2007 at 09:00 AM. (Rome, Adam) (Entered: 05/21/2007) |
| 05/21/2007 | 219 | MOTION by Defendants Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. for summary judgment (Wickert, John) (Entered: 05/21/2007) |
| 05/21/2007 | 220 | MEMORANDUM by Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. in support of motion for summary judgment 219 (Wickert, John) (Entered: 05/21/2007) |
| 05/21/2007 | 221 | MOTION by Plaintiff Wachovia Securities, LLC for summary judgment *Partial Summary Judgment as to Count I* (Rome, Adam) (Entered: 05/21/2007) |
| 05/21/2007 | 222 | MEMORANDUM by Wachovia Securities, LLC in support of motion for summary judgment 221 (Rome, Adam) (Entered: 05/21/2007) |
| 05/21/2007 | 223 | RULE 56 a Statement by Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. regarding motion for summary judgment 219 (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit Exhibit 3# 4 Exhibit Exhibit 4# 5 Exhibit Exhibit 5# 6 Exhibit Exhibit 6)(Wickert, John) (Entered: 05/21/2007) |
| | | |

| | | |
|---|---|---|
| 05/21/2007 | 224 | MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for summary judgment (Naisbitt, James) (Entered: 05/21/2007) |
| 05/21/2007 | 225 | MEMORANDUM by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in support of motion for summary judgment 224 (Naisbitt, James) (Entered: 05/21/2007) |
| 05/21/2007 | 226 | RULE 56 a Statement by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III regarding motion for summary judgment 224 (Attachments: # 1 Exhibit A Part 1# 2 Exhibit A Part 2# 3 Exhibit B# 4 Exhibit C# 5 Exhibit D# 6 Exhibit E# 7 Exhibit F# 8 Exhibit G# 9 Exhibit H# 10 Exhibit I# 11 Exhibit J# 12 Exhibit K# 13 Exhibit L# 14 Exhibit M# 15 Exhibit N# 16 Exhibit O# 17 Exhibit P# 18 Exhibit Q# 19 Exhibit R# 20 Exhibit S# 21 Exhibit T Part 1# 22 Exhibit T Part 2) (Naisbitt, James) (Entered: 05/21/2007) |
| 05/22/2007 | 227 | ANSWER to amended complaint *Revised Second Amended Complaint* by David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III(Wickert, John) (Entered: 05/22/2007) |
| 05/29/2007 | 228 | MINUTE entry before Judge Virginia M. Kendall :Motion hearing held. Motion to seal document 217 is granted, subject to Magistrate Judge Valdez's ruling regarding Plaintiff's motion for ruling on the designation of certain depositions as confidential 194 .Mailed notice (gmr, ) (Entered: 05/30/2007) |
| 06/01/2007 | 229 | TRANSCRIPT of Proceedings before Judge Maria Valdez held on 5/17/07 (Volumes 1). (gcy, ) (Entered: 06/04/2007) |
| 06/04/2007 | 230 | RULE 56.1 Separate Statement of Undisputed Facts Statement (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit 14# 15 Exhibit 15# 16 Exhibit 16# 17 Exhibit 17# 18 Certificate of Service)(Rome, Adam) (Entered: 06/04/2007) |
| 06/04/2007 | 231 | SEALED DOCUMENT by Wachovia Securities, LLC (RESTRICTED). (gcy, ) (Entered: 06/05/2007) |
| 06/11/2007 | 232 | MOTION by Plaintiff Wachovia Securities, LLC for leave to file *Amended Statement of Undisputed Facts* (Attachments: # 1 |

| | | |
|---|---|---|
| | | Plaintiff's Local Rule 56.1 Amended Separate Statement of Undisputed Facts)(Rome, Adam) (Entered: 06/11/2007) |
| 06/11/2007 | 233 | NOTICE of Motion by Adam Brent Rome for presentment of motion for leave to file 232 before Honorable Virginia M. Kendall on 6/14/2007 at 09:00 AM. (Rome, Adam) (Entered: 06/11/2007) |
| 06/14/2007 | 234 | MINUTE entry before Judge Virginia M. Kendall :Motion hearing held. Plaintiff's [unopposed] motion for leave to file Amended Statement of Undisputed Facts under seal 232 is granted.Mailed notice (gmr, ) (Entered: 06/14/2007) |
| 06/14/2007 | 235 | RULE 56.1 Amended Separate Statement of Undisputed Facts Statement (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit 14# 15 Exhibit 15# 16 Exhibit 16# 17 Exhibit 17)(Rome, Adam) (Entered: 06/14/2007) |
| 06/14/2007 | 236 | NOTICE by Wachovia Securities, LLC *to Amended Separate Statement of Undisputed Facts* (Rome, Adam) (Entered: 06/14/2007) |
| 06/21/2007 | 237 | RESPONSE by Wachovia Securities, LLCin Opposition to MOTION by Defendants Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. for summary judgment 219 (Attachments: # 1 Exhibit)(Griesmeyer, Christopher) (Entered: 06/21/2007) |
| 06/21/2007 | 238 | MOTION by Plaintiff Wachovia Securities, LLC to seal document (Attachments: # 1 Exhibit Proposed Order)(Rome, Adam) (Entered: 06/21/2007) |
| 06/21/2007 | 239 | NOTICE of Motion by Adam Brent Rome for presentment of motion to seal document 238 before Honorable Virginia M. Kendall on 6/28/2007 at 09:00 AM. (Rome, Adam) (Entered: 06/21/2007) |
| 06/21/2007 | 240 | MOTION by Defendants David Neuhauser, Leon A Greenblatt, III to strike Rule 56 statement, 230 (Naisbitt, James) (Entered: 06/21/2007) |
| 06/21/2007 | 241 | NOTICE of Motion by James Worlton Naisbitt for presentment of motion to strike, motion for relief 240 before Honorable Virginia M. Kendall on 6/27/2007 at 09:00 AM. (Naisbitt, James) (Entered: 06/21/2007) |

| | | |
|---|---|---|
| 06/21/2007 | 242 | MEMORANDUM by David Neuhauser, Leon A Greenblatt, III in support of motion to strike, motion for relief 240 *Rule 56.1 Statement* (Naisbitt, James) (Entered: 06/21/2007) |
| 06/21/2007 | 243 | INCORRECT pdf was linked. (Naisbitt, James) Modified on 6/25/2007 (rbf, ). (Entered: 06/21/2007) |
| 06/21/2007 | 244 | RULE 56 1(B)(3) Statement by David Neuhauser, Leon A Greenblatt, III regarding motion for summary judgment 221 *In Opposition* (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 5 Part 1# 7 Exhibit 6# 8 Exhibit 7# 9 Exhibit 8# 10 Exhibit 8 pt. 1# 11 Exhibit 8 pt. 2# 12 Exhibit 8 pt. 3# 13 Exhibit 8 pt. 4# 14 Exhibit 9# 15 Exhibit 10# 16 Exhibit 11)(Naisbitt, James) (Entered: 06/21/2007) |
| 06/21/2007 | 245 | RESPONSE by Wachovia Securities, LLCin Opposition to MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for summary judgment 224 (Blackman, Gary) (Entered: 06/21/2007) |
| 06/22/2007 | 246 | MINUTE entry before Judge Virginia M. Kendall :Plaintiff's motion to file its response to Corporate and Individual Defendants' separate Statement of Undiputed Facts under seal 238 is granted. The presentment date of 6/28/2007 is hereby stricken.Mailed notice (gmr, ) (Entered: 06/22/2007) |
| 06/25/2007 | 247 | NOTICE of Correction regarding response in opposition to motion 243 . An "incomplete" version of this document was inadvertently filed. Counsel needs to re-file "completed" document. (rbf, ) (Entered: 06/25/2007) |
| 06/25/2007 | 248 | RESPONSE by David Neuhauser, Leon A Greenblatt, IIIin Opposition to MOTION by Plaintiff Wachovia Securities, LLC for summary judgment *Partial Summary Judgment as to Count I* 221 *"Completed Document"* (Attachments: # 1 Exhibit 1# 2 Exhibit 2)(Naisbitt, James) (Entered: 06/25/2007) |
| 06/27/2007 | 249 | MINUTE entry before Judge Virginia M. Kendall :Motion hearing held. Briefing schedule as to motion to strike 240 set as follows: Responses due by 7/9/2007. Replies due by 7/16/2007. The Court will take into account the parameters of Rule 56 and will rule accordingly when reviewing the motions for summary judgment. Joint oral motion for extension of time to file replies as to motions for summary judgment 219 221 224 is granted to and including 7/9/2007. Mailed notice (gmr, ) (Entered: 06/27/2007) |

