IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| WACHOVIA SECURITIES, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 3082 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| | ) | |
| DAVID NEUHAUSER, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION AND ORDER

Wachovia Securities, LLC ("Wachovia") won a judgment for $2,478,418.80 plus interest and attorney's fees against Leon Greenblatt III ("Greenblatt") and other defendants after margin trading by Greenblatt's company went south. *See Wachovia Sec., LLC v. Jahelka*, 586 F. Supp. 2d 972, 977, 1025 (N.D. Ill. 2008). To collect the judgment, Wachovia issued a citation to discover Greenblatt's assets, which demanded various documents from Greenblatt as well as entities he owns and controls. Greenblatt moved to strike that citation on various grounds (Doc. 543), and then invoked his Fifth Amendment right against self-incrimination to refuse to produce any of the documents sought by Wachovia. According to Greenblatt, the act of responding to the citation—specifically, listing all the entities he owns or is connected with—could incriminate him. For the reasons below, the Court finds Greenblatt cannot invoke his Fifth Amendment right to avoid producing the documents sought by the citation, denies his motion to strike (Doc. 543), and directs him to produce documents in accordance with the Court's instructions.

## I.    BACKGROUND

In 2000, Loop Corporation opened a margin trading account with Wachovia's predecessor in interest. *Wachovia*, 586 F. Supp. 2d at 977. In May 2001, the stock in the margin account collapsed, leaving a $1.9 million debt. *Id*. Wachovia sought, and received, an arbitration award of $2,478,418.10, and sued here to collect it against Loop's owners, including Greenblatt. *Id*. In its October 2010 opinion following a bench trial, the Court pierced the corporate veil and ordered Greenblatt and his co-defendants to pay the award. *Id.* at 1025. On January 4, 2010, the Court issued a judgment of $2,478,418.10 plus interest and attorneys fees against Greenblatt. (*See* Doc. 457.)

On March 17, 2011, Wachovia issued a citation to discover Greenblatt's assets. That citation defines Greenblatt ("you") to include "any entity you control, work with or for, or have a financial interest in (including financial interests through other entities such as [sic] LLC, LLP, family trusts, or [sic] corporation's or any other form of ownership." (*See* Doc. 551-1 at 7.) The citation seeks a variety of financial records from Greenblatt and entities he is involved with, including tax returns, bank statements, financial statements, deeds, promissory notes, and asset transfer documents. (*Id.*) It also seeks "[a] list of all entities in which you or any entity you control or have a financial interest in (including interest through other entities such as [sic] LLC, LLP or corporation." (*Id.*) Greenblatt has moved to strike the citation, asserting that its definitions are vague, it is too broad in scope, and it is unduly burdensome. (*See* Doc. 543.) Greenblatt has not produced any documents nor sat for his deposition in response to the citation, invoking his Fifth Amendment right not to incriminate himself.

**II.     DISCUSSION**

**1.     "Act of Production" Doctrine, the "Collective Entity Rule" and the Scope of Fifth Amendment Rights**

The Fifth Amendment provides that "no person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. Though the amendment mentions only criminal cases, the right against self-incrimination may be raised in civil proceedings. *See Kastigar v. United States*, 406 U.S. 441, 444 (1972). The right extends not only "to answers that would in themselves support a conviction . . . but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute a claimant." *Hoffman v. United States*, 341 U.S. 479, 486 (1951). The Fifth Amendment's protection, however, "must be confined to instances where the witness has reasonable cause to apprehend danger from a direct answer . . . the witness is not exonerated from answering merely because he declares that in so doing he would incriminate himself." *Id.* (noting it is for the Court, not Greenblatt, to decide "whether his silence is justified."); *see also Ohio v. Reiner*, 532 U.S. 17, 21 (2001) (finding "[a] danger of [criminal prosecution that is] imaginary and unsubstantial character will not suffice")