| | | |
|---|---|---|
| 06/27/2007 | | (Court only) Set/Reset Deadlines as to MOTION by Defendants Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. for summary judgment 219 , MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for summary judgment 224 , MOTION by Plaintiff Wachovia Securities, LLC for summary judgment *Partial Summary Judgment as to Count I* 221 . Replies due by 7/9/2007. (gmr, ) (Entered: 06/27/2007) |
| 06/29/2007 | 250 | RESPONSE by Plaintiff Wachovia Securities, LLC to Rule 56 statement, 223 (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8)(Rome, Adam) (Entered: 06/29/2007) |
| 06/29/2007 | 251 | CERTIFICATE of Service by Plaintiff Wachovia Securities, LLC (Rome, Adam) (Entered: 06/29/2007) |
| 06/29/2007 | 252 | RESPONSE by Plaintiff Wachovia Securities, LLC (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6# 7 Exhibit 7# 8 Exhibit 8# 9 Exhibit 9# 10 Exhibit 10# 11 Exhibit 11# 12 Exhibit 12# 13 Exhibit 13# 14 Exhibit 14# 15 Exhibit 15# 16 Exhibit 16# 17 Exhibit 17# 18 Exhibit 18# 19 Exhibit 19# 20 Certificate of Service)(Rome, Adam) (Entered: 06/29/2007) |
| 06/29/2007 | 253 | SEALED DOCUMENT by Wachovia Securities, LLC (RESTRICTED). (gcy, ) (Entered: 07/03/2007) |
| 06/29/2007 | 254 | SEALED DOCUMENT by Wachovia Securities, LLC. (RESTRICTED). (gcy, ) (Entered: 07/03/2007) |
| 07/09/2007 | 255 | RULE 56 1(b)(3)(C) Statement *of Additional Facts in Opposition to Wachovia's Motion for Partial Summary Judgment* (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit # 12 Certificate of Service)(Griesmeyer, Christopher) (Entered: 07/09/2007) |
| 07/09/2007 | 256 | REPLY by Plaintiff Wachovia Securities, LLC to motion for summary judgment 221 *Brief in Support of Motion for Partial Summary Judgment* (Attachments: # 1 Exhibit # 2 Certificate of Service)(Griesmeyer, Christopher) (Entered: 07/09/2007) |
| 07/09/2007 | 257 | RESPONSE by Wachovia Securities, LLCin Opposition to MOTION by Defendants David Neuhauser, Leon A Greenblatt, III to strike Rule 56 statement, 230 240 *Portions of Local Rule* |

| | | |
|---|---|---|
| | | *56.1 Statement* (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit # 12 Certificate of Service) (Griesmeyer, Christopher) (Entered: 07/09/2007) |
| 07/09/2007 | 258 | MOTION by Defendants David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to seal document *Respective Replies to Wachovia's Additional Statement of Undisputed Facts* (Wickert, John) (Entered: 07/09/2007) |
| 07/09/2007 | 259 | NOTICE of Motion by John Henry Wickert for presentment of motion to seal document, 258 before Honorable Virginia M. Kendall on 7/12/2007 at 09:00 AM. (Wickert, John) (Entered: 07/09/2007) |
| 07/09/2007 | 260 | RESPONSE by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, IIIin Support of MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III for summary judgment 224 *On All Counts* (Naisbitt, James) (Entered: 07/09/2007) |
| 07/09/2007 | 261 | RESPONSE by Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc.in Support of MOTION by Defendants Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. for summary judgment 219 *On All Counts* (Wickert, John) (Entered: 07/09/2007) |
| 07/11/2007 | 262 | MINUTE entry before Judge Virginia M. Kendall :Joint motion to file replies to additional statement of undisputed facts under seal 258 is granted. The presentment date of 7/12/2007 for said motion is hereby stricken.Mailed notice (gmr, ) (Entered: 07/11/2007) |
| 07/16/2007 | 263 | REPLY by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to response in opposition to motion, 257 *To Strike Portions of Local Rule 56.1 Statement* (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5)(Naisbitt, James) (Entered: 07/16/2007) |
| 07/18/2007 | 264 | REPLY by Individual Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to Wachovia's Local Rule 56.1(b)(3)(c) statement of additional undisputed material facts. (RESTRICTED) (mjc, ) (Entered: 07/19/2007) |
| 07/18/2007 | 265 | REPLY by Corporate Defendants Scattered Corp., Banco |

| | | |
|---|---|---|
| | | Panamericano, Inc. to Wachovia's Local Rule 56.1(b)(3)(c) statement of additional undisputed material facts. (RESTRICTED) (mjc, ) (Entered: 07/19/2007) |
| 08/08/2007 | 266 | MINUTE entry before Judge Virginia M. Kendall :At the Court's direction, and by agreement of counsel, the previously set trial schedule is stricken and reset as follows: Pretrial Order due by 10/5/2007. Final pretrial conference set for 10/12/2007 at 10:00 AM. Bench Trial set for 10/15/2007 at 09:15 AM. Mailed notice (gmr, ) (Entered: 08/08/2007) |
| 08/09/2007 | 267 | MINUTE entry before Judge Maria Valdez : Plaintiff's motion for ruling on the designation of certain depositins as confidential 194 is granted in part and denied in part. Enter Order. part and denied in part; Set/reset hearingsStatus hearing set for 8/16/2007 before Judge Valdez at 09:30 a.m to discuss potential settlement conference. Mailed notices (gcy, ) (Entered: 08/10/2007) |
| 08/09/2007 | 268 | ORDER Signed by Judge Maria Valdez on 8/9/2007:(gcy, ) (Entered: 08/10/2007) |
| 08/15/2007 | | (Court only) Set/Reset Hearings:, ***Deadlines terminated. Status hearing set for 8/16/2007 at 09:30 AM. before Judge Valdez (yp, ) (Entered: 08/15/2007) |
| 08/16/2007 | 269 | MINUTE entry before Judge Maria Valdez :Magistrate Judge Status hearing held on 8/16/2007. Court having inquire about settlement conference in open court. Parties feel a settlement conference may not be fruitful at this time. All matters relating to the referral of this action having benn resolved, the case is returned to the assigned judge. Judge Maria Valdez no longer referred to the case.Mailed notice (yp, ) (Entered: 08/16/2007) |
| 08/31/2007 | 270 | MINUTE entry before Judge Virginia M. Kendall :For the reasons stated below, Plaintiff's motion to strike or bar the expert testimony of Craig L. Greene 200 is denied, and Plaintiff's motion to modify expert discovery schedule 200 is granted. Trial remains scheduled for October 15, 2007. Defendants shall present Greene for his deposition on or before September 11, 2007 and should Wachovia choose to disclose a rebuttal expert, it should do so on or before September 14, 2007. Defendants shall depose Wachovia's expert on or before September 28, 2007. Mailed notice (gmr, ) (Entered: 08/31/2007) |
| 08/31/2007 | 271 | MINUTE entry before Judge Virginia M. Kendall :The Court's order of August 31, 2007, is corrected to include the pdf file. For |

| | | |
|---|---|---|
| | | the reasons stated below, Plaintiff's motion to strike or bar the expert testimony of Craig L. Greene 200 is denied, and Plaintiff's motion to modify expert discovery schedule 200 is granted. Trial remains scheduled for October 15, 2007. Defendants shall present Greene for his deposition on or before September 11, 2007 and should Wachovia choose to disclose a rebuttal expert, it should do so on or before September 14, 2007. Defendants shall depose Wachovia's expert on or before September 28, 2007. Mailed notice (gmr, ) (Entered: 08/31/2007) |
| 09/20/2007 | 272 | MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to strike *Wachovia's Expert Witness* (Attachments: # 1 Exhibit A)(Naisbitt, James) (Entered: 09/20/2007) |
| 09/20/2007 | 273 | NOTICE of Motion by James Worlton Naisbitt for presentment of motion to strike 272 before Honorable Virginia M. Kendall on 9/25/2007 at 09:00 AM. (Naisbitt, James) (Entered: 09/20/2007) |
| 09/24/2007 | 274 | RESPONSE by Wachovia Securities, LLCin Opposition to MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to strike *Wachovia's Expert Witness* 272 (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit) (Griesmeyer, Christopher) (Entered: 09/24/2007) |
| 09/24/2007 | 275 | MOTION by Plaintiff Wachovia Securities, LLCin limine *TO BAR DEFENDANTS' EXPERT FROM TESTIFYING AT TRIAL* (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit # 10 Exhibit # 11 Exhibit # 12 Exhibit # 13 Exhibit)(Griesmeyer, Christopher) (Entered: 09/24/2007) |
| 09/24/2007 | 276 | MOTION by Defendants David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, IIIin limine *to bar not previously disclosed witnesses* (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3)(Naisbitt, James) (Entered: 09/24/2007) |
| 09/24/2007 | 277 | MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, IIIin limine *to bar Wachovia's new fraud claim* (Naisbitt, James) (Entered: 09/24/2007) |
| 09/24/2007 | 278 | MOTION by Defendants Loop Corp., Loop Properties, Inc., |