Of course, if Greenblatt were required to disclose to the Court exactly why an answer would incriminate him, he would "surrender the very protection which the privilege is designed to guarantee." *Hoffman*, 341 U.S. at 486-87. On the other hand, Greenblatt must "tender some credible reason why a response would pose a real danger of incrimination, not a remote and speculative possibility." *Martin-Trigona v. Gouletas*, 634 F.2d 354, 360 (7th Cir. 1980) (citing *Zicarelli v. N.J. State Com'n of Investigation*, 406 U.S. 472, 478 (1972) and finding there must be a "nexus" between the well-founded fear of prosecution and the information requested in a citation to discover assets);

*see also Bear Stearns & Co., Inc. v. Wyler*, 182 F. Supp. 2d 679, 684 (N.D. Ill. 2002) (finding "[t]he court does not require a showing that there is a pending criminal investigation . . . but there must be some explanation, some set of facts, that would lead the court to the conclusion" that the party invoking the privilege has a reasonable fear of prosecution).

Greenblatt's refusal to produce documents in response to the citation implicates three sub-doctrines of self-incrimination caselaw. The first, "the act of production" doctrine, recognizes that an individual may be required to produce business and financial documents containing incriminating facts or beliefs because creating those documents is not "compelled" within the meaning of the privilege. *See Fisher v. United States*, 425 U.S. 391, 409-410 (1976). In *Fisher*, IRS investigators sought an accountant's work papers used to prepare the returns of a taxpayer under investigation. *See Fisher*, 425 U.S. at 394. The Supreme Court found that because the documents at issue had been *voluntarily* prepared prior to being subpoenaed, they could not "contain compelled testimonial evidence." *Id.* at 397, 409-410; *see also Hubbell v. United States*, 530 U.S. 27, 35-36 (2000) (noting that proposition is "settled" and finding a subpoena respondent "could not avoid compliance with the subpoena . . . merely because the demanded documents contained incriminating evidence, whether written by others or voluntarily prepared by himself.").

The act of production doctrine also holds that the *act* of producing documents has a compelled and testimonial character that, in certain circumstances, could be self-incriminating. *See id.* at 36-37 (distinguishing the question of "[w]hether the constitutional privilege protects . . . the act of production itself" from the "question whether the unprotected contents of the documents themselves are incriminating.") In *Hubbell*, the respondent had previously pled guilty to charges of mail fraud and tax evasion in connection with the Whitewater investigation, and was required, under

his plea agreement, to provide complete and accurate information related to the investigation. *Id.* at 30. The Government subpoenaed various records to see if he kept that promise. *Id.* at 30-31. The Supreme Court found that the act of production itself "may certainly communicate information about the existence, custody and authenticity of the documents" requested. *Id.* at 37. Because the subpoena directly implicated whether the respondent had met the requirements of his pleas agreement, "the testimonial aspect of respondent's act of producing subpoenaed documents was the first step in a chain of evidence that led to [his] prosecution." *Id.* at 42. In short, the act of production doctrine holds, "[a]lthough the contents of a document may not be privileged, the act of producing the documents may be." *See United States v. Doe*, 465 U.S. 605, 612 (1984).

Under the second doctrine, the "collective entity" rule, corporations, LLCs and other collective entities have no Fifth Amendment rights and cannot invoke the privilege against self-incrimination. *See Braswell v. United States*, 487 U.S. 99, 102 (1988) ("it is well established that such artificial entities are not protected by the Fifth Amendment"). Consequently, a custodian of corporate records cannot refuse to produce those documents, even if those documents would incriminate him or her. *Id.* at 110, 116-17; *see also United States v. Ins. Consultants of Knox, Inc.*, 187 F.3d 755, 759 (7th Cir. 1999) (same). Similarly, the act of production doctrine does not extend to a corporate custodian, because the custodian's "act of production is not deemed a personal act, but rather an act of the corporation." *Braswell*, 487 U.S. at 110. "Any claim of Fifth Amendment privilege asserted by the agent would be tantamount to a claim of privilege by the corporation – which of course possesses no such privilege." *Id.*

Finally, the right against self-incrimination does not extend to an individual's documents that are required to be kept as part of a regulatory scheme. *See Shapiro v. United States*, 335 U.S. 1, 17

(1948) (finding no Fifth Amendment protection for "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subjects of governmental regulation and the enforcement of restrictions validly established") (internal citation omitted); *Ins. Consultants of Knox*, 187 F.3d at 760 (citing *Shapiro* and noting that many of the documents requested by the subpoena were required by law).