| | | |
|---|---|---|
| | | Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in limine *to bar alleged fraudulent conveyances not in the complaint* (Wickert, John) (Entered: 09/24/2007) |
| 09/24/2007 | 279 | MEMORANDUM by David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III in support of motion in limine 278 *to bar alleged fraudulent conveyances not in the complaint* (Attachments: # 1 Exhibit A# 2 Exhibit B)(Wickert, John) (Entered: 09/24/2007) |
| 09/25/2007 | 280 | MINUTE entry before Judge Virginia M. Kendall :MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to strike Wachovia's Expert Witness 272 is denied. Motion hearing held on 9/25/2007 regarding motion to strike. 272 Mailed notice (tlp, ) (Entered: 09/25/2007) |
| 09/27/2007 | 281 | MINUTE entry before Judge Virginia M. Kendall :Responses to motions in limine shall be filed by 10/3/2007. Mailed notice (gmr, ) (Entered: 09/27/2007) |
| 09/27/2007 | 282 | MOTION by Respondent Michael May to quash *subpoena* (Attachments: # 1 Exhibit A# 2 Proposed Order)(Schmidt, Peter) (Entered: 09/27/2007) |
| 09/27/2007 | 283 | NOTICE of Motion by Peter James Schmidt for presentment of motion to quash 282 before Honorable Virginia M. Kendall on 10/4/2007 at 09:00 AM. (Schmidt, Peter) (Entered: 09/27/2007) |
| 09/27/2007 | 284 | MOTION to quash *subpoena* (Attachments: # 1 Exhibit A# 2 Proposed Order)(Schmidt, Peter) (Entered: 09/27/2007) |
| 09/27/2007 | 285 | NOTICE of Motion by Peter James Schmidt for presentment of motion to quash 284 before Honorable Virginia M. Kendall on 10/4/2007 at 09:00 AM. (Schmidt, Peter) (Entered: 09/27/2007) |
| 09/27/2007 | 286 | MOTION to quash *subpoena* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Proposed Order)(Schmidt, Peter) (Entered: 09/27/2007) |
| 09/27/2007 | 287 | NOTICE of Motion by Peter James Schmidt for presentment of motion to quash 286 before Honorable Virginia M. Kendall on 10/4/2007 at 09:00 AM. (Schmidt, Peter) (Entered: 09/27/2007) |
| 10/01/2007 | 288 | MINUTE entry before Judge Virginia M. Kendall :By agreement, |

| | | |
|---|---|---|
| | | Pretrial Order due by 10/9/2007. Mailed notice (gmr, ) (Entered: 10/01/2007) |
| 10/02/2007 | 289 | RESPONSE by Wachovia Securities, LLC to MOTION to quash *subpoena* 286 *TO ELIZABETH SHARP* (Attachments: # 1 Exhibit)(Blackman, Gary) (Entered: 10/02/2007) |
| 10/02/2007 | 290 | RESPONSE by Wachovia Securities, LLCin Opposition to MOTION by Respondent Michael May to quash *subpoena* 282 *OR VOID THIRD-PARTY SUBPOENA* (Attachments: # 1 Exhibit)(Griesmeyer, Christopher) (Entered: 10/02/2007) |
| 10/02/2007 | 291 | RESPONSE by Plaintiff Wachovia Securities, LLC to motion to quash 284 *GREG JORDAN'S THIRD-PARTY SUBPOENA* (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit)(Rome, Adam) (Entered: 10/02/2007) |
| 10/03/2007 | 292 | RESPONSE by Plaintiff Wachovia Securities, LLC to motion in limine, 276 *TO BAR WACHOVIA WITNESSES NOT PREVIOUSLY DISCLOSED* (Attachments: # 1 Exhibit # 2 Exhibit)(Blackman, Gary) (Entered: 10/03/2007) |
| 10/03/2007 | 293 | RESPONSE by David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, IIIin Opposition to MOTION by Plaintiff Wachovia Securities, LLCin limine *TO BAR DEFENDANTS' EXPERT FROM TESTIFYING AT TRIAL* 275 (Attachments: # 1 Exhibit A)(Naisbitt, James) (Entered: 10/03/2007) |
| 10/03/2007 | 294 | RESPONSE by Wachovia Securities, LLCin Opposition to MOTION by Defendants David Neuhauser, Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, IIIin limine *to bar Wachovia's new fraud claim* 277 (Griesmeyer, Christopher) (Entered: 10/03/2007) |
| 10/03/2007 | 295 | RESPONSE by Wachovia Securities, LLCin Opposition to MOTION by Defendants Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, IIIin limine *to bar alleged fraudulent conveyances not in the complaint* 278 (Attachments: # 1 Exhibit # 2 Exhibit)(Griesmeyer, Christopher) (Entered: 10/03/2007) |
| 10/04/2007 | 296 | MINUTE entry before Judge Virginia M. Kendall :Motion hearing held. Motion to quash regarding Michael May 282 is withdrawn. Motion to quash regarding Gregory Jordan 284 is |

| | | |
|---|---|---|
| | | denied. The parties are directed to provide the Court with position papers regarding the issue of whether the proffered testimony of Jordan is protected by the attorney client privilege by 10/8/2007. Any response to the position papers shall be filed by 10/11/2007. The Court has reviewed the transcript of the deposition of Elizabeth Sharp and finds that her testimony is critical to the issue of whether the corporate veil can be pierced in this case and therefore the motion to quash the subpoena served on Elizabeth Sharp 286 is denied. Because Sharp will be called as a witness to a critical dispute in the case, her representation of her clients places her in direct conflict with her potential testimony; therefore, Sharp is directed to obtain alternate counsel for her clients for the bench trial scheduled to begin 10/15/2007. Mailed notice (gmr, ) (Entered: 10/04/2007) |
| 10/08/2007 | 297 | Proffer of Testimony for Greg Jordan and Legal Brief on Privilege Issue by Wachovia Securities, LLC (Blackman, Gary) (Entered: 10/08/2007) |
| 10/08/2007 | 298 | MEMORANDUM by Gregory J Jordan *ON APPLICATION OF PRIVILEGE* (Attachments: # 1 Exhibit A)(Schmidt, Peter) (Entered: 10/08/2007) |
| 10/08/2007 | 299 | NOTICE by Gregory J Jordan re memorandum 298 *ON APPLICATION OF PRIVILEGE* (Schmidt, Peter) (Entered: 10/08/2007) |
| 10/09/2007 | 300 | PROPOSED Pretrial Order *FINAL PRE-TRIAL ORDER* by Wachovia Securities, LLC (Attachments: # 1 Exhibit # 2 Exhibit # 3 Exhibit # 4 Exhibit # 5 Exhibit # 6 Exhibit # 7 Exhibit # 8 Exhibit # 9 Exhibit)(Griesmeyer, Christopher) (Entered: 10/09/2007) |
| 10/09/2007 | 301 | ATTORNEY Appearance for Defendant Loop Corp. by Paul W. McAndrews (McAndrews, Paul) (Entered: 10/09/2007) |
| 10/09/2007 | 302 | ATTORNEY Appearance for Defendant Loop Corp. by Gerald C. Willis, Jr (Willis, Gerald) (Entered: 10/09/2007) |
| 10/09/2007 | 303 | *NOTICE OF EMERGENCY MOTION FOR A CONTINUANCE OF TRIAL* NOTICE of Motion by Paul W. McAndrews for presentment of before Honorable Virginia M. Kendall on 10/10/2007 at 09:00 AM. (McAndrews, Paul) (Entered: 10/09/2007) |
| 10/09/2007 | 304 | MOTION by Defendant Loop Corp. to continue *EMERGENCY* |

| | | |
|---|---|---|
| | | *MOTION FOR A CONTINUANCE OF TRIAL* (McAndrews, Paul) (Entered: 10/09/2007) |
| 10/09/2007 | 305 | *NOTICE OF MOTION TO FILE APPEARANCES OF ADDITIONAL COUNSEL TO ACT AS TRIAL COUNSEL* NOTICE of Motion by Paul W. McAndrews for presentment of before Honorable Virginia M. Kendall on 10/10/2007 at 09:00 AM. (McAndrews, Paul) (Entered: 10/09/2007) |
| 10/09/2007 | 306 | MOTION by Defendant Loop Corp. for leave to appear as Trial Counsel (McAndrews, Paul) (Entered: 10/09/2007) |
| 10/09/2007 | 307 | Defendants' Addition to Final Pretrial Order by David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III (Attachments: # 1 Exhibit)(Wickert, John) (Entered: 10/09/2007) |
| 10/10/2007 | 310 | MINUTE entry before Judge Virginia M. Kendall :Motion hearing held. Motion for leave to appear 306 is granted. Gerald Willis and Paul McAndrews are given leave to file their appearances as counsel for the Loop Entitites. Motion to continue trial 304 is granted. Bench Trial set for 10/15/2007 is stricken and reset to 1/7/2008 at 09:15 AM. Supplemental Pretrial Order due by 12/28/2007. Motions in limine shall be filed by 11/30/2007. Responses shall be filed by 12/7/2007. Final Pretrial Conference set for 10/12/2007 is stricken and reset 1/3/2008 at 10:00 AM. Position papers regarding Elizabeth Sharp's role during trial shall be filed by 10/17/2007. Mailed notice (gmr, ) (Entered: 10/11/2007) |
| 10/11/2007 | 308 | RESPONSE by Respondent Gregory J Jordan to other 297 *Wachovia Brief on Privilege Issue* (Schmidt, Peter) (Entered: 10/11/2007) |
| 10/11/2007 | 309 | NOTICE by Gregory J Jordan re Response 308 (Schmidt, Peter) (Entered: 10/11/2007) |
| 10/11/2007 | 311 | RESPONSE by Plaintiff Wachovia Securities, LLC to memorandum 298 (Blackman, Gary) (Entered: 10/11/2007) |
| 10/17/2007 | 312 | MOTION by counsel for Defendants Loop Corp., Loop Properties, Inc. to withdraw as attorney *Elizabeth D. Sharp, Esq.* (McAndrews, Paul) (Entered: 10/17/2007) |
| 10/17/2007 | 313 | *(Elizabeth D. Sharp, Esq.)* NOTICE of Motion by Paul W. McAndrews for presentment of motion to withdraw as attorney |