### 2. Greenblatt's Fear of Prosecution

Greenblatt does not claim that he is an active target of a criminal investigation, or that he has ever been investigated for criminal conduct. Rather, as the basis for his fear of prosecution, Greenblatt cites a laundry list of civil proceedings and concludes that "each of these civil proceedings involves allegations of fraud, or dishonesty, on the part of [Greenblatt]," and the criminal statutes of limitations have not run on the allegations. (Rep., Doc. 553 at 7.) Specifically, he asserts that:

- in the instant case, the Court found against two entities involving Greenblatt liable to Wachovia under a fraudulent transfer theory and questioned Greenblatt's credibility;

- that a company he owned in part was accused of securities fraud in connection with short sales of LTV Corporation, though he later prevailed in that litigation because the plaintiffs could not plead any harm done by Greenblatt's company or the securities rule it violated (see *Sullivan & Long, Inc. v. Scattered Corp.*, 47 F.3d 857, 861 (7th Cir. 1995));

- the Seventh Circuit found he gave "evasive and at times incredible testimony" in a bankruptcy proceeding and found "his orchestration of a scheme aimed at a palpable misuse of bankruptcy raises serious ethical and perhaps legal concerns" (*see In re South Beach Sec.*, 606 F.3d 366, 378 (7th Cir. 2010));

- a bankruptcy trustee tried to have Greenblatt held in criminal contempt for failing to following a court order to deposit money in an account to cover bankruptcy expenses, but the district court declined to do so and only held

6

him in civil contempt (*see In re Resource Tech. Corp.*, No 08 C 4040, 2008
WL 5411771, 2009 WL 1873529 (N.D. Ill. Dec. 28, 2008, Jun. 29, 2009);

- the defendants sued by one of Greenblatt's companies alleged that Greenblatt
used another company to defraud them; Greenblatt's company won that case
(*see Banco Panamericano, Inc. v. Consortium Serv. Mgt. Grp, Inc.*, No. 07
C 15, 2008 WL 4006764 (N.D. Ill. Aug. 26, 2008)).

(*See* Memo., Doc. 549, at 3-7.)  In sum, Greenblatt asserts that the "wide ranging and comprehensive

document production" required by the citation, "in the context of such sprawling and interconnected

litigation[,] could easily shed new light on these past actions, the criminal significance of which[]

are simply impossible to evaluate."  (*Id*. at 7.)

### 3. Greenblatt Cannot Invoke the Right Against Self-Incrimination to Fifth Amendment In Connection With Creating a List of Entities.

Greenblatt has not produced any documents in response to Wachovia's citation, asserting his

right against self-incrimination in response to all of the citation's requests.  Greenblatt asserts that

there is a justification for this "blanket" assertion: to respond to every request, Greenblatt must

generate a list of entities that he owns or with which he is associated, "implicitly admitting he is

associated with those very entities and not with others."  (Rep., Doc. 553, at 4.)  According to

Greenblatt, that listing exercise is potentially incriminating and the document production would

"furnish vital links in the chain of evidence needed to prove any criminal charge arising out [of] the

business dealings at issue" in the civil cases listed above.  (Rep. at 7.)

The Court addresses Greenblatt's threshold question first.  Greenblatt claims that he is no

different than the respondent in *Hubbell* because Wachovia, like the Government in *Hubbell*, is

searching for sources of documents that it does not know exist, which requires Greenblatt to identify

entities currently unknown to Wachovia.  *See Hubbell*, 530 U.S. at 43 (finding "we have no doubt

that constitutional privilege against self-incrimination protects the target of a grand jury investigation from being compelled to answer questions designed to elicit information about the sources of potentially incriminating evidence.") Greenblatt fast-forwards the self-incrimination analysis, however. In *Hubbell*, there was no question of the nexus between the respondent's act of producing documents and the potential self-incrimination. Indeed, via subpoena, the Government was testing whether he was complying with his plea agreement. If the respondent produced documents he had not produced before, he would have violated his plea agreement and been prosecuted. Consequently, it was assumed by the Supreme Court that the act of production there was potentially incriminating.