| | | |
|---|---|---|
| | | 312 before Honorable Virginia M. Kendall on 10/23/2007 at 09:00 AM. (McAndrews, Paul) (Entered: 10/17/2007) |
| 10/18/2007 | 314 | MINUTE entry before Judge Virginia M. Kendall : Motion of Elizabeth D. Sharp. Esq. to withdraw as counsel for defendants Loop Corp. amd for Loop Properties Inc. 312 is granted. Elizabeth D. Sharp is given leave to withdraw as counsel for Defendants Loop Corp. and Loop Properties, Inc. The presentment date of 10/23/2007 for said motion is hereby stricken. Mailed notice (gcy, ) (Entered: 10/19/2007) |
| 10/23/2007 | 315 | RESPONSE by Plaintiff Wachovia Securities, LLC to other, 307 *"Additional Findings of Fact and Conclusions of Law" Submitted by Defendants as Supplemental Exhibit 7 to Pre-Trial Order* (Griesmeyer, Christopher) (Entered: 10/23/2007) |
| 11/05/2007 | 316 | TRANSCRIPT of Proceedings before Judge Virginia M. Kendall held on 3/6/07 (Volumes 1). (gcy, ) (Entered: 11/06/2007) |
| 11/20/2007 | 317 | MINUTE entry before Judge Virginia M. Kendall : The time of the Final Pretrial Conference set for 1/3/2008 is stricken and reset to 2:00 PM. mailed notice (kw, ) (Entered: 11/20/2007) |
| 11/29/2007 | 318 | MINUTE entry before Judge Virginia M. Kendall : For the reasons stated in the attached Memorandum Opinion and Order, Defendants' Motion to Strike Paragraphs 31-36 and 39-43 and Exhibits 9 and 12 of Wachovia's Amended Statement of Material Facts 240 is granted. Plaintiff's Motion for Partial Summary Judgment 221 is denied. The Individual Defendants' Motion for Summary Judgment 224 is granted in part and denied in part. The Corporate Defendants' Motion for Summary Judgment as to Counts VII through X brought under the Illinois Uniform Fraudulent Transfer Act 219 is denied. Additionally, the Individual Defendants' Motion to Bar Wachovia's New Fraud Claim 277 is granted and the Corporate Defendants' Motion to Bar Alleged Fraudulent Conveyances not in the Complaint 278 is denied. Enter Memorandum Opinion and Order. Mailed notice (kw, ) (Entered: 11/30/2007) |
| 11/29/2007 | 319 | MEMORANDUM Opinion and Order. (kw, ) (Entered: 11/30/2007) |
| 12/10/2007 | 320 | MOTION by Defendants Scattered Corp., Banco Panamericano, Inc. to continue *trial date* (Attachments: # 1 Exhibit A)(Wickert, John) (Entered: 12/10/2007) |
| | | |

| 12/10/2007 | 321 | NOTICE of Motion by John Henry Wickert for presentment of motion to continue 320 before Honorable Virginia M. Kendall on 12/13/2007 at 09:00 AM. (Wickert, John) (Entered: 12/10/2007) |
|---|---|---|
| 12/12/2007 | 322 | RESPONSE by Plaintiff Wachovia Securities, LLC *and OBJECTION TO MOTION OF BANCO PANAMERICANO AND SCATTERED CORP. TO CONTINUE TRIAL DATE* (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3)(Blackman, Gary) (Entered: 12/12/2007) |
| 12/12/2007 | 323 | MOTION by Plaintiff Wachovia Securities, LLC to compel *and Introduce Additional Trial Exhibits* (Griesmeyer, Christopher) (Entered: 12/12/2007) |
| 12/12/2007 | 324 | MEMORANDUM by Wachovia Securities, LLC in support of motion to compel 323 *and Introduce Additional Trial Exhibits* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G)(Griesmeyer, Christopher) (Entered: 12/12/2007) |
| 12/12/2007 | 325 | NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion to compel 323 before Honorable Virginia M. Kendall on 12/18/2007 at 09:00 AM. (Griesmeyer, Christopher) (Entered: 12/12/2007) |
| 12/13/2007 | 326 | MINUTE entry before Judge Virginia M. Kendall : Defendants' motion to continue trial date 320 is denied; The 1/7/2008 bench trial date stands. Mailed notice. (kw, ) (Entered: 12/13/2007) |
| 12/13/2007 | 327 | MOTION by Plaintiff Wachovia Securities, LLC to compel *and Introduce Additional Trial Exhibits* (Griesmeyer, Christopher) (Entered: 12/13/2007) |
| 12/13/2007 | 328 | MEMORANDUM by Wachovia Securities, LLC in support of motion to compel 327 *and Introduce Additional Trial Exhibits* (Attachments: # 1 Exhibit A# 2 Exhibit B# 3 Exhibit C# 4 Exhibit D# 5 Exhibit E# 6 Exhibit F# 7 Exhibit G# 8 Exhibit H# 9 Exhibit I)(Griesmeyer, Christopher) (Entered: 12/13/2007) |
| 12/13/2007 | 329 | *Amended* NOTICE of Motion by Christopher Scott Griesmeyer for presentment of motion to compel 327 before Honorable Virginia M. Kendall on 12/18/2007 at 09:00 AM. (Griesmeyer, Christopher) (Entered: 12/13/2007) |
| 12/14/2007 | 330 | MINUTE entry before Judge Virginia M. Kendall : Counsel have informed the Court that they have resolved Plaintiff's Amended Motion to Compel and Introduce Additional Trial exhibits 323 . |

|  |  | The motion is terminated, and the noticed hearing date of 12/18/07 is stricken; no appearance is required. Plaintiff's earlier-filed Motion to compel 327 is terminated as moot. Mailed notice. (kw, ) (Entered: 12/14/2007) |
|---|---|---|
| 12/17/2007 | 331 | STIPULATION *Regarding Additional Trial Exhibits* 327 (Griesmeyer, Christopher) (Text modified by Clerk's Office on 12/17/2007) (cdy, ). (Entered: 12/17/2007) |
| 12/17/2007 | 332 | MINUTE entry before Judge Virginia M. Kendall : Plaintiff's motion to compel 327 is denied as moot based upon the parties' representation that the issues have been resolved. Mailed notice. (kw, ) (Entered: 12/17/2007) |
| 12/28/2007 | 333 | SUPPLEMENT by David Neuhauser, Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to *Final Pretrial Order* (Wickert, John) (Entered: 12/28/2007) |
| 01/03/2008 | 334 | AFFIDAVIT of Service filed by Plaintiff Wachovia Securities, LLC regarding Trial Subpoena served on David Neuhauser on 1/2/2008 (Griesmeyer, Christopher) (Entered: 01/03/2008) |
| 01/04/2008 | 335 | MINUTE entry before Judge Virginia M. Kendall : Pretrial Conference held on 1/03/2008. For the reasons stated herein, Defendants' motion in limine to bar not previously disclosed witnesses 276 is denied as moot as to Elizabeth Niemann and Leigh Rabman and denied as to Greg Jordan. Plaintiff Wachovia Securities, LLC's motion in limine to bar Defendants' Expert from Testifying at Trial 275 is denied. Defendants are ordered to produce records reviewed by their expert, Craig Greene, during his meeting with Michael May at Loop Corp.'s offices by 4:00 PM on 1/4/2008. (kw, ) (Entered: 01/04/2008) |
| 01/07/2008 | 336 | MINUTE entry before Judge Virginia M. Kendall :Bench trial held and continued to 1/8/2008 at 09:00 AM. Mailed notice. (kw, ) (Entered: 01/08/2008) |
| 01/08/2008 | 337 | MINUTE entry before Judge Virginia M. Kendall : Bench trial held and continued to 1/9/2008 at 09:15 AM. Mailed notice. (kw, ) (Entered: 01/08/2008) |
| 01/09/2008 | 338 | MINUTE entry before Judge Virginia M. Kendall : Bench trial held and continued to 1/10/2008 at 09:15 AM. Mailed notice. (kw, ) (Entered: 01/09/2008) |
| 01/10/2008 | 339 | MINUTE entry before Judge Virginia M. Kendall :Bench trial |