What was assumed in *Hubbell* cannot be assumed here. To reach the analysis in *Hubbell*, Greenblatt must first establish the nexus that shows why the act of creating a list of entities could be potentially incriminating. *See Martin-Trigona*, 634 F.2d at 360 (requiring "some nexus between the risk of criminal conviction and the information requested"); *see also Wyler*, 182 F. Supp. 2d at 683-84 (noting that "the incriminatory nature of the documents sought was obvious" in *Hubbell* and requiring "information to suggest how the testimonial aspects of that production might be incriminating"). While Greenblatt is correct that he only must demonstrate "some credible reason why a response would pose a real danger of incrimination" (*Martin-Trigona*, 634 F.2d at 360), he has not demonstrated *any* connection between creating a list of entities and possible criminal exposure. He points to a handful of civil lawsuits where he or his companies have been sued for fraud or other malfeasance and asks the Court to assume that creating a list of entities could potentially incriminate him. He fails to provide any specifics, and in fact, he *won* several of those cases. The best he does is suggest that Wachovia alleged in the instant case that he used "a wide array of entities and the interlocking relationships between them to commit a fraud against

8

Wachovia," but again, he does not explain, in even sketchy detail, how compiling the list of entities could potentially incriminate him. *Compare Willmott v. Federal Street Advisors, Inc.*, No. 05 C 1124, 2006 WL 2982144, at *3-4 (N.D. Ill. Oct. 13, 2006) (finding a witness could invoke privilege in response to questions about why she left her previous employer where she told the Court she was involved in a lawsuit that alleged she stole from that employer) *with Wyler*, 182 F. Supp. 2d at 684 (defendant could not invoke privilege to avoid production of wire transfer and other bank records, as "it is not a crime to make a wire transfer" and the defendant "provided the court with no information to suggest how the testimonial aspects of that production might be incriminating.") In short, Greenblatt does not provide the Court with any explanation that would allow the Court to conclude his fear of prosecution is well-founded rather than speculative.

Greenblatt's perjury contention is emblematic of the failure of his approach. In a footnote, he notes that he has given many depositions in connection with many different lawsuits, and by making the list of entities, Greenblatt

> could potentially provide direct evidence of perjury by now asserting connections to entities with which he has previously denied association with, or by producing documents . . [sic] whose existence [Greenblatt] previously denied. This fear is most acute, not in relation to [] Greenblatt's testimony in this case, but to his myriad other depositions and testimony given about other entities in other cases.

(Rep. at 8 n.9.) Again, he fails to identify specifics or to identify a single deposition question where he denied being associated with certain entities, and he does not identify any instances where he denied the existence of documents now requested by Wachovia. Because he cannot show any nexus between the act of compiling the list and potential criminal prosecution, Greenblatt cannot invoke his right to self-incrimination to avoid answering Wachovia's citation.

### 4.     Citation Requests

That threshold question answered, the Court moves to the citation requests themselves. Typically, whether an individual may invoke his right to self-incrimination must be analyzed on a request by request basis. *See Ins. Consultants of Knox*, 187 F.3d at 860. That inquiry is not necessary here. Greenblatt has not raised the self-incrimination issue as to any particular citation request, rather, he only claims that creating the list of entities is necessary for all the requests. That question answered above, he cannot raise his right against self incrimination to avoid any individual request. Further, to the extent Greenblatt is a custodian of corporate records requested by Wachovia, he cannot invoke the right against self-incrimination as to those records. *See Braswell*, 487 U.S. at 110. The Court also notes that several of the requests are documents required by law or statutory scheme, and not subject to the right against self-incrimination, including Greenblatt's tax returns (no. 1), car titles (no. 11) and deeds (no. 14). *See Shapiro*, 335 U.S. at 17.