| | | |
|---|---|---|
| | | held and continued to 1/11/2008 at 09:15 AM. Mailed notice. (kw, ) (Entered: 01/10/2008) |
| 01/11/2008 | 340 | MINUTE entry before Judge Virginia M. Kendall: Bench trial held and continued to Tuesday, 1/15/2008 at 09:15 AM. Mailed notice. (kw, ) (Entered: 01/11/2008) |
| 01/14/2008 | 341 | MINUTE entry before Judge Virginia M. Kendall : Minute entry 340 is amended to reflect the correct time for the continued Bench Trial. The Bench Trial will reconvene on 1/15/2008 at 01:30 PM, following the Court's afternoon call. Mailed notice. (kw, ) (Entered: 01/14/2008) |
| 01/14/2008 | 342 | MINUTE entry before Judge Virginia M. Kendall : The Bench trial previously set for 1/15/08 at 1:30 PM has been reset to begin at 09:15 AM on that same day. Mailed notice. (kw, ) (Entered: 01/14/2008) |
| 01/15/2008 | 343 | MINUTE entry before Judge Virginia M. Kendall : Bench trial held and continued to 1/16/2008 at 10:00 AM. Mailed notice. (kw, ) (Entered: 01/16/2008) |
| 01/16/2008 | 344 | MINUTE entry before Judge Virginia M. Kendall : Bench trial completed on 1/16/2008. Mailed notice. (kw, ) (Entered: 01/17/2008) |
| 01/28/2008 | 345 | MOTION by counsel for Plaintiff Wachovia Securities, LLC to withdraw as attorney (Gomberg, Steven) (Entered: 01/28/2008) |
| 01/28/2008 | 346 | NOTICE of Motion by Steven Pascal Gomberg for presentment of motion to withdraw as attorney 345 before Honorable Virginia M. Kendall on 2/5/2008 at 09:00 AM. (Gomberg, Steven) (Entered: 01/28/2008) |
| 01/29/2008 | 347 | MINUTE entry before Judge Virginia M. Kendall : Attorney Steven P. Gomberg's Motion to withdraw as counsel for plaintiff Wachovia Securities, L.L.C. 345 is granted. The 2/5/2008 hearing date noticed for said motion is stricken; no appearance is required. Notices mailed by Judicial staff (gcy, ) (Entered: 01/30/2008) |
| 02/14/2008 | 348 | MOTION by Plaintiff Wachovia Securities, LLC to compel, MOTION by Plaintiff Wachovia Securities, LLC MOTION FOR RULE TO SHOW CAUSE AS TO WHY ANTHONY J. NASHARR, GREGORY JORDAN AND POLSINELLI SHALTON FLANAGAN AND SUELTHAUS, P.C. SHOULD NOT BE HELD IN CONTEMPT AND/OR COMPEL, MOTION |

| | | |
|---|---|---|
| | | by Plaintiff Wachovia Securities, LLC for rule to show cause (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3# 4 Exhibit 4# 5 Exhibit 5# 6 Exhibit 6)(Blackman, Gary) (Entered: 02/14/2008) |
| 02/14/2008 | 349 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion to compel, motion for miscellaneous relief, motion for rule to show cause,,, 348 before Honorable Virginia M. Kendall on 2/21/2008 at 09:00 AM. (Blackman, Gary) (Entered: 02/14/2008) |
| 02/15/2008 | | (Court only) ***Motions terminated: duplicate motions to compel terminated 348 . (kw, ) (Entered: 02/15/2008) |
| 02/19/2008 | 350 | MOTION by Plaintiff Wachovia Securities, LLC for rule to show cause *As To Why Dykema Gossett PLLC, Thomas R. Hill and Ian Sherman Should Not Be Held In Contempt and/or*, MOTION by Plaintiff Wachovia Securities, LLC to compel (Attachments: # 1 Exhibit 1# 2 Exhibit 2# 3 Exhibit 3)(Blackman, Gary) (Entered: 02/19/2008) |
| 02/19/2008 | 351 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion for rule to show cause,, motion to compel, 350 before Honorable Virginia M. Kendall on 2/27/2008 at 09:00 AM. (Blackman, Gary) (Entered: 02/19/2008) |
| 02/21/2008 | 352 | MINUTE entry before Judge Virginia M. Kendall : Motion hearing held. Plaintiff's Motion for a Rule to Show Cause re Contempt, or to Compel 348 is taken under advisement. If parties cannot reach a resolution, Defendant shall submit a position paper as to the relevancy of the subpoena by 2/28/2008; Plaintiff's response due 3/6/2008. The 3/10/2008 deadline to submit findings of fact & conclusions of law is extended to 3/24/2008. Mailed notice. (kw, ) (Entered: 02/21/2008) |
| 02/26/2008 | 353 | MINUTE entry before Judge Virginia M. Kendall : Counsel have notified the Court that theMotions to Compel and for a Rule to Show Cause 348 , 350 are withdrawn. The 2/27/08 presentment date for said motions is stricken; no appearance is required. Mailed notice. (kw, ) (Entered: 02/26/2008) |
| 03/24/2008 | 354 | TRIAL Brief *PLAINTIFF'S POST-TRIAL BRIEF REGARDING LEON GREENBLATT'S TRIAL TESTIMONY* by Wachovia Securities, LLC (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E)(Blackman, Gary) (Entered: 03/24/2008) |

| 03/24/2008 | 355 | TRIAL Brief *Regarding Certain Testimony and Documentation Issues Raised by the Court* by Gregory J Jordan (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F)(Schmidt, Peter) (Entered: 03/24/2008) |
|---|---|---|
| 03/24/2008 | 356 | NOTICE by Gregory J Jordan re trial brief 355 (Schmidt, Peter) (Entered: 03/24/2008) |
| 03/24/2008 | 357 | FINDINGS of fact and conclusions of law from U.S. Bankruptcy Court (Attachments: # 1 Part II of Plaintiff's Post-Trial Proposed Findings of Fact and Conclusions of Law, # 2 Part III of Plaintiff's Post-Trial Proposed Findings of Fact and Conclusions of Law, # 3 Appendix, # 4 Appendix, # 5 Appendix, # 6 Appendix, # 7 Appendix)(Blackman, Gary) (Entered: 03/24/2008) |
| 03/24/2008 | 358 | TRIAL Brief *Post Trial Position Paper on Corporate Veil Counts* by Loop Corp., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III (Naisbitt, James) (Entered: 03/24/2008) |
| 03/24/2008 | 359 | TRIAL Brief *Post Trial Findings of Fact and Conclusions of Law* by Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III (Dolinko, Alan) (Entered: 03/24/2008) |
| 03/24/2008 | 360 | TRIAL Brief *Post Trial Brief Position Paper on Corporate Veil Counts* by Loop Corp., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III (Naisbitt, James) (Entered: 03/24/2008) |
| 03/24/2008 | 361 | TRIAL Brief *Post Trial Position Paper on Fraudulent Transfer Counts* by Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc. (Attachments: # 1 Exhibit Exhibit A) (Dolinko, Alan) (Entered: 03/24/2008) |
| 03/24/2008 | 362 | TRIAL Brief *Post Trial Memo Concerning Certain Banco Internal Documents* by Banco Panamericano, Inc. (Attachments: # 1 Exhibit Exhibit A, # 2 Exhibit Exhibit B, # 3 Exhibit Exhibit C, # 4 Exhibit Exhibit D)(Dolinko, Alan) (Entered: 03/24/2008) |
| 03/24/2008 | 363 | TRIAL Brief *Post Trial Position Paper on Piercing Corporate Veil* by Loop Corp., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III (Naisbitt, James) (Entered: 03/24/2008) |
| 03/26/2008 | 364 | MOTION by Plaintiff Wachovia Securities, LLC for sanctions *Wachovia Securities, LLC'S Petition for Sanctions Against Gregory Jordan* (Blackman, Gary) (Entered: 03/26/2008) |
| 03/26/2008 | 365 | *Notice of Motion - Wachovia Securtities Petition for Sanctions* |

|            |     |                                                                                                                                                                                                                                                                  |
|------------|-----|--------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------|
|            |     | *Against Gregory Jordan* NOTICE of Motion by Gary Irwin Blackman for presentment of motion for sanctions 364 before Honorable Virginia M. Kendall on 4/2/2008 at 09:00 AM. (Blackman, Gary) (Entered: 03/26/2008)                                                 |
| 03/31/2008 | 366 | MOTION by Plaintiff Wachovia Securities, LLC to strike trial brief 355 *Regarding Certain Testimony and Affidavit of Gregory Jordan* (Blackman, Gary) (Entered: 03/31/2008)                                                                                       |
| 03/31/2008 | 367 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion to strike, motion for relief 366 before Honorable Virginia M. Kendall on 4/4/2008 at 09:00 AM. (Blackman, Gary) (Entered: 03/31/2008)                                                           |
| 03/31/2008 | 368 | MOTION by Plaintiff Wachovia Securities, LLC to strike trial brief 363 , trial brief 361 , trial brief 358 , trial brief 360 *Defendants' Post Trial Position Paper* (Blackman, Gary) (Entered: 03/31/2008)                                                       |
| 03/31/2008 | 369 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion to strike, motion for relief,,, 368 before Honorable Virginia M. Kendall on 4/4/2008 at 09:00 AM. (Blackman, Gary) (Entered: 03/31/2008)                                                        |
| 04/01/2008 | 370 | MINUTE entry before Judge Honorable Virginia M. Kendall: On the Court's own motion, the 4/4/08 hearing date for Plaintiff's Motions to Strike Trial Briefs 366 , 368 is reset for 4/7/2008 at 9:00 AM. Mailed notice. (kw, ) (Entered: 04/01/2008)                |
| 04/01/2008 | 371 | RESPONSE by Loop Corp., Loop Properties, Inc., Scattered Corp., Banco Panamericano, Inc., Andrew A Jahelka, Richard O Nichols, Leon A Greenblatt, III to MOTION by Plaintiff Wachovia Securities, LLC to strike trial brief 363 , trial brief 361 , trial brief 358 , trial brief 360 *Defendants' Post Trial Position Paper* 368 (Attachments: # 1 Exhibit A)(Dolinko, Alan) (Entered: 04/01/2008) |
| 04/02/2008 | 372 | MINUTE entry before Judge Honorable Virginia M. Kendall: Motion hearing held. Plaintiff's Petition for Sanctions 364 is taken under advisement. Plaintiff's Motions to Strike 366 , 368 and Plaintiff's oral motion to strike made in open court are taken under advisement; no appearance is required for the 4/7/08 presentment date. Mailed notice. (kw, ) (Entered: 04/04/2008) |
| 04/09/2008 | 373 | REPLY by Plaintiff Wachovia Securities, LLC to trial brief 362 *in Opposition to Defendant Banco Panamericano's Memorandum*                                                                                                                                       |

| | | |
|---|---|---|
| | | *Concerning Banco Internal Documents* (Griesmeyer, Christopher) (Entered: 04/09/2008) |
| 04/16/2008 | 374 | RESPONSE by Respondent Gregory J Jordan to motion for sanctions 364 (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Schmidt, Peter) (Entered: 04/16/2008) |
| 04/16/2008 | 375 | NOTICE by Gregory J Jordan re Response 374 (Schmidt, Peter) (Entered: 04/16/2008) |
| 04/30/2008 | 376 | REPLY by Plaintiff Wachovia Securities, LLC to Response 374 *of Gregory Jordan to Wachovia Securities, LLC's Petition for Sanctions* (Blackman, Gary) (Entered: 04/30/2008) |
| 05/20/2008 | 377 | TRANSCRIPT of Proceedings before Judge Honorable Virginia M. Kendall held on 1/7 thru 1/16/2008 (Volumes 7). (gcy, ) (Entered: 05/21/2008) |
| 05/20/2008 | 378 | TRANSCRIPT of Proceedings before Judge Honorable Virginia M. Kendall held on 10/4/07; 4/2/08 (Volumes 2). (gcy, ) (Entered: 05/21/2008) |
| 07/29/2008 | 379 | NOTICE by James Worlton Naisbitt of Change of Address (Naisbitt, James) (Entered: 07/29/2008) |
| 07/30/2008 | 380 | NOTICE by James Worlton Naisbitt attorney for defendant(s) of Change of Address. (gcy, ) (Entered: 08/01/2008) |
| 10/22/2008 | 381 | MINUTE entry before the Honorable Virginia M. Kendall: Enter Memorandum Opinion and Order: As to Counts II and IV, judgment in favor of Wachovia and against Defendants Loop, Jahelka, Nichols and Greenblatt, jointly and severally, in theamount of $2,478,418.80 with interest from September 22, 2005 through the date of judgment. The Court also awards Wachovia its actual costs and attorneys fees incurred since September 22, 2005 through the date of judgment. As to Counts VII and IX, judgment in favor of Wachovia and against Loop and Banco. As to Counts VIII and X, judgment in favor of Scattered and Loop Properties and against Wachovia. To satisfy Wachovia's claim, the Court voids Banco's lien or security interest over Loop's assets, Loop's post-May22, 2001 compensation payments to Jahelka and Nichols, and Loop's post-May 22, 2001 "investments" in EZ Links. Wachovia may levy execution on the transferred assets or its proceeds.Wachovia shall submit a fee petition to the Court within 21 days of this Order.Wachovia's Motion to Strike Defendants' Post Trial Position Paper is |

| | | |
|---|---|---|
| | | denied.Wachovia's Motion to Strike Gregory Jordan's affidavit is denied.Civil case terminated. Mailed notice (jms, ) (Entered: 10/23/2008) |
| 10/22/2008 | 382 | MEMORANDUM Opinion and Order Signed by the Honorable Virginia M. Kendall on 10/22/2008:Mailed notice(jms, ) (Entered: 10/23/2008) |
| 10/22/2008 | 383 | ENTERED JUDGMENT Mailed notice(jms, ) (Entered: 10/23/2008) |
| 11/13/2008 | 384 | PETITION *for Attorneys' Fees* (Attachments: # 1 Exhibit A, # 2 Exhibit 1 (part 1), # 3 Exhibit 1 (part 2), # 4 Exhibit 1 (part 3), # 5 Exhibit 2 (part 1), # 6 Exhibit 2 (part 2))(Griesmeyer, Christopher) (Entered: 11/13/2008) |
| 11/13/2008 | 385 | MINUTE entry before the Honorable Virginia M. Kendall:Plaintiff's petition for attorneys' fees is taken under advisement. Response is to be filed by 12/12/2008. Reply is to be filed by 12/23/2008. Court will rule by mail.Mailed notice (jms, ) (Entered: 11/13/2008) |
| 11/19/2008 | 386 | NOTICE of appeal by Banco Panamericano, Inc. regarding orders 383 , 382 Filing fee $ 455, receipt number 07520000000003292553. (Dolinko, Alan) (Entered: 11/19/2008) |
| 11/20/2008 | 387 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 386 . Notified counsel (ef, ) (Entered: 11/20/2008) |
| 11/20/2008 | 388 | NOTICE of Appeal Due letter sent to counsel of record. (ef, ) (Entered: 11/20/2008) |
| 11/20/2008 | 389 | NOTICE of Case Opening; USCA 08-3992. (gcy, ) (Entered: 11/24/2008) |
| 11/20/2008 | 390 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 386 ; USCA Case No. 08-3992. (gcy, ) (Entered: 11/24/2008) |
| 11/20/2008 | 391 | DOCUMENT ENTERED IN ERROR (gcy, ). Modified on 11/24/2008 (gcy, ). (Entered: 11/24/2008) |
| 11/24/2008 | 392 | NOTICE of appeal by Loop Corp. regarding orders 381 , 383 , 382 Filing fee $ 455, receipt number 07520000000003305015. (Willis, Gerald) (Entered: 11/24/2008) |
| 11/25/2008 | 393 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 392 . Notified counsel (ef, ) (Entered: 11/25/2008) |

| | | |
|---|---|---|
| 11/25/2008 | 394 | NOTICE of Appeal Due letter sent to counsel of record. (ef, ) (Entered: 11/25/2008) |
| 11/25/2008 | 395 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 392 , USCA Case No. 08-4018. (ar, ) (Entered: 11/26/2008) |
| 12/02/2008 | 396 | NOTICE of appeal by Andrew A Jahelka, Richard O Nichols regarding orders 383 , 382 Filing fee $ 455, receipt number 07520000000003319962. (Naisbitt, James) (Entered: 12/02/2008) |
| 12/02/2008 | 399 | NOTICE of appeal by Leon A Greenblatt, III regarding orders 381 , 383 , 382 . Filing fee $ 455; receipt number 4624012837. (gej, ) (Entered: 12/03/2008) |
| 12/03/2008 | 397 | NOTICE of Appeal Due letter sent to counsel of record. (gej, ) (Entered: 12/03/2008) |
| 12/03/2008 | 398 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 396 . Notified counsel (gej, ) (Entered: 12/03/2008) |
| 12/03/2008 | 400 | NOTICE of Appeal Due letter sent to counsel of record. (gej, ) (Entered: 12/03/2008) |
| 12/03/2008 | 401 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 399 . Notified counsel (gej, ) (Entered: 12/03/2008) |
| 12/03/2008 | 402 | MOTION by Plaintiff Wachovia Securities, LLC to clarify *Judgment Order* (Attachments: # 1 Exhibit 1)(Blackman, Gary) (Entered: 12/03/2008) |
| 12/03/2008 | 403 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion to clarify 402 before Honorable Virginia M. Kendall on 12/9/2008 at 09:00 AM. (Blackman, Gary) (Entered: 12/03/2008) |
| 12/03/2008 | 406 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 399 ; USCA Case No. 08-4088. (gcy, ) (Entered: 12/05/2008) |
| 12/03/2008 | 407 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 399 ; USCA Case No. 08-4096. (gcy, ) (Entered: 12/05/2008) |
| 12/04/2008 | 404 | MOTION by Defendants Andrew A Jahelka, Richard O Nichols to substitute attorney (Hayes, Michael) (Entered: 12/04/2008) |
| 12/04/2008 | 405 | NOTICE of Motion by Michael D Hayes for presentment of motion to substitute attorney 404 before Honorable Virginia M. |

| | | |
|---|---|---|
| | | Kendall on 12/9/2008 at 09:00 AM. (Hayes, Michael) (Entered: 12/04/2008) |
| 12/08/2008 | 408 | MINUTE entry before the Honorable Virginia M. Kendall:Jahelka defendants' motion to substitute attorney 404 is granted. Mr. Naisbitt is granted leave to withdraw and Messrs. Berger and Hayes are grante leave to file their appearance as counsel of record for defendants Jahelka and Nichols.Mailed notice (jms, ) (Entered: 12/08/2008) |
| 12/08/2008 | 409 | ATTORNEY Appearance for Defendants Andrew A Jahelka, Richard O Nichols by Michael D Hayes (Hayes, Michael) (Entered: 12/08/2008) |
| 12/08/2008 | 410 | ATTORNEY Appearance for Defendants Andrew A Jahelka, Richard O Nichols by Norman Benjamin Berger (Berger, Norman) (Entered: 12/08/2008) |
| 12/09/2008 | 411 | MINUTE entry before the Honorable Virginia M. Kendall:Motion hearing held 12/9/08. Plaintiff's motion to clarify judgment order 402 is denied. Leave granted defendants Andrew A. Jahelka and Richard Nichols extension of time to respond to the pending motion for attorneys fees 384 by 12/19/08, plaintiff to reply by 1/6/09. Mailed notice(air, ) (Entered: 12/09/2008) |
| 12/09/2008 | 412 | MINUTE entry before the Honorable Virginia M. Kendall: Previous minute order entered 12/9/08 is amended as follows; Plaintiff's motion to clarify judgment order 402 is denied. Extension of time granted to all defendants to respond to the pending Motion for attorneys fees 384 to 12/19/08, plaintiff to reply by 1/6/09. Mailed notice(air, ) Mailed notice(air, ) (Entered: 12/09/2008) |
| 12/15/2008 | 413 | SEVENTH CIRCUIT transcript information sheet by Banco Panamericano, Inc. (Dolinko, Alan) (Entered: 12/15/2008) |
| 12/18/2008 | 415 | JOINT Trial EXHIBITS by Banco Panamericano, Inc. (1 Box) (Document not imaged)(gej, ) (Entered: 12/19/2008) |
| 12/19/2008 | 414 | MOTION by Defendants Andrew A Jahelka, Richard O Nichols for joinder *in Defendants' Memoranda in Opposition to Plaintiff's Petition for Attorney's Fees* (Hayes, Michael) (Entered: 12/19/2008) |
| 12/19/2008 | 416 | OBJECTIONS by Leon A Greenblatt, III to petition 384 *for Attorneys' Fees* (Naisbitt, James) (Entered: 12/19/2008) |
| | | |

| 12/19/2008 | 417 | RESPONSE by Defendants Scattered Corp., Banco Panamericano, Inc. to petition 384 *Response in Opposition to Plaintiffs' Petition for Attorneys' Fees* (Dolinko, Alan) (Entered: 12/19/2008) |
| 12/19/2008 | 418 | OBJECTIONS *DEFENDANT LOOP CORP'S OBJECTION TO PLAINTIFF'S PETITION FOR LEGAL FEES AND COSTS* (Willis, Gerald) (Entered: 12/19/2008) |
| 12/29/2008 | 419 | MOTION by Defendant Leon A Greenblatt, III to substitute attorney (McManus, Colleen) (Entered: 12/29/2008) |
| 12/29/2008 | 420 | NOTICE of Motion by Colleen E. McManus for presentment of motion to substitute attorney 419 before Honorable Virginia M. Kendall on 1/12/2009 at 09:00 AM. (McManus, Colleen) (Entered: 12/29/2008) |
| 01/06/2009 | 421 | REPLY by Plaintiff Wachovia Securities, LLC to objections 418 *to Petition for Attorneys' Fees* (Attachments: # 1 Exhibit A, # 2 Notice of Filing NOF)(Griesmeyer, Christopher) (Entered: 01/06/2009) |
| 01/07/2009 | 422 | TRANSMITTED to the USCA for the 7th Circuit the long record on appeal 386 , 392 , 399 , 396 (USCA no. 08-3992, 08-4018, 08-4088, 08-4096) consisting of 10 Volumes of Pleadings, 10 Loose Pleadings, 15 Volumes of Transcripts, 5 Restricted Items and 1 Box of Joint Trial Exhibits. (gej, ) (Entered: 01/07/2009) |
| 01/07/2009 | 424 | USCA RECEIVED on 1/7/2009 the long record regarding notice of appeal 386 , notice of appeal 392 , notice of appeal 399 , notice of appeal 396 . (gej, ) (Entered: 01/12/2009) |
| 01/08/2009 | 423 | *Amended* NOTICE of Motion by Colleen E. McManus for presentment of motion to substitute attorney 419 before Honorable Virginia M. Kendall on 1/13/2009 at 09:00 AM. (McManus, Colleen) (Entered: 01/08/2009) |
| 01/12/2009 | 425 | MINUTE entry before the Honorable Virginia M. Kendall:Defendant Greenblatt's motion to substitute attorney 419 is granted. Mr. Naisbitt is granted leave to withdraw and Mr. Bernstein and Ms. McManus are granted leave to file their appearance as counsel of record for defendant Greenblatt.Mailed notice (jms, ) (Entered: 01/12/2009) |
| 01/30/2009 | 426 | EXECUTIVE COMMITTEE ORDER: Case referred to the Honorable Maria Valdez. Signed by Honorable James F. Holderman on 1/30/09.(gcy, ) (Entered: 02/02/2009) |

| 02/10/2009 | 429 | MINUTE entry before the Honorable Maria Valdez: This matter has been referred to Magistrate Judge Maria Valdez for Report and Recommendation on Plaintiff's petition for attorneys fees 384 . The petition for attorney fees is fully brief. The court will take this matter under advisement. Mailed notice (yp, ) (Entered: 02/10/2009) |
| --- | --- | --- |
| 02/20/2009 | 430 | MOTION by counsel for Defendants Scattered Corp., Banco Panamericano, Inc. to withdraw as attorney (Wickert, John) (Entered: 02/20/2009) |
| 02/20/2009 | 431 | NOTICE of Motion by John Henry Wickert for presentment of motion to withdraw as attorney 430 before Honorable Virginia M. Kendall on 2/25/2009 at 09:00 AM. (Wickert, John) (Entered: 02/20/2009) |
| 02/23/2009 | 432 | MINUTE entry before the Honorable Virginia M. Kendall:Mr. Wickert's motion to withdraw as attorney of record for defendants Banco Panamericano and Scattered Corporation 430 is granted. (jms, ) (Entered: 02/23/2009) |
| 03/17/2009 | 434 | MANDATE of USCA dated 3/17/09 regarding notice of appeal 386 , notice of appeal 392 , notice of appeal 399 , notice of appeal 396 ; DISMISSED for Lack of Jurisdiction ; USCA No. 080-3992, 08-4018, 08-4088 and 08-4096 (gcy, ) (Entered: 04/09/2009) |
| 03/18/2009 | 433 | MINUTE entry before the Honorable Maria Valdez: MOTION by Defendants Andrew A Jahelka, Richard O Nichols for joinder in Defendants' Memoranda in Opposition to Plaintiff's Petition for Attorney's Fees 414 is granted.Mailed notice (yp, ) (Entered: 03/18/2009) |
| 04/08/2009 | 435 | LETTER from the Seventh Circuit returning the Partial record on appeal in USCA no. 08-3992, 08-4018, 08-4088 and 08-4096 consisting of 10 pleadings to be returned later, 10 loose pleadings to be returned later, 15 transcripts to be returned later and 3 exhibits to be returned later. (gcy, ) (Entered: 04/09/2009) |
| 04/08/2009 | 436 | LETTER from the Seventh Circuit returning the record on appeal in USCA no. 08-3992,08-4018,08-4088 and 08-4096 consisting of 10 pleadings, 10 loose pleadings, 15 transcripts, and 3 exhibits. (gcy, ) (Entered: 04/13/2009) |
| 06/08/2009 | 437 | SUGGESTION of Bankruptcy as to Andrew Jahelka (Hayes, Michael) (Entered: 06/08/2009) |

| 09/01/2009 | 440 | NOTICE of Removal of Material from the Custody of the Clerk's Office by Banco Panamericano, Inc. (#415 Exhibits). (gcy, ) (Entered: 09/03/2009) |
| 09/01/2009 | 441 | LETTER from Alan R. Dolinko dated 8/31/09. (gcy, ) (Entered: 09/03/2009) |
| 09/02/2009 | 438 | MINUTE entry before the Honorable Maria Valdez: Report and Recommendation on Plaintiff's Petition for Attorneys' Fees 384 is hereby submitted to Judge Valdez. It is recommended that the motion be granted in part and denied in part, and that Plaintiff be ordered to strike from its petition all fees and costs associated with sanctions against attorney Jordan and any fees related to redacted time entries. Counsel has ten days from the date of service of this Court's Report and Recommendation to file objections with the District Court. See Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1). Failure to object constitutes a waiver of the right to appeal. Lorentzen v. Anderson Pest Control, 64 F.3d 327 (7th Cir.1995). All matters relating to the referral of this action having been resolved, the case is returned to the assigned judge. Judge Honorable Maria Valdez no longer referred to the case. (For further details see separate order.)Mailed notice (yp, ) (Entered: 09/02/2009) |
| 09/02/2009 | 439 | REPORT AND RECOMMENDATIONS Signed by the Honorable Maria Valdez on 9/2/2009. Mailed notice(yp, ) (Entered: 09/02/2009) |
| 09/14/2009 | 442 | RESPONSE by Plaintiff Wachovia Securities, LLC *to Report and Recommendation of Judge Valdez* (Griesmeyer, Christopher) (Entered: 09/14/2009) |
| 09/14/2009 | 443 | NOTICE by Wachovia Securities, LLC re Response 442 (Griesmeyer, Christopher) (Entered: 09/14/2009) |
| 09/14/2009 | 444 | ATTORNEY Appearance for Defendant Leon A Greenblatt, III by Louis David Bernstein (Bernstein, Louis) (Entered: 09/14/2009) |
| 09/14/2009 | 445 | ATTORNEY Appearance for Defendant Leon A Greenblatt, III by Colleen E. McManus (McManus, Colleen) (Entered: 09/14/2009) |
| 09/17/2009 | 446 | OBJECTIONS by Leon A Greenblatt, III to REPORT AND RECOMMENDATIONS regarding amended complaint 52 439 (McManus, Colleen) (Entered: 09/17/2009) |

| 09/17/2009 | 447 | OBJECTIONS *(Joinder in Defendant Greenblatt's Objection to Magistrate Judge's Reccomendation and Report on Attorneys' Fee Issue)* (Hayes, Michael) (Entered: 09/17/2009) |
|---|---|---|
| 09/17/2009 | 448 | MOTION by Defendant Loop Corp. to join *in Defendant Leon Greenblatt's Objection to Magistrate Judge Valdez's Report & Recommendation as to Wachovia's Petition for Legal Fees and Costs* (McAndrews, Paul) (Entered: 09/17/2009) |
| 09/18/2009 | 449 | MINUTE entry before the Honorable Virginia M. Kendall:Defendant Loop's motion to join defendant Greenblatt's objections to the magistrate judge's report and recoomendation 448 is granted. Response to the objections are to be filed by 9/28/2009. Replies are to be filed by 10/5/2009. Court will rule by mail.Mailed notice (jms, ) (Entered: 09/18/2009) |
| 09/25/2009 | 450 | RESPONSE by Plaintiff Wachovia Securities, LLC to report and recommendations 439 , objections 446 (Griesmeyer, Christopher) (Entered: 09/25/2009) |
| 12/14/2009 | 451 | NOTICE by Louis David Bernstein of Change of Address (Bernstein, Louis) (Entered: 12/14/2009) |
| 12/18/2009 | 452 | MOTION by Plaintiff Wachovia Securities, LLC MOTION FOR FINAL AND APPEALABLE ORDER (Attachments: # 1 Exhibit A)(Blackman, Gary) (Entered: 12/18/2009) |
| 12/18/2009 | 453 | NOTICE of Motion by Gary Irwin Blackman for presentment of motion for miscellaneous relief 452 before Honorable Virginia M. Kendall on 1/5/2009 at 09:00 AM. (Blackman, Gary) (Entered: 12/18/2009) |
| 12/30/2009 | 454 | *AMENDED* NOTICE of Motion by Gary Irwin Blackman for presentment of motion for miscellaneous relief 452 before Honorable Virginia M. Kendall on 1/6/2009 at 09:00 AM. (Blackman, Gary) (Entered: 12/30/2009) |
| 12/30/2009 | 455 | ATTORNEY Appearance for Defendant Leon A Greenblatt, III by Louis David Bernstein (Bernstein, Louis) (Entered: 12/30/2009) |
| 01/04/2010 | 456 | MINUTE entry before Honorable Virginia M. Kendall:The Court finds Judge Valdezs Report and Recommendation well-reasoned and thorough, including the$41,517.00 reduction calculated by Wachovia for fees associated with Attorney Jordon and redacted timeentries. the Court overrules defendants Greenblatt, Jahelka, and Nicolass objections to Judge ValdezsReport and |

| | | |
|---|---|---|
| | | Recommendation, and rules that the prejudgment interest rate should apply to the judgment. The amount of interest to be awarded, then, is the judgment amount of $2,478,418.80, multiplied by the interest rate (.05), multiplied by the number of days between September 22, 2005 and October 22, 2008 (1126) divided by the number of days in a year (365). That brings the total interest award to $382, 287.61. Court also orders that the Illinois prejudgment statutory interest rate should apply. Plaintiffs motion for afinal appealable order is granted.Mailed notice (jms, ) (Entered: 01/04/2010) |
| 01/04/2010 | 457 | ENTERED JUDGMENT on 1/4/2010:Mailed notice(jms, ) (Entered: 01/04/2010) |
| 01/13/2010 | 458 | NOTICE by Christopher Scott Griesmeyer of Change of Address (Griesmeyer, Christopher) (Entered: 01/13/2010) |
| 01/14/2010 | 459 | MOTION by counsel for Defendant Leon A Greenblatt, III to withdraw as attorney (Attachments: # 1 Text of Proposed Order) (McManus, Colleen) (Entered: 01/14/2010) |
| 01/14/2010 | 460 | NOTICE of Motion by Colleen E. McManus for presentment of motion to withdraw as attorney 459 before Honorable Virginia M. Kendall on 1/21/2010 at 09:00 AM. (McManus, Colleen) (Entered: 01/14/2010) |
| 01/20/2010 | 461 | MINUTE entry before Honorable Virginia M. Kendall: Hearing on defendant's motion to withdraw is stricken for failure to comply with Local Rule 5.2(f) and Judge Kendall's standing procedures.Mailed notice (jms, ) (Entered: 01/20/2010) |
| 01/20/2010 | 462 | MOTION by Defendants Andrew A Jahelka, Richard O Nichols to substitute attorney (Attachments: # 1 Exhibit A)(Smolens, Mark) (Entered: 01/20/2010) |
| 01/20/2010 | 463 | NOTICE of Motion by Mark F. Smolens for presentment of motion to substitute attorney 462 before Honorable Virginia M. Kendall on 1/25/2010 at 09:00 AM. (Smolens, Mark) (Entered: 01/20/2010) |
| 01/21/2010 | 464 | MOTION by counsel for Defendant Leon A Greenblatt, III to withdraw as attorney (McManus, Colleen) (Entered: 01/21/2010) |
| 01/21/2010 | 465 | NOTICE of Motion by Colleen E. McManus for presentment of motion to withdraw as attorney 464 before Honorable Virginia M. Kendall on 1/28/2010 at 09:00 AM. (McManus, Colleen) (Entered: 01/21/2010) |

| 01/21/2010 | 466 | MINUTE entry before Honorable Virginia M. Kendall: Hearing on Jahelka defendants' motion to substitute attorney is stricken for failure to comply with Local Rule 5.2(f) and Judge Kendall's standing procedures.Mailed notice (jms, ) (Entered: 01/21/2010) |
| --- | --- | --- |
| 01/22/2010 | 467 | MINUTE entry before Honorable Virginia M. Kendall:Jahelka defendants' motion substitute attorney 462 is granted Messrs. Hayes and Berger are granted leave to withdraw and Mr. Smolens is granted leave to file his appearance. Ms. McManus' motion to withdraw as attorney for defendant Greenblatt 464 is granted. Mailed notice (jms, ) (Entered: 01/22/2010) |
| 01/25/2010 | 468 | ATTORNEY Appearance for Defendants Andrew A Jahelka, Richard O Nichols by Mark F. Smolens (Smolens, Mark) (Entered: 01/25/2010) |
| 01/25/2010 | 469 | PAYMENT by Banco Panamericano, Inc. of Filing fee $ 455, receipt number 0752-4466723. (Dolinko, Alan) (Entered: 01/25/2010) |
| 01/25/2010 | 470 | NOTICE of appeal by Banco Panamericano, Inc. regarding orders 456 , 457 (Dolinko, Alan) (Entered: 01/25/2010) |
| 01/26/2010 | 471 | NOTICE of Appeal Due letter sent to counsel of record. (gej, ) (Entered: 01/26/2010) |
| 01/26/2010 | 472 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 470 . Notified counsel (gej, ) (Entered: 01/26/2010) |
| 01/26/2010 | 473 | ACKNOWLEDGEMENT of receipt of short record on appeal regarding notice of appeal 470 ; USCA Case No. 10-1203. (ea, ) (Entered: 01/27/2010) |
| 01/27/2010 | 474 | NOTICE of appeal by Leon A Greenblatt, III regarding orders 456 , 381 , 383 , 382 , 457 Filing fee $ 455, receipt number 0752-4474236. (Bernstein, Louis) (Entered: 01/27/2010) |
| 01/28/2010 | 475 | NOTICE of Appeal Due letter sent to counsel of record. (gej, ) (Entered: 01/28/2010) |