### 5.     Greenblatt's Motion to Strike

Finally, the Court addresses Greenblatt's non-constitutional objections to specific citation requests. Wachovia, as holder of a judgment against Greenblatt, may examine Greenblatt or "any third party who might hold" Greenblatt's assets. *See* Fed. R. Civ. P. 69(a) (requiring that the procedure to enforce a judgment "accord with the procedure of the state where the court is located"); 735 Ill. Comp. Stat. 5/2-1402; *Pyshos v. Heart-Land Dev. Co.*, 630 N.E.2d 1054, 1057 (Ill. App. Ct. 1994); *see also Regan v. Garfield Ridge Trust & Sav. Bank*, 617 N.E.2d 818, 820 (Ill. App. Ct. 1993) (noting that for a "citation to discover assets, a judgment creditor need not specifically identify the assets or income sought."). Greenblatt's first objection is that the citation's definition of "you," "any

entity you control, work with or for, or have a financial interest in (including financial interest through other entities such as [sic] LLC, LLP, family trusts, or [sic] corporation's or any other form of ownership," is overbroad and vague because "control" is undefined. Greenblatt suggests "control" can mean any number of things, including holding an officer or director position, owning stock, or "controlling more than fifty percent of an entity." (Mot. ¶ 3.) Setting aside that Greenblatt defines "control" with the word "control," Greenblatt's proposed limitations on the word "control" are fair. In any event, Greenblatt does not object to the "[has] a financial interest in" part of the definition, which likely is broader than any definition of "control." Further, the part of the definition that seeks documents for entities that Greenblatt "works with" is too broad. At this point, Wachovia has not shown that it has a basis to believe that entities that fall only into that part of the definition have any of Greenblatt's assets. *See Regan*, 617 N.E.2d at 820 (investigation of potential assets in the hands of third parties must be "based on a belief that such assets are in the third party's possession.")

Greenblatt's second objection is that the citation seeks documents, including tax returns, relating to the period 2005 to 2010; he asserts such requests are "outside the relevant scope of the inquiry." But this case has been pending since 2004. Wachovia is entitled to see how Greenblatt's assets have changed hands since 2005. (Mot. ¶¶ 7-9.) For the same reason, the Court overrules Greenblatt's objections concerning transfers of assets to his wife since 2005. (Mot. ¶ 5.) Next, Greenblatt objects to having to create a list of all entities he controls or has a financial interest in, as well as a list of all law and accounting firms he or those entities used. (Mot. ¶ 6.) Greenblatt asserts that these requests require him to "manufacture" documents, not just produce them. (*Id*.) As a practical matter, this is no different than a deposition question asking for the same information. Greenblatt may create these lists, or produce documents sufficient to show these entities. Wachovia

11

concedes that its request for all documents pertaining to H&M Oil & Gas, LLC is overbroad. (Doc. 551 at 15.) Greenblatt only needs to produce documents that show any direct or indirect financial interest in that entity.

Finally, Greenblatt objects to Wachovia's request for "[a]ll records pertaining to assets of" Greenblatt as overly broad and unduly burdensome. (Mot. ¶ 10.) This request is squarely aimed at Greenblatt's current assets. Illinois law allows for broad discovery to discover assets in post-judgment proceedings. *See e.g., Regan*, 617 N.E.2d at 820 (recognizing § 2-1402 was designed to be "an efficient and expeditious procedure for discovery of assets and income of the judgment debtor and compelling their application to payment of the judgment or decree" and authorizing a "fishing expedition" to discover assets).

## III.    CONCLUSION

For the foregoing reasons, Greenblatt cannot invoke his right against self-incrimination to refuse to produce documents responsive to Wachovia's citation. Greenblatt's motion to strike the citation (Doc. 543) is denied, but Wachovia's citation to discover assets is limited as detailed above.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: April 18, 2011

